**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>               Plaintiff,<br><br>     v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., GE MEDICAL SYSTEMS ISRAEL LTD., JEAN-PAUL BOUHNIK, SERGIO STEINFELD, ARIE ESCHO, NATHAN HERMONY, and YARON HEFETZ,<br><br>               Defendants. | Case No.: 18-cv-11386 (VSB) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS IN PART PLAINTIFF'S FIRST AMENDED COMPLAINT**
<u>**AND TO STRIKE PLAINTIFF'S JURY DEMAND**</u>

**REDACTED PURSUANT TO COURT ORDER DATED JUNE 17, 2019**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

    The Non-Disclosure Agreement ....................................................................................4

    The '721 PCT ...............................................................................................................6

    GE's Patent Applications ..............................................................................................6

    The Dispute ..................................................................................................................7

SUMMARY OF THE ARGUMENT ..................................................................................... 8

ARGUMENT ...................................................................................................................... 10

I.     BECAUSE DEFENDANT HEFETZ IS NOT SUBJECT TO THE FORUM SELECTION
      CLAUSE OF THE NON-DISCLOSURE AGREEMENT, THE FIRST AMENDED
      COMPLAINT SHOULD BE DISMISSED AS TO HEFETZ FOR LACK OF
      PERSONAL JURISDICTION................................................................................. 10

      A.    Legal Standard ............................................................................................... 10

      B.    Hefetz Was Not a Party to or Otherwise Bound by the Non-Disclosure
          Agreement. ..................................................................................................... 12

II.    COUNTS I-XIII OF THE FIRST AMENDED COMPLAINT SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM. .................................................. 15

      A.    Legal Standard ............................................................................................... 15

      B.    Because Plaintiff's State Law Claims (Counts I-II, IV-XII) Derive from Its
          Assertion that Its Employees Are Inventors of the Alleged Misappropriated GE
          Patents, These Claims Are Preempted by Federal Patent Law and Should Be
          Dismissed. ...................................................................................................... 16

      C.    Because Plaintiff's Claim for Breach of Contract (Count I) Fails as a Matter of
          Law with Regard to Trade Secrets E, G, I, J, and N, Count I Should Be Dismissed
          as to These Trade Secrets ............................................................................... 21

      D.    Plaintiff's Claim for Misappropriation of Trade Secrets (Count II) Should Be
          Dismissed Because the Alleged Spectrum Trade Secrets Do Not Constitute Trade
          Secrets Under New York Law, and Because the Claim Is Time-Barred and
          Duplicative of Plaintiff's Breach of Contract Claim. ........................................... 25

      E.    Because Plaintiff's Claim for Misappropriation of Trade Secrets Under the DTSA
          (Count III) is Time-Barred, Count III Should be Dismissed. ............................... 31

      F.    Because Plaintiff's Claim for Misappropriation of Ideas (Count IV) is Time-
          Barred and Duplicative of its Breach of Contract Claim, Count IV Should be
          Dismissed. ...................................................................................................... 33

      G.    Because Plaintiff's Claim for Unfair Competition (Count V) is Duplicative of its
          Breach of Contract Claim, Count V Should be Dismissed. .................................. 36

i

H.    Because Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI) is Duplicative of its Breach of Contract Claim, Count VI Should be Dismissed. ........................................................................... 37

I.    Because Plaintiff's Claim for Unjust Enrichment (Count VII) is Duplicative of its Breach of Contract Claim, Count VII Should be Dismissed. ............................... 39

J.    Because Plaintiff's Claim for Fraud (Count VIII) is Duplicative of its Breach of Contract Claim and Not Sufficiently Pled, Count VIII Should be Dismissed. ...... 40

K.    Because Plaintiff's Claim for Aiding and Abetting Fraud (Count IX) is Duplicative of its Breach of Contract Claim and Not Sufficiently Pled, Count IX Should be Dismissed. ........................................................................... 42

L.    Because Plaintiff's Claim for Negligence (Count X) is Duplicative of its Breach of Contract Claim and Time-Barred, Count X Should be Dismissed. ................... 44

M.    Because a Conversion Claim Cannot be Premised on Alleged Misuse of Intellectual Property, and Because Plaintiff's Claim for Conversion (Count XI) is Duplicative of its Breach of Contract Claim and Time-Barred, Count XI Should be Dismissed. ........................................................................... 46

N.    Because Plaintiff's Claim for Civil Conspiracy to Commit Conversion (Count XII) is Duplicative of its Breach of Contract Claim, Time-Barred, and Not Sufficiently Pled, Count XII Should be Dismissed. ............................................... 49

O.    Because Plaintiff's Claim for Fraud on the U.S. Patent and Trademark Office (Count XIII) is Not Sufficiently Pled, Count XIII Should be Dismissed. ............ 52

III.   PLAINTIFF'S COUNT XIII SHOULD BE DISMISSED FOR LACK OF STANDING. ........................................................................... 55

A.    Legal Standard ............................................................................. 55

B.    Because Plaintiff Fails to Sufficiently Plead a Substantial Controversy Between Plaintiff and Defendants, Count XIII Should be Dismissed. ............................... 57

IV.   BECAUSE THE PARTIES TO THE NON-DISCLOSURE AGREEMENT WAIVED THEIR RIGHT TO A JURY TRIAL, PLAINTIFF'S JURY DEMAND SHOULD BE STRUCK. ............................................................................. 58

CONCLUSION ........................................................................... 61

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A Star Grp., Inc. v. Manitoba Hydro, KPMG LLP*,
No. 13 Civ. 4501 (PAC), 2014 WL 2933155 (S.D.N.Y. June 30, 2014), *aff'd in relevant part*, 621 F. App'x 681 (2d Cir. 2015) ......................................................30, 35, 36

*In re Abreu*,
527 B.R. 570 (Bankr. E.D.N.Y. 2015)................................................................................47

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
651 F. Supp. 2d 155 (S.D.N.Y. 2009)..............................................................................44

*ACR Sys., Inc. v. Woori Bank*,
No. 14 Civ. 2817 (JFK), 2018 WL 1757019 (S.D.N.Y. Apr. 10, 2018)...........................50, 51

*Aledia v. HSH Nordbank AG*,
No. 08 Civ. 4342 (BSJ), 2009 WL 855951 (S.D.N.Y. Mar. 25, 2009) ............................37, 38

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
356 F. Supp. 3d 379 (S.D.N.Y. 2019)..........................................................10, 11, 14, 32, 47

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................16, 25

*Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*,
No. 2:05-CV-931, 2008 WL 345849 (D. Utah Feb. 6, 2008)..................................................58

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016).........30, 31, 36, 39, 40

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
No. 03 Civ. 8259 (CSH), 2007 WL 3286645 (S.D.N.Y. Nov. 7, 2007)..................................59

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................15, 16, 24

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013)..............................................................................45

*Brady v. Lynes*,
No. 05 Civ. 6540 (DAB), 2008 WL 2276518 (S.D.N.Y. June 2, 2008)..................................50

*Broadcom Corp. v. Qualcomm Inc.*,
No. 08cv1829 WQH (LSP), 2009 WL 684835 (S.D. Cal. Mar. 12, 2009)............................58

*Broker Genius, Inc. v. Zalta*,
   280 F. Supp. 3d 495 (S.D.N.Y. 2017)..........................................................................26

*Bulldog N.Y. LLC v. Pepsico, Inc.*,
   8 F. Supp. 3d 152 (D. Conn. 2014)..............................................................................27

*Cantrell v. Bank of Am. N.A.*,
   No. 3:16-CV-03122, 2017 U.S. Dist. LEXIS 50255 (W.D. Ark. Apr. 3, 2017) ...................32

*Carmona v. Spanish Broad. Sys., Inc.*,
   No. 08 Civ. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009)................................42

*Chong v. Healthtronics, Inc.*,
   No. CV-06-1287 (SJF)(MLO), 2007 WL 1836831 (E.D.N.Y. June 20, 2007)................11, 13

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
   No. 16-CV-33-LRR, 2017 WL 6210920 (N.D. Iowa Dec. 8, 2017) .......................................33

*Coleman & Co. Secs., Inc. v. Giaquinto Family Tr.*,
   236 F. Supp. 2d 288 (S.D.N.Y. 2002)..........................................................................45

*Coty, Inc. v. L'Oreal S.A.*,
   320 F. App'x 5 (2d Cir. 2009) ......................................................................................39

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006)..........................................................................................40

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009)..........................................................................52, 54, 55

*Deep Water Slender Wells, Ltd. v. Shell Oil Co.*,
   No. H-12-1166, 2013 WL 12174049 (S.D. Tex. Nov. 22, 2013) ...........................................32

*Dexcowin Global, Inc. v. Aribex, Inc.*,
   No. CV 16-143-GW(AGRx), 2017 WL 3477748 (C.D. Cal. June 7, 2017) ..........................54

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011)............................................................................................21

*Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC*,
   No. 03 Civ. 9471 (CSH), 2004 WL 1574645 (S.D.N.Y. July 13, 2004) ...............................52

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)................................................................................53, 54

*Fasolino Foods Co. v. Banca Nazionale Del Lavoro*,
   961 F.2d 1052 (2d Cir. 1992).......................................................................................38

iv

*Ferring B.V. v. Allergan, Inc.*,
   4 F. Supp. 3d 612 (S.D.N.Y. 2014) ...................................................................28, 35, 47, 48

*Ferring B.V. v. Allergan, Inc.*,
   932 F. Supp. 2d 493 (S.D.N.Y. 2013)............................................................27, 28, 34, 35, 49

*Flores v. A.C., Inc.*,
   No. EP-02-CA-0200-DB, 2003 WL 1566507 (W.D. Tex. Mar. 5, 2003) ..............................15

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ...................................................................................29

*Furniture Consultants, Inc. v. Datatel Minicomputer Co.*,
   No. 85 Civ. 8518 (RLC), 1986 WL 7792 (S.D.N.Y. July 10, 1986) .....................................22

*Galerie Gmurzynska v. Hutton*,
   257 F. Supp. 2d 621 (S.D.N.Y. 2003)........................................................................10, 11, 13

*Glob. Entm't, Inc. v. N.Y. Tel. Co.*,
   No. 00 Civ. 2959 (SHS), 2000 WL 1672327 (S.D.N.Y. Nov. 6, 2000) .................................12

*Great Earth Int'l Franchising Corp. v. Milks Dev.*,
   311 F. Supp. 2d 419 (S.D.N.Y. 2004).....................................................................................59

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358, 1362 (Fed. Cir. 2009)...............................................................................56, 58

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*,
   600 F.3d 1347 (Fed. Cir. 2010)........................................................................................17, 19

*Hudson Hotels Corp. v. Choice Hotels Int'l, Inc.*,
   995 F.2d 1173 (2d Cir. 1993)..................................................................................................26

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
   153 F.3d 1318 (Fed. Cir. 1998)...............................................................................................17

*Intellisoft, Ltd. v. Acer Am. Corp.*
   No. 17-cv-06272-PJH, 2018 WL 6421872 (N.D. Cal. Dec. 6, 2018).........................18, 19, 20

*Intermedics, Inc. v. Ventritex, Inc.*,
   822 F. Supp. 634 (N.D. Cal. 1993) ...................................................................28, 35, 46, 49

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009).....................................................................................................22

*James v. j2 Cloud Servs. Inc.*,
   No. 2:16-cv-05769-CAS(PJWx), 2018 WL 6092461 (C.D. Cal. Nov. 19,
   2018) ..................................................................................................................................17, 19

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. 2013) ...................................................................10

*Kampuries v. Am. Honda Motor Co.*,
    204 F. Supp. 3d 484 (E.D.N.Y. 2016) ..................................................................45

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
    494 F. App'x 153 (2d Cir. 2012) ...........................................................39, 48, 50

*Kernan v. Kurz-Hastings, Inc.*,
    175 F.3d 236 (2d Cir. 1999), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ..........................10

*Kinek v. Paramount Commc'ns*,
    Inc., 22 F.3d 503, 509 (2d Cir. 1994) ...................................................................22

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ................................................................................51

*Klos v. Polskie Linie Lotnicze*,
    133 F.3d 164 (2d Cir. 1997) ................................................................................22

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005) ................................................................................23

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ...........................................................................22, 23

*Lehman v. Dow Jones & Co.*,
    783 F.2d 285 (2d Cir. 1986) ................................................................................26

*Leviton Mfg. Co. v. Reeve*,
    942 F. Supp. 2d 244 (E.D.N.Y. 2013) .............................................................14, 15

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
    639 F.3d 63 (2d Cir. 2011) ..................................................................................22

*Lombard v. Booz-Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002) ................................................................................45

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................55, 56

*Madey v. Duke Univ.*,
    307 F.3d 1351 (Fed. Cir. 2002) ...........................................................................57

*Manela v. Gottlieb*,
    784 F. Supp. 84 (S.D.N.Y. 1992) ....................................................................42, 44

*Mazzaro De Abreu v. Bank of Am. Corp.*,
  812 F. Supp. 2d 316 (S.D.N.Y. 2011)...................................................................43

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)..................................................................................16

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007).........................................................................................55, 56

*Morgan Guar. Trust Co. v. Crane*,
  36 F. Supp. 2d 602 (S.D.N.Y. 1999).....................................................................59

*Newman v. Herbst*,
  No. 09-cv-4313 (TLM), 2011 WL 684165 (E.D.N.Y. Feb. 15, 2011) ...................39

*Nostrum Pharms., LLC v. Dixit*,
  No. 13-cv-8718 (CM), 2016 WL 5806781 (S.D.N.Y. Sept. 23, 2016) ...................30

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*,
  497 F. Supp. 2d 541 (S.D.N.Y. 2007)....................................................................37

*Paysys Int'l, Inc. v. Atos Se*,
  No. 14-cv-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016)............27, 34

*Phillips v. Audio Active, Ltd.*,
  494 F.3d 378 (2d Cir. 2007)..................................................................................11

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
  449 F. App'x 57 (2d Cir. 2011) .............................................................................48

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*,
  75 F.3d 1568 (Fed. Cir. 1996)...............................................................................54

*Profil Institut Fur Stoffwechselforschung GmbH v. Prosciento, Inc.*,
  No. 16cv1549-LAB (BLM), 2017 WL 1198992 (S.D. Cal. Mar. 31, 2017) ...........23

*Riverside Mktg., LLC v. SignatureCard, Inc.*,
  425 F. Supp. 2d 523 (S.D.N.Y. 2006)....................................................................25

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007)..............................................................................56

*Savitsky v. Mazzella*,
  No. 98 Civ. 9051 (RWS), 2004 WL 2454120 (S.D.N.Y. Nov. 1, 2004), *aff'd*,
  210 F. App'x 71 (2d Cir. 2006) .......................................................................51, 52

*Speciner v. Reynolds Metals Co.*,
  177 F. Supp. 291 (S.D.N.Y. 1959), *aff'd*, 279 F.2d 337 (2d Cir. 1960)................26

*Speedfit LLC v. Woodway USA, Inc.*,
226 F. Supp. 3d 149 (E.D.N.Y. 2016) ........................................................................17, 19, 21

*Speedry Chem. Prods., Inc. v. Carter's Ink Co.*,
306 F.2d 328 (2d Cir. 1962)........................................................................................26

*SPV Osus Ltd. v. UniCredit Bank Austria*,
No. 18-cv-3497 (AJN), 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019)................................11

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
374 F.3d 158 (2d Cir. 2004)........................................................................................38

*Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*,
299 F. Supp. 2d 565 (E.D. Va. 2004) ...........................................................................23

*Telecom Int'l Am., Ltd. v. AT & T Corp.*,
280 F.3d 175 (2d Cir. 2001)...................................................................................40, 41

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ......................................................................52

*Transcience Corp. v. Big Time Toys, LLC*,
50 F. Supp. 3d 441 (S.D.N.Y. 2014).............................................................................48

*Tropp v. Corp. of Lloyd's*,
385 Fed. Appx. 36 (2d Cir. 2010) ................................................................................11

*Turner v. Temptu Inc.*,
No. 11 Civ. 4144 (JMF), 2013 WL 4083234 (S.D.N.Y. Aug. 13, 2013), *aff'd*,
586 F. App'x 718 (2d Cir. 2014) ..................................................................................34

*United States v. Liranzo*,
944 F.2d 73 (2d Cir. 1991)..........................................................................................22

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
196 F.3d 1366 (Fed. Cir. 1999)....................................................................................17

*V.E.C. Corp. v. Hilliard*,
No. 10 CV 2542 (VB), 2011-WL 7101236 at 10 (S.D.N.Y. Dec. 13, 2001) ..........................47

*Valjean Mfg. v. Michael Werdiger, Inc.*,
No. 03 Civ. 6185 (HB), 2004 WL 1948752 (S.D.N.Y. Sept. 2, 2004)..................................25

*Verus Pharms., Inc. v. AstraZeneca AB*,
No. 09 Civ. 5660 (BSJ), 2010 WL 3238965 (S.D.N.Y. Aug. 16, 2010), *aff'd*,
427 F. App'x 49 (2d Cir. 2011) ............................................................................40, 41, 43

*W.R. Grace & Co.-Conn. v. Hampshire Chem. Corp.*,
No. 96 Civ. 8199 (AGS), 1998 WL 2814 (S.D.N.Y. Jan 6, 1998) ......................................22

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................................................................13

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................................55

*Westminster Secs. Corp. v. Uranium Energy Corp.*,
   255 F. Supp. 3d 490 (S.D.N.Y. 2017).............................................................59, 61

**State Cases**

*Amalgamated Tr. Union Local 1181, AFL-CIO v. City of New York*,
   846 N.Y.S.2d 336 (N.Y. App. Div. 2007) ..............................................................12

*Century-Maxim Constr. Corp. v. One Bryant Park, LLC*,
   No. 24683/08, 2009 NY Slip Op 50858(U), (N.Y. Sup. Ct. Apr. 7, 2009) ............25

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   70 N.Y.2d 382 (1987) .............................................................30, 34, 35, 43, 45, 50

*Gognat v. Ellsworth*,
   259 P.3d 497 (Colo. 2011).......................................................................................29

*Goldstein v. Siegel*,
   244 N.Y.S.2d 378 (N.Y. App. Div. 1963) ..............................................................52

*Greenfield v . Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 750
   N.Y.S.2d 565 (N.Y. 2002) ......................................................................................22

*Grusd v. Arccos Golf LLC*,
   No. 653239/2013, 2014 WL 2531511 (N.Y. Sup. Ct. June 3, 2014)......................35

*Schlotthauer v. Sanders*,
   545 N.Y.S.2d 197 (N.Y. App. Div. 1989) ..............................................................50

*Schroeder v. Pinterest, Inc.*,
   17 N.Y.S.3d 678,692 (N.Y. App. Div. 2015) ...................................................34, 36

*Wolf v. Nat'l Council of Young Isr.*,
   694 N.Y.S.2d 424 (N.Y. App. Div. 1999) ..............................................................48

**Statutes & Rules**

U.S. CONST. art. III, § 2, cl. 1

18 U.S.C. § 1836(d) .........................................................................................................31

Declaratory Judgment Act, 28 U.S.C. § 2201(a) ................................................55, 56

35 U.S.C. § 256 ...................................................................................................................1

Defend Trade Secrets Act .................................................................................................1, 7

37 C.F.R. § 1.56(a) .............................................................................................................54

Fed. R. Civ. P. 4(d)(5) ........................................................................................................10

Fed. R. Civ. P. 8 .................................................................................................................16

Fed. R. Civ. P. 8(a)(2) ........................................................................................................15

Fed. R. Civ. P. 9(b) .........................................................................40, 42, 43, 44, 53, 54

Fed. R. Civ. P. 12(b)(1) ...............................................................................................1, 9, 57

Fed. R. Civ. P. 12(b)(2) .........................................................................................1, 8, 10, 11

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 9, 15, 16, 48

Fed. R. Civ. P. 12(d) ...........................................................................................................16

Fed. R. Civ. P. 38 ...............................................................................................................59

Fed. R. Civ. P. 39 ...............................................................................................................59

Fed. R. Civ. P. 39(a) ...............................................................................................1, 10, 58, 59

N.Y. C.P.L.R. § 214(3) ......................................................................................................47

N.Y. C.P.L.R. § 214(4) ...........................................................................................27, 34, 45

N.Y. C.P.L.R. § 302 ...........................................................................................................11

N.Y. C.P.L.R. § 302(a)(1) ..................................................................................................13

**Other Authorities**

8 James Wm. Moore et al., *Moore's Federal Practice* § 39.13[2][c] (3d ed. 2007) ....................59

RESTATEMENT OF TORTS § 757 cmt. ..................................................................................26

Defendants General Electric Company ("GE"), GE Healthcare, Inc. ("GE Healthcare"), GE Medical Systems Israel Ltd. ("GE Medical"), Jean-Paul Bouhnik, Sergio Steinfeld, Arie Escho, Nathan Hermony, and Yaron Hefetz (individually and collectively, "Defendant(s)")[1] respectfully move to dismiss Counts I to XIII of the First Amended Complaint, filed under seal by Plaintiff Spectrum Dynamics Medical Limited ("Plaintiff" or "Spectrum"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendant Hefetz further moves to dismiss the First Amended Complaint for lack of personal jurisdiction as to him individually pursuant to Rule 12(b)(2).  In addition, Defendants move to strike the jury demand requested by Plaintiff in the First Amended Complaint pursuant to Rule 39(a).

## PRELIMINARY STATEMENT

Plaintiff has filed the above-captioned case (the "Action") against Defendants for correction of inventorship (pursuant to 35 U.S.C. § 256) (Count XIV) of seventeen patents and patent applications assigned to GE.  Plaintiff contends that, beginning in 2009, it shared with GE trade secrets and that GE used these trade secrets to seek and obtain United States patents. Plaintiff alleges that its own employees are "true inventors" of the patents at issue, thus making Plaintiff the rightful owner of those patents by assignment.

Plaintiff's claim for correction of inventorship is supplemented by various causes of action arising under state and federal law, namely breach of contract (Count I), misappropriation of trade secrets (Count II), misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") (Count III), misappropriation of ideas (Count IV), unfair competition (Count V), breach of implied good faith and fair dealing (Count VI), unjust enrichment (Count VII), fraud

---

[1] GE, GE Healthcare, and GE Medical shall be collectively referred to as the "GE Entities," and Bouhnik, Steinfeld, Escho, and Hermony shall be collectively referred to as the "Obligated Individuals."  Hefetz is not included in the definition of Obligated Individuals.

(Count VIII), aiding and abetting fraud (Count IX), negligence (Count X), conversion (Count XI), civil conspiracy to commit conversion (Count XII), and fraud on the United States Patent and Trademark Office ("USPTO") (Count XIII).  There are, however, several fatal flaws in each of these additional claims.  Indeed, each and every one of these additional causes of action fails because of <u>multiple</u>, <u>independent</u> reasons.

<u>First</u>, the Court lacks personal jurisdiction over Hefetz who is not subject to the forum selection clause relied upon by Plaintiff in filing its case in this Court.  The non-disclosure agreement related to the sharing of information includes a forum selection clause.  But Hefetz is not a signatory to that agreement; he is not mentioned in the agreement; he has not affirmatively assumed the duties of the agreement; and he was not even aware of the agreement until after this lawsuit was filed.  Moreover, Hefetz, who lives and works in Israel, has insufficient contacts with New York for the Court to exercise jurisdiction over him.  Thus, all of Plaintiff's claims against Hefetz should be dismissed for lack of personal jurisdiction.

<u>Second</u>, other than Plaintiff's claim for correction of inventorship, all of Plaintiff's counts fail to state a valid claim for relief.  Because each of Plaintiff's state law claims is wholly dependent on its inventorship allegations, these claims are preempted by federal patent law and should be dismissed.  Moreover, Counts II–XIII each fail to state a claim for relief for additional reasons.  Counts II–IV and X–XII (misappropriation, negligence, and conversion claims) are time-barred under their respective three-year limitations periods.  Counts II and IV–XII (tort claims) are wholly duplicative of Count I (breach of contract claim).  Counts VIII–IX and XIII (fraud claims) fail to meet the requisite heightened pleading standard.  Thus, Counts I to XIII of Plaintiff's First Amended Complaint should be dismissed with prejudice for failure to state a claim.

<u>Third</u>, Plaintiff lacks standing to bring its claim for fraud on the USPTO (Count XIII). Plaintiff fails to sufficiently plead a substantial controversy between Plaintiff and Defendants regarding the enforceability of the patents that were allegedly obtained by fraud.  Thus, declaratory judgment jurisdiction does not exist, and dismissal is required.

In sum, the Court should dismiss Counts I to XIII with prejudice, dismiss all claims as to Hefetz, and strike Plaintiff's jury demand.

<b><u>STATEMENT OF FACTS</u></b>

Defendant GE is a corporation organized under the laws of New York and having a principal place of business in Massachusetts.  First Am. Compl. ¶ 2.  Defendants GE Healthcare and GE Medical both operate as subsidiaries of GE.  *Id.* ¶¶ 3–4.  Defendants Bouhnik, Steinfeld, and Hermony are all current employees of GE, and Defendant Escho is a former employee of GE.  Plaintiff acknowledges that Defendant Hefetz is not a GE employee.  He is a patent attorney employed by an outside firm and is an independent contractor for GE, serving as a scientific and intellectual property consultant.  *Id.* ¶¶ 62, 447, 449.  The individual Defendants are all citizens of Israel.  *Id.* ¶¶ 5–9.  Each Defendant is involved, in some capacity, in the business of healthcare and medical devices, including nuclear medicine technology.  *See, e.g.*, *id.* ¶ 105.

Plaintiff Spectrum Dynamics Medical Limited pleads that it is a limited company organized under the laws of, and having a principal place of business in, the British Virgin Islands.  *Id.* ¶ 1.  Plaintiff claims to be a developer, manufacturer, and seller of specialized Single Photon Emission Computed Tomography ("SPECT") imaging equipment.  *Id.* ¶ 71.  SPECT is nuclear medicine technology for full body imaging or scanning.  *Id.* ¶ 74.  Plaintiff has allegedly been operating in this space, through its predecessors, since 1999–2000.  *Id.* ¶ 71.  Plaintiff was allegedly purchased by Biosensors International Group Ltd. in about 2012–13.  *Id.* ¶ 98.

3

The Non-Disclosure Agreement

As pled in the First Amended Complaint, Plaintiff and GE engaged in discussions "focused on Spectrum's basic CZT [cadmium zinc telluride] technology and [its] implementation for dedicated cardiac imaging" starting some time prior to 2008. *Id.* ¶ 41. As part of these discussions, a series of non-disclosure agreements were entered into. *Id.* ¶ 41 & Ex. 1 at Recital A. On September 16, 2009, Spectrum Dynamics Limited and GE Healthcare entered into an Amended and Restated Mutual Confidentiality and Non-Use Agreement (the "Non-Disclosure Agreement") for "the sole purpose of evaluating a possible relationship between [the companies]." *Id.* ¶ 57 & Ex. 1. As pled in the First Amended Complaint, Spectrum Dynamics LLC—not Spectrum Dynamics Limited—was the intended signatory to the Non-Disclosure Agreement. *Id.* ¶ 68. Plaintiff claims to be a successor in interest to Spectrum Dynamics LLC with standing to enforce the agreement. *Id.* ¶ 70; *see also id.* ¶¶ 10–23. The Non-Disclosure Agreement forms the basis of Plaintiff's breach of contract claim. *See id.* Ex. 1.

Certain paragraphs of the Non-Disclosure Agreement are relevant to the Action. "Spectrum Information" is defined as "certain proprietary or confidential information and know-how" owned by Spectrum Dynamics Limited. *Id.* Ex. 1 (Recital C). "Company [GE Healthcare] Information" is defined as "confidential and/or proprietary information and technology, including, without limitation, in connection with research, development, manufacturing marketing and sales of diagnostic imaging pharmaceuticals and equipment." *Id.* Ex. 1 (Recital D). The "Purpose" of the Non-Disclosure Agreement was to "exchange or provide access to" the Spectrum Information and the Company Information "for the sole purpose of evaluating a possible relationship" between the parties to the agreement. *Id.* Ex 1 (Recital E). Additionally, paragraph 1 of the Non-Disclosure Agreement, the "Confidentiality" provision, states that each

party to the agreement shall "[h]old Information of the other party in strict confidence."  *Id.* Ex.

1, ¶ 1.1.  The "Confidentiality" provision further states in relevant part:

> Each Party shall use Information of the other party solely for the Purpose and not
> use the Information or any part, portion, or element thereof, or any idea, concept,
> invention, technique, discovery or design deriving from the Information in any
> way whatsoever other than for the Purpose.

*Id.* Ex. 1, ¶ 1.2.  The "Confidentiality" provision of the Non-Disclosure Agreement governs the

disclosure and use of the Spectrum Information and the Company Information by the parties to

the agreement.

The second paragraph of the agreement is entitled "Exclusions."  It states in relevant part:

"The obligation of the Receiving Party to maintain the confidentiality of Information shall not

apply to any of the Information that the Receiving Party can reasonably demonstrate . . . is made

public by Disclosing Party, or is established to be part of the public domain."  *Id.* Ex. 1, ¶ 2.1.

Plaintiff alleges that pursuant to the Non-Disclosure Agreement, Plaintiff and GE

conducted numerous meetings and exchanges of information from 2009 to 2012.  *Id.* ¶ 86.

Plaintiff alleges that the GE employees who attended these due diligence meetings included

Defendants Hermony, Bouhnik, Escho, and Steinfeld, but not Defendant Hefetz.  *Id.* ¶ 193.

Plaintiff, however, does not identify which of its employees attended the due diligence meetings.

Plaintiff alleges that, during the due diligence meetings, it shared with GE the Spectrum

Information, including its alleged trade secrets (the "Alleged Spectrum Trade Secrets").  *Id.*

¶¶ 180, 196, 514, 527, 666.

The Alleged Spectrum Trade Secrets, as pled by Plaintiff, are ███████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████  *Id.* ¶¶ 196–446.  According to the First Amended Complaint, each trade secret was

jointly invented by Yoel Zilberstien and Nathaniel Roth, who were employees of Spectrum or its predecessors and who assigned their rights in the trade secrets to their employers, such that Plaintiff now owns all of the Alleged Spectrum Trade Secrets. *Id.* ¶¶ 23, 495, 511, 524, 539, 621. Plaintiff does not detail any other Spectrum Information beyond the Alleged Spectrum Trade Secrets, i.e. the trade secrets provided pursuant to the Non-Disclosure Agreement.

<u>The '721 PCT</u>

On November 14, 2013, an international patent issued under the Patent Cooperation Treaty ("PCT") as PCT/IB2013/053721 (the "'721 PCT") to the named inventors, Shlomo Ben-Haim and Benny Rousso. *Id.* ¶ 23. Ben-Haim and Rousso allegedly assigned their rights in the '721 PCT to Spectrum's predecessor in interest, Spectrum Dynamics LLC. *Id.* Plaintiff admits that the '721 PCT publicly disclosed several of the Alleged Spectrum Trade Secrets, including Trade Secrets A, E, G, I, J, and N, as well as portions of Trade Secret D. *Id.* ¶¶ 23, 204, 259, 274, 313, 341, 356, 404.

<u>GE's Patent Applications</u>



*Id.* Ex. 2.

*Id.*

*Id.* *Id.*

GE filed an additional 16 patent applications that are also at issue in the Action (individually and collectively, the "Alleged Misappropriated GE Patents"). *See id.* ¶¶ 34–35 & Exs. 2–18. Of the Alleged Misappropriated GE Patents, 16 have issued and 2 remain pending. *See id.*

*See id.* Exs. 2–18.

The Dispute

On June 20, 2018, almost nine years after the Non-Disclosure Agreement was executed, Plaintiff sent a letter to GE expressing its concerns that GE misappropriated various "fundamental concepts, as well as specific implementations, which were developed by Spectrum." *Id.* ¶¶ 154–155 & Ex. 20.  From June through November 2018, the parties exchanged correspondence concerning Plaintiff's alleged concerns. *Id.* ¶¶ 154–164.  During the course of the correspondence, GE retained outside counsel to conduct a thorough investigation of Plaintiff's claim.  *Id.* ¶ 160.  GE has repeatedly denied Plaintiff's baseless claims.  *Id.* ¶ 161.  And at no time did GE make an affirmative act to assert its own patents against Plaintiff.  *See id.* ¶¶ 36, 660 & Ex. 24.

Now before the Court is Plaintiff's First Amended Complaint, asserting 14 claims, nearly all of which are time-barred, duplicative, and/or insufficiently pled.  In the First Amended Complaint, Plaintiff alleges that Defendants breached the Non-Disclosure Agreement by using and/or disclosing the Alleged Spectrum Trade Secrets in the Alleged Misappropriated GE Patents and by using such trade secrets to "hasten the development" of GE's own device (the "Accused GE Device").  *See id.* ¶¶ 178–179, 490–508.  Relying on the same factual allegations that form the basis of its breach of contract claim, Plaintiff asserts various tort claims under New York law, as well as a federal law claim under the Defend Trade Secrets Act ("DTSA").  *Id.* ¶¶ 509–638.  The essence of Plaintiff's First Amended Complaint, however, is its patent-related allegations – that GE acquired Spectrum's trade secrets and used those trade secrets to acquire patents in GE's own name.  *Id.* ¶¶ 639–674.  Plaintiff seeks to have its employees named as joint inventors on those patents, itself named as an assignee thereof, and the patents declared unenforceable (as to only itself).  *Id.*, Prayer for Relief, ¶¶ m, n.  For the reasons set forth below,

the Court should grant Defendants' motion and dismiss Counts I to XIII of the First Amended Complaint with prejudice.

## SUMMARY OF THE ARGUMENT

While Plaintiff's fourteen causes of action against Defendants are numerous and appear to be wide-ranging, the legal defects in these claims are straightforward and easily categorized.

First, Plaintiff offers only conclusory allegations in an attempt to show that this Court may exercise personal jurisdiction over Hefetz pursuant to the forum selection clause of the Non-Disclosure Agreement.  Defendants, however, attach hereto the Declaration of Yaron Hefetz, affirmatively showing that Hefetz did not agree to the Non-Disclosure Agreement.  As such, Plaintiff cannot enforce the agreement's forum selection clause against Hefetz.  Therefore, Plaintiff's fourteen causes of action should all be dismissed as to Hefetz for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Second, almost all of Plaintiff's claims fail to state a valid claim for relief:

- Count I for breach of contract (i) is preempted by federal patent law, and (ii) fails as a matter of law with regard to those trade secrets that Plaintiff admits it publicly disclosed.

- Count II for misappropriation of trade secrets is (i) preempted by federal patent law, (ii) time-barred, and (iii) duplicative of the breach of contract claim.

- Count III for misappropriation of trade secrets (DTSA) is time-barred.

- Count IV for misappropriation of ideas is (i) preempted by federal patent law, (ii) time-barred, and (iii) duplicative of the breach of contract claim.

- Count V for unfair competition is both (i) preempted by federal patent law, and (ii) duplicative of the breach of contract claim.

- Count VI for breach of implied covenant of good faith and fair dealing is both (i) preempted by federal patent law, and (ii) duplicative of the breach of contract claim.

- Count VII for unjust enrichment is both (i) preempted by federal patent law, and (ii) duplicative of the breach of contract claim.

- Count VIII for fraud is (i) preempted by federal patent law, (ii) duplicative of the breach of contract claim, and (iii) insufficiently pled under the heightened pleading standard.

- Count IX for aiding and abetting fraud is (i) preempted by federal patent law, (ii) duplicative of the breach of contract claim, and (iii) insufficiently pled under the heightened pleading standard.

- Count X for negligence is (i) preempted by federal patent law, (ii) duplicative of the breach of contract claim, and (iii) time-barred.

- Count XI for conversion is (i) preempted by federal patent law, (ii) insufficiently pled, (iii) duplicative of the breach of contract claim, and (iv) time-barred.

- Count XII for civil conspiracy to commit conversion is (i) preempted by federal patent law, (ii) duplicative of the breach of contract claim, (iii) time-barred, and (iv) insufficiently pled.

- Count XIII for fraud on the USPTO ("inequitable conduct") is insufficiently pled under the heightened pleading standard.

Therefore, each of these claims should be dismissed as to all Defendants with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Third, Plaintiff fails to sufficiently plead a substantial controversy between itself and Defendants regarding enforceability of the Alleged Misappropriated GE Patents such that it has standing to bring Count XIII.  Therefore, Count XIII should be dismissed as to all Defendants for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

Finally, the Non-Disclosure Agreement, upon which Plaintiff brings the Action, includes a jury waiver provision.  Therefore, Plaintiff's jury demand should be struck pursuant to Fed. R. Civ. P. 39(a).

For these foregoing reasons, and as further explained below, Counts I to XIII of Plaintiff's First Amended Complaint should be dismissed with prejudice; all claims should be dismissed against Hefetz; and Plaintiff's jury demand should be struck.

## ARGUMENT

**I. BECAUSE DEFENDANT HEFETZ IS NOT SUBJECT TO THE FORUM SELECTION CLAUSE OF THE NON-DISCLOSURE AGREEMENT, THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED AS TO HEFETZ FOR LACK OF PERSONAL JURISDICTION.[2]**

### A. Legal Standard[3]

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (quoting *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999)), *aff'd*, 355 F.3d 206 (2d Cir. 2004).  When personal jurisdiction is disputed by a defendant and the parties have not conducted discovery, the plaintiff must make a *prima facie* showing that the defendant is subject to personal jurisdiction.  *Id.*  The plaintiff can carry its burden through its "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the

---

[2] Hefetz did not waive his objection to personal jurisdiction by waiving service of the summons. *See* Fed. R. Civ. P. 4(d)(5).

[3] While district courts generally apply Federal Circuit law when deciding questions of personal jurisdiction in patent cases, the test for personal jurisdiction under Federal Circuit and Second Circuit law are similar.  *See Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 389 (S.D.N.Y. 2019) (citing *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 390 (E.D.N.Y. 2013)).

defendant." *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18-cv-3497 (AJN), 2019 WL

1438163, at *4 (S.D.N.Y. Mar. 30, 2019) (internal quotation marks omitted).  "On a Rule

12(b)(2) motion, a defendant may [also] submit affidavits and documents beyond the pleadings."

*Id.*  In evaluating the submitted materials, courts "construe the pleadings and any supporting

materials in the light most favorable to the plaintiffs."  *Id.* (internal quotation marks omitted).

Conclusory allegations, however, are insufficient.  *Galerie*, 257 F. Supp. 2d at 625.  This is

particularly true of allegations "stated only upon 'information and belief.'"  *Chong v.*

*Healthtronics, Inc.*, No. CV-06-1287 (SJF)(MLO), 2007 WL 1836831, at *5 (E.D.N.Y. June 20,

2007).

     "[I]n cases involving a non-consenting, out-of-state defendant, [courts] must ask first

whether the defendant is subject to the forum state's long-arm statute, and second whether the

exercise of personal jurisdiction would comport with due process."  *Arcadia*, 356 F. Supp. 3d at

289.  Since the New York long-arm statute extends as far as federal constitutional due process

allows, the two inquiries collapse into the single inquiry of whether jurisdiction comports with

due process.  *See* N.Y. C.P.L.R. § 302.

     Parties, however, can consent to personal jurisdiction through forum selection clauses in

contractual agreements.  To enforce a forum selection clause, a party must show that: "(1) the

clause was reasonably communicated to the party resisting enforcement; (2) the clause was

mandatory and not merely permissive; and (3) the claims and parties involved in the suit are

subject to the forum selection clause."  *Tropp v. Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir.

2010).  The opposing party, however, may "rebut the presumption of enforceability by 'making a

sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause

was invalid for such reasons as fraud or overreaching.'"  *Id.* (quoting *Phillips v. Audio Active,*

*Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007)).  Indeed, it is axiomatic that "[a] contract cannot bind

a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the 'alter ego' of the party." *Glob. Entm't, Inc. v. N.Y. Tel. Co.*, No. 00 Civ. 2959 (SHS), 2000 WL 1672327, at *7 (S.D.N.Y. Nov. 6, 2000).  Even when an "agreement purport[s] to bind [non-signatories] to the agreement, a[] [non-signatory] will not be bound to the terms of a contract absent an affirmative assumption of the duties under the contract." *Amalgamated Tr. Union Local 1181, AFL-CIO v. City of New York*, 846 N.Y.S.2d 336, 338 (N.Y. App. Div. 2007).

In this case, Plaintiff alleges this Court has jurisdiction over Hefetz by virtue of the forum selection clause in the Non-Disclosure Agreement.  However, Hefetz is not a signatory to the Non-Disclosure Agreement; he is not mentioned in the Non-Disclosure Agreement; he has not affirmatively assumed the duties of the agreement; and he was not even aware of the Non-Disclosure Agreement until after this lawsuit was filed.  Under these facts, Hefetz is not bound by the forum selection clause, and the Court does not have personal jurisdiction over him.  The First Amended Complaint should be dismissed as to Hefetz.

## B.  Hefetz Was Not a Party to or Otherwise Bound by the Non-Disclosure Agreement.

Plaintiff alleges that: "This Court has personal jurisdiction over Defendant YARON HEFETZ by virtue of his receipt of the proprietary and/or confidential Spectrum Information under ¶ 6 of the [Non-Disclosure] Agreement (*id.*), whereby GE's Representatives, as defined in the [Non-Disclosure] Agreement, who received access to the Spectrum Information are under an

express agreement to be bound by the terms of the [Non-Disclosure] Agreement."[4]  First Am.

Compl. ¶ 33.  In support of this assertion, Plaintiff further alleges as follows:

- "Upon information and belief, Defendant Hefetz agreed to be bound by the terms and conditions of the [Non-Disclosure] Agreement, specifically including the non-disclosure and non-use provisions, and was accordingly provided access to Spectrum Information by one or more of the GE diligence personnel." *Id.* ¶ 61 (emphasis added).

- "Upon information and belief, GE diligence personnel and/or the Obligated Individuals disclosed proprietary and/or confidential Spectrum Information to Yaron Hefetz, who agreed to be bound by the terms of the [Non-Disclosure] Agreement.  (*See* [Non-Disclosure] Agreement ¶ 1.1)." *Id.* ¶ 448 (emphasis added).

- "Upon information and belief, Defendant Hefetz would have known . . . that he was bound by the [Non-Disclosure] Agreement . . . ." *Id.* ¶ 454 (emphasis added).

- "Upon information and belief, GE and/or the Obligated Individuals or other GE diligence personnel disclosed proprietary and/or confidential Spectrum Information to Yaron Hefetz upon his agreement to receive the same under the terms of the [Non-Disclosure] Agreement, thereby subjecting Defendant Hefetz to the terms of the [Non-Disclosure] Agreement.  (*See* [Non-Disclosure] Agreement ¶ 1.1)." *Id.* ¶ 501 (emphasis added).

Plaintiff's claim for personal jurisdiction, however, must fail.

As an initial matter, Plaintiff's allegations are conclusory and are pled only upon

"information and belief."  As such, they are insufficient to establish personal jurisdiction.

*Galerie*, 257 F. Supp. 2d at 625; *Chong*, 2007 WL 1836831, at *5.  While some of these

allegations cite to the Non-Disclosure Agreement, which is attached to the First Amended

---

[4] Plaintiff has not pled that the Court has personal jurisdiction over Hefetz pursuant to New York's long arm statute.  Nonetheless, the attached Declaration of Yaron Hefetz shows that there is no personal jurisdiction over Hefetz pursuant to the statute as he does not have the required "minimum contacts" with New York.  *See* N.Y. C.P.L.R. § 302(a)(1); *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." (internal quotation marks omitted)).

Complaint, that agreement is not signed by Hefetz and makes no mention of him.  *See* First Am. Compl. Ex. 1.

Not only are these allegations inadequate on their face, they are expressly contradicted by the Declaration of Yaron Hefetz ("Hefetz Dec."), which is attached hereto as Exhibit 1.  Hefetz's declaration establishes that Plaintiff's allegations – asserted upon "information and belief" – are factually inaccurate.  Hefetz is not subject to the jurisdiction of this Court under the forum-selection clause in the Non-Disclosure Agreement.

Hefetz is not a GE employee.  Hefetz Dec. ¶ 5.  He is an employee of Gold Patents in Haifa, Israel and is a freelance consultant for GE.  *Id.* ¶¶ 3–4.  He is not a party to the Non-Disclosure Agreement between Spectrum Dynamics Limited and GE Healthcare, Inc.  *Id.* ¶ 6; First Am. Compl. Ex. 1.  He has never signed that agreement, agreed to its terms, or authorized anyone else to enter into the agreement on his behalf.  Hefetz Dec. ¶¶ 7, 10.  Nor has he assumed the duties, obligations, or liabilities under the Non-Disclosure Agreement, including, but not limited to, any duties or obligations imposed by the forum selection clause within the Non-Disclosure Agreement.  *Id.* ¶ 9.  Indeed, before the present lawsuit was filed against Hefetz on December 6, 2018, he was not even aware of the Non-Disclosure Agreement and had never seen a copy of it.  *Id.* ¶ 8.  Because he was not aware of the Non-Disclosure Agreement, he did not foresee that he could possibly be subject to the forum selection clause in the that agreement and that this lawsuit could be brought against him in the State of New York.  *Id.* ¶ 11.  Under these facts, the Court does not have personal jurisdiction over Hefetz.  *See, e.g.*, *Arcadia*, 356 F. Supp. 3d at 395 (dismissing complaint for lack of personal jurisdiction where plaintiff "made no showing that enforcement of the NDA's forum selection clause was foreseeable in light of [non-signatory defendant's] relationship with the [signatory]," and plaintiff "ha[d] not even made a showing that [defendant] was aware of the forum selection clause"); *Leviton Mfg. Co. v. Reeve*,

942 F. Supp. 2d 244, 258–59 (E.D.N.Y. 2013) (dismissing claims against outside counsel providing due diligence and opinion because it was "simply too attenuated" under the particular circumstances of the case to bind the attorney defendants to the forum selection clause).

Despite Plaintiff's attempt to shoehorn Hefetz into the Non-Disclosure Agreement and its forum selection clause, Hefetz's declaration evidences that he is not bound by or subject to the terms of the agreement.  The fact that Hefetz is an independent contractor to GE is too thin a reed on which to rest the Court's exercise of personal jurisdiction.  *Cf., e.g.*, *Flores v. A.C., Inc.*, No. EP-02-CA-0200-DB, 2003 WL 1566507, at *9–10 (W.D. Tex. Mar. 5, 2003) (dismissing complaint for lack of personal jurisdiction as individual defendant was an independent contractor and plaintiffs failed to establish the existence of an agency relationship).  Enforcement of the forum selection clause against Hefetz was not foreseeable by virtue of the relationship between Hefetz and GE.  Indeed, Plaintiff's assertion that personal jurisdiction over Hefetz is proper runs afoul of due process.  Accordingly, the First Amended Complaint should be dismissed as to Hefetz for lack of personal jurisdiction.

## II.   COUNTS I-XIII OF THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.  Legal Standard

The pleading standard, as set forth in Fed. R. Civ. P. 8(a)(2), requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and modifications omitted).  When considering a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim, the Court must follow a two-pronged approach.

First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id.*  The pleading standard set forth in Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.*

Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*  In making this determination, the Court is limited to the pleadings and may not consider extrinsic evidence. *See* Fed. R. Civ. P. 12(d); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Plaintiff's failure to meet even this basic pleading standard dooms nearly every one of its claims, making them ripe for disposition under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Here, Plaintiff's First Amended Complaint incurably fails to set forth a valid claim for relief in Counts I to XIII.  Thus, the Court should dismiss each of these claims with prejudice.

> **B.  Because Plaintiff's State Law Claims (Counts I-II, IV-XII) Derive from Its Assertion that Its Employees Are Inventors of the Alleged Misappropriated GE Patents, These Claims Are Preempted by Federal Patent Law and Should Be Dismissed.**

Plaintiff's claims hinge on it showing that it owns or possesses rights in certain trade secrets.  In an attempt to prove ownership, Plaintiff alleges that its employees invented and assigned to Plaintiff the trade secrets allegedly disclosed and claimed in patents held by GE.

Because inventorship of material claimed in patents is governed by federal law, Plaintiff's state law claims are preempted and should be dismissed.

"If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998). As the Federal Circuit has also explained, "the field of federal patent law preempts any state law that purports to define rights based on inventorship." *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010) (directing the district court to dismiss plaintiffs' state inventorship and slander of title claims as preempted by federal patent law). That is, "[t]he federal Patent Act leaves no room for states to supplement the national standard for inventorship." *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) (*Cyanamid IV*) (reversing the lower court's finding because it applied state law as opposed to federal patent law in determining inventorship). Consequently, state law claims are preempted where they hinge on the plaintiff showing that she, rather than or in addition to the named inventors, invented a device or method covered by a patent. *See, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 159–60 (E.D.N.Y. 2016) (dismissing plaintiff's state law claim for conversion as preempted by federal patent law because it was premised on the contention that plaintiff's employees should have been named as inventors on the patents at issue and the damages sought were "patent-like"); *James v. j2 Cloud Servs. Inc.*, No. 2:16-cv-05769-CAS(PJWx), 2018 WL 6092461, at *4–6 (C.D. Cal. Nov. 19, 2018) (dismissing plaintiff's state law claims for unjust enrichment, conversion, and unfair competition as preempted by federal patent law because the claims were premised on the contention that plaintiff should have been named as an inventor on the patent at issue).

Like other state law claims, claims for breach of contract and misappropriation of trade secrets are preempted where a plaintiff relies upon a finding of inventorship to show that it owns certain intellectual property.  In *Intellisoft, Ltd. v. Acer Am. Corp.*, Judge Hamilton for the Northern District of California found federal patent law principles applied to plaintiff's breach of contract and misappropriation of trade secret claims.  No. 17-cv-06272-PJH, 2018 WL 6421872 (N.D. Cal. Dec. 6, 2018).  In her order granting summary judgment in favor of defendants, and disposing of all claims in plaintiff's complaint, she provided the following explanation as to the relationship between ownership of a trade secret and inventorship of a patent:

> A plaintiff cannot recover for an alleged misappropriation of something—here a trade secret—that the plaintiff never owned.  In theory, the ownership requirement could be proven in any number of ways.  A plaintiff could seek to show that she purchased the trade secret from the undisputed inventor and that is why the plaintiff owns it.  Or a plaintiff could seek to prove she inherited the trade secret, or that it was gifted to her rather than to someone else.  If plaintiff had chosen any of those theories of ownership, then the action would belong in state court.  That, however, is not the case here.  Plaintiff's only theory here is that it <u>owns</u> the purportedly misappropriated trade secret because [its employee] <u>invented</u> it.  That theory of ownership . . . requires the application of federal inventorship law.

> Of course, plaintiff's breach of contract claim based on the 1990 NDA fails for similar reasons.  That claim requires plaintiff to prove that [defendant] did something that the contract prohibited it from doing—here, disclosing a trade secret or confidential information that [plaintiff] actually owned.  And, like with its trade secret claim, plaintiff seeks to satisfy that ownership element by showing that [its employee], and not the named inventors, conceived of the invention claimed by the [patent at issue].

*Id*. at *7 (emphasis in original) (internal citations omitted) (finding federal patent law preempted state law from dictating the standards of inventorship on summary judgment).[5]

---

[5] The *Intellisoft* court ultimately dismissed plaintiff's state law claims on grounds other than preemption.  Indeed, the court applied federal patent law, granted summary judgment in favor of defendants, and disposed of plaintiff's claims.  The court found that plaintiff failed to show with clear and convincing evidence that its employee invented the patented technology and, thus,

Here, Plaintiff's claims for breach of contract, misappropriation of trade secret, misappropriation of ideas, unfair competition, breach of implied covenant of good faith and fair dealing, unjust enrichment, fraud, aiding and abetting fraud, negligence, conversion, and civil conspiracy to commit conversion should all be dismissed because each cause of action necessarily depends on a determination of the inventorship as to the Alleged Misappropriated GE Patents. That is, each claim hinges on Plaintiff showing that it owns or possesses rights in the Alleged Spectrum Trade Secrets that Defendants then misappropriated, misused, or impermissibly exploited by disclosing and claiming the Alleged Spectrum Trade Secrets in the Alleged Misappropriated GE Patents. *See* First Am. Compl. ¶¶ 495, 502 (breach of contract); *id.* ¶¶ 511, 515 (misappropriation of trade secrets); *id.* ¶¶ 539, 543 (misappropriation of ideas); *id.* ¶¶ 551, 554 (unfair competition); *id.* ¶ 562 (breach of implied covenant of good faith and fair dealing); *id.* ¶¶ 570, 573–574 (unjust enrichment); *id.* ¶ 592 (fraud); *id.* ¶ 604 (aiding and abetting fraud); *id.* ¶ 614 (negligence); *id.* ¶¶ 621, 626 (conversion); *id.* ¶¶ 633–634 (civil conspiracy to commit conversion). Plaintiff attempts to show ownership by alleging that its employees invented and assigned to Plaintiff each of the Alleged Spectrum Trade Secrets disclosed and claimed in the Alleged Misappropriated GE Patents. *See, e.g.*, *id.* ¶¶ 23, 199, 222, 239, 665. As "the only possible theory upon which relief could be granted to [Plaintiff] would be one in which determining the true inventor(s) of [patents] is essential," the state law claims are preempted by federal patent law. *See HIF Bio*, 600 F.3d at 1353.

In fact, throughout the First Amended Complaint, Plaintiff casts itself and its employees

---

plaintiff failed to show it had ownership rights over such technology. The pleadings and filings, however, reveal that defendants did not raise a preemption defense or seek to dismiss the claims for that reason. The *Intellisoft* court's reasoning is nonetheless applicable to the present Action and suggests that, had the defendants raised a preemption defense, the court would have dismissed the claims as the district courts did in *Speedfit*, 226 F. Supp. 3d 149, and *James*, 2018 2018 WL 6092461.

as the "true inventors" of the Alleged Misappropriated GE Patents.  *See, e.g.*, First Am. Compl.

¶ 454 ("Defendant Hefetz would have known . . . that the true inventors of the technology that he

was claiming were Spectrum employees"); *id.* ¶ 463 ("Defendants Bouhnik, Steinfeld, Escho,

and Hefetz knew that the true inventors of the inventions that they were claiming were Spectrum

employees"); *id.* ¶ 667 ("Yoel Zilberstien and Nathaniel Roth are true inventors of an innovative

element that is essential to, and recited in, at least one of the claims of the" Alleged

Misappropriated GE Patents.).  Plaintiff further alleges, in describing the "Damages to

Spectrum," that:

> By misappropriating, impermissibly disclosing and misusing, and then patenting,
> Spectrum's inventions, GE is in a position to undermine Spectrum's entire
> marketing and sales effort. . . . If Spectrum does not have exclusive
> control/ownership of its inventions, Spectrum will have difficulty competing and
> risks being forced out of the market.

*Id.* ¶¶ 484–485 (emphases added).  That is, Plaintiff alleges that GE has patented Plaintiff's

inventions.  Plaintiff even pleads that the Alleged Spectrum Trade Secrets are coextensive with

the Alleged Misappropriated GE Patents.  *See id.* ¶¶ 196–446.  Indeed, Plaintiff sets forth how

each Alleged Spectrum Trade Secret was allegedly invented by Plaintiff's employees and then

"misappropriated, impermissibly disclosed and/or misused" in the Alleged Misappropriated GE

Patents.  *See id.*  At their core, all of Plaintiff's state law claims related to the alleged

misappropriation of trade secrets are inventorship claims.  Those tort claims are therefore

preempted.  *See Intellisoft*, 2018 WL 6421872, at *5–8 (preemption by federal patent law where

plaintiff failed to plead differences between its trade secret and the claimed invention).

Further evidence that the entire Action is premised on a determination of inventorship

can be found where Plaintiff, in its prayer for relief, requests that the Court "plac[e] the [Alleged

Misappropriated GE Patents] in a constructive trust for the benefit of Spectrum" and "direct[] the

Director of the United States Patent and Trademark Office . . . to correct inventorship of the

[Alleged Misappropriated GE Patents], by adding Yoel Zilberstien and Nathaniel Roth as the joint inventors and adding Spectrum as an assignee thereof."  First Am. Compl., Prayer for Relief, ¶¶ l, m.  Such requested relief applies to each and every claim sought in the First Amended Complaint.  Thus, Plaintiff's state law claims, as pled, are fundamentally based on the assertion that Plaintiff and its employees should have been named on and received benefits from the Alleged Misappropriated GE Patents.  *See, e.g.*, *Speedfit LLC*, 226 F. Supp. 3d at 159–60 (dismissing state law claim as preempted where the "patent-like" damages sought were for the "loss of value of the Patents-in-Suit and the revenues derived from licenses to that property").

All of Plaintiff's state law claims rely on the theory that Plaintiff owns the alleged trade secrets because Plaintiff's employees invented them.  Because that theory requires application of federal patent law, these state law claims are preempted by federal law.  Therefore, Plaintiff's eleven state law claims (Counts I–II, IV–XII) are all preempted by federal patent law and should be dismissed with prejudice.

### C. Because Plaintiff's Claim for Breach of Contract (Count I) Fails as a Matter of Law with Regard to Trade Secrets E, G, I, J, and N, Count I Should Be Dismissed as to These Trade Secrets.

Plaintiff's claim for breach of contract should be dismissed as to Trade Secrets E, G, I, J, and N because, under the unambiguous terms of the Non-Disclosure Agreement, Defendants had no obligation to maintain the confidentiality of trade secrets that Plaintiff made public.  Under New York law, in order to recover from a defendant for breach of contract, a plaintiff must allege: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach."  *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Issues of contract interpretation are generally matters of law and are therefore suitable for

disposition on a motion to dismiss.  *W.R. Grace & Co.-Conn. v. Hampshire Chem. Corp.*, No. 96 Civ. 8199 (AGS), 1998 WL 2814, at *2 (S.D.N.Y. Jan 6, 1998) (citing *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991)).  If the contract "shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate."  *Furniture Consultants, Inc. v. Datatel Minicomputer Co.*, No. 85 Civ. 8518 (RLC), 1986 WL 7792, at *2 (S.D.N.Y. July 10, 1986) ("[C]laims may be resolved in a motion to dismiss, if the claims under which the plaintiff seeks relief are barred . . . by the unambiguous terms of a contract attached to the pleadings, because the interpretation of an unambiguous contract is a matter of law for the court.").  "It is axiomatic under New York law . . . that '[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.'"  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)).  "The best evidence of what parties to a written agreement intend is what they say in their writing."  *Greenfield v . Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).  The canons of contract construction "require that all provisions of a contract be read together as a harmonious whole, if possible."  *Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994).

In a dispute over the meaning of a contract, "the threshold question is whether the contract is ambiguous."  *Lockheed Martin*, 639 F.3d at 69.  "Ambiguity is determined by looking within the four corners of the document, not to outside sources."  *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009).  Whether a contract is ambiguous is a question of law for the Court.  *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).  It is well settled that a contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion."  *Lockheed Martin*, 639 F.3d at 69.  "A written agreement that is complete, clear and unambiguous on its

face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust*, 595 F.3d 467.  To determine whether a contract is ambiguous, a court must accord the language of the contract its plain meaning: "In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

Here, the Non-Disclosure Agreement unambiguously supplies an exception to the confidentiality provision in its first paragraph, such that Plaintiff cannot sue Defendants for breach of contract based on Trade Secrets E, G, I, J, and N.  Therefore, Count I should be dismissed with regard to these trade secrets.  *See Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 575–76 (E.D. Va. 2004) (granting motion to dismiss with regard to material that plaintiff publicly disclosed through patents, but not with regard to other alleged trade secrets); *Profil Institut Fur Stoffwechselforschung GmbH v. Prosciento, Inc.*, No. 16cv1549-LAB (BLM), 2017 WL 1198992, at *6-7 (S.D. Cal. Mar. 31, 2017) (granting motion to dismiss only with regard to those trade secrets that were not adequately identified).

In the first paragraph of the Non-Disclosure Agreement—entitled "Confidentiality"—the parties agree to keep certain information confidential.  First Am. Compl. Ex. 1, ¶ 1.  The second paragraph—entitled "Exceptions"—then creates the following exception: "The obligation of [GE] to maintain the confidentiality of [the Spectrum] Information shall not apply to any of the [Spectrum] Information that [GE] can reasonably demonstrate . . . is made public by [Spectrum], or is established to be part of the public domain."  *Id.* Ex. 1, ¶ 2.1.

In its First Amended Complaint, Plaintiff alleges that the exception in paragraph 2.1 of the Non-Disclosure Agreement only applies to the duty of non-disclosure—and not the duty of

23

non-use—in paragraph 1 of the Non-Disclosure Agreement.  First Am. Compl. ¶ 55.  This allegation is an unsupported legal conclusion and, as such, need not be accepted as true for purposes of deciding Defendants' Motion to Dismiss.  *Twombly*, 550 U.S. at 555 (Courts need not "accept as true a legal conclusion couched as a factual allegation.").

The exception in paragraph 2.1 unambiguously applies to all duties in paragraph 1, whether those duties are categorized as non-disclosure or non-use.  Paragraph 1 is entitled "confidentiality," and the exclusion in paragraph 2.1 expressly states that "[t]he obligation . . . to maintain the ***confidentiality*** of [the Spectrum] Information" is eliminated when certain information has become public.  First Am. Compl. Ex. 1, ¶ 2.1.  If the parties had intended to limit this exclusion to only certain duties in paragraph 1, they could have expressly stated this by referencing paragraph 1.1 and/or 1.2, but they did not do so.  They could have used the terms "non-disclosure" and "non-use"—rather than "confidentiality"—but they did not do so.  As a matter of law, the exclusion in paragraph 2.1 applies to all duties in paragraph 1 of the Non-Disclosure Agreement.

Further, Trade Secrets E, G, I, J, and N fit within the exclusion in paragraph 2.1 of the Non-Disclosure Agreement such that Defendants cannot have breached the agreement by failing to maintain the confidentiality of these trade secrets.  Plaintiff admits that it, or its predecessors, made Trade Secrets E, G, I, J, and N public through publication of the '721 PCT on November 14, 2013.  First Am. Compl. ¶¶ 23, 274, 313, 341, 356, 404.  The '721 PCT was published before Defendants allegedly misappropriated Trade Secrets E, G, I, J, and N by filing the applications for certain of the Alleged Misappropriated GE Patents.  *See id.* ¶¶ 274–275, 277 (Trade Secret E), 313–314 (Trade Secret G), 341–342 (Trade Secret I), 356–357 (Trade Secret J), 404–405 (Trade Secret N).  Once Plaintiff made these alleged trade secrets public, the non-disclosure and non-use provisions no longer applied to those alleged trade secrets.

Plaintiff attempts to get around these facts by arguing, "upon information and belief," that Defendants began using the trade secrets to prepare their patent applications before the '721 PCT was published on November 14, 2013.  *See, e.g.*, *id.* ¶ 279.  Again, the Court need not credit such conclusory allegations, which have no basis in fact.  This is particularly true where such allegations defy common sense, because, for instance, GE did not file some of the patent applications at issue until ███████████—ten months after the '721 PCT was published.  *See id.* ¶ 405; *see also Iqbal*, 556 U.S. at 679 (judges must draw upon their common sense in deciding Rule 12(b)(6) motions to dismiss).  Because Plaintiff or its predecessors publicly disclosed Trade Secrets E, G, I, J, and N before Defendants allegedly used or disclosed these "trade secrets," the Court should dismiss Count I as to Trade Secrets E, G, I, J, and N.[6]

### D.  Plaintiff's Claim for Misappropriation of Trade Secrets (Count II) Should Be Dismissed Because the Alleged Spectrum Trade Secrets Do Not Constitute Trade Secrets Under New York Law, and Because the Claim Is Time-Barred and Duplicative of Plaintiff's Breach of Contract Claim.

Plaintiff's claim for misappropriation of trade secrets should be dismissed because Plaintiff's alleged "trade secrets" are simply new product ideas that are not trade secrets under

---

[6] For the reasons set forth in Sections II.D – II.N below, each of Counts II – XIII should be dismissed in their entirety.  To the extent any of Counts II – XII survive dismissal, those Counts should, at a minimum, be dismissed as to Trade Secrets E, G, I, J, and N.  Having agreed to contractual terms that allow Defendants to publicly disclose and use Trade Secrets E, G, I, J, and N, Plaintiff cannot assert tort claims against Defendants for doing exactly what the parties' contract allows.  *See Valjean Mfg. v. Michael Werdiger, Inc.*, No. 03 Civ. 6185 (HB), 2004 WL 1948752, at *2-5 (S.D.N.Y. Sept. 2, 2004) (dismissing artisan's lien claim and breach of fiduciary duty claim that were inconsistent with the terms of the parties' contract); *Riverside Mktg., LLC v. SignatureCard, Inc.*, 425 F. Supp. 2d 523, 534 (S.D.N.Y. 2006) (granting summary judgment against plaintiff on claim for unjust enrichment that was inconsistent with the agreements that "govern the terms of compensation between" the parties); *Century-Maxim Constr. Corp. v. One Bryant Park*, *LLC*, No. 24683/08, 2009 NY Slip Op 50858(U), at *25 (N.Y. Sup. Ct. Apr. 7, 2009) (dismissing claim for breach of the implied covenant of good faith and fair dealing, "because Plaintiff's claims are directly prohibited by the express language of the Contract").

New York law.  In addition, this claim is both time-barred and duplicative of Plaintiff's breach of

contract claim.  To prevail on a claim for misappropriation of trade secrets under New York law,

a plaintiff must show: "(1) that it possessed a trade secret, and (2) that the defendants used that

trade secret in breach of an agreement, confidential relationship or duty, or as a result of

discovery by improper means."  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 510

(S.D.N.Y. 2017)

Under New York law, the "'most important consideration' in determining whether

information is a trade secret is 'whether the information was secret.'"  *Id.* at 514 (quoting

*Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986)); *accord Speedry Chem. Prods.,*

*Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962) ("The subject matter of a trade secret

must be secret.").  "'A trade secret is a process or device for continuous use in the operation of

the business.  Generally it relates to the production of goods, as, for example, a machine or

formula for the production of an article.'"  *Lehman*, 783 F.2d at 298 (quoting RESTATEMENT OF

TORTS § 757 cmt. b (1939)).  A "new product idea," especially one that is "readily apparent from

a casual inspection" of that product, is not a trade secret.  *Hudson Hotels Corp. v. Choice Hotels*

*Int'l, Inc.*, 995 F.2d 1173, 1177 (2d Cir. 1993); *Speciner v. Reynolds Metals Co.*, 177 F. Supp.

291, 296–97 (S.D.N.Y. 1959), *aff'd*, 279 F.2d 337, 337–38 (2d Cir. 1960); *see also Lehman*, 783

F.2d at 298 ("[T]he information at issue here was not used to run Lehman's business but was its

*product*: like the car that rolls off the production line, this information was what Lehman had to

sell.").

Here, the Alleged Spectrum Trade Secrets are all new product ideas.  *See* First Am.

Compl. ¶ 99 (alleging that Plaintiff's product, the Veriton system, incorporates some of the

Alleged Spectrum Trade Secrets); *id.* ¶¶ 218, 235, 250 (alleging that Alleged Spectrum Trade

Secrets could be incorporated into the Accused GE Device).  And based on Spectrum's

allegations, the Alleged Spectrum Trade Secrets are "readily apparent from casual inspection" of the product.  Indeed, Spectrum bases its claim that the Accused GE Device embodies its trade secrets on such casual inspection of the GE device: "The [Accused GE] Device was housed in its own room at the hospital, but the door was open such that it could be casually observed."  *Id.* ¶ 129; *see also id.* at ¶ 131 ("Upon seeing photographs of the [Accused] GE . . . Device, Spectrum personnel felt as if they were 'looking into a mirror.'").  Therefore, as a matter of law, the Alleged Spectrum Trade Secrets are not trade secrets under New York law, and this claim must be dismissed.  *See Bulldog N.Y. LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 176–77 (D. Conn. 2014) (applying New York law and granting motion to dismiss claim for misappropriation of trade secrets, because the alleged trade secrets were "marketing concept[s] or new product idea[s]" and were "intended to eventually be exposed to the public, necessarily resulting in secrecy being lost").

Plaintiff's claim for misappropriation of trade secrets is also barred by the three year statute of limitations.  "In New York, misappropriation claims must be brought within three years of when the defendant discloses the trade secret or when he first makes use of plaintiff's ideas."  *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 510 (S.D.N.Y. 2013) (*Ferring I*) (internal quotation marks omitted); N.Y. C.P.L.R. § 214(4).  New York law does not apply a discovery rule to such claims and, thus, the statute of limitations is not tolled until such time as a plaintiff discovers his injury or his claim.  *Paysys Int'l, Inc. v. Atos Se*, No. 14-cv-10105 (KBF), 2016 WL 7116132, at *9 (S.D.N.Y. Dec. 5, 2016) (contrasting New York and Florida law).

The earliest date that Plaintiff alleges Defendants disclosed the Alleged Spectrum Trade Secrets is ███████████.  Specifically, Plaintiff pleads that the first of the trade secrets was disclosed on ████████████████████████████████.  First Am. Compl. ¶ 205, Ex. 2; *see also id.* ¶ 179 (GE "misus[ed] the Spectrum Information, including Spectrum

Trade Secrets and inventions disclosed therein, by including and later <u>disclosing</u> such Spectrum Information in patent <u>applications</u>." (emphases added)); *id.* ¶ 592 ("Defendants further began to prepare and file patent <u>applications disclosing</u>/claiming the very Spectrum Information provided subject to the non-disclosure and non-use provisions of the [Non-Disclosure] Agreement." (emphasis added)).  As such, the statute of limitations for the misappropriation claim began to run on ███████████, when Defendants allegedly first disclosed Plaintiff's trade secrets. *See Ferring I*, 932 F. Supp. 2d at 510 (dismissing misappropriation of trade secrets claim as time-barred where the three year limitations period began when defendant filed the first of its patent applications disclosing the alleged trade secrets); *see also Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 628–29 (S.D.N.Y. 2014) (*Ferring II*) (same).[7]

In addition, the statute of limitations began to run on ███████████ as to <u>all</u> Alleged Spectrum Trade Secrets.  Because the Alleged Spectrum Trade Secrets are all related, the disclosure of some trade secrets runs the statute of limitations for all Alleged Spectrum Trade Secrets.  *See Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 657 (N.D. Cal. 1993) (finding that "when the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade secret claims against those same defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all the trade secrets with defendants during the same period and in connection with the same relationships and when the trade secrets concern related matter").

---

[7] Indeed, fourteen of the 17 Alleged Misappropriated GE Patents were filed more than 3 years before Plaintiff filed its initial Complaint.

Indeed, Plaintiff pleads that the Alleged Spectrum Trade Secrets were all jointly invented by Yoel Zilberstien and Nathaniel Roth (First Am. Compl. ¶ 23), are all owned by Plaintiff (*id.* ¶¶ 495, 511, 524, 539, 621), were all disclosed to Defendants during the same time period for the same purpose and pursuant to the same Non-Disclosure Agreement (*id.* ¶¶ 51–52, 180, 194, 196, 514, 527, 666 & Ex. 1), and were allegedly misappropriated by GE to develop one product—the Accused GE Device (*id.* ¶¶ 517, 530).  Tellingly, Plaintiff also defines the trade secrets at issue in the First Amended Complaint as all being part of the "Spectrum Information" – a defined term from the Non-Disclosure Agreement.  *Id.* ¶ 23 & Ex. 1.  Thus, as pled, the three year limitations period for Plaintiff's misappropriation claim began to run on ███████████ as to all Alleged Spectrum Trade Secrets.  *See, e.g.*, *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 526 (N.D. Cal. 2000) (running the statute of limitations for all trade secrets at issue together because the disclosure to defendant "arose during one time period and through one relationship," and "they were developed for use in the same sophisticated and highly specialized product"); *Gognat v. Ellsworth*, 259 P.3d 497, 502–04 (Colo. 2011) (running the statute of limitations for all trade secrets at issue together because "the disclosure of a body of proprietary information in exchange for an agreement to embark on a joint commercial venture to profit from the development or application of that information offers perhaps the strongest or most natural reason for treating all of the subject information as the same trade secret for purposes of the statutory limitations period").  Because the Action commenced on December 6, 2018, more than three years after the claim accrued on ███████████, Plaintiff's claim for misappropriation of trade secrets is time-barred and should be dismissed.[8]

_____

[8] To the extent Plaintiff's claim accrued upon the publication of the patent applications, and not the filing of the patent applications, the earliest date of accrual of the Alleged Spectrum Trade

Plaintiff's misappropriation of trade secrets claim should also be dismissed for a third, independent reason: it is duplicative of Plaintiff's breach of contract claim.  Under New York law, it is a well-established principle that a misappropriation of trade secrets claim that is based upon the same facts underlying a breach of contract claim will be dismissed as a mere duplication.  *See, e.g.*, *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (dismissing misappropriation of trade secrets claim relying on a non-disclosure agreement as duplicative of breach of contract claim); *Nostrum Pharms., LLC v. Dixit*, No. 13-cv-8718 (CM), 2016 WL 5806781, at *15–17 (S.D.N.Y. Sept. 23, 2016) (dismissing misappropriation of trade secrets claim relying on the covenant not to disclose in an employment agreement as duplicative of breach of contract claim); *A Star Grp., Inc. v. Manitoba Hydro, KPMG LLP*, No. 13 Civ. 4501 (PAC), 2014 WL 2933155, at *7–8 (S.D.N.Y. June 30, 2014) (dismissing misappropriation of trade secrets claim relying on confidentiality provisions in service and license agreements as duplicative of contract claim), *aff'd in relevant part*, 621 F. App'x 681 (2d Cir. 2015).  Indeed, as the New York Court of Appeals has made clear, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).  This statement of law – that a tort claim cannot sound in contract – applies to each and every New York state tort claim that Plaintiff asserts (i.e. Counts II, IV–XII).

Plaintiff's misappropriation of trade secrets claim is entirely based on alleged conduct that is proscribed by a contract – i.e. the disclosure and use of certain proprietary and

---

Secrets would be █████████████████████████████████████████.  First Am. Compl. Ex. 2.  Thus, the three year limitations period for Plaintiff's misappropriation claim would have begun to run on ███████████ as to all Alleged Spectrum Trade Secrets.  Because this date is more than three years before the initial Complaint was filed, Plaintiff's claim for misappropriation of trade secrets is still time-barred.

confidential information protected by the Non-Disclosure Agreement. *Compare* First Am. Compl. ¶¶ 523–534, *with id.* Ex. 1. Indeed, Plaintiff pleads that the alleged misappropriation was a breach of the Non-Disclosure Agreement – that its misappropriation and breach of contract claims are one and the same. Specifically, Plaintiff pleads that Defendants "misappropriated . . . the Spectrum Trade Secrets in violation of the [Non-Disclosure] Agreement by using and exploiting such trade secrets to develop the [Accused] GE . . . Device to directly compete with Spectrum's VERITON®." *Id.* ¶ 517; *see also id.* ¶ 515. Thus, the misappropriation of trade secrets claim should be dismissed as duplicative of Plaintiff's breach of contract claim. *See, e.g.*, *Bancorp*, 2016 WL 4916969, at *9 (dismissing misappropriation of trade secrets claim as duplicative of breach of contract claim where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA – namely disclosure and use of information that was protected by the 2010 NDA").

Accordingly, Plaintiff's misappropriation of trade secrets claim should be dismissed with prejudice because Plaintiff has failed to plead the existence of a trade secret, and its claim is both time-barred and duplicative of its breach of contract claim.

### E.  Because Plaintiff's Claim for Misappropriation of Trade Secrets Under the DTSA (Count III) is Time-Barred, Count III Should be Dismissed.

Plaintiff's claim for misappropriation of trade secrets under the DTSA should be dismissed because it is time-barred. The statute of limitations for a claim under the DTSA is three years from when misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). In making a determination as to whether the DTSA's statute of limitations has run, "a continuing misappropriation constitutes a single claim of misappropriation." *Id.*

Here, the statute of limitations on Plaintiff's DTSA claim began to run more than three years before Plaintiff filed its initial Complaint on December 6, 2018.  Before December 6, 2015, the USPTO published applications for four of the Alleged Misappropriated GE Patents—i.e. ██ ████████████████████████████████████████████—supposedly disclosing seven of the seventeen Alleged Spectrum Trade Secrets (First Am. Compl. ¶¶ 205–209, 228–229, 291–294, 301–302, 314–315, 342–343, 357–358, 427–429), and the USPTO issued the ████████, supposedly disclosing four of the seventeen Alleged Spectrum Trade Secrets (*id.* ¶¶ 208–209, 291–292, 314–315, 357–358 & Ex. 3).

Patent applications and issued patents are public records that provide notice to the whole world and, as such, Plaintiff "should have known" of these documents, as well as any alleged acts of misappropriation therein, when the documents published.  *See Arcadia*, 356 F. Supp. 3d at 398-99 (granting motion to dismiss claim for breach of non-disclosure agreement, where plaintiff should have been aware of breaches upon the publication of patent applications allegedly disclosing plaintiff's confidential material); *Deep Water Slender Wells, Ltd. v. Shell Oil Co.*, No. H-12-1166, 2013 WL 12174049, at *2 (S.D. Tex. Nov. 22, 2013) (finding that plaintiff should have known of issued patent, which was a public record, particularly when he was actively designing devices in the same field as the issued patent); *see also Cantrell v. Bank of Am. N.A.*, No. 3:16-CV-03122, 2017 WL 1246356, at *3-4 (W.D. Ark. Apr. 3, 2017) (granting motion to dismiss fraud claim based on statute of limitations because, *inter alia*, plaintiff should have known of allegedly fraudulent scheme in 2011, when it was disclosed through a publicly-filed MDL).  This is especially true, where—as alleged in the First Amended Complaint—Plaintiff has been aware of the GE Entities and their research and development since the early 2000s (First Am. Compl. ¶ 642), Plaintiff has entered into multiple non-disclosure agreements with GE Healthcare (*id.* Ex. 1, ¶ 8), Plaintiff operates in the same technology space as the GE

Entities (*id.* ¶¶ 146–153), Plaintiff routinely files patent applications in that technology space (*id.* ¶¶ 71–72), Plaintiff attends trade shows in that technology space (*id.* ¶¶ 84–85), and Plaintiff is aware of its competitors' activities (*id.* ¶¶ 133, 481). Plaintiff even specifies that it has "a diverse and extensive intellectual property portfolio that includes over 70 patents, patent applications and provisional applications, as well as technical data, know-how and trade secrets." *Id.* ¶ 72.

Further, upon the publication of these first applications, the statute of limitations started running with respect to <u>all</u> alleged misappropriations. *See CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-CV-33-LRR, 2017 WL 6210920, at *9 (N.D. Iowa Dec. 8, 2017) (finding that the statute of limitations runs together for all related trade secrets under the DTSA as "a plaintiff placed on notice that another may be utilizing its trade secrets may not sleep on its rights and should understand that there is a risk that <u>another may commit additional acts of misappropriation, whether with the same trade secret or related trade secrets</u>." (emphasis added); *supra* Section II.D.

Because the three year limitations period for Plaintiff's DSTA claim began to run more than three years before Plaintiff filed its initial Complaint, Plaintiff's DTSA claim is time-barred and should be dismissed with prejudice.

**F. Because Plaintiff's Claim for Misappropriation of Ideas (Count IV) is Time-Barred and Duplicative of its Breach of Contract Claim, Count IV Should be Dismissed.**

Plaintiff's claim for misappropriation of ideas should be dismissed because it is time-barred and duplicative of Plaintiff's breach of contract claim.[9] Under New York law, to prevail

---

[9] To the extent Plaintiff intended to plead a misappropriation of confidential information claim, Count IV should still be dismissed as both time-barred and duplicative of Plaintiff's breach of

on a misappropriation of ideas claim, a party must prove: "'(1) the existence of a legal relationship between the parties in the form of a fiduciary relationship, an express or implied-in-fact contract, or quasi-contract; and (2) the idea must be novel and concrete.'" *Turner v. Temptu Inc.*, No. 11 Civ. 4144 (JMF), 2013 WL 4083234, at *9 (S.D.N.Y. Aug. 13, 2013) (citation omitted), *aff'd*, 586 F. App'x 718 (2d Cir. 2014). "As with . . . trade secret claim[s], . . . idea misappropriation claim[s] cannot extend to material in the public domain." *Schroeder v. Pinterest, Inc.*, 17 N.Y.S.3d 678, 692 (N.Y. App. Div. 2015).

Plaintiff's misappropriation of ideas claim is barred by the three year statute of limitations. Under New York law, "misappropriation claims must be brought within three years of when the defendant discloses the trade secret or when he first makes use of plaintiff's ideas." *Ferring I*, 932 F. Supp. 2d at 510 (internal quotation marks omitted); N.Y. C.P.L.R. § 214(4) (three year limitations period for "an action to recover damages for an injury to property"). Unlike the statute of limitations under the DTSA, the statute of limitations for misappropriation claims under New York law begins to run upon <u>disclosure or use</u>, not discovery. *Paysys*, 2016 WL 7116132, at *9.

Here, Plaintiff pleads that the "Spectrum Information" was first disclosed on ███████████ ████████████████████████████. First Am. Compl. ¶ 205. Because the Alleged Spectrum Trade Secrets are related, overlapping trade secrets that, according to Plaintiff's allegations, were all shared with GE pursuant to the Non-Disclosure Agreement, were all shared during the due diligence related to that agreement, and were all jointly invented by Yoel Zilberstien and Nathaniel Roth (First Am. Compl. ¶¶ 23, 180, 194, 196, 514, 527, 666), the

---

contract claim. Indeed, misappropriation of ideas and misappropriation of confidentiality claims both have a three year statute of limitations (N.Y. C.P.L.R. § 214(4)) and are dismissed when found duplicative of a breach of contract claim. *Clark-Fitzpatrick*, 70 N.Y.2d at 389.

statute of limitations started running for all alleged trade secrets upon the first alleged act of misappropriation. *See supra* Section II.D (citing *Intermedics*, 822 F. Supp. at 657). Therefore, the statute of limitations for the misappropriation of ideas claim began to run on ███████ ████, when Defendants allegedly first disclosed Plaintiff's information. *Id.* (citing *Ferring I*, 932 F. Supp. 2d at 510; *Ferring II*, 4 F. Supp. 3d at 628–29). Because the Action commenced on December 6, 2018, more than three years after the claim accrued, Plaintiff's claim for misappropriation of ideas is time-barred and should be dismissed.[10]

Plaintiff's misappropriation of ideas claim is also duplicative of its breach of contract claim and, for this additional reason, should be dismissed. A misappropriation of ideas claim, like a misappropriation of trade secrets claim under New York law, will be dismissed as duplicative where it is based upon the same facts underlying a contract claim. *See Clark-Fitzpatrick*, 70 N.Y.2d at 389; *see, e.g.*, *Grusd v. Arccos Golf LLC*, No. 653239/2013, 2014 WL 2531511, at *7 (N.Y. Sup. Ct. June 3, 2014) (dismissing misappropriation of ideas claim as duplicative of breach of contract claim where "the gravamen of th[e] lawsuit is [defendant's] alleged theft of [plaintiff's] interest in their joint venture/de facto partnership"); *A Star Grp.*, 2014 WL 2933155, at *7 (dismissing misappropriation of confidential information claim relying on confidentiality provisions in service and license agreements as duplicative of contract claim).

---

[10] To the extent Plaintiff's claim accrued upon the publication of the patent applications, and not the filing of the patent applications, the earliest date of accrual of the Alleged Spectrum Trade Secrets would be ███████████████. First Am. Compl. Ex. 2. Thus, the three year limitations period for Plaintiff's misappropriation claim would have begun to run on █████████ as to all Alleged Spectrum Trade Secrets. Because this date is more than three years before Plaintiff filed its initial Complaint, Plaintiff's claim for misappropriation of ideas is still time-barred.

Plaintiff's misappropriation of ideas claim is based entirely on the same alleged conduct that forms the basis of Plaintiff's breach of contact claim. *See* First Am. Compl. ¶¶ 537–538. Specifically, in pleading its misappropriation of ideas claim, Plaintiff pleads: "The [Non-Disclosure] Agreement created a legal relationship between Spectrum and Defendants. The GE Defendants, Obligated Individuals, and Hefetz violated the non-disclosure and non-use provisions of the [Non-Disclosure] Agreement by disclosing and using the Spectrum Information, including Spectrum Trade Secrets and inventions embodied therein, without authorization." *Id.* In other words, Plaintiff's breach of contract claim and its misappropriation of ideas claim are one and the same. For this reason, Plaintiff's misappropriation of ideas claim is duplicative of its breach of contract claim and should be dismissed.

Thus, Plaintiff's misappropriation of ideas claim should be dismissed with prejudice because it is both time-barred and duplicative of its breach of contract claim.

### G.  Because Plaintiff's Claim for Unfair Competition (Count V) is Duplicative of its Breach of Contract Claim, Count V Should be Dismissed.

Plaintiff's claim for unfair competition is duplicative of its breach of contract claim and should be dismissed. To assert a viable New York unfair competition claim, "a plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *Schroeder*, 17 N.Y.S.3d at 693. Unfair competition claims, however, are routinely dismissed where they are duplicative of a breach of contract claim. *See, e.g.*, *A Star Grp.*, 2014 WL 2933155, at *7 (dismissing unfair competition claim as duplicative of contract claim where plaintiff relied exclusively on the confidentiality provisions contained in contracts, not on a separate business relationship); *Bancorp Servs.*, 2016 WL 4916969, at *9 (same). "It is well-settled . . . that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of

the 'implied' contractual obligations asserted in the cause of action for breach of contract."
*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007)
(internal quotation marks omitted).

Plaintiff's unfair competition claim is entirely based on the alleged disclosure and use of
certain proprietary and confidential information protected by the Non-Disclosure Agreement.
*Compare* First Am. Compl. ¶¶ 550–559, *with id.* Ex. 1.  Specifically, in pleading its unfair
competition claim, Plaintiff pleads that Defendants "obtained the proprietary and/or confidential
Spectrum Information under the [Non-Disclosure] Agreement, . . . and then misused and
impermissibly exploited the Spectrum Information to develop the [Accused GE] Device, and file
the" Alleged Misappropriated GE Patents.  *Id.* ¶ 551.  In other words, Plaintiff's breach of
contract claim and its unfair competition claim are one and the same.  Plaintiff has not alleged
that Defendants have any duty to it independent of the Non-Disclosure Agreement, nor has
Plaintiff alleged circumstances extraneous to the Non-Disclosure Agreement.  Therefore,
Plaintiff's claim for unfair competition should be dismissed with prejudice as duplicative of its
breach of contract claim.  *See, e.g.*, *Orange Cnty.*, 497 F. Supp. 2d at 558 (dismissing unfair
competition claim where it simply reasserted the breach of contract claim).

### H.  Because Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI) is Duplicative of its Breach of Contract Claim, Count VI Should be Dismissed.

Plaintiff's claim for breach of implied covenant of good faith and fair dealing should be
dismissed because New York courts do not recognize it as a separate cause of action where a
breach of contract claim, based on the same facts, is also pled.  *See Aledia v. HSH Nordbank AG*,
No. 08 Civ. 4342 (BSJ), 2009 WL 855951, at *4 (S.D.N.Y. Mar. 25, 2009) (collecting cases)
("The majority of courts in this district have found that a claim for breach of the implied
covenant of good faith and fair dealing based on the same facts as a breach of contract claim

asserted in the same complaint is redundant and must be dismissed on a motion to dismiss."). Under New York law, a covenant of good faith and fair dealing is implied in all contracts. "This covenant embraces a pledge that neither party shall do anything which shall have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (internal quotation marks omitted). Because the duty of good faith is an implied contractual term, "breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted).

Here, Plaintiff alleges that a contract exists between the parties. First Am. Compl. ¶¶ 22, 70, 492–494, 498, 500–501 & Ex. 1. A duty of good faith is an implied term in that contract, and breach of that duty would merely be a breach of that contract. *See Fasolino*, 961 F.2d at 1056. Indeed, Plaintiff's breach of implied covenant of good faith and fair dealing claim is based on the same alleged facts as its breach of contract claim. *Compare* First Am. Compl. ¶¶ 570–575, *with id.* ¶¶ 492–503. Specifically, in pleading its breach of implied covenant claim, Plaintiff alleges that Defendants have "violated the Implied Covenant of Good Faith and Fair Dealing under New York law by way of non-limiting example by misappropriating, misusing and impermissibly exploiting the proprietary and/or confidential Spectrum Information to develop the [Accused GE] Device to directly compete with Spectrum's VERITON® and to solicit customers away from Spectrum." *Id.* ¶ 563. This is the same conduct that Plaintiff alleges constitutes breach of the Non-Disclosure Agreement in Count I. *See id.* ¶¶ 492–503. This alleged breach cannot provide a basis for Plaintiff's implied covenant of good faith and fair dealing claim. *See Aledia*, 2009 WL 855951, at *3–4 (dismissing good faith and fair dealing claim where it was derived from the same facts as the contract claim). Accordingly, Plaintiff's claim for breach of the

implied covenant of good faith and fair dealing should be dismissed with prejudice because it is duplicative of its breach of contract claim.

### I.   Because Plaintiff's Claim for Unjust Enrichment (Count VII) is Duplicative of its Breach of Contract Claim, Count VII Should be Dismissed.

Plaintiff's unjust enrichment claim is precluded by the existence of the Non-Disclosure Agreement.   "To prevail on a claim of unjust enrichment under New York law, a party must show . . . that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."   *Newman v. Herbst*, No. 09-cv-4313 (TLM), 2011 WL 684165, at *6 (E.D.N.Y. Feb. 15, 2011).   Such a claim, however, is used to avoid an inequitable result that would occur in the absence of an express agreement.   It is not available where a contract between the parties governs the subject matter at issue.   *See Bancorp Servs.*, 2016 WL 4916969, at *8 ("Unjust enrichment is an equitable remedy that is available in cases where there is no contract between the parties.") (internal quotation marks omitted).   Indeed, "it is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract."   *Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009); *see also Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 157–58 (2d Cir. 2012) (collecting cases) ("[Q]uasi-contractual relief is unavailable where an express contract covers the subject matter.") (internal quotation marks and alterations omitted).

Throughout the First Amended Complaint, Plaintiff alleges that there is an express contract (i.e. the Non-Disclosure Agreement) that binds all parties in the Action.   *See, e.g.*, First Am. Compl. ¶¶ 22, 29–33, 59–61, 70, 448, 492–494, 498, 500–501, Ex. 1.   Moreover, Plaintiff alleges that this express contract governs the disclosure and use of certain proprietary and confidential information by Defendants.   *Id.* Ex. 1, ¶ 1.   This is fatal to Plaintiff's unjust

enrichment claim.  Because the Non-Disclosure Agreement covers the very subject matter of Plaintiff's unjust enrichment claim (*compare id.* ¶¶ 569–580, *with id.* Ex. 1), Plaintiff's claim for unjust enrichment should be dismissed with prejudice as duplicative of its breach of contract claim.  *See, e.g.*, *Bancorp Servs.*, 2016 WL 4916969, at *7 (dismissing unjust enrichment claim where there was no dispute that there was a valid and enforceable contract between the parties on the subject at issue).

### J.  Because Plaintiff's Claim for Fraud (Count VIII) is Duplicative of its Breach of Contract Claim and Not Sufficiently Pled, Count VIII Should be Dismissed.

Plaintiff's claim for fraud is duplicative of its breach of contract claim, not sufficiently pled under the requisite heightened pleading standard, and should thus be dismissed.  The five elements of fraud under New York law are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  Such claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) and must be pled with particularity.

Mere allegations of breach of contract do not give rise to a claim for fraud.  "[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."  *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation marks omitted); *see, e.g.*, *Verus Pharms., Inc. v. AstraZeneca AB*, No. 09 Civ. 5660 (BSJ), 2010 WL 3238965, at *11 (S.D.N.Y. Aug. 16, 2010) (dismissing fraud claim as duplicative of breach of contract claim where the claim arose from "[d]efendants' wrongful conduct and <u>blatant disregard for their contractual obligations</u>") (internal quotation marks

omitted; emphasis in original), *aff'd*, 427 F. App'x 49 (2d Cir. 2011).  That is, "simply dressing

up a breach of contract claim by further alleging that the promisor had no intention, at the time of

the contract's making, to perform its obligations thereunder, is insufficient to state an

independent tort claim."  *Telecom*, 280 F.3d at 196 (collecting cases) (internal quotation marks

omitted).

   Here, Plaintiff's fraud claim is nothing more than a contract claim with the additional

allegation of an intent to breach.  As Plaintiff alleges, Defendants obtained the Spectrum

Information, including Alleged Spectrum Trade Secrets, under the Non-Disclosure Agreement,

but then used the Spectrum Information other than as allowed under the Non-Disclosure

Agreement.  First Am. Compl. ¶¶ 584, 588–592.  As Plaintiff further alleges: "Defendants . . .

fraudulently induced Spectrum into disclosing the Spectrum Information under the fraudulent

misconception that GE would abide by the non-disclosure and non-use provisions of the [Non-

Disclosure] Agreement and only use Spectrum Information for the expressly stated Purpose of

the [Non-Disclosure] Agreement."  *Id.* ¶ 593.  The fraud claim is based on Defendants' alleged

failure to comply with and meet the terms and obligations of the Non-Disclosure Agreement.

Because Plaintiff's claim for fraud is based on the contractual obligations set forth in the Non-

Disclosure Agreement, and arises out of the same set of facts as Plaintiff's breach of contract

claim, the fraud claim is redundant.  *Compare id.* ¶¶ 582–598, *with id.* ¶¶ 491–508 & Ex. 1.  The

additional allegation that Defendants never intended to perform their obligations under the Non-

Disclosure Agreement does not support an independent claim for fraud.  *See, e.g.*, *Telecom*, 280

F.3d at 196 (dismissing fraudulent inducement claim as "simply a breach of contract claim in the

tort clothing of (factually unsupported) allegations of an intent to breach").  Thus, Plaintiff's

claim for fraud should be dismissed as duplicative of its breach of contract claim.

   The Court should also dismiss this claim for the separate and independent reason that

Plaintiff's collective-style pleading as to the Defendants fails to meet the normal pleading standard, much less the heightened pleading standard under Fed. R. Civ. P. 9(b).  Under the heightened pleading standard, a complaint must "(1) specify the statements, oral, or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (2) identify the speaker or the writer; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent," as well as "provide actual fraudulent statements or conduct and a basis for its allegations of *scienter*."  *Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475 (LAK), 2009 WL 890054, at *4 (S.D.N.Y. Mar. 30, 2009) (internal quotation marks omitted; emphasis in original).

Plaintiff's allegations do not satisfy the "where" and "when" of the heightened pleading standard under Fed. R. Civ. P. 9(b), nor does Plaintiff explain why any such statements were fraudulent.  *See* First Am. Compl. ¶¶ 582–598.  And the allegations of fraud are generally made against <u>all</u> Defendants without the requisite specificity for <u>each</u> Defendant.  *See id.* ¶¶ 583, 589–594 ("Defendants"); *see, e.g.*, *Manela v. Gottlieb*, 784 F. Supp. 84, 87–88 (S.D.N.Y. 1992) (dismissing common law fraud claim because "the allegations [we]re made against multiple defendants lumped together and fail[ed] to distinguish among them").  Thus, Plaintiff's claim for fraud should be dismissed as not sufficiently pled.

Accordingly, Plaintiff's claim for fraud should be dismissed with prejudice as duplicative of its breach of contract claim and insufficiently pled under the requisite heightened pleading standard.

### K.  Because Plaintiff's Claim for Aiding and Abetting Fraud (Count IX) is Duplicative of its Breach of Contract Claim and Not Sufficiently Pled, Count IX Should be Dismissed.

As with its claim for fraud, Plaintiff's claim for aiding and abetting fraud is duplicative of its breach of contract claim, is not sufficiently pled under the requisite heightened pleading

standard, and should thus be dismissed.  "The elements of aiding and abetting fraud under New

York law are: (1) the existence of an underlying fraud; (2) [actual] knowledge of the fraud by the

aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the

underlying fraud."  *Mazzaro De Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316, 322

(S.D.N.Y. 2011) (internal quotation marks omitted; emphasis added).  This claim is also subject

to the heightened pleading standard of Fed. R. Civ. P. 9(b) and must be pled with particularity.

Claims for aiding and abetting fraud should be dismissed where they are repetitive of a

breach of contract claim.  *See Clark-Fitzpatrick*, 70 N.Y.2d at 389; *cf., e.g., Verus Pharms.*, 2010

WL 3238965, at *11 (dismissing fraud claim as duplicative of breach of contract claim where the

claim arose from "[d]efendants' wrongful conduct and blatant disregard for their contractual

obligations") (internal quotation marks omitted; emphasis in original).  Here, Plaintiff's claim for

aiding and abetting fraud is duplicative of its breach of contract claim and should be dismissed.

Similar to its fraud claim, Plaintiff's aiding and abetting claim is based on the Obligated

Individuals' and Hefetz's alleged failure to comply with the terms of the Non-Disclosure

Agreement.  Because Plaintiff's claim for aiding and abetting fraud is based on the contractual

obligations set forth in the Non-Disclosure Agreement, and arises out of the same set of facts as

Plaintiff's breach of contract claim, the aiding and abetting claim is simply repetitive.  *Compare

id.* ¶¶ 600–610, *with id.* ¶¶ 491–508 & Ex. 1.  Thus, as with the claim for fraud that underlies it,

this claim for aiding and abetting fraud should be dismissed as duplicative of Plaintiff's breach

of contract claim.  *See supra* Section II.J.

The Court should also dismiss this claim for the separate and independent reason that

Plaintiff does not sufficiently plead the requisite elements of a claim for aiding and abetting

fraud.  As an initial matter, Plaintiff fails to sufficiently plead the underlying fraud (Count VIII).

*See supra* Section II.J.  Indeed, "[f]or an aiding and abetting claim to survive a motion to

dismiss, a plaintiff must adequately plead the existence of a primary tort." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 186 (S.D.N.Y. 2009) (dismissing claim for aiding and abetting fraud as well as other aiding and abetting claims where plaintiffs did not sufficiently plead fraud or any other primary torts against defendants).  Thus, where Plaintiff fails to state a claim for fraud, it follows that Plaintiff fails to state a claim for aiding and abetting fraud.

Moreover, Plaintiff's collective-style pleading as to the Obligated Individuals and Hefetz is insufficient with respect to both the normal pleading standard and the heightened pleading standard under Fed. R. Civ. P. 9(b).  *Cf. Abu Dhabi*, 651 F. Supp. 2d at 173–74 ("For claims of aiding and abetting to survive a motion to dismiss, they must be pled with some level of specificity and may not consist solely of a broad, conclusory, repetition of the elements of aiding and abetting.").  The allegations of fraud are generally made against all Obligated Individuals without the requisite specificity for <u>each</u> Obligated Individual.  *See* First Am. Compl. ¶¶ 602–604 (referencing the "Obligated Individuals," collectively); *see, e.g.*, *Manela*, 784 F. Supp. at 87–88 (dismissing common law fraud claim because "the allegations [we]re made against multiple defendants lumped together and fail[ed] to distinguish among them").  Thus, the claim for aiding and abetting fraud should be dismissed.

Accordingly, Plaintiff's claim for aiding and abetting fraud should be dismissed with prejudice as duplicative of its breach of contract claim and insufficiently pled under the requisite heightened pleading standard.

### L.   Because Plaintiff's Claim for Negligence (Count X) is Duplicative of its Breach of Contract Claim and Time-Barred, Count X Should be Dismissed.

Plaintiff's claim for negligence should be dismissed because it is both duplicative of its breach of contract claim and time-barred.  Under New York law, to prevail on a negligence

claim, a party must prove: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  The statute of limitations for negligence claims is three years.  N.Y. C.P.L.R. § 214(4).  The discovery rule does not apply to the statute of limitations for negligence.  *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 490–91 (E.D.N.Y. 2016) (collecting cases).  Instead, the cause of action "accrues on the date of injury, that is, when the cause of action is 'complete' and a plaintiff may plead all the required elements." *Coleman & Co. Secs., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002).

Because Plaintiff fails to plead a legal duty independent of the Non-Disclosure Agreement, its claim for negligence should be dismissed.  A claim for negligence will be dismissed as duplicative where it is based upon the same facts underlying a contract claim.  *See, e.g.*, *Clark-Fitzpatrick*, 70 N.Y.2d at 389 (dismissing causes of action sounding in negligence where plaintiff did not allege the violation of a legal duty independent of the contract); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 504–08 (S.D.N.Y. 2013) (dismissing claim for negligence where plaintiff failed to identify any duty independent of those contracted for that defendant committed negligently).  Indeed, Plaintiff's claim for negligence is based entirely on the Non-Disclosure Agreement.  *Compare* First Am. Compl. ¶¶ 612–618, *with id.* Ex. 1.  In pleading negligence, Plaintiff points to duties allegedly required by the Non-Disclosure Agreement (*id.* ¶ 613) and alleges that Defendants breached those duties by "fail[ing] to exercise the duty of care required under the [Non-Disclosure] Agreement resulting in the improper disclosure and misuse of the proprietary and/or confidential Spectrum Information" (*id.* ¶ 614).  Plaintiff fails to plead any legal duty independent of the Non-Disclosure Agreement.  Plaintiff's claim for negligence is thus wholly duplicative of its breach of contract claim and should be dismissed.

This claim should also be dismissed as time-barred.  Here, where Plaintiff alleges that the purported negligence "result[ed] in the improper disclosure and misuse of the proprietary and/or confidential Spectrum Information including by way of non-limiting example, disclosing Spectrum Trade Secrets and inventions without permission in patent applications, and naming of the Obligated Individuals and Defendant Hefetz as inventors thereof" (*id.*), the negligence claim is "complete" upon the filing of the patent applications.  Because the Alleged Spectrum Trade Secrets are related, overlapping trade secrets that, according to Plaintiff's allegations, were all shared with GE pursuant to the Non-Disclosure Agreement, were all shared during the due diligence related to that agreement, and were all jointly invented by Yoel Zilberstien and Nathaniel Roth (*id.* ¶¶ 23, 180, 194, 196, 514, 527, 666), the statute of limitations started running for all alleged trade secrets upon the first act of alleged negligence.  *See supra* Section II.D (citing *Intermedics*, 822 F. Supp. at 657).  As such, Plaintiff's negligence claim is time-barred because the ███████████████████████████████, more than three years before Plaintiff filed its initial Complaint.  First Am. Compl. ¶ 205.  For this additional reason, Plaintiff's claim for negligence should be dismissed.

Therefore, Plaintiff's claim for negligence should be dismissed with prejudice because it is both duplicative of its breach of contract claim and time-barred.

### M. Because a Conversion Claim Cannot be Premised on Alleged Misuse of Intellectual Property, and Because Plaintiff's Claim for Conversion (Count XI) is Duplicative of its Breach of Contract Claim and Time-Barred, Count XI Should be Dismissed.

Because Plaintiff's claim for conversion is impermissibly premised on an alleged misuse of intellectual property, duplicative of its breach of contract claim, and time-barred, it should be dismissed.  Under New York law, to prevail on a conversion claim, a party must prove: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the

property or interference with it, in derogation of plaintiff's right." *In re Abreu*, 527 B.R. 570, 587 (Bankr. E.D.N.Y. 2015) (internal quotation marks omitted). "Generally, only <u>tangible property</u> can be the subject of a conversion action, but intangible rights can form the basis of conversion damages when the converted property is a document into which intangible rights have merged." *Arcadia*, 356 F. Supp. 3d at 403–04 (internal quotation marks omitted; emphasis added) (dismissing plaintiff's conversion claim as to its alleged trade secrets where there was no allegation that a paper or electronic document was in some way misappropriated by defendants) (internal quotation marks omitted; emphasis added). The statute of limitations for conversion is three years. N.Y. C.P.L.R. § 214(3). "There is no discovery rule in place on a claim for conversion"; instead, the claim accrues "when all elements of the tort can be truthfully alleged in a complaint." *V.E.C. Corp. v. Hilliard*, No. 10 CV 2542 (VB), 2011 WL 7101236, at *10 (S.D.N.Y. Dec. 13, 2001) (internal quotation marks omitted).

Plaintiff's conversion claim should be dismissed because it is premised upon the alleged misuse of <u>intangible property</u>—*i.e.* the Alleged Spectrum Trade Secrets. Intangible property is not subject to conversion claims, and Plaintiff has not alleged that Defendants converted documents. Instead, Plaintiff simply alleges that Defendants converted the Alleged Spectrum Trade Secrets into the Alleged Misappropriated GE Patents. First Am. Compl. ¶ 626. Because Plaintiff is claiming theft of its <u>patentable ideas</u>, and not paper or electronic files that contained them, this claim cannot be sustained. Indeed, in a similar case, *Ferring II*, Judge Sweet for this Court rejected the plaintiff's claim for conversion of trade secrets and ideas, reasoning:

> It is well-settled that a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property, as an idea alone cannot be converted such that it satisfies the required elements. Plaintiffs' allegation that [defendant] converted [plaintiff's] confidential, trade secret, proprietary, and privileged information, flies in the face of this rule and would not survive a motion to dismiss. This rule remains regardless of whether the "idea" matures into a patentable invention.

4 F. Supp. 3d at 630–31 (internal citations and quotation marks omitted).  Here, as there is no allegation of definite, tangible property that was converted by Defendants, Plaintiff's claim must fail.

Plaintiff's claim for conversion should also be dismissed as it is predicated on a breach of contract.  Indeed, a claim for conversion will be dismissed as duplicative where it is based upon the same facts underlying a contract claim.  *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) ("[C]onversion claims are routinely dismissed on Rule 12(b)(6) motions where duplicative of breach of contract claims.").  "[W]hen a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts . . . are generally precluded, unless based on a duty independent of the contract."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (collecting cases). Plaintiff's claim for conversion is based entirely on the Non-Disclosure Agreement.  *Compare* First Am. Compl. ¶¶ 620–630, *with id.* Ex. 1.  That is, Plaintiff's claim is entirely based on the alleged disclosure and use of certain proprietary and confidential information protected by the Non-Disclosure Agreement.  *See id.* ¶ 625 ("Plaintiff has requested Defendants to cease misusing, exploiting and otherwise converting the Spectrum Information.").  Thus, Plaintiff's claim for conversion should be dismissed as duplicative of its breach of contract claim.  *See, e.g.*, *Karmilowicz*, 494 F. App'x at 158 (dismissing a claim for conversion "where an express contract covers the subject matter") (internal quotation marks and alterations omitted); *Wolf v. Nat'l Council of Young Isr.*, 694 N.Y.S.2d 424, 425 (N.Y. App. Div. 1999) (dismissing a claim for conversion where the claim "d[id] not stem from a wrong which is independent of the alleged breach of the mortgage agreements").

Finally, this claim should be dismissed as time-barred.  Here, where Plaintiff alleges that the "Defendants have converted Plaintiff's rights in the proprietary and/or confidential Spectrum Information, including inventions and Spectrum Trade Secrets embodied therein, incorporated into the [Alleged Misappropriated GE Patents] by exercising wrongful dominion or control over Plaintiff's interests therein" (First Am. Compl. ¶ 626), the conversion claim accrued upon the filing of the patent applications.  *See, e.g.*, *Ferring I*, 932 F. Supp. 2d at 510 (dismissing claim for conversion as time-barred where claim accrued upon the filing of first patent application). And because the Alleged Spectrum Trade Secrets are related, overlapping trade secrets that, according to Plaintiff's allegations, were all shared with GE pursuant to the Non-Disclosure Agreement, were all shared during the due diligence related to that agreement, and were all jointly invented by Yoel Zilberstien and Nathaniel Roth (First Am. Compl. ¶¶ 23, 180, 194, 196, 514, 527, 666), the statute of limitations started running for all alleged trade secrets upon the first act of alleged conversion.  *See supra* Section II.D (citing *Intermedics*, 822 F. Supp. at 657).  The first Alleged Misappropriated GE Patent to be filed, the ████████████████████████ ████████████████.  First Am. Compl. ¶ 205.  As such, the statute of limitations for the conversion claim began to run on ████████████, more than three years before the filing of Plaintiff's initial Complaint.  Plaintiff's claim for conversion is thus time-barred and should be dismissed.

Accordingly, Plaintiff's claim for conversion should be dismissed with prejudice because it is impermissibly premised on an alleged misuse of intellectual property, duplicative of Plaintiff's breach of contract claim, and time-barred.

### N. Because Plaintiff's Claim for Civil Conspiracy to Commit Conversion (Count XII) is Duplicative of its Breach of Contract Claim, Time-Barred, and Not Sufficiently Pled, Count XII Should be Dismissed.

As with its claim for conversion, Plaintiff's claim for conspiracy to commit conversion is

duplicative of its breach of contract claim and time-barred, as well as not sufficiently pled.  "To establish its claim of civil conspiracy, [a plaintiff] must demonstrate <u>the primary tort</u>, plus the following four elements: (1) a[] [corrupt] agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *ACR Sys., Inc. v. Woori Bank*, No. 14 Civ. 2817 (JFK), 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018) (internal quotation marks omitted; emphasis added).

Claims for conspiracy to commit conversion should be dismissed where they are predicated on a mere breach of contract.  *See Clark-Fitzpatrick*, 70 N.Y.2d at 389; *cf., e.g.*, *Karmilowicz*, 494 F. App'x at 158 (dismissing a claim for conversion "where an express contract covers the subject matter") (internal quotation marks omitted; and alterations omitted).  Here, Plaintiff's claim for conspiracy to convert is duplicative of its breach of contract claim.  Indeed, Plaintiff's claim is based entirely on the Non-Disclosure Agreement.  *Compare* First Am. Compl. ¶¶ 632–638, *with id.* Ex. 1.  Similar to its conversion claim, Plaintiff's conspiracy claim is entirely based on the alleged disclosure and use of certain proprietary and confidential information protected by the Non-Disclosure Agreement.  *See id.* ¶ 634 ("The Obligated Individuals and Defendant Hefetz conspired to convert Plaintiff Spectrum's rights and interests in the proprietary and/or confidential Spectrum Information.").  Thus, as with the claim for conversion that underlies it, this claim for conspiracy to commit conversion should be dismissed as duplicative of Plaintiff's breach of contract claim.  *See supra* Section II.M.

This claim should also be dismissed as time-barred.  "[C]onspiracy is not an independent tort, and is time barred when the substantive tort underlying it is time barred."  *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (N.Y. App. Div. 1989); *see, e.g.*, *Brady v. Lynes*, No. 05 Civ. 6540 (DAB), 2008 WL 2276518, at *9–10 (S.D.N.Y. June 2, 2008) (dismissing conspiracy to

commit fraud as time-barred where the underlying fraud claim was time-barred).  Where Plaintiff's claim for conspiracy (Count XI) is time-barred because the three year limitations period accrued on ███████████ as to all Alleged Spectrum Trade Secrets, Plaintiff's claim for conspiracy to commit conversion is also time-barred and should be dismissed.  *See supra* Section II.M.

The Court should also dismiss this claim because Plaintiff does not sufficiently plead the requisite elements of a claim for conspiracy to commit conversion.  As an initial matter, Plaintiff fails to sufficiently plead the underlying conversion (Count XI).  *See id.*  Because New York does not recognize an independent tort of conspiracy, such claims are dismissed when the underlying tort is not sufficiently pled.  *See, e.g.*, *ACR*, 2018 WL 1757019, at *6 (dismissing conspiracy to commit conversion claim as plaintiff failed to state a claim for the underlying tort); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("[S]ince [plaintiff] fail[ed] to state causes of action for either of the torts underlying the alleged conspiracy, . . . it necessarily fail[ed] to state an actionable claim for civil conspiracy.").  Thus, where Plaintiff fails to state a claim for conversion, it follows that Plaintiff fails to state a claim for conspiracy to commit conversion.

Moreover, Plaintiff fails to sufficiently plead either a corrupt agreement or Defendants' intentional participation in the furtherance of a plan or purpose – both necessary elements of a conspiracy claim.  *See* First Am. Compl. ¶¶ 632–38; *see, e.g.*, *Savitsky v. Mazzella*, No. 98 Civ. 9051 (RWS), 2004 WL 2454120, at *6 (S.D.N.Y. Nov. 1, 2004) (rejecting conspiracy to commit fraud claim where plaintiff failed to plead the agreement and intentional participation elements), *aff'd*, 210 F. App'x 71 (2d Cir. 2006).  Plaintiff merely alleges that "[t]he Obligated Individuals and Defendant Hefetz conspired to convert . . . by agreeing and working in concert with one another" (First Am. Compl. ¶ 634), and nothing more.  Plaintiff fails to plead an "'adequately

common action for a common purpose by common agreement or understanding among a group, from which common responsibility derives.'"  *Savitsky*, 2004 WL 2454120, at *6 (quoting *Goldstein v. Siegel*, 244 N.Y.S.2d 378, 382 (N.Y. App. Div. 1963)).  Plaintiff's bare conclusory allegations of conspiracy are insufficient to state a claim for conspiracy to commit conversion. *See, e.g.*, *Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC*, No. 03 Civ. 9471 (CSH), 2004 WL 1574645, at *4–6 (S.D.N.Y. July 13, 2004) (dismissing conspiracy claim where it did not allege "a specific agreement" or "any specific overt action").

Thus, Plaintiff's claim for conspiracy to commit conversion should be dismissed with prejudice because it is duplicative of Plaintiff's breach of contract claim, time-barred, and insufficiently pled.

### O. Because Plaintiff's Claim for Fraud on the U.S. Patent and Trademark Office (Count XIII) is Not Sufficiently Pled, Count XIII Should be Dismissed.

Plaintiff's claim for fraud on the USPTO (i.e. inequitable conduct) should be dismissed as its allegations are insufficient to satisfy the heightened pleading requirements for such a claim. In pleading this claim, Plaintiff treats all of the individual Defendants as a group—rather than individuals—and fails to plead facts from which the Court could reasonably infer that Hefetz acted with the specific intent to deceive the USPTO.

"[I]nequitable conduct is the 'atomic bomb' of patent law."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (*en banc*) (vacating the district court's finding of inequitable conduct).  Inequitable conduct requires a showing of "(1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, (4) but for which misrepresentation or deliberate omission the patent would not have been granted."  *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 685 (2d Cir. 2009).

Because inequitable conduct is based on allegations of fraud, a defendant must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327–29 (Fed. Cir. 2009) (affirming the denial of the alleged infringers' motion for leave to allege inequitable conduct). Indeed, "to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. Thus, a claim for inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

Here, Plaintiff alleges that the Obligated Individuals and Hefetz committed inequitable conduct by "conceal[ing] and [] not identify[ing] the true inventor(s) of the claimed inventions, *i.e.*, Yoel Zilberstien and Nathaniel Roth, who were employed by the Spectrum Predecessors in Interest and continue to be employees of Spectrum." First Am. Compl. ¶ 652. Plaintiff, however, does not identify "the specific who, what, when, where, and how of the [alleged] material misrepresentation or omission committed before the PTO." *See Exergen*, 575 F.3d at 1328. Plaintiff generally refers to "Defendants" and "the Obligated Individuals and Defendant Hefetz," without specifying any particular individual. *See, e.g.*, First Am. Compl. ¶¶ 640–641, 646 ("Defendants (including Obligated Individuals and Defendant Hefetz) obtained access to the Spectrum Information that was misused."), ¶ 647 ("Defendants (including the Obligated Individuals and Defendant Hefetz) further misappropriated and misused the Spectrum Information to file each of the" Alleged Misappropriated GE Patents. Plaintiff fails to name the specific individual(s) associated with the filing or prosecution as to each Alleged

Misappropriated GE Patent, who allegedly both knew of the "real inventors" and deliberately withheld or misrepresented such information.  The pleadings thus fail to identify the "who" of the material omissions and misrepresentation.  *See Exergen*, 575 F.3d at 1329 (citing 37 C.F.R. § 1.56(a) ("Each <u>individual</u> associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO]") (emphasis added).

In addition to these factual deficiencies, which themselves are fatal under Fed. R. Civ. P. 9(b), the facts that are alleged do not give rise to a reasonable inference of scienter on the part of Hefetz.[11]  The pleadings provide no factual basis to infer that Hefetz knew that Zilberstien and Roth were the alleged inventors and had the specific intent to deceive the USPTO.  The First Amended Complaint offers only the conclusory allegation, based "[u]pon information and belief," that Hefetz "would have known . . . that the true inventors of the technology that he was claiming were Spectrum employees."  First Am. Compl. ¶ 454.  Without sufficient allegations as to scienter, Plaintiff fails to adequately state a claim for inequitable conduct against Hefetz.  *See Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575–76 (Fed. Cir. 1996) ("An error in determining inventorship is not by itself inequitable conduct."); *see also Dexcowin Global, Inc. v. Aribex, Inc.*, No. CV 16-143-GW(AGRx), 2017 WL 3477748, at *10–12 (C.D. Cal. June 7, 2017).

Accordingly, because Plaintiff fails to plead its claim for fraud on the USPTO with sufficient particularity, Plaintiff's claim should be dismissed with prejudice.[12]

---

[11] "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  *See Exergen*, 575 F.3d at 1329 n.5.

[12] Additionally, where a claim for inequitable conduct rests on the allegation that a patent would not have been granted but for certain misrepresentations or omissions, it follows that the claim is not ripe for adjudication as to the non-issued Alleged Misappropriated GE Patents.  *See DDAVP,*

### III.   PLAINTIFF'S COUNT XIII SHOULD BE DISMISSED FOR LACK OF STANDING.

#### A.  Legal Standard

Under Article III of the United States Constitution, federal courts may hear only "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  The doctrine of constitutional standing, an essential aspect of the Article III case or controversy requirement, demands that a plaintiff have "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).  At its "irreducible constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) that he or she "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there was a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).  A plaintiff must demonstrate standing for each claim and form of relief sought.

The Declaratory Judgment Act, in referring to a "case of actual controversy," essentially subsumes the Article III case or controversy requirement.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  The Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

---

585 F.3d at 685.  At a minimum, this claim should be dismissed as to the two pending patent applications—████████████████████████████████████████.  *See* First Am. Compl. ¶ 35.

28 U.S.C. § 2201(a).  The Supreme Court's "decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune*, 549 U.S. at 127 (internal alteration and quotation marks omitted).

The Supreme Court found that a party's standing to seek a declaratory judgment of patent unenforceability is properly based on an examination of "all the circumstances."  *Id.*  Under the "all the circumstances" test, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*  Although *MedImmune* did not define the precise contours of the "all the circumstances" test, the Federal Circuit subsequently found that there must be some "affirmative act" by the defendant relating to enforcement of its patent rights.  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007).  As the Federal Circuit reasoned in *Hewlett-Packard Co. v. Acceleron LLC*, "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute.  More is required to establish declaratory judgment jurisdiction."  587 F.3d 1358, 1362 (Fed. Cir. 2009).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing the required elements of standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.

### B. Because Plaintiff Fails to Sufficiently Plead a Substantial Controversy Between Plaintiff and Defendants, Count XIII Should be Dismissed.[13]

Because Plaintiff fails to plead a substantial controversy of sufficient immediacy and reality between Plaintiff and Defendants, Plaintiff does not have standing to seek a declaratory judgment that the Alleged Misappropriated GE Patents are unenforceable (Count XIII).[14]  As such, this Count should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1).

Article III limits federal jurisdiction to disputes involving an actual case or controversy.

In this case, Plaintiff's allegations aim at establishing standing with respect to Count XIII do not establish the existence of a "definite and concrete" dispute between Plaintiff and Defendants regarding enforceability of the Alleged GE Misappropriated Patents.  Plaintiff alleges that: "There is Declaratory Judgment jurisdiction over the [Alleged Misappropriated GE Patents] because GE has threatened Plaintiff with an allegation of infringement."  First. Am. Compl. ¶ 35.  Plaintiff also cites, and attaches to its First Amended Complaint, a October 12, 2018 letter from GE's counsel to Plaintiff's counsel.  *Id.* ¶¶ 36, 660 & Ex. 24.  That letter, however, is not enough to establish adverse legal interests between the parties, let alone the existence of a definite and concrete dispute.  In the letter, GE's counsel wrote:

> It has come to my attention that Spectrum Dynamics has been telling potential customers that Spectrum Dynamics has patents that will prevent other companies like GE from developing and selling systems that compete with Spectrum Dynamics' Veriton systems.  This representation is nothing other than an effort to steer customers away from GE systems by way of baseless threats of liability for patent infringement.

---

[13] Although procedural aspects of patent cases are typically controlled by the law of the circuit in which the case is filed, Federal Circuit precedent controls standing under the Patent Act as an issue unique to patent law.  *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002).

[14] Plaintiff's claim for fraud on the USPTO is for declaratory judgment.  *See* First Am. Compl. ¶ 35, Prayer for Relief at ¶¶ n, o.

> Your client, through your letters, has accused GE of wrongful conduct. In none of those letters has GE been accused of infringing a Spectrum Dynamics patent, presumably because Spectrum Dynamics has no reasonable basis upon which to make such an accusation. . . .
>
> Finally, as your client is well aware, GE has a formidable portfolio of patents in the nuclear medicine space. As GE's relationship with your client continues to sour, GE will have no choice but to prioritize comparison of your client's systems to the many nuclear medicine inventions owned by GE.

*Id.* Ex. 24. This communication, which does no more than reference GE's "formidable portfolio of patents" and Plaintiff's "systems," without setting forth any demand, is insufficient to establish declaratory judgment jurisdiction. *Hewlett-Packard*, 587 F.3d at 1362. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, No. 08cv1829 WQH (LSP), 2009 WL 684835, at *6 (S.D. Cal. Mar. 12, 2009) (dismissing declaratory judgment claims because "[plaintiff] fail[ed] to specify any affirmative act by [defendant], such as a notification of [defendant's] intent to enforce a specific patent right against [plaintiff]") (emphasis added); *Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*, No. 2:05-CV-931, 2008 WL 345849, at *3 (D. Utah Feb. 6, 2008) (dismissing declaratory judgment claims because although "[defendant] had mailed several letters notifying [plaintiff] of issued and pending patents, these letters did not indicate that [defendant] had taken a position regarding infringement by [plaintiff]").

Because Defendants have not asserted any rights against Plaintiff related to the Alleged Misappropriated GE Patents, nor taken any affirmative actions concerning Plaintiff's products, Plaintiff does not have standing to challenge the enforceability of those patents based on alleged fraud on the USPTO (Count XIII).

## IV.    BECAUSE THE PARTIES TO THE NON-DISCLOSURE AGREEMENT WAIVED THEIR RIGHT TO A JURY TRIAL, PLAINTIFF'S JURY DEMAND SHOULD BE STRUCK.

Pursuant to paragraph 6 of the Non-Disclosure Agreement and Fed. R. Civ. P. 39(a), the parties to the agreement waived their right to a jury trial and Plaintiff's jury demand should be

struck.  Fed. R. Civ. P. 39(a) provides that where a party has demanded a jury trial pursuant to

Fed. R. Civ. P. 38, "[t]he trial of all issues so demanded shall be by jury unless . . . the court

upon motion or on its own initiative finds that a right of trial by jury on some or all of these

issues does not exist under the Constitution or statutes of the United States."  *See, e.g.*, *Great*

*Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 437–38 (S.D.N.Y. 2004)

(granting motion to strike jury demand pursuant to Fed. R. Civ. P. 39(a)) (internal quotation

marks omitted).  A court has the discretion to permit a motion to strike a jury demand pursuant to

Fed. R. Civ. P. 39 at any time, even on the eve of trial.  *See Bear, Stearns Funding, Inc. v.*

*Interface Group-Nevada, Inc.*, No. 03 Civ. 8259 (CSH), 2007 WL 3286645, at *3 (S.D.N.Y.

Nov. 7, 2007) (citing 8 James Wm. Moore et al., *Moore's Federal Practice* § 39.13[2][c] (3d ed.

2007)).  While the Seventh Amendment preserves the right to a jury trial, "parties to a contract

may, by prior written agreement entered into knowingly and voluntarily, waive the right to a jury

trial."  *Morgan Guar. Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999).

      Parties to a contract may waive the right to trial by jury in future litigation, provided that

the waiver is knowing and voluntary.  "[T]here is plentiful authority explicitly holding that a jury

demand does not override a contractual jury waiver."  *Westminster Secs. Corp. v. Uranium*

*Energy Corp.*, 255 F. Supp. 3d 490, 495 (S.D.N.Y. 2017) (collecting cases) (granting request to

withdraw jury demand); *see also Morgan Guar.*, 36 F. Supp. 2d at 603–05 (granting motion to

strike jury demand where parties waived their right to trial by jury); *Great Earth*, 311 F. Supp.

2d at 437–38 (S.D.N.Y. 2004) (granting motion to strike jury demand where parties waived their

right to trial by jury).  Indeed, "[a] party cannot unwaive that which it effectively waived."

*Great Earth*, 311 F. Supp. 2d at 437.  "In other words, simply requesting a jury trial does not

create the right if it did not exist at the time of the demand."  *Westminster*, 255 F. Supp. 3d at

495.

Here, the Non-Disclosure Agreement clearly includes a jury waiver provision.

Specifically, paragraph 6 of the Non-Disclosure Agreement provides:

> In the event of a legal proceeding between the parties relating to this Agreement, neither party may claim the right to a trial by jury, and both parties waive any right such party may have under applicable law or otherwise to a right to a trial by jury.  The parties agree that any one of them may file a copy of this paragraph as written evidence of the knowing, voluntary and bargained-for agreement between the parties irrevocably to waive a trial by jury and instead any proceeding related to this Agreement shall be tried in a court of competent jurisdiction by a judge sitting without a jury.

First Am. Compl. Ex. 1, ¶ 6.  This jury waiver provision applies to the present dispute, because Plaintiff itself alleges that this is a legal proceeding "relating to" the Non-Disclosure Agreement between parties who are all bound by that agreement.  Plaintiff pleads that it is "the owner of all rights, interests and benefits under the [Non-Disclosure] Agreement" and that, as a successor in interest under the Non-Disclosure Agreement, it has standing to enforce the agreement through its First Amended Complaint.  First Am. Compl. ¶¶ 22, 70, 493–494.  It also alleges that the Non-Disclosure Agreement "created a legal relationship between Spectrum and Defendants" (*id.* ¶ 537), that Defendants are all bound by the agreement (*id.* ¶¶ 29–33, 59–61, 448, 498, 500–501), that this Court has personal jurisdiction over the Defendants by virtue of paragraph 6 of the Non-Disclosure Agreement (*id.* ¶¶ 26–33),[15] that Defendants obtained the Spectrum Information under the agreement (*id.* ¶ 551), and that Defendants have breached the agreement, giving rise to Plaintiff's first four claims for breach of contract, misappropriation of trade secrets under New York common law and federal law, and misappropriation of ideas (*id.* ¶¶ 502–503, 506, 508, 517, 530, 538).  That is, Plaintiff asserts the Non-Disclosure Agreement, including paragraph 6, against each and every Defendant.  Thus, there should be no dispute that the jury waiver

---

[15] Defendants maintain that the Court does not have personal jurisdiction over Hefetz, whether based on paragraph 6 of the Non-Disclosure Agreement or otherwise.  *See supra* Section II.

provision found in paragraph 6 of the Non-Disclosure Agreement applies to the Action.  Plaintiff has waived its right to a jury trial and its subsequent demand for a jury trial does not create the right to one.  *See Westminster*, 255 F. Supp. 3d at 495.  Accordingly, the Court should strike Plaintiff's jury demand.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Defendants' motion and dismiss all claims as to Hefetz; dismiss Counts I to XIII of the First Amended Complaint against all Defendants with prejudice; and strike the jury demand requested by Plaintiff in the First Amended Complaint.

Dated: Atlanta, Georgia
     June 14, 2019

Respectfully submitted,

**THOMPSON HINE LLP**

Marla R. Butler
Carl Wesolowski (*pro hac vice*)
Lauren Hogan (*pro hac vice*)
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
Tel.: (404) 541-2900
Fax: (404) 541-2905
Marla.Butler@ThompsonHine.com
Carl.Wesolowski@ThompsonHine.com
Lauren.Hogan@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Tel.: (513) 352-6700
Fax: (513) 241-4771
Jesse.Godshalk@ThompsonHine.com

Brian Lanciault
335 Madison Avenue, 12th Floor
New York, New York 10017
Tel.: (212) 344-5680
Fax: (212) 344-6101
Brian.Lanciault@ThompsonHine.com

*Attorneys for Defendants*
*General Electric Company, GE Healthcare,*
*Inc., GE Medical Systems Israel Ltd., Jean-*
*Paul Bouhnik, Sergio Steinfeld,*
*Arie Escho, Nathan Hermony, and Yaron*
*Hefetz*