**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>      Plaintiff,<br><br>  v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., GE MEDICAL SYSTEMS ISRAEL LTD., JEAN-PAUL BOUHNIK, SERGIO STEINFELD, ARIE ESCHO, NATHAN HERMONY, and YARON HEFETZ,<br><br>      Defendants. | Case No.: 18-cv-11386 (VSB)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF SPECTRUM DYNAMICS MEDICAL LIMITED'S MOTION REGARDING LEGAL CONSULTANTS' ACCESS TO HIGHLY CONFIDENTIAL INFORMATION UNDER THE STIPULATED CONFIDENTIALITY AND <u>PROTECTIVE ORDER ENTERED DECEMBER 14, 2020 [D.I. 156]</u>**

**TABLE OF CONTENTS**

**Page**

I.   Preliminary Statement ............................................................................................... 1

II.  Argument .................................................................................................................. 2

    A.   Defendants' Shifting Objection To Mr. Cabanel............................................. 4

    B.   Mr. Cabanel Is Not Properly A Witness, And Defendants' Objection Is A Pretext To Improperly Deny Spectrum Its Counsel of Choice.......................... 7

    C.   Even If Mr. Cabanel Were Properly A Witness (Which He Is Not), Defendants' Reliance On *Rizzuto* And The Witness-Advocate Rule Is Misplaced ....................................................................................................... 7

    D.   Defendants' Accusations That Mr. Cabanel Will Not Abide By the Provisions Of The Order Are Unfounded, But The Concerns Are More Pronounced With Defendants' Designee, Mr. Bareket.................................................................. 8

III. Conclusion .............................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bottaro v. Hatton Associates*,
   680 F.2d 895 (2d Cir. 1982) ......................................................................................... 3, 8

*Culebras Enterprises Corp. v. Rivera-Rios*,
   846 F.2d 94 (1st Cir. 1988) ........................................................................................... 3, 8

*Giuffre v. Dershowitz*,
   410 F. Supp. 3d 564 (S.D.N.Y. 2019) ............................................................................... 3

*Lemberg Law, LLC v. Egeneration Mktg., Inc.*,
   No. 3:18-cv-570, 2020 U.S. Dist. LEXIS 94879 (D. Conn. May 29, 2020) ................... 3, 8

*Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers*,
   378 F.3d 269 (2d Cir. 2004) ......................................................................................... 3, 8

*Rizzuto v. De Blasio*,
   No. 17-CV-7381, 2019 U.S. Dist. LEXIS 54457 (E.D.N.Y. March 29, 2019) ......... 3, 4, 7, 8

Pursuant to the Court's instruction during the December 8, 2020 Discovery Conference, Plaintiff Spectrum Dynamics Medical Limited ("Spectrum") hereby requests the Court to deny Defendants' tactical objection to Spectrum's designation of its outside European commercial transactional counsel, Mr. Pascal V. Cabanel,[1] as Spectrum's Legal Consultant under Paragraph 8 of the Stipulated Confidentiality and Protective Order entered December 14, 2020 ("Order") [D.I. 156]. This designation permits Mr. Cabanel to view Defendants' Highly Confidential Information. For the reasons set forth below, Spectrum also hereby objects to Defendants' designation of Mr. Eran Bareket,[2] who provides litigation and IP Strategic Counseling services as part of the Reinhold Cohn Group, which prosecutes GE's patents in Israel.

I. **Preliminary Statement**

The purpose of Paragraph 8 of the Order is to permit foreign outside counsel – the designated Legal Consultant – to view a producing party's Highly Confidential Information and assist trial counsel in developing strategies and coordinating with the respective client(s) without encountering questions of attorney/client privilege.

Only after Spectrum designated Mr. Cabanel, did Defendants manufacture this objection under the witness-advocate rule seeking to disqualify Mr. Cabanel arguing for the first time that they *might* seek to call Mr. Cabanel as a trial witness to provide (i) fact testimony concerning the chain of title of the Spectrum Trade Secrets, and (ii) what sounds like expert testimony as to the valuation of the Spectrum Trade Secrets. During the Discovery Conference, Defendants' counsel also made an unfounded accusation that Mr. Cabanel might intentionally

---

[1]   *See* link https://www.cabanel-law.com/founder.html.  (Ex. 1, downloaded and printed December 17, 2020.)

[2]   *See* link https://gilat-bareket.rcip.co.il/en/team/eran-bareket.  (Ex. 2, downloaded and printed December 18, 2020.)

1

violate the terms of the Protective Order.

***Spectrum's requests herein should be granted because:***

<u>Defendants interposed the objections to Mr. Cabanel for tactical reasons only</u>.  Despite knowing of Spectrum's intent to designate Mr. Cabanel under the Order,[3] Defendants did not identify Mr. Cabanel as a potential witness in their Initial Disclosures.  Spectrum, likewise, did not identify Mr. Cabanel.  Instead, the parties identified other non-attorneys as having knowledge regarding the Spectrum Trade Secret chain of title and Spectrum further identified documents relevant to the chain of title.[4]  Thereafter, Defendants saw an opportunity to gain a tactical advantage by asserting that they *may* call Mr. Cabanel as a witness in order to manufacture a basis to object to him and thereby deny Spectrum its counsel of choice.  Defendants' reliance on the witness-advocate rule, however, is misplaced because Mr. Cabanel is neither trial counsel, nor a "necessary" or "key" witness.

<u>Defendants' claim that Mr. Cabanel would not abide by the terms of the Order are unfounded conjecture</u>.  Defendants' counsel's suggestion that Mr. Cabanel would somehow change his testimony (if required to testify) or otherwise violate the terms of the Order is insulting, and such concerns – if deemed to have any merit whatsoever – are even more problematic with respect to Defendants' designee Mr. Bareket, who litigates on behalf of GE and is part of the Reinhold Cohn Group, which prosecutes GE's patents in Israel.

**II.    <u>Argument</u>**

Defendants' tactical objection, which, if successful, would deny Mr. Cabanel access to Highly Confidential Information under the Order as Spectrum's designated Legal

---

[3]     Spectrum first identified Mr. Cabanel designating him as Legal Consultant under the Order in a draft sent to Defendants on August 13, 2020, well before Initial Disclosures were served on September 3, 2020.

[4]     Tellingly, Defendants do not even identify documents relating to the Spectrum Trade Secret chain of title as relevant to any defense in their Initial Disclosures. (Ex. 3, Defendants' Initial Disclosures, Section II.)

2

Consultant, and would effectively disqualify Spectrum's counsel of choice. *Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir. 1982)(reversing district court's disqualification because a litigant's choice of counsel "can be overridden only where compelling reasons exist."). The party requesting disqualification, further, bears the "heavy burden" of demonstrating that disqualification is in fact warranted. *Lemberg Law, LLC v. Egeneration Mktg., Inc.*, No. 3:18-cv-570, 2020 WL 2813177, 2020 U.S. Dist. LEXIS 94879, at *53 (D. Conn. May 29, 2020)(applying Second Circuit law); *Rizzuto v. De Blasio*, No. 17-CV-7381, 2019 WL 1433067, 2019 U.S. Dist. LEXIS 54457, at *10 (E.D.N.Y. March 29, 2019)(same).

"Disqualification is disfavored in the Second Circuit, and is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint" … "because [like here,] they are often interposed for tactical reasons…" *Lemberg Law*, 2020 U.S. Dist. LEXIS 94879 at *51-52 (applying Second Circuit law and collecting cases); *see also Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 570 (S.D.N.Y. 2019)("Motions to disqualify are viewed with disfavor because of their vulnerability to abuse as litigation tactics.").

Here, Defendants' objection was manufactured solely to disqualify Mr. Cabanel for tactical purposes, as evidenced by the fact that Defendants only identified Mr. Cabanel as a potential witness after Spectrum designated him as its Legal Consultant and should be denied for this reason alone. Defendants, further, cannot carry the "heavy burden" of disqualifying Mr. Cabanel under the witness-advocate rule, at least, because "the[] 'concerns [under the witness-advocate rule] are absent or, at least, greatly reduced, when . . . the lawyer-witness [like Mr. Cabanel] does not act as trial counsel.'" *Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) and *Lemberg Law*, 2020 U.S. Dist. LEXIS 94879 at *55 (both quoting *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 100 (1st Cir. 1988)); *Bottaro*, 680 F.2d at 897 (same).

3

### A. **<u>Defendants' Shifting Objection To Mr. Cabanel</u>**

Defendants' ulterior motive to tactically deny Spectrum its counsel of choice is illustrated by the continually shifting nature of their objection. Indeed, the scope of Mr. Cabanel's testimony proposed by Defendants is evolving and remains unclear as Defendants did not identify him in their Initial Disclosures. (Ex. 3, Defendants' Initial Disclosures, Section I.) Defendants initially objected to Mr. Cabanel, after Spectrum's designation, stating:

> It is now clear that Mr. Cabanel is the former general counsel for Biosensors International Group. According to paragraph 16 of the First Amended Complaint, Biosensors International Group is a predecessor in interest to Spectrum with regard to the alleged trade secrets at issue in this case. So, Mr. Cabanel is a former executive of, and general counsel to, a predecessor in interest to Spectrum.
>
> *Among the issues in the lawsuit will be what right to the alleged trade secrets passed to Spectrum from its predecessors in interest. And the evidence of that will likely be found in the legal departments of the entities at issue, including through the testimony of persons such as Mr. Cabanel.*
>
> Therefore, <u>Mr. Cabanel *may well be a witness*</u> in this case on the issue of what alleged Spectrum trade secrets transferred to Spectrum. As such, his role in this case is not limited to serving as outside counsel, but ***may*** also include serving as a witness. *As a fact witness on key issues in this case, he should not have general access to any of GE's highly confidential material, including GE's trade secrets*.

(Ex. 4, Defendants' September 23, 2020 email)(emphasis added.) Defendants' theory is contrived. That is, Mr. Cabanel should not be allowed to access Defendants' Highly Confidential Information, including "GE's trade secrets," because Defendants *may* seek to call him at trial to testify given that "the evidence of [Spectrum Trade Secret chain of title] will likely be found in the legal departments of the entities at issue, including through the testimony of persons such as Mr. Cabanel." (*Id.*) When Spectrum pointed out that this was a *non-sequitur* (and moreover that Spectrum had already identified with specificity Spectrum Trade Secrets A-Q in the First Amended Complaint (*see* [D.I. 117])) and asked for case law to support this objection, Defendants cited *Rizzuto v. De Blasio*, 2019 U.S. Dist. LEXIS 54457 (E.D.N.Y. 2019) and argued that the witness-advocate rule as applied therein prohibited Mr. Cabanel from serving as Spectrum's Legal Consultant. (Ex. 5, Defendants' October 12, 2020 email.)

4

After Spectrum indicated that Defendants' reliance on *Rizzuto* was misplaced (as discussed in Section II.C *supra*), Defendants' counsel expanded the scope of their manufactured objection during the Discovery Conference seeking to shoehorn their arguments into the witness-advocate rule. Specifically, Defendants asserted that they expected Mr. Cabanel to also provide expert testimony, including valuation of the Spectrum Trade Secrets:

> *And GE believes it's inappropriate for someone who's going to be a witness to have access to GE's financial information when this person would presumably be testifying about the <u>valuation of these trade secrets</u>*, and it would be inappropriate for this person to have access to the type of highly confidential information like the technical documents, how GE's system, the system that's accused of misappropriating these trade secrets, how that system works.
>
> *****************
>
> As for this Swiss lawyer that plaintiff wants to have access to GE's highly confidential information, we think it's inappropriate for him to have access to all of how GE's system works and then *have the opportunity to describe the trade secrets that supposedly passed from Biosensors to this plaintiff.* And so we do object to him on that grounds.

(Ex. 6, December 8, 2020 Discovery Conference Tr., pp. 12-14)(emphasis added.)

This new iteration of Defendants' objection that Mr. Cabanel should be disqualified because Defendants would – instead of *may* – seek trial testimony from Mr. Cabanel, European commercial counsel without technical training, on trade secret valuation (presumably a topic for expert testimony) is even more absurd. The second ground of objection – that Defendants would call Mr. Cabanel to testify at trial regarding the Spectrum Trade Secrets provided to GE during the diligence period – is equally contrived for the same reason.

Lastly, while the facts of the Swiss arbitration are completely irrelevant to whether Mr. Cabanel may or should be a trial witness, GE's counsel also misrepresented the nature of the confidential Swiss arbitration during the Discovery Conference stating that "the primary allegation in that case is that the intellectual property that's at issue here that Spectrum, this plaintiff, is asserting against defendants, the primary allegation in that lawsuit is that Spectrum, this plaintiff, does not have own [*sic*] that IP." (Ex. 6, December 8, 2020 Discovery Conference

5

Tr., p. 13.) Those proceedings are confidential, and the only publicly available document of which Spectrum is aware describing the disputes in the arbitration do not support Defendants' assertion.

The publicly available document is an order from the Eastern Caribbean Supreme Court of the British Virgin Islands ("BVI Order") dissolving the Worldwide Freeze Order ("WFO") sought by the other party in the Swiss arbitration (Molecular Dynamics Limited, "MD") against Spectrum ("SDBVI"). The BVI Order describes the issues before the arbitration tribunal as follows:

> In April 2018 SDBVI commenced arbitration proceedings in Switzerland seeking (i) a declaration that the MD agreements be rescinded; and (ii) repayment of US$10 million in financing and interest that Biosensors provided to MD pursuant to the MD agreements. *The Applicants filed an Answer and Counterclaim* in those proceedings in August 2018. The Applicants there *seek damages on a joint and several liability basis from Biosensors and SDBVI in respect of loss caused to them by Biosensors' and SDBVI's (alleged) breaches of the MD agreements, including for allegedly ongoing infringement of MD's intellectual property rights by SDBVI.* It is in support of the Applicants' Counterclaim in the Swiss arbitration proceedings that the Applicants had sought and obtained the WFO, pursuant to section 43 of the Arbitration Act, 2013, Cap. 6 of the Revised Laws of the Virgin Islands, No. 13 of 2013.

(Ex. 7, BVI Order, ¶ 11; *see also id*. ¶¶ 2-10 discussing underlying facts and agreements)(emphasis added.) In dissolving the WFO which was granted after an *ex parte* hearing with counsel for Molecular Dynamics, the Eastern Caribbean Supreme Court noted that:

> Learned counsel for the *Applicants [MD] affirmed the learned judge's initial understanding that the WFO was being sought in support of a claim by the Applicants over ownership of intellectual property rights. That understanding was erroneous.*

(Ex. 7, BVI Order, ¶ 48)(emphasis added.)

Accordingly, neither of Defendants' rationales suffice to disqualify Mr. Cabanel from serving as Spectrum's designated Legal Consultant.

6

### B. Mr. Cabanel Is Not Properly A Witness, And Defendants' Objection Is A Pretext To Improperly Deny Spectrum Its Counsel of Choice

As noted, Defendants did not identify Mr. Cabanel as a potential witness when the parties exchanged Initial Disclosures on September 3, 2020, although Spectrum had already designated him.[5] In the Initial Disclosures, Spectrum identified Messrs. Roth, Zilberstein, Yoeli and Haisler as having knowledge of the issues, including the Spectrum Trade Secrets provided to GE during due diligence as well as the chain of title thereof; Defendants also identified Messrs. Roth and Zilberstein. (Ex. 3, Defendants' Initial Disclosures, Section I.)

Thereafter, Defendants saw a tactical opportunity to effectively deny Spectrum its counsel of choice and raised this contrived objection as a pretext, which Defendants continue to press even though Spectrum reiterated that it did not intend to call Mr. Cabanel as a witness, and that the sought testimony was better obtained from the other sources and witnesses identified in the Initial Disclosures.

### C. Even If Mr. Cabanel Were Properly A Witness (Which He Is Not), Defendants' Reliance On *Rizzuto* And The Witness-Advocate Rule Is Misplaced

Defendants' contrived argument that the witness-advocate rule as applied in *Rizzuto* prevents Mr. Cabanel from serving as Spectrum's designated Legal Consultant is misplaced. In *Rizzuto*, there was no question of access to confidential information; rather, the *Rizzuto* court disqualified trial counsel from representing his plaintiff son(s) under the New York attorney Disciplinary Rules in a case alleging foster care abuse because "*Mr. Rizzuto [was]* not only a *necessary witness* but *the key witness* for his son's claims." *Rizzuto*, 2019 U.S. Dist. LEXIS 54457 at *10 (emphasis added).

---

[5] Spectrum first identified Mr. Cabanel designating him as Legal Consultant under the Order in a draft sent to Defendants on August 13, 2020 before Defendants served their Initial Disclosures on September 3, 2020.

7

By contrast, here Mr. Cabanel is not a U.S. attorney and cannot be trial counsel such that the concerns of the witness-advocate rule "are absent or, at least, greatly reduced…" *Ramey*, 378 F.3d at 283; *Lemberg Law*, 2020 U.S. Dist. LEXIS 94879 at *55; *Culebras*, 846 F.2d at 100; *Bottaro*, 680 F.2d at 897. Defendants, moreover, cannot carry the "heavy burden" of showing that Mr. Cabanel is a "necessary" or "key" witness in order to disqualify him, at least, because the evolving testimony sought by Defendants is otherwise available from better non-privileged sources, such as the individuals and documents cited in the Initial Disclosures. *Rizzuto*, 2019 U.S. Dist. LEXIS 54457 at *10 (whether a witness is "necessary" or "key" is determined by looking at "(1) the significance of the subject of the testimony to the case; (2) the availability of other evidence; and (3) the weight of the attorney's testimony."); *see also id.* at *6; *Lemberg Law*, 2020 U.S. Dist. LEXIS 94879 at *53. This is true regardless of whether Defendants are arguing that Mr. Cabanel "(a) 'ought to' testify on behalf of his own client or (b) may be called as a witness by [Defendants]." *Rizzuto*, 2019 U.S. Dist. LEXIS 54457 at *8-9 (noting that the standard is different).

### D. Defendants' Accusations That Mr. Cabanel Will Not Abide By the Provisions Of The Order Are Unfounded, But The Concerns Are More Pronounced With Defendants' Designee, Mr. Bareket

Defendants' accusation that Mr. Cabanel would share Defendants' Highly Confidential Information with Spectrum in identifying the Spectrum Trade Secrets provided to GE in violation of the terms of Order are unfounded and not well taken. Defendants have cited no basis for asserting that Mr. Cabanel (a licensed member of the Paris Bar and the Geneva Bar) would not abide by the terms of the Order, and they should be summarily rejected.

However, to the extent that the Court deems these contrived concerns to have any merit – the underlying concerns are more pronounced with Mr. Bareket who provides litigation and IP Strategic Counseling services and is affiliated with the Reinhold Cohn Group, which prosecutes GE's patents in Israel. (Ex. 2.) While this relationship does not violate the

8

Prosecution Bar of Paragraph 30 of the Order *per se*, it does highlight the more plausible possibility that Spectrum's Highly Confidential Information could be impermissibly (whether intentionally or accidentality) shared with prosecution counsel by Mr. Bareket.  Further, as GE's litigation counsel in Israel, there is a greater possibility that Mr. Bareket could use the Spectrum Highly Confidential Information (*e.g.*, business, financial and technical) in a litigation by GE against Spectrum in Israel, where there are different discovery rules.  Mr. Cabanel, on the other hand, is a commercial transactional attorney unaffiliated with any Spectrum IP counsel such that these concerns would be minimized, and Mr. Bareket should be disqualified on these grounds well before Mr. Cabanel should be.

It is ironic that Defendants while seeking to gain a tactical advantage over Spectrum by disqualifying Mr. Cabanel on contrived objections, attempt to paint Spectrum as the opportunist actor by mischaracterizing and greatly overstating the scope of Spectrum's courtesy (despite having and raising the same concerns with Mr. Bareket at that time) of permitting Mr. Bareket to review the un-redacted Complaint and First Amended Complaint during the Discovery Conference.  (Ex. 6, December 8, 2020 Discovery Conference Tr., pp. 14-15.)  Defendants' unfounded and hypocritical position should be rejected.  *The agreement was limited to the un-redacted Complaint as Defendants well know – not, as Defendants' counsel now opportunistically argues, intended to constitute carte blanche permission for Mr. Bareket to access all of Spectrum's Highly Confidential Information*.  (Ex. 8, Defendants' January 9, 2019 email (Ms. Butler stating "as for a Protective Order, the parties will enter into one in due course and Mr. Bareket's access to additional information will be governed by that order. *The issue currently before us relates only to access to the unredacted complaint*.").)

Defendants conflate two entirely different matters.  Spectrum's un-redacted Complaints (filed under seal) contain only Spectrum Trade Secrets that Spectrum asserts that Defendants had already seen and improperly placed in the public domain.  This is a far cry from an

9

agreement to permit Mr. Bareket unfettered access to all of Spectrum's Highly Confidential Information, including proprietary and sensitive Spectrum business plans, financial information and technical information not in the public domain.

As such, the Court should reject Defendants' objections to Mr. Cabanel on these grounds or apply the objections equally to both designees and exclude Mr. Bareket also.

### III.  Conclusion

For the foregoing reasons, Plaintiff Spectrum requests the Court to deny Defendants' tactical objection to Mr. Cabanel, and permit Mr. Cabanel to serve as Spectrum's designated Legal Consultant under Paragraph 8 of the Order.

Dated:  December 18, 2020

GREENBLUM & BERNSTEIN, P.L.C.

/s/  *Neil F. Greenblum*
Neil F. Greenblum, Esq.
P. Branko Pejic, Esq.
Jeffrey H. Handelsman, Esq.
Jill M. Browning, Esq.
GREENBLUM & BERNSTEIN, P.L.C.
1950 Roland Clarke Place
Reston, Virginia 20191
(703) 716-1191
ngreenblum@gbpatent.com
bpejic@gbpatent.com
jhandelsman@gbpatent.com
jbrowning@gbpatent.com

Gregory D. Miller, Esq.
RIVKIN RADLER LLP
25 Main Street, Suite 501
Court Plaza North
Hackensack, NJ 07601-7082
(201) 287-2460
Gregory.Miller@rivkin.com

*Attorneys for Spectrum Dynamics Medical Limited*