**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>                        Plaintiff,<br><br>      v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., GE MEDICAL SYSTEMS ISRAEL LTD., JEAN-PAUL BOUHNIK, SERGIO STEINFELD, ARIE ESCHO, NATHAN HERMONY, and YARON HEFETZ,<br><br>                     Defendants. | Case No.: 18-cv-11386 (VSB)<br><br>**JURY TRIAL DEMANDED**<br><br>**HIGHLY CONFIDENTIAL –**<br>**SUBJECT TO PROTECTIVE**<br>**ORDER** |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................1

    A.   Relief Requested ...............................................................................1

    B.   Brief Historical Overview ................................................................1

    C.   Spectrum's Preliminary Injunction Motion is Timely .........................6

II.  STATEMENT OF RELEVANT FACTS ........................................................8

    A.   Nuclear Medicine ..............................................................................8

    B.   Conventional SPECT Technology.....................................................8

    C.   Spectrum's Early Success With The Cardiac D-SPECT® Imager Followed By The VERITON® Multi-Purpose Camera ........................11

    D.   The 2009 Agreement........................................................................14

    E.   The GE StarGuide Imitates The Spectrum VERITON® .....................16

    F.   Spectrum CI Conveyed To GE From 2009-2012 ................................20

        1.   Early 2009 Interactions Between GE and Spectrum ................................20

        2.   Key Features Of Spectrum's GPC Design Conveyed In September 2009 Meeting ..........................................................................21

        3.   Spectrum Continued To Convey Spectrum CI To GE Over The Course of 2010 ........................................................................23

        4.   During The June 2010 In-Person Meeting Spectrum Disclosed Spectrum CI Including ███████████████ ███████████ ........................................................................23

        5.   Spectrum's Simulation Data Established The Proof-Of-Concept To GE And Taught GE Critical Performance Specifications Which GE Would Then Misuse Throughout Its Development and Engineering Process ........................................................................26

            a.   Simulations Are A Critical Tool Used In The Design Process........................................................................26

i

b.    Even Though GE's Initial Simulation Attempts Failed, GE Continued To Learn Additional Spectrum CI During The Due Diligence ............................................................27

6.    Additional Exchanges of Spectrum CI in 2012......................................29

7.    Conclusion Of Negotiations....................................................33

G.    GE's Misuse Of The Spectrum Information ........................................33

1.    The GE "GPC Team" Comprised The Same People Involved In The Spectrum Due Diligence ..................................................34

2.    GE's GPC Team Immediately Plans A GPC With Spectrum's Features And Design ........................................................34

3.    GE's Parallel Simulation Efforts In 2012 Led To Unauthorized Access To And Misuse Of Spectrum CI After The Parties Ended Negotiations ...............................................................36

a.    GE Based Its Simulation Software On Spectrum CI ...................36

b.    GE Continued To Access And Rely Upon The GE Software Which Included Spectrum CI Baked In .......................................38

4.    GE Adopted Spectrum's Performance Specifications From The Simulations ............................................................41

5.    GE'S Master Plan Copies Spectrum's GPC Design ................................43

III.    ARGUMENT ....................................................................46

A.    Legal Standard ................................................................46

B.    Absent A Preliminary Injunction, There Are Several Categories Of Injuries To Spectrum That Will Result In Irreparable Harm .............................46

1.    Spectrum Will Lose The Advantage Of Being The Pioneer In The Field .......................................................................47

2.    Spectrum Will Lose Sales......................................................47

3.    Spectrum Will Suffer Price Erosion ...........................................49

4.    Spectrum Will Lose Market Share .............................................49

5.      Spectrum Will Lose Prospective Goodwill And Reputation ....................50

6.      Spectrum Is Threatened With Serious Danger Of ███████
        ███████ .........................................................................................53

7.      Spectrum Will Suffer Harm From Loss Of Competitive Advantage
        Due To GE'S Head-Start By Skipping Years Of Research And
        Development .........................................................................................53

8.      A Preliminary Injunction Is An Appropriate Remedy For Breach Of
        Contract Where, As Here Money Damages Would Be Very Difficult
        To Calculate And Would Not Compensate Spectrum For Harm.............55

C.      Defendants Breached The 2009 Agreement By Misusing The Spectrum CI
        To Develop The StarGuide........................................................................56

D.      The Balance Of Hardships Tips Decidedly In Favor Of Spectrum And
        Issuing A Preliminary Injunction..........................................................56

E.      The Public Interest Will Be Served By The Issuance Of A Preliminary
        Injunction...............................................................................................57

IV.   SCOPE OF THE REQUESTED INJUNCTION ..............................................59

V.    CONCLUSION .................................................................................................59

# TABLE OF AUTHORITIES

**Cases**

*3M v. Francavilla*,
   191 F. Supp. 2d 270 (D. Conn. 2002)......................................................................54

*Cf. Interbake Foods, L.L.C. v. Tomasiello*,
   461 F. Supp. 2d 943 (N.D. Iowa 2006) ..................................................................54

*Cordis Corp. v. Bos. Sci. Corp.*,
   99 F. App'x 928 (Fed. Cir. 2004) ...........................................................................58

*Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*,
   No. 3:14-cv-917 (JCH), 2014 U.S. Dist. LEXIS 147060, at *36 (D. Conn. Oct. 15,
   2014).........................................................................................................................58

*Douglas Dynamics, LLC v. Buyers Products Co.*,
   717 F.3d 1336 (Fed. Cir. 2013)...............................................................................51

*Ferring B.V. v. Reprise Biopharmaceutics, LLC*,
   348 F. Supp. 3d 236 (S.D.N.Y. 2018) .....................................................................46

*Goat Fashion Ltd. v. 1661, Inc.*,
   No. 19-cv-11045 (PAE), 2020 U.S. Dist. LEXIS 178636, at *17 (S.D.N.Y. Sep. 28,
   2020).................................................................................................................6, 56

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
   No. 11-cv-7211 (PGG), 2012 U.S. Dist. LEXIS 103864, at *52-53 (S.D.N.Y.
   July 24, 2012).......................................................................... 46, 47, 50, 57

*Hybritech Inc. v. Abbott Labs.*,
   849 F.2d 1446 (Fed. Cir. 1988)..................................................................................6

*Jacobson & Co., Inc. v. Armstrong Cork Co.*,
   548 F.2d 438 (2d Cir. 1977)....................................................................................50

*Juergensen Def. Corp. v. Carleton Techs., Inc.*,
   No. 08-CV-959A, 2010 U.S. Dist. LEXIS 65540, at *42-43 (W.D.N.Y. June 21, 2010).........53

*Malkentzos v. DeBuono*,
   102 F.3d 50 (2d Cir. 1996)........................................................................................6

*Mason v. AmTrust Fin. Servs.*,
   848 F. App'x 447 (2d Cir. 2021) .............................................................................46

*Miss Am. Org. v. Mattel, Inc.*,
   945 F.2d 536 (2d Cir. 1991)....................................................................................50

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) .....................................................................56

*Nat'l Elevator Cab & Door Corp v. H & B, Inc.*,
   282 F. App'x 885 (2d Cir. 2008) .............................................................................50

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
  237 F.3d 1359 (Fed. Cir. 2001)...............................................................................49

*RealPage, Inc. v. Enter. Risk Control, LLC*,
  Civil Action No. 4:16-CV-00737, 2017 U.S. Dist. LEXIS 122004, at *39 (E.D. Tex.
  Aug. 3, 2017)...............................................................................54

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...............................................................................55

*Reuters Ltd. v. United Press Int'l, Inc.*,
  903 F.2d 904 (2d Cir. 1990)...............................................................................46

*Rodriguez v. DeBuono*,
  175 F.3d 227 (2d Cir. 1999)...............................................................................46

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*,
  749 F.2d 124 (2d Cir. 1984)...............................................................................53

*Smith & Nephew, Inc. v. Biomet, Inc.*,
  05-611-KI, 2005 U.S. Dist. LEXIS 31723, 2005 WL 3132313, at *19 (D. Or. Nov. 21,
  2005)...............................................................................58

*SPBS, Inc. v. John D. Mobley & Intermed Grp. Servs., Inc.*,
  Civil Action No. 4:18-CV-00391, 2018 U.S. Dist. LEXIS 148881, at *41 (E.D. Tex.
  Aug. 31, 2018)...............................................................................54

*Sunni, LLC v. Edible Arrangements, Inc.*,
  No. 14-cv-461 (KPF), 2014 U.S. Dist. LEXIS 40258, at *35 (S.D.N.Y. Mar. 25, 2014).........53

*Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*,
  828 F. App'x 74 (2d Cir. 2020)...............................................................................50

*Ticor Title Ins. Co. v. Cohen*,
  173 F.3d 63 (2d Cir. 1999)...............................................................................55

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995)...............................................................................50, 53

*Uppal v. N.Y. State Dep't of Health*,
  756 F. App'x 95 (2d Cir. 2019)...............................................................................46

## I.     PRELIMINARY STATEMENT

### A.     Relief Requested

Plaintiff Spectrum Dynamics Limited ("Plaintiff" or "Spectrum") initiated this action against Defendants General Electric and others on December 6, 2018, seeking injunctive relief and damages for GE's misuse and misappropriation of confidential and proprietary Spectrum Information, including its trade secrets and know-how ("Spectrum CI") as defined at Paragraph 1.2 of the Amended and Restated Mutual Confidentiality and Non-Use Agreement (Ex. 8, "2009 Agreement").  *See* First Amended Complain, [D.I. 36], Counts I, II, III and IV). GE's misuse of the Spectrum CI, coupled with the irreparable harm to Spectrum, justifies preliminarily enjoining further sales of GE's recently (June 2021) launched StarGuide SPECT scanning system, which GE developed by misusing the Spectrum CI to directly compete with Spectrum's SPECT scanning system, the VERITON®.

### B.     Brief Historical Overview

Spectrum, a market leader and innovator, has developed breakthrough SPECT (technology, addressing many shortcomings of the SPECT Single Photon Emission Computed Tomography) imaging devices on the market.  In 2007, Spectrum introduced the D-SPECT®, a cardiac imaging device that was immediately recognized as a revolutionary product that changed nuclear cardiology.  Ex. 3, Declaration of Yoel Zilberstien ¶ 26. ("Ex. 3, YZ Dec."); Ex. 4, Declaration of Gilad Yoeli, ¶ 4. ("Ex. 4, GY Dec.").  Building on the success of the D-SPECT®, Spectrum began designing and developing a whole-body multi-purpose system (sometimes referred to as a "General Purpose Camera" or "GPC"), which culminated in the VERITON® which, launched in 2017. Ex.5, Declaration of Nathaniel Roth, ¶¶ 32-33. ("Ex. 5, NR Dec.")

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

The VERITON® is based on technology developed for the D-SPECT®, although improved and modified to provide the broader functionality of a GPC. Ex. 5, NR Dec., ¶¶ 32-33.  The VERITON® represents years of Spectrum's extensive research, innovation, and development, as well as the expenditure of tens of millions of dollars. Ex. 4, GY Dec., ¶ 44.

In anticipation of a possible acquisition, GE and Spectrum engaged in due diligence discussions from 2009-2012 where Spectrum extensively shared its Spectrum CI with GE, comprising confidential and proprietary know-how, trade secrets, projections, software, business information, algorithms, and the like. Ex. 4, GY Dec., ¶¶ 9-11, 14. ████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████.

The extensive Spectrum CI shared with GE during the due diligence period included (i) the overall Spectrum system design that could achieve these results, (ii) critical performance specifications (e.g., scan time/resolution) along with the simulation data underlying these specifications, and (iii) algorithms for acquiring data. Ex. 5, NR Dec., ¶¶ 42-51.  This Spectrum CI convinced GE that Spectrum's GPC design – which went against conventional thinking – could achieve the desired feature of producing higher quality images in a shorter time. Ex. 4, GY Dec., ¶ 10; Ex. 5, NR Dec., ¶ 50.

Before the VERITON®, the conventional thinking (which is reflected in GE's prior scanning machines) was that a large detector area is needed to make the device sufficiently sensitive to produce a high quality image. Ex. 5, NR Dec., ¶ 14.  Spectrum, when designing the VERITON®, counter-intuitively █████████████████████████████

█████████████████████████████████████████████████████

2

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

███████████████████████████████████████████████████. Ex. 5, NR

Dec., ¶ 24.  This surprisingly resulted in improved resolution and a higher quality image, and

the market immediately recognized the improvement.  Ex. 5, NR Dec., ¶¶ 13, 24.

     Spectrum shared (i) GE the overall design of the device with GE that would achieve

these results, (ii) critical performance specifications (scan time/resolution) and simulation data

upon which the performance specifications were based, and (iii) algorithms for acquiring and

reconstructing data.  Ex. 5, NR Dec., ¶¶ 42-51.  ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████.

        ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████.

        ████████████████████████████████████

        ████████████████████████████████████

        ████████████████████████████████████

        ██.

███████████████████████.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

Thereafter, Spectrum continued developing its GPC technology and GE continued to conduct the due diligence through the end of 2012. Ex. 4, GY Dec., ¶¶ 9-11.  In February 2013, after GE was informed that Spectrum refused GE's bid to acquire Spectrum in favor of another offer, GE misused the Spectrum CI, in violation of the 2009 Agreement, to design and develop a SPECT GPC device ("GE Imitation Device") that now competes with the VERITON®.

GE's Imitation Device, currently being marketed as the StarGuide, bears an uncanny resemblance to, and shares multiple technical and operational features with, the VERITON® scanner. Ex. 4, GY Dec., ¶¶ 25-27, 32. ████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████

The similarities between the Spectrum VERITON® and GE StarGuide are neither a coincidence, nor the result of independent development. ████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████. Significantly, the GE StarGuide was designed, directed and developed by essentially the same group of GE personnel who conducted the in-depth due diligence of Spectrum from 2009-2012.

4

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████.

The misuse of Spectrum CI provided GE with an enormous competitive advantage, by pointing GE in a direction GE would not have otherwise pursued, and permitting GE to skip R&D and go directly to engineering – getting GE to the market with a GPC that competes with the VERITON® well before GE could have otherwise done so.  Ex. 1, Declaration of Scott Metzler, Ph.D, ¶¶ 99, 160-162 ("Ex.1, SM Dec.").

The Food and Drug Administration "(FDA)" recently approved the GE Imitation Device, and GE began commercializing the StarGuide in June, 2021. Ex. 4, GY Dec., ¶¶ 26-27. Plaintiff seeks a preliminary injunction prohibiting GE from further offering for sale and selling the StarGuide, pending final resolution of this action.

In support of this Motion, Plaintiff demonstrates that GE breached the 2009 Agreement by misusing and misappropriating Spectrum CI in developing and engineering the StarGuide. Plaintiff further demonstrates that GE's introduction of the GE StarGuide to directly compete with the VERITON® will result in irreparable harm to Spectrum, for which money damages would not compensate, and that granting this injunction does not put the public at risk of injury.

5

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

**C.      Spectrum's Preliminary Injunction Motion is Timely**

While the Court has noted that it is "atypical" for a party to file a preliminary injunction motion during this juncture of a case [D.I. 342 at 3], the Federal Circuit has recognized that "a showing of delay does not preclude, *as a matter of law*, a determination of irreparable harm." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) (emphasis in original). Here, Spectrum believes there has been no delay, and further that, the preliminary injunction motion is timely for, at least, the reasons set forth herein.

In June 2018, Spectrum discovered a version of the GE Imitation Device at the Rambam Hospital in Haifa, Israel. Ex. 3, YZ Dec., ¶¶ 34-35.  At that time, Spectrum did not know, and in fact, could not know, the features and functionalities of the device, much less whether the GE Imitation Device was the product of GE's misuse of Spectrum CI.  Spectrum filed suit on December 6, 2018 [D.I. 2] and filed a first amended complaint on May 14, 2019 [D.I. 38].

GE made no public announcement of a sale of the StarGuide until June, 2021, and the first confirmed sale of a StarGuide of which Spectrum is aware was in June, 2021. Ex. 4, GY Dec., ¶ 26.  This District has recognized that it is reasonable for a party to seek an injunction only after the launch of sales on an e-commerce website.  *Goat Fashion Ltd. v. 1661, Inc.*, No. 19-cv-11045 (PAE), 2020 U.S. Dist. LEXIS 178636, at *15-*16 (S.D.N.Y. Sep. 28, 2020). Otherwise, Spectrum would have been seeking a preliminary injunction to halt sales of a device whose features and functionality could not be ascertained, which would have amounted to an advisory opinion. *Malkentzos v. DeBuono*, 102 F.3d 50, 55 (2d Cir. 1996) (stating that "[w]ithout a live controversy, any opinion issued by this Court would violate the long-standing rule against advisory opinions."). Notably, during the February 25, 2021 hearing before Magistrate Judge Parker (which was before GE received FDA approval for the StarGuide), Judge Parker stated, "I don't know about the timing of this . . . preliminary injunction motion

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

that you're contemplating. I don't know whether it makes sense . . . I'm not sure of the necessity for an injunction motion at this point when the FDA is just contemplating it." ([D.I. 200], at 27:13-28:5.)

GE's stonewalling and concerted motion practice denied Spectrum any "technical discovery" from GE (i.e., discovery of the unapproved StarGuide) until February 9, 2021, despite Spectrum having first served document requests on August 20, 2020, but even then the technical discovery did not relate to the final StarGuide.  GE continued to resist Spectrum's efforts to learn the status of the FDA review of the StarGuide to hamper and possibly avoid this request for a preliminary injunction. Starting with the December 18, 2020 Status Conference before Magistrate Judge Parker, GE rebuffed Spectrum's requested technical discovery, representing that the StarGuide is "a yet-to-be-released system" and "it hasn't even been cleared by the FDA yet."  (December 18, 2020 Hearing Tr. [D.I. 161], at 18:14-16.)  Yet, at the next Status Conference conducted on January 27, 2021, GE represented to Magistrate Judge Parker that FDA approval was not imminent.  (*See* January 27, 2021 Hearing Transcript [D.I. 182], at 32:3-8.)

Only after the FDA approved the StarGuide on March 29, 2021, did GE produced the FDA 510(k) (the application for FDA market approval which described the features of the StarGuide) on March 30, 2021.  GE, however, took even longer to produce other relevant documentation necessary to understand the structure, function and operation of the StarGuide, which Spectrum did not receive until June, 2021.  It was only after receiving this critical documentation that Spectrum was able to confirm that the Spectrum CI had been misappropriated into the StarGuide.

For at least these reasons, Spectrum submits that the earliest date Spectrum could have reasonably sought a preliminary injunction was in June, 2021, not taking into account the

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

additional time required to review and synthesize the discovery of the approved final StarGuide and prepare and file this preliminary injunction submission.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Nuclear Medicine

Nuclear medicine uses radioactive substances introduced into the bodies of patients for diagnosis and treatment. Ex. 1, SM Dec. ¶ 8.  These radioactive substances, also called radiopharmaceuticals or tracers, are produced by bonding radioactive isotopes with carrier molecules. While the radioactive isotope emits radiation, the carrier molecule carries it to specific organs or tissues in the human body so that it accumulates in the specific tissues or organs of interest (e.g., the heart or brain or cancerous metastases). *Id.*

The radiation emitted by the tracers can be detected by imaging devices such as SPECT devices at issue in this action to create an image of the tracer distribution. *Id.*

### B.     Conventional SPECT Technology

Conventional SPECT cameras have been used for many years in the nuclear medicine field and have been traditionally sold by several key players including GE, Philips and Siemens.  Ex. 1, SM Dec., ¶ 9; Ex. 5, NR Dec., ¶ 41; Ex. 4, GY Dec., ¶ 5. Conventional SPECT cameras typically include large detector plates, which were designed to acquire a two-dimensional (2D) image of a full body section. Eventually, the detector panels were designed to orbit around the patient's body to collect a series of 2D images from at least 180 degrees to recreate a three-dimensional (3D) image.   Ex. 1, SM Dec., ¶ 9.



8

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

A detector panel includes a detector crystal (or scintillator) and a collimator. Ex. 1, SM Dec., ¶ 10. Conventional SPECT cameras use indirect gamma conversion with Sodium Iodide (NaI) as the material that scintillates when "hit" by gamma rays and generates visible light that is converted into an electric signal through readout electronics, typically Photomultiplier Tubes. In 2007, Spectrum introduced its cardiac imager D-SPECT®, a new generation of clinical scanners for use in cardiac applications that employed Cadmium Zinc Telluride ("CZT") detectors to convert the gamma rays into an electrical signal. Ex. 5, NR Dec., ¶ 4; Ex. 1, SM Dec., ¶ 12.

A collimator is a type of "lens" for gamma rays which installed between the patient's body and the detector. Ex. 5, NR Dec., ¶ 3; Ex. 1, SM Dec., ¶13. Typically, collimators are made of lead and designed in a hexagonal pattern with holes that permit those gamma rays that are traveling parallel to the collimator holes to reach the detector. Ex. 5, NR Dec., ¶ 12. The walls of the openings are called "septa" with the collimator hole diameter being known as the "septal length" because it is the distance between the collimator walls. Ex. 1, SM Dec., ¶ 13.




When designing a collimator, there are tradeoffs between the ***resolution*** of the image, the ***sensitivity*** of the collimator (which is the count rate or number of photons detected) and the size of the Field of View "(FOV)" (which is that portion of the object/human body that a camera images). Ex. 1, SM Dec., ¶ 14; Ex. 5, NR Dec., ¶ 11. While a higher resolution collimator will

9

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

improve the ability to detect disease/abnormalities, a higher sensitivity collimator will improve the imaging speed and reduce image noise.  Ex. 5, NR Dec., ¶ 11.

Typically, collimator performance depends on its material and geometry (e.g., the holes shape, the holes size, the hole length) and the wall thickness of the opening ("septa thickness"). Ex. 5, NR Dec., ¶¶ 11-12.  The image resolution is improved, for example, by making the collimator holes smaller; however, reducing the collimator hole size reduces sensitivity, as fewer photons will make their way through the smaller holes to the detector.  Ex. 1, SM Dec., ¶ 14.

Conventional SPECT systems are equipped with a choice of collimators that are optimized to provide the best image for a particular clinical application. Ex. 1, SM Dec., ¶ 16. For example, one kind of collimator may be suitable for "bone scan" imaging, while a different collimator will be better suited for thyroid imaging.  *Id.*  To perform a SPECT scan, the detectors are positioned in proximity to the patient and orbited around the patient from 180 up to 360 degrees to acquire data to build up a series of 2D images. *Id.,* at ¶ 17.



The closer the detectors are located to the patient, the better the image quality; therefore SPECT cameras are equipped with body contouring technology to bring detectors as close as possible to the patient's body while avoiding a collision. Ex. 1, SM Dec., ¶¶ 15, 17.

Following data acquisition, a complicated mathematical iterative "reconstruction" algorithm creates a 3D image from the series of 2D images. Ex. 1, SM Dec., ¶ 19.  Iterative algorithms work by starting with an estimate of the activity distribution, typically uniform, and

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

calculating the expected set of projection data for that distribution; this process is known as forward projection. Ex. 1, SM Dec., ¶ 19. These expected projections are compared with the actual data to estimate a correction that will yield a better correspondence to the data (this process is known as backward projection). *Id.* A new iteration then begins with the forward projection of the updated activity distribution. *Id.* A reconstruction can take hundreds of iterations for convergence to the best-fit distribution while taking "noise" into account. *Id.*

SPECT technology has many limitations, such as long scan time, poor image quality, and low energy resolution, which the D-SPECT® and VERITON® greatly improve upon.

**C.   Spectrum's Early Success With The Cardiac D-SPECT® Imager Followed By The VERITON® Multi-Purpose Camera**

To address the limitations of conventional SPECT technology, Spectrum developed breakthrough technology and, in 2007, introduced the D-SPECT® for cardiac applications. Ex. 4, GY Dec., ¶¶ 4, 19-21. ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *see also* Ex. 47 at SDML_00198745; Ex. 4, GY Dec., ¶ 4.

The D-SPECT®'s multiple advances included:

- ████████████████████████████████████████

- Small detector columns equipped with CZT digital detector crystals (used for the first time in a commercial system);

- █████████████████████████████████████████
  ████████████████████████

- ███████████████████████████████████

- ████████████████████████████████ and

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

• ████████████████████████████████████████████
████████████████████.

Ex.1 SM Dec., ¶¶ 22-29; Ex. 47 at SDML_00198745; Ex. 4, GY Dec., ¶¶ 4, 19-21.

The D-SPECT®'s novel architecture addressed the sensitivity and resolution tradeoff paradigm by providing both faster scanning (eight times faster) and higher image resolution. Ex. 5, NR Dec., ¶ 4.  While the conventional SPECT cameras (shown on the left below) have limited sensitivity due to the inefficient detector area usage and collimator geometry, the D-SPECT® offers an efficient ████████████████████████████████████████
████████████████████████████████████████████ Ex. 3, YZ Dec., ¶¶ 15-24; Ex. 5, NR Dec., ¶ 26.



In addition, while conventional SPECT cameras (shown on the left) have limited resolution due to the large, bulky detectors not being able to closely approach the patient, the D-SPECT® ████████████████████████████████████. Ex. 5, NR Dec., ¶¶ 4-5, 14; Ex. 1, SM Dec., ¶ 27



-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

Despite these technological advances of the D-SPECT® being immediately recognized and endorsed by key opinion leaders, breaking into the SPECT market was a big challenge for Spectrum because it required persuading hospitals and clinics to purchase complicated and expensive devices from an unknown start-up company that cost 2.5 times the cost of the old technology SPECT systems sold by Siemens, GE and Philips. Ex. 4, GY Dec., ¶ 5. These three companies held about 90% of the cardiac SPECT market and were selling cameras based on technology developed in the 1960s described above (analog detectors using sodium iodide and photomultipliers mounted on two large, heavy flat panels). *Id.*

It took Spectrum several years of gathering clinical evidence demonstrating D-SPECT®'s capabilities, improving the system's functions and reliability, and introducing novel applications (e.g., ████████████████████████████████████████) to persuade the larger market that D-SPECT® was the superior product. Ex. 4, GY Dec., ¶¶ 4-5, 19-21.

After the success of the D-SPECT®, Spectrum decided to develop a whole-body GPC system, which Spectrum introduced as the VERITON® in 2017 and marketed in 2018. The VERITON® is based on technology developed ██████████████████████ ███████████████████████████████████. Ex. 5, NR Dec., ¶ 32-33. The VERITON® represents years of Spectrum's extensive research, innovation, and development, as well as the expenditure of tens of millions of dollars. Ex. 4, GY Dec., ¶ 44.

Like the D-SPECT®, the VERITON® was new and unique to the industry, incorporating major departures from existing GPCs. Ex.1, SM Dec., ¶¶ 36-38. The VERITON® was hailed as a "major leap" in the design of whole-body SPECT/CT systems, noting specifically that the VERITON® was the first device having a 360 degree ring-shaped gantry equipped with multiple movable swiveling detectors surrounding the patient. Ex. 9, at SDML_01063594; Ex.

13

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

4, GY Dec., ¶ 31.

While the VERITON® includes multiple advances, this Motion focuses on the following features:



Ex. 1, SM Dec., ¶¶ 37-38.

### D.    The 2009 Agreement

GE and Spectrum engaged in multiple technical and business discussions between 2001-2012 under multiple non-disclosure agreements ("NDA").  Ex. 4, GY Dec., ¶¶ 7-9. During 2004-2005, the discussions focused on the D-SPECT®, but concluded without reaching a deal.  Ex. 4, GY Dec., ¶ 7.  Instead, GE developed its own cardiac SPECT camera, which became known as the Discovery NM 530c ("GE530c").  *Id.*  GE recognized that the GE530c had multiple disadvantages compared to the D-SPECT®[1], which led the parties to re-start

_____

[1]

14
-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

discussions in 2009.  Ex. 3, YZ Dec., ¶¶ 26-28.  In this respect, GE and Spectrum[2] entered into the 2009 Agreement on September 16, 2009, to facilitate the exchange of Information "*for the sole purpose of evaluating a possible relationship between [GE] and Spectrum (the Purpose")*."  Ex. 8, 2009 Agreement, Recitals B, E (emphasis added).

The 2009 Agreement acknowledges the prior NDA's between the parties and expressly acknowledges the highly sensitive, confidential, proprietary and valuable nature of the additional Spectrum CI being provided to GE thereunder:

> Spectrum has provided extensive information to the Company in connection with the Purpose, and the Company has requested additional detailed and highly proprietary information of Spectrum, and, in recognition of this request, the parties wish to update and replace the Original Agreements with this Agreement.

Ex. 8, 2009 Agreement, Recital B.

The 2009 Agreement further provides clear non-use provisions, prohibiting the *use* by GE of any Spectrum CI outside of the express stated **Purpose** of the 2009 Agreement:

> Each Party shall use Information of the other party solely for the Purpose and ***not use the Information or any part, portion, or element thereof, or any idea, concept, invention, technique, discovery or design deriving from the Information in any way whatsoever*** other than for the Purpose.

Ex. 8, 2009 Agreement ¶ 1.2 (emphasis added).  While the 2009 Agreement permits GE to independently develop technology, it expressly prohibits GE from using Spectrum CI for any such GE development. Ex. 8, 2009 Agreement ¶ 5.

---

███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████.

[2] Spectrum is the successor-in-interest to the 2009 Agreement, and owns all of the Spectrum CI.  Ex. 4, GY Dec., ¶¶ 2-3.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

GE's "obligations and duties pursuant to this [2009] Agreement" did not expire "until the earlier of i) the consummation of a Transaction .... (ii) such Information is in the public domain through no fault of a Receiving Party or (iii) six (6) years from the date of disclosure." Ex. 8, 2009 Agreement, ¶ 7.  Thus, until one of those events occurred, GE was not permitted to use Spectrum CI for anything other than the stated Purpose of the 2009 Agreement.

The evidence submitted[3] herewith establishes that GE violated at least Paragraphs 1.2 and 5 of the 2009 Agreement by misusing and misappropriating Spectrum CI in developing and engineering the StarGuide, starting in 2013 shortly after negotiations with Spectrum ended. As a result, GE should be preliminarily enjoined from selling the StarGuide during the course of this action and permanently enjoined thereafter.

### E.     The GE StarGuide Imitates The Spectrum VERITON®

GE's Imitation Device (which GE initially called "Stargate" during development and later coined "StarGuide" when commercialized) is the direct result of GE's misuse of Spectrum CI.  As shown by the below side-by-side depictions, GE's StarGuide has a high degree of similarity in appearance to the VERITON®.




SPECTRUM'S VERITON (2017)        GE'S STARGUIDE (2021)

---

[3] Spectrum does not address in this Motion GE's use of Spectrum's CI to impermissibly inform its patenting program and GE's failure to properly name Spectrum employees as inventors on certain of its patents.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-



In addition to looking similar in outward appearance, the GE StarGuide includes numerous features that are substantially identical to the VERITON®. Ex. 1, SM Dec., ¶¶ 39-45. ████████████████████████████████████████████████████████

████████████████████████



-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

| ████████████ | ██████████████████████████ ████████████████████████ ████████████████████████ ███████████████████ |
|---|---|
| ████████████████████ | ████████████████████████ ████████████████████████ ███████████████████ █████████████████████████ ████████████████████ ██████████████ |

The StarGuide utilizes these six features in the same way as the Spectrum GPC design provided to GE that is incorporated into the VERITON®. ██████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██

████████████████████████████

██████████████████████████████████

██████████████████████████████████ and this

was disclosed to GE during the due diligence period.  Ex. 5, NR Dec., ¶¶ 27, 51. ████████

██████████████████████████████████

█████████████████████████

███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
██████████████████████

███████████████████████

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████        As will be shown below, the striking similarity in appearance and function between GE's StarGuide and Spectrum's VERITON® is not an accident, but the result of GE's copying and misuse of Spectrum's CI.

        The following section II.F. sets forth the details and manner in which the Spectrum CI was shared with GE pursuant to the 2009 Agreement, focusing on the features and functionality

---

[4] GE's general purpose scanners still being offered are referred to as the NM 800 series. Ex. 1, SM Dec., ¶ 35.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

of Spectrum's novel GPC design enumerated above. Section II.G then details the manner in which GE misused the Spectrum CI in engineering its GPC which ultimately became the StarGuide.

      **F.**      **Spectrum CI Conveyed To GE From 2009-2012**

            **1.**      **Early 2009 Interactions Between GE and Spectrum**

It was no secret that Spectrum's D-SPECT® outperformed the GE530 in the cardiac imaging field. Ex.5, NR Dec., ¶ 39. In April 2009, Spectrum and GE reopened discussions for GE to acquire the D-SPECT®. Ex. 4, GY Dec., ¶ 8; Ex. 1, SM Dec., ¶ 46; Ex. 52. While the original purpose of the discussions was to review and evaluate the D-SPECT®, it quickly evolved to include Spectrum's plans to introduce a whole-body scanner or GPC. Ex. 4, GY Dec., ¶¶ 7-8, 10.

In July 2009, Spectrum made a presentation to GE directed to the D-SPECT® and also the Spectrum GPC design. Ex. 5, NR Dec., ¶ 42. By August, 2009, Spectrum had shared both financial and technical information relating to D-SPECT® and the GPC design with GE including, for example, a presentation on ███████████ that was provided to GE's Shuchi Varandani on August 20, 2009. Ex. 53.; Ex. 5, NR Dec., ¶ 42.

At this point, GE was very interested in the Spectrum GPC design and associated technology. Ex. 5, NR Dec., ¶¶ 40-43. However, GE expressed doubts regarding the viability of Spectrum's design approach and, thus, GE made clear that if discussions were to proceed, very serious due diligence would be necessary. Ex. 5, NR Dec., ¶ 43. The parties, therefore, negotiated and entered into the 2009 Agreement. Ex. 5, NR Dec., ¶ 40.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

**2.      Key Features Of Spectrum's GPC Design Conveyed In September 2009 Meeting**

Spectrum conveyed to GE the 6 main concepts identified in the chart above, along with a plethora of other Spectrum CI throughout the due diligence, by both email and in-person meetings.  For example, on September 16, 2009, the parties held an in-person due diligence meeting[5], attended by scientific representatives of both the GE Research team (Alex Ganin, Floris Jansen, Nathan Hermony and others) and Spectrum (Yoel Zilberstien, Nathaniel Roth, and others).  Ex. 5, NR Dec., ¶ 42; Ex. 55 at SDML_01279740 (listing attendees and setting forth agenda); Ex. 1, SM Dec., ¶ 49; Ex. 130 at SDML_00667196. GE discussed Spectrum's ███████████████████████████████████████████████. Ex. 5, NR Dec., ¶ 42.

During this meeting, Spectrum introduced GE to the Spectrum GPC design, referring to a PowerPoint presentation (Ex. 55 at SDML_01279741-0127807) containing a ██████ ████████████████████ (Ex. 56 at SDML_00672946 and SDML_00673024) with the following novel features:

- ██████████████████████████████████████████ ██████████████████████ which Spectrum disclosed to GE);

- ██████████████████████████████████████████ ████████████████████████ Ex. 5, NR Dec., ¶ 42; Ex. 55 at SDML_01279781;

- ██████████████████████████████████████████ █████████████████████████████████, Ex. 5, NR Dec., ¶ 42; Ex. 55 at SDML_01279781); Ex. 56, SDML_00673024; Ex. 57, Sept. 16, 2009 transcript at 195:4-16, 196:3-20, 198:2-10);

_____


[5] ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ Ex.1, SM Dec., ¶¶ 48, 149-159. ███████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ Many of the technical people who met with Spectrum on September 16, 2009, including Ganin, Jansen, Manjeshwar and Hermony, received ███████████████████████████.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

- ██████████████████, Ex. 5, NR Dec., ¶ 42; Ex. 55 at SDML_01279769; Ex. 57, Sept. 16, 2009 transcript at 175:16);

- ████████████████████████████████████████████████████, Ex. 5, NR Dec., ¶ 42; Ex. 55 at SDML_0127971-83; Ex. 56 at SDML_00673024; Ex. 57, Sept. 16, 2009 transcript at 196:3-16; and

- ████████████████████████████████████████████ ████████████████████████████████ (Ex. 55 at SDML_01279781-83; Ex. 57, Sept. 16, 2009 transcript at 26; 19-27:15; Ex 143 at SDML_00015221, which GE had in its possession: Ex 45 at Ge_SDM_00297206).

Ex. 5, NR Dec., ¶ 38.

The PowerPoint presentation also included a slide showing Spectrum's GPC alpha prototype, which Spectrum built in 2009 to demonstrate proof-of-concept of its novel GPC design.  Ex. 56 at SDML_00672986. Spectrum built the early ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 5, NR Dec., ¶¶ 32-33.

During the September 2009 meeting, GE's Alex Ganin expressed doubts about the technological and clinical aspects of Spectrum's GPC design questioning Spectrum representatives about the details of certain algorithms that Spectrum was using to achieve the results they were getting.  Ex. 57.  Sept. 16, 2009 transcript at 118:12-16, 119:5-7; Ex. 5, NR Dec., ¶ 42.

To address these concerns, over the next few months Spectrum continued to share additional Spectrum CI with GE relating to the Spectrum GPC design, including the Spectrum GPC alpha prototype ████████████████████████████████████████████████.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

### 3.    Spectrum Continued To Convey Spectrum CI To GE Over The Course of 2010

In February, 2010, Spectrum forwarded to GE's Nathan Hermony the ███████████

██████████████ that was shown to GE during the September 2009 in-person meeting and

a  presentation  titled  ███████████████████  Ex.  59  at  SDML_00038558,

SDML_00038559; Ex. 58; Ex. 5, NR Dec., ¶ 43. The presentation and video disclosed the

above critical features of Spectrum's GPC design, which solve many of the drawbacks of the

prior GPC's.

In April, 2010, Yoel Zilberstien emailed GE's Nathan Hermony numerous detailed

GPC concept videos. Ex. 5, NR Dec., ¶ 43; Ex. 67 (attaching multiple videos).  In June, 2010,

Mr. Zilberstien emailed Mr. Hermony additional presentations showing ████████████████

██████████████████████████████████████████████████████.

Ex. 68, SDML_00723858-00723874; Ex. 5, NR Dec., ¶¶ 43, 51.

Spectrum's novel GPC design, addressed the prior GPC's large, unwieldy detectors by

using instead ██████████████████████████████████████████████

██████████████. Ex. 1, SM Dec., ¶ 51.  Spectrum's GPC design also included a ███

██████████████████████████████████████████████

██████████████████ Ex. 1, SM Dec., ¶ 53.  This was, as noted above, one of

the departures in conventional thinking about which GE was initially skeptical.  The ███████

██████████████████████ which ran counter to the conventional thinking

that a ████████████████████████ Ex. 1, SM Dec., ¶ 51.

### 4.    During The June 2010 In-Person Meeting Spectrum Disclosed Spectrum CI Including ████████████████████ ███████████

In June, 2010, Spectrum hosted several members of the GE diligence group, including

Messrs. Ganin, Jansen, Bouhnik among others, for technical discussions.  Ex. 5, NR Dec., ¶

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

44.  During this meeting, Spectrum presented additional results of its GPC feasibility prototype as well as simulations of the advanced concept as reflected in the video.  *Id.*   "Simulations" are a critical tool used in the design and development of these types of SPECT devices, and the role simulations played in GE's misuse of Spectrum CI, are discussed in more detail in Sections II.F.5.a. - b. and II.G.3. below.

To assist GE's understanding of Spectrum's technology, ████████████████████

████████████████████████████████████████████████

█████████████████████████████████ Ex. 5, NR Dec., ¶ 40.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ex. 5, NR Dec., ¶ 44.

During this same June, 2010 in-person meeting, Mr. Roth provided Mr. Jansen with Spectrum CI, including ██████████████████████████████████

██████████████ Ex. 5, NR Dec., ¶ 44.  By this time, GE already had access to details relating to the ██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ via the data room.   Ex. 5, NR Dec., ¶ 44; Ex. 131 at SDML_01167715-718.

Mr. Roth also shared extensive and detailed information relating to Spectrum's ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ to accommodate its new GPC design.  Ex. 5, NR Dec., ¶¶ 26-31, 46, 51.  ████████████████████████████████████████

████████████████████████████████████████████████

24

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

████████████████████████████████████████████████ Ex. 5, NR Dec., ¶ 26.

This Spectrum CI was shared with GE.  Ex. 5, NR Dec., ¶¶ 46, 51.

GE and Spectrum discussed sharing additional ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Mr. Jansen memorialized at least some of the information Mr. Roth conveyed regarding

the ████████████████████████ in an email dated June 29, 2010, that (i)

attached a ██████████████████████████████████ (ii) informed

Mr. Roth that Mr. Jansen had ████████████████████████ (iii) asking Mr. Roth to

████████████████████ and (iv) ████████████████████

Ex. 65 at SDML_00038343; 00038348-9; Ex. 1, SM Dec., ¶ 63; Ex. 5, NR Dec., ¶ 46.

Mr. Jansen's presentation and embedded questions show without a doubt that Spectrum

taught GE Spectrum's highly innovative and confidential ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 5, NR Dec.,

¶ 46; Ex. 1, SM Dec., ¶¶ 63-64.

Mr. Jansen's presentation, likewise, confirms that Spectrum taught GE that the ███████

████████████████████████████████ Ex. 1, SM Dec., ¶ 66.  Mr. Jansen's

25

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

slide (Ex. 65 at SDML_00038346) first indicates that the goal is to ████████████ ██████████████████████████████████████████████████████████ Mr. Jansen then shows the ███████████████████████████ ████████████████████████████████████████████████████████ ███████ Ex. 65 at SDML_00038349; Ex. 1, SM Dec., ¶ 66.

The email exchange also establishes that GE was now attempting to replicate Spectrum's simulations.

### 5.   Spectrum's Simulation Data Established The Proof-Of-Concept To GE And Taught GE Critical Performance Specifications Which GE Would Then Misuse Throughout Its Development and Engineering Process

#### a.   Simulations Are A Critical Tool Used In The Design Process

Simulations are computer generated scans that take into account numerous variables associated with acquiring and reconstructing SPECT data. Ex.1, SM Dec., ¶ 56. Simulations are used to predict performance specifications that can be expected when running actual patient scans and are based on computer-generated data, including the expected number of "counts" or photons generated by the radioactive materials in the patient being scanned, background noise and artifacts. *Id.*

Knowing the parameters and techniques that were used in running the simulations, as well as seeing the resulting simulated scans, provides extremely valuable information, as it provides the optimized parameters and techniques that can achieve the desired results. *Id.* As discussed by Spectrum's Mr. Roth, the simulations are a critical and integral part of designing these types of SPECT devices, which Spectrum used extensively. Ex. 5, NR Dec., ¶¶ 45-47, 49-50.

26

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

Spectrum shared its simulation results with GE and, importantly, the parameters upon which Spectrum's simulations were based, which included the features described above associated with the Spectrum GPC design,[6] including, for example, the █████████ ████████████████████████████████████████████████████████████ ███████████████████ Ex. 5, NR Dec. ¶ 42.

<blockquote>
<strong>b.     Even Though GE's Initial Simulation Attempts Failed, GE Continued To Learn Additional Spectrum CI During The Due Diligence</strong>
</blockquote>

As reflected in Mr. Jansen's email to Mr. Roth above, GE was attempting to replicate Spectrum's simulation data at that time by using GE's own simulation of the data-acquisition process based on Spectrum's parameters and techniques.  Ex. 1, SM Dec., ¶ 57; Ex. 5, NR Dec., ¶ 46.  Spectrum worked with GE to finalize GE's simulations for more than a month, but GE was still unable to replicate Spectrum's simulations, as pointed out by Mr. Roth in an email dated August 16, 2010.  Ex. 5, NR Dec., ¶ 46; Ex. 60 at SDML_01168791 ("there are differences with your simulation" and attaching the simulation results); Ex. 61 at SDML_00263114 (email dated August 25, 2010 summarizing the discussion between Mr. Roth and Mr. Jansen regarding simulations and algorithms).  GE's difficulties are likely attributed to GE's inability to modify its software to take into account the very different architecture of Spectrum's D-SPECT® and VERITON®. *Id.*  Accordingly, Spectrum agreed to reconstruct simulated acquisition data that GE provided while GE tried to simulate the camera and the scans. Ex. 5, NR Dec., ¶ 46.  After several iterations, which included many simulation inaccuracies, Spectrum recognized that GE's and Spectrum's software were incompatible, so

---

[6] As noted earlier, Spectrum's vision was counter-intuitive to conventional thinking; namely - using ████████████████████████████████████████████████████████ █████████████████████████████████████████

<strong>-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-</strong>

Spectrum proceeded in parallel to provide its own simulations using a digital phantom[7] provided by GE's Floris Jansen.  Ex. 5, NR Dec., ¶ 46; Ex. 62, SDML_00038321-00038341.

Even though the simulations were not successful, GE continued to learn important Spectrum CI regarding Spectrum's ████████████████████████████████  Ex. 1, SM Dec., ¶ 62.  For example, in an email exchange between Mr. Jansen and Mr. Roth between August 25, 2010 and September 12, 2010, specific ████████████████████ ███████████████████ with Mr. Bouhnik copied on the email. Ex. 1, SM Dec., ¶ 60; Ex. 63 at GE_SDM_00366546. The ███████████████████████████████████████████ ████████████████████████ Ex. 1, SM Dec., ¶ 61.

Mr. Jansen acknowledged receiving Spectrum's ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. 64 at SDML_00733345; Ex. 1, SM Dec., ¶ 61.

In short, GE's use of Spectrum's simulations as a basis for developing the StarGate establishes that GE did not independently design its GPC, as GE did not have the proper tools to model and evaluate such a system.  Ex. 1, SM Dec., ¶ 62.

All of the Spectrum CI (the images, simulations and physical inspections) demonstrated to GE the feasibility of Spectrum's unique approach to the GPC design (at least for some applications) and provided tremendous insight into the ability of the D-SPECT® and the Spectrum GPC design (which ultimately became the VERITON®) to acquire and reconstruct data. Ex. 1, SM Dec., ¶ 69.

---

[7] A digital "phantom" is a computerized model, which is built and designed to provide images to assess imaging performance that can be compared to other systems using the same phantom. Ex. 5, NR Dec., ¶ 47.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**



### 6.     Additional Exchanges of Spectrum CI in 2012

Despite the doubts GE expressed earlier, GE and Spectrum reengaged in discussions in late 2011, and the parties decided to have a 3-day meeting during January 24-26, 2012, in Caesarea, Israel, to discuss Spectrum's progress with its novel GPC design and the simulation data. Ex. 5, NR Dec., ¶ 47.  William Burgman of GE sent out an extensive and detailed agenda by email dated January 23, 2012. Ex. 70 at SDML_00315381.

By this point, Spectrum had gone a long way to finalizing its GPC design, and had detailed specifications, including detailed electrical and mechanical designs of many sub-assemblies. Ex. 5, NR Dec., ¶ 47.  For example, Spectrum had determined, after much study and testing (and simulations), that ████████████████████████████████████ ████████████████████████████████████████████████████████

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

████████████████████████████████████████ *Id.*  Spectrum had made

extensive progress on the GPC design, including █████████████████████████

██████████████████████████████████████ *Id.*

     During the January, 2012, meetings with GE, Spectrum proceeded to share virtually

everything related to the Spectrum GPC design, including technology, methods, ideas,

processes and algorithms.  Ex. 5, NR Dec., ¶ 47.  Soon after the meeting, Spectrum, in response

to GE's requests, provided additional follow-up presentations, videos and information

reflecting the details shared during the January, 2012, meetings.  Ex. 1, SM Dec., ¶¶ 71-77.

For example, shortly after the meeting, Mr. Roth sent an email dated January 31, 2012 to

Aharon Peretz, Reuven Brenner, and Mr. Burgman, sharing documents regarding Spectrum's

████████████████████████████████████████ Ex. 78; Ex.

1, SM Dec., ¶ 71; Ex. 5, NR Dec., ¶ 50.

     Mr. Mahameed wanted to present this project to GE's higher-level management, and in

a series of emails from February 10-15, 2012, he asked Mr. Roth to provide ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 1, SM

Dec., ¶¶ 72-74; Exs. 72-76.  On February 14, 2012, Mr. Mahameed asked Mr. Roth to provide

the ████████████████████████ to include in his slide deck.  Ex. 76 at

SDML_00038491.  Mr. Roth responded with a draft PowerPoint presentation reflecting the

████████████████████ on the same day[8].  Ex. 72, at SDML_01180435-01180437.  Mr.

Mahameed also requested, on February 14, 2012, █████████████ which Mr. Roth supplied

---

[8] The information contained in this particular slide titled ██████████████████████
█████████████ was continually (mis)used by GE after the Purpose of the 2009 Agreement had
long subsided, as discussed below in Section II., G., 4.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

that same day in a PowerPoint entitled ██████████████████ Ex. 105 at SDML_01275201; Ex. 5, NR Dec., ¶ 47. Mr. Mahameed, on February 15, 2012, asked Mr. Roth to provide ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Ex. 106, at SDML_01180486.  In response, Mr. Roth provided a PowerPoint to Mr. Mahameed with the ███████████████████████████

██████████████████████████████████ that was shared with GE during the January 24, 2012, due diligence meeting[9]. Ex. 76; Ex. 1, SM Dec., ¶ 74.

The presentation shows Spectrum's use of the ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 76, at SDML_00038494; Ex. 5, NR Dec., ¶ 48.  This presentation likewise describes Spectrum's

████████████████████████████████████████████████████████████

Ex. 76 at SDML_00038494.

GE could easily use the information in this presentation to calculate the ████████

████████████████████████████ Ex. 1, SM Dec., ¶ 75; Ex. 5, NR Dec., ¶ 48.  Further, as noted above, other details relating to the █████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ had already been shared with GE via the data room[10].  Ex. 5, NR Dec., ¶¶ 44, 48; Ex. 131 at SDML_01167715-718.

---

[10] Also, details of Spectrum's ██████████████████████████ were shared with GE on September 12, 2011, during an in-person dinner and presentation. Ex. 98 at SDML_01597124-01597138; Ex. 99. Ex. 5, NR Dec., ¶ 48.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

In addition to this information, GE already received extensive Spectrum CI relating to the Spectrum GPC design, including the ██████████████████████ ████████████████████████ which was presented to GE during the January, 2012, meeting at the Dan Caesara Hotel in Israel and was also uploaded to the data room. Ex. 5, NR Dec., ¶ 48; Ex. 116 at SDML_01597182.  By January 31, 2012, additional detailed files and presentations reflecting the Spectrum CI were uploaded to the data room.  Ex. 78 at SDML_00038465.

The video Spectrum shared with Mr. Mahameed on February 15, 2012 (and which was previously shown to GE during the January 24, 2012 meeting, entitled ███████████ ████████████████████████████████████████████ Ex. 76 at SDML_00038492; Ex. 1, SM Dec., ¶ 76. This ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ Ex. 1, SM Dec., ¶ 76.  The video further demonstrates Spectrum's ███████████ ████████████████████████████████████████████ a point that was emphasized by Spectrum in the GPC alpha prototype, which would offer improved patient safety.  Ex. 1, SM Dec., ¶ 77; Ex. 121 at SDML_00845882.

The Spectrum CI showed that the Spectrum GPC design could perform a ███████████ ████████████████████ Ex. 5, NR Dec., ¶ 50. This was a critical element in the commercial viability of a 360° gantry SPECT device because it demonstrated that more patients could be scanned on a single device.  Ex. 5, NR Dec., ¶ 50.  This feature makes the device appealing not only to certain niche market players, but additionally positions the device in mainstream markets, thus making it very competitive.  *Id.*

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

Further discussions and exchanges of information between Spectrum and GE regarding the due diligence relating to the Spectrum GPC design continued after March, 2012.  Ex. 5, NR Dec., ¶ 50.

**7.     Conclusion Of Negotiations**

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

**G.     GE's Misuse Of The Spectrum Information**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

1.  **The GE "GPC Team" Comprised The Same People Involved In The Spectrum Due Diligence**

2.  **GE's GPC Team Immediately Plans A GPC With Spectrum's Features And Design**

34

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

35
-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

3.      **GE's Parallel Simulation Efforts In 2012 Led To Unauthorized Access To And Misuse Of Spectrum CI After The Parties Ended Negotiations**

a.      **GE Based Its Simulation Software On Spectrum CI**

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████

That is – the same GE personnel tasked in June, 2012, with heading GE's efforts to develop GE's next-generation ██████████████████████ were the same people receiving Spectrum CI in connection with GE's due diligence of Spectrum's next-generation GPC design. This group developed simulation software based on the Spectrum CI that GE learned during the due diligence.

███████████████████████████████████

████████████████████████████████████████

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

37

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-



**b.**   **GE Continued To Access And Rely Upon The GE Software Which Included Spectrum CI Baked In**

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

39

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

The negotiations between GE and Spectrum were long over; yet, GE continued to utilize the software that GE developed *based on the parameters and techniques Spectrum provided to GE during the 2009-2012 due diligence period* which were critically important to GE in developing its GPC system. In other words, the Spectrum CI was "baked into" the GE simulation software because GE utilized the Spectrum CI when designing its simulations upon which the StarGuide is based.

4.    **GE Adopted Spectrum's Performance Specifications From The Simulations**

The StarGuide was designed using the performance specifications Spectrum gave to GE in 2012 during the due diligence period. Spectrum developed these performance specifications by using the confidential Spectrum simulations – which are based on Spectrum's unique GPC design (including the ███████████████████████████████ ████████████ as well as Spectrum's unique ██████████████████ ████████ The specifications are important because they taught GE the feasibility of the parameters using Spectrum's design and GE knew it would be competing against in the market. Ex. 5, NR Dec., ¶ 47.

As noted above, shortly after the multi-day January 2012 technical meetings, Spectrum provided GE with performance specifications during the February 13-14, 2012 email exchange between GE's Mr. Mahameed and Spectrum's Mr. Roth reflected in Exs. 72-76 and 104-106 and discussed above in Section II., F., 6. Mr. Mahameed was seeking information for an internal presentation on the project and, on February 15, 2012, Mr. Mahameed updated Mr.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

Roth by providing PowerPoint slides that he presented to GE and also indicated that there were "some action items."  Ex. 107; Ex. 1, SM Dec., ¶ 120.

One of the slides is shown below on the left (Ex. 107 at SDML_00377561), and the performance specification provided by Mr. Roth to GE is shown below on the right (Ex. 72 at GE SDML_01180437):

GE                                SPECTRUM



The two slides are virtually identical with respect to substance, excepting the GE slide (Ex. 107) omits the ▮▮▮▮▮▮▮.  Ex. 1, SM Dec., ¶ 121.  In fact, the GPC* column is the same except that ▮▮▮▮▮▮▮▮▮▮▮ have been removed for the GPC* ▮▮▮▮▮  *Id.*  The GE GPC* column even uses the asterisk for the same footnote (stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was provided by Mr. Roth's version of the slide.  Ex. 1, SM Dec., ¶ 122.  The slides Mr. Mahameed sent back to Mr. Roth also include some images Mr. Roth provided to Mr. Mahameed. Ex. 1, SM Dec., ¶ 123 (comparing slides 5 and 6 of Ex. 76 at SDML_00038497-98 with the third slide of Ex. 107).

---

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

Accordingly, it is clear that GE violated the 2009 Agreement by continuing to access the Spectrum CI, which is baked into the performance specifications that GE received from Spectrum, and misuse this information as a comparison or benchmark to optimize StarGuide's performance specifications.

> 5. **GE'S Master Plan Copies Spectrum's GPC Design**

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**



**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**



45
-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

### III.    ARGUMENT

#### A.    Legal Standard

The standard for granting a preliminary injunction under Rule 65 of the Federal Rules of Procedure is well established.  To obtain such relief, the movant must show: (1) irreparable harm, (2) either likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of the injunction.  *Mason v. AmTrust Fin. Servs.*, 848 F. App'x 447, 449 (2d Cir. 2021).

Whether injunctive relief should issue or not "rests in the sound discretion of the district court which, absent abuse of discretion, will not be disturbed on appeal."  *Ferring B.V. v. Reprise Biopharmaceutics, LLC*, 348 F. Supp. 3d 236, 241 (S.D.N.Y. 2018) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).

The ***irreparable harm requirement "is the single most important prerequisite" for the issuance of a preliminary injunction***. *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)) (emphasis added).

#### B.    Absent A Preliminary Injunction, There Are Several Categories Of Injuries To Spectrum That Will Result In Irreparable Harm

This Court has recognized that irreparable harm can be caused by any number of injuries to a plaintiff, such as "potential loss of the advantage of being the pioneer in the field and the market leader," loss of clients, "loss of current or future market share," "irreparable price erosion," and "loss of market opportunities."  *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11-cv-7211 (PGG), 2012 U.S. Dist. LEXIS 103864, at *52-53 (S.D.N.Y. July 24, 2012).  Each category of irreparable harm to Spectrum is discussed

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

below.

### 1.   Spectrum Will Lose The Advantage Of Being The Pioneer In The Field

The potential loss of the advantage of being the pioneer in the industry is a category of irreparable harm. *Hutzler Mfg.*, No. 11-cv-7211 (PGG), 2012 U.S. Dist. LEXIS 103864, at *52. Here, the SPECT industry has very high barriers to entry and is characterized by few suppliers and customers who make purchases of SPECT devices such as the VERITON® every 7 to 12 years. Ex. 4, GY Dec., ¶ 29; Exhibit 2, Declaration of Eric Phillips, ¶ 23 ("Ex. 2, EP Dec."). The VERITON® represents a paradigm shift in the industry because of its counter-intuitive breakthrough technology, such as ████████████████████████████ ████████████████████████████████████████ Ex. 4, GY Dec., ¶¶ 31-32, 37; Ex. 2, EP Dec., ¶ 10. GE violated the 2009 Agreement and, as a result, is currently marketing its "me too" StarGuide to compete directly with the VERITON®. Ex. 4, GY Dec., ¶¶ 32, 36; Ex. 2, EP Dec., ¶¶ 7-9. If a preliminary injunction is not granted, Spectrum will suffer irreparable harm, at least, because Spectrum will lose its "first-mover advantage" in the market as a pioneer in the SPECT industry. Ex. 4, GY Dec., ¶¶ 31, 37, 43; Ex. 2, EP Dec., ¶¶ 5-15.

### 2.   Spectrum Will Lose Sales

It is well-established that loss of current or future market share is a category of irreparable harm. *Hutzler Mfg.*, No. 11-cv-7211 (PGG) 2012 U.S. Dist. LEXIS 103864, at *52. Spectrum, as the current market leader, projects a growth rate for the VERITON® ██████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ Ex. 2, EP Dec., ¶ 23; Ex. 4, GY Dec., ¶¶ 41-42. However, GE's improper interference and competition with the VERITON® with the

47

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

StarGuide during this early phase of exponential market growth (which is not expected to repeat) is even more impactful to Spectrum, as the market leader, because of the 7-12 year service life of the devices.  Ex. 2, EP Dec., ¶ 23; Ex. 4, GY Dec., ¶¶ 41-42.  GE's unfair competition during this time of unique growth will, further, injure Spectrum's valuation making it difficult (i) ███████████████████████████ (ii) ███████████ ████████████████ Ex. 2, EP Dec., ¶ 23; Ex. 4, GY Dec., ¶¶ 41-42.

Because customers purchase a new SPECT device approximately every 7-12 years and are also reluctant to buy systems from two separate suppliers, each sale of a StarGuide largely diminishes Spectrum's ability to sell the VERITON® to that same customer for several years. Ex. 4, GY Dec., ¶ 34; Ex. 2, EP Dec., ¶ 12.

Spectrum's loss of sales will also include lost profits from potential follow-on sales to those customers, including system applications and new software. Ex. 4, GY Dec., ¶ 34; Ex. 2, EP Dec., ¶¶ 24-25. With no preliminary injunction, GE will enjoy an unfair advantage of being able to further develop, refine and optimize follow-on products which GE would otherwise not have had the opportunity to develop because future development and refinement of devices is typically based on customer feedback and data. Ex. 4, GY Dec., ¶ 34; Ex. 2, EP Dec., ¶ 25. ███ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████ resulting in further loss of Spectrum's competitive advantage as a pioneer. Ex. 4, GY Dec., ¶¶ 34, 37, 43; Ex. 2, EP Dec., ¶ 25.

During the few months since the StarGuide was introduced, Spectrum has received customer feedback, including from key opinion leaders, ███████████████████ ████████████████████████████████ Ex. 4, GY Dec., ¶¶ 33, 35.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

These loss of sales, impacting both current and future market share, will result in yet further irreparable harm to Spectrum.

### 3.     Spectrum Will Suffer Price Erosion

Likelihood of price erosion is evidence of irreparable harm. *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001).  Spectrum will suffer price erosion damages as a result of the StarGuide because Spectrum competeS with GE (who enjoys an ill-gotten head-start based upon misuse and misappropriation of Spectrum CI) for the same customers.  Specifically, Spectrum will suffer injury because (i) GE has introduced the StarGuide, which challenges Spectrum's market leadership position, (ii) Spectrum and GE compete for the same customers, (iii) GE expects to be a sizeable player in the segment, and (iv) ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Even though Spectrum is entitled to price erosion damages here, these price erosion damages will not end until the VERITON® price recovers to levels it would have been but for the StarGuide.  Ex. 2, EP Dec., ¶ 22.   However, the price recovery ability of VERITON® is largely unforeseeable such that Spectrum will suffer irreparable harm from the price erosion. *Id.*

### 4.     Spectrum Will Lose Market Share

Loss of market position and share is another category of irreparable harm that Spectrum will suffer absent a preliminary injunction. *Purdue Pharma*, 237 F.3d at 1368. GE and Spectrum both expect that should GE be permitted to unfairly market the StarGuide against the VERITON®, Spectrum will lose the bulk of its market share to the StarGuide.  Ex. 2, EP Dec., ¶ 26; Ex. 4, GY Dec., ¶¶ 30, 33-35, 40-44.  ████████████████████████

████████████████████████████████████████

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

██████████████████████████████████ The loss of

70% to 75% of VERITON® sales during 2022 to 2024 would result in a ███████████

█████████████████████████████████████████████████████

█████████████████████████ *Id*.

### 5.      Spectrum Will Lose Prospective Goodwill And Reputation

The Second Circuit has held that loss of reputation, good will, and business opportunities is a category of irreparable harm. *Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*, 828 F. App'x 74, 75 (2d Cir. 2020). *See Nat'l Elevator Cab & Door Corp v. H & B, Inc.*, 282 F. App'x 885, 887 (2d Cir. 2008) (citing *Tom Doherty Assocs.*, 60 F.3d at 38 ("a loss of prospective goodwill can constitute irreparable harm"); *Miss Am. Org. v. Mattel, Inc.,* 945 F.2d 536, 546 (2d Cir. 1991) ("threats of diminished consumer confidence and elimination of business opportunities are clearly consequences constituting irreparable harm") (citations omitted); *see also Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 444-45 (2d Cir. 1977) (party's "ample evidence" of threatened loss of goodwill and customers supported finding of irreparable harm that could not be rectified by money damages).

In addition to the other injuries, market entry of GE's StarGuide will interfere with Spectrum's "first-mover advantage" as discussed above.  Ex. 2, EP Dec., ¶ 14; *Hutzler Mfg.*, No. 11-cv-7211 (PGG), 2012 U.S. Dist. LEXIS 103864, at *52-53 ("the potential loss of ... the advantage of being the pioneer in the field and the market leader[ ] may constitute irreparable harm.").  The first-mover advantage is different for each industry, but generally impractical (or impossible) to precisely quantify, as it includes benefits such as: (i) reputational effects and goodwill, (ii) customer loyalty, resulting in a more consistent and lower-risk future revenue stream, and (iii) improved success rates of subsequent products and add-on sales.  Ex. 2, EP Dec., ¶ 14. Because the VERITON® and StarGuide are aimed at the "Super Premium" segment

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

of SPECT device purchasers made up of researchers and other key opinion leaders, GE's copying and unfair competition are particularly impactful to the companies' reputations. *Id.*, at ¶¶ 16, 26. 

Spectrum, similarly, can be expected to lose business reputation as a pioneer and VERITON® orders due to the introduction of StarGuide; especially given

*Id.*, at ¶¶ 16-19.

Further, Spectrum's reputation ▮▮▮▮▮ is being damaged ▮▮▮▮

▮▮ Ex. 2, EP Dec., ¶ 17; Ex. 4, GY Dec., ¶¶ 33-34, 40.

Moreover, Spectrum's reputation as a leader, innovator, pioneer and market disruptor in SPECT imaging, first with the D-SPECT® and now the VERITON®, is suffering irreparable harmed due to customer confusion between the VERITON® and the "me too" StarGuide. Ex. 4, GY Dec., ¶¶ 26-27, 36, 38, 40; *see Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013) (damage to a party's reputation as the innovator can constitute irreparable harm). Spectrum has participated in several meetings with customers who voiced their confusion in seeing these two similar devices. Ex. 4, GY Dec., ¶¶ 26-27, 36, 38, 40. An

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

example of this confusion is the below snapshot[13] of a LinkedIn post issued just a week ago from the Stanford Cancer Institute announcing its newly acquired StarGuide, which is likely the very first StarGuide installation in the U.S. *Id.* Among the LinkedIn comments is a question from the Regional Product Sales Manager of an unrelated nuclear medicine company who asks while looking at a picture of the StarGuide, asking "Is that the Spectrum Dynamics [VERITON®] camera?" https://www.linkedin.com/posts/stanford-cancer_theragnostics-cancerimaging-molecularimaging-activity-6831298871851831296-1Zli.



_____

[13] Note that three red boxes have been added to the snapshot to highlight the comment and that the system is the StarGuide device.

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

     **6.**     **Spectrum Is Threatened With** ██████████████████
████████

The Second Circuit has found irreparable harm where a party – like Spectrum here – is

threatened with the ██████████████████████ *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60

F.3d 27, 37 (2d Cir. 1995); *see Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*,

749 F.2d 124 (2d Cir. 1984) (*per curium*) (finding irreparable harm from loss of "ongoing

business representing many years of effort and the livelihood of its husband and wife owners");

*see also Sunni, LLC v. Edible Arrangements, Inc.*, No. 14-cv-461 (KPF), 2014 U.S. Dist.

LEXIS 40258, at *35 (S.D.N.Y. Mar. 25, 2014) ("Loss of a business can constitute irreparable

harm."). The market entry of the StarGuide and unfair competition by GE, in the absence of a

preliminary injunction, would ████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. 2, EP Dec., ¶¶ 26-

30; Ex. 4, GY Dec., ¶ 44.

     **7.**     **Spectrum Will Suffer Harm From Loss Of Competitive Advantage
Due To GE'S Head-Start By Skipping Years Of Research And
Development**

Money damages would be insufficient and could not compensate Spectrum for the

irreparable harm that Spectrum is suffering because of GE entering the market the StarGuide,

without expending the time, expense and labor on R&D that would have been required for GE

to independently develop the StarGuide.

Indeed, "[m]oney damages would be unable to reverse the competitive advantages that

companies communicating with defendant would gain from skipping the years that plaintiffs

spent innovating the technology in question." *Juergensen Def. Corp. v. Carleton Techs., Inc.*,

No. 08-CV-959A, 2010 U.S. Dist. LEXIS 65540, at *42-43 (W.D.N.Y. June 21, 2010). *Cf.*

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

*Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 975 (N.D. Iowa 2006) ("Certainly, if the disclosure allows a competitor to cut corners in the research and development process . . . , the competitor will attain a competing product that much sooner, and it is this harm to [plaintiff] that is irreparable."); *3M v. Francavilla*, 191 F. Supp. 2d 270, 278 n.8 (D. Conn. 2002) ("With a limited number of companies competing to be among the first to develop a new specialty . . . product with potentially enormous sales and profits, information concerning one company's proximity to success would have considerable value to competitors faced with important decisions as to the rate at which their own development should or should not proceed.") (citation omitted); *SPBS, Inc. v. John D. Mobley & Intermed Grp. Servs., Inc.*, No. 4:18-CV-00391, 2018 U.S. Dist. LEXIS 148881, at *41 (E.D. Tex. August 31, 2018) ("Defendants' possession of the Proprietary Information allows them to enhance [defendant's] own proprietary information through [plaintiff's] labor. This cannot be undone by money alone. Any calculation of monetary damages would fail to fully appreciate the harm done by Defendants' developing a more robust store of proprietary information by skipping the necessary research and development undertaken by every other competitor."); *RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 U.S. Dist. LEXIS 122004, at *39 (E.D. Tex. August 3, 2017) ("[Defendants] can only make these claims because Defendants unlawfully referenced [plaintiff's] trade secrets. This cannot be undone by money alone. Any calculation of monetary damages would fail to fully appreciate the harm done by Defendants developing a robust product by skipping the necessary research and development undertaken by every other competitor.").

As discussed above in Sections II., G., 1. – 2., GE, after Spectrum rejected its acquisition bid, announced the creation of the GE "GPC Team," formed from many of the same personnel conducting the due diligence of Spectrum. GE's development of the StarGuide was

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

tainted from inception. These GE diligence personnel – turned GE GPC team personnel – armed with the knowledge of Spectrum CI gained through due diligence immediately commenced planning and development of the StarGuide by misusing the Spectrum CI which is well beyond the *Purpose* of the 2009 Agreement. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

For all these reasons, Spectrum has demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction.

### 8.   A Preliminary Injunction Is An Appropriate Remedy For Breach Of Contract Where, As Here Money Damages Would Be Very Difficult To Calculate And Would Not Compensate Spectrum For Harm

Preliminary injunctions may be awarded for breach of contract in situations, like here, where it would be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). The 2009 Agreement

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

specifically provides for injunctive relief without a bond to prevent further breaches. Ex. 8, 2009 Agreement, ¶ 6.

### C. Defendants Breached The 2009 Agreement By Misusing The Spectrum CI To Develop The StarGuide

To satisfy the likelihood of success on the merits required for a preliminary injunction, the plaintiff need not show that success is an absolute certainty, it need only show "*that the probability of [its] prevailing is better than fifty percent*." *Goat Fashion Ltd. v. 1661, Inc.*, No. 19-cv-11045 (PAE), 2020 U.S. Dist. LEXIS 178636, at *17 (S.D.N.Y. Sep. 28, 2020) (emphasis added). As demonstrated in Sections II. F. – G. *supra*, Spectrum has more than shown a likelihood of success on the merits in ultimately proving GE diligence personal turned GE GPC team personnel misused Spectrum CI to develop the StarGuide in violation of the 2009 Agreement.

### D. The Balance Of Hardships Tips Decidedly In Favor Of Spectrum And Issuing A Preliminary Injunction

This Court has found that the balance of hardships tips in favor of a plaintiff seeking a preliminary injunction where, "if left unremedied, the immediate and irreparable harm to plaintiff resulting from defendant's unlawful acts would far exceed the theoretical harm to defendant from an improvidently granted injunction." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 326 (S.D.N.Y. 2010). This is the case here. If GE is permitted to continue offering the StarGuide in direct competition with the VERITON®, Spectrum will continue to suffer irreparable harm in the form of, *inter alia*, price erosion, loss of sales, loss of market share, and loss of goodwill and reputation as discussed in Section III. B. *supra*. Ex. 2, EP Dec., ¶¶ 5-25. Of even more concern is the threat that Defendants' activities pose to Spectrum's ███████████████████████ ███████████████████████████████████ Ex. 2, EP Dec., ¶¶ 26-33.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

Further, Spectrum is a small two product company (i.e., D-SPECT® and VERITON®), that employs 120 people worldwide with revenues of ████████ in 2020; whereas, Defendant GE Healthcare (i) sells a broad range of health care products, including other imaging systems, (ii) employs 50,000 people worldwide and (iii) had 2020 revenues of $18 billion. *Id.* at ¶ 34. Notably, GE's near-term expected incremental revenue from StarGuide is nearly negligible given GE's large size: $8.5 million in 2021 (which amounts to *only 0.05%* of GE's $18 billion sales) and $23.8 million sales in 2022 (which amounts to *only 0.1%* of all sales). *Id.* Thus, it is reasonable to conclude that a preliminary injunction here would be far less detrimental to GE than the StarGuide market entry is to Spectrum. *Id.*

**E.    The Public Interest Will Be Served By The Issuance Of A Preliminary Injunction**

This final factor to consider in granting a preliminary injunction looks to whether there is some critical public interest that would be injured should a preliminary injunction issue. *Hutzler,* No. 11-cv-7211 (PGG), 2012 WL 3031150, at *56-57. There is no such interest here. To the contrary, the public interest would be served by issuance of a preliminary injunction. Given the status of the case and that trial is set for August 2023, the length of a preliminary injunction would not be a disservice to the public interest—just two years.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ The roll out of the StarGuide in the U.S. market thus far has been relatively low-key, which weights in favor of a preliminary injunction because the StarGuide is "too new to harm the public interest by the grant of preliminary relief." *Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, No. 3:14-cv-917 (JCH), 2014 U.S. Dist. LEXIS 147060,

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

at *36 (D. Conn. Oct. 15, 2014) (citing *Smith & Nephew, Inc. v. Biomet, Inc.*, 05-611-KI, 2005 U.S. Dist. LEXIS 31723, 2005 WL 3132313, at *19 (D. Or. Nov. 21, 2005)).

The public would, further, not be disserved by the issuance of a preliminary injunction prohibiting sales of the StarGuide because ███████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████ In addition, GE is already marketing the GE 800 series scanner, which does not compete directly with the VERITON®, but can perform whole body scans. While GE expects the StarGuide to blunt its losses in the marketplace of its sales of its GE 800 series, GE continues to sell the 800 series. Thus, issuing a preliminary injunction would not result in harm to the public, here the "Super Premium" segment of SPECT customers, because Spectrum can meet the market needs and there are also alternative devices (albeit with lesser capabilities) available. *Covidien Sales LLC*, at *38.

Moreover, Spectrum is renovating its manufacturing and R&D premises and expanding its production space by more than double in anticipation of increased acceptance adoption of the VERITON® such that there would be no supply disruptions occasioned by the preliminary injunction. Ex. 4, GY Dec., ¶ 46; *Covidien Sales LLC*, at *37 (citing *Cordis Corp. v. Bos. Sci. Corp.*, 99 F. App'x 928, 932 (Fed. Cir. 2004) (finding that an injunction should not be granted because the plaintiff-patentee could not ensure an adequate supply)).

There is further no physician preference for the StarGuide because "[a]lthough physicians' preferences are relevant to the public interest analysis, they are not necessarily dispositive, particularly where, as here, the device is so new that any preference for it is unlikely to be deeply held or widespread." *Id.* (citation omitted).

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

The StarGuide has only one feature not currently available on the VERITON®. That is, its "theranostics" capability, which is a research feature that is not being commercially practiced, and will have no perceptible impact on patient care. Ex. 2, EP Dec., ¶ 9, n. 21.

As such, there is a strong public interest in granting the instant preliminary injunction.

## IV. SCOPE OF THE REQUESTED INJUNCTION

1. Spectrum requests that the Court preliminarily enjoin GE from manufacturing, marketing and selling the StarGuide anywhere in the world pending final resolution of this action.

2. To the extent that any StarGuide systems have already been installed, so as to eliminate any risk of interfering with patient care, the injunction will not extend to any such installation, provided that the publication of data derived from using the StarGuide at any such installation is enjoined until final disposition of this action.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests its Motion for a Preliminary Injunction be granted forthwith.

Dated:  August 27, 2021             GREENBLUM & BERNSTEIN, P.L.C.

<u>/Neil F. Greenblum/</u>
Neil F. Greenblum, Esq.
P. Branko Pejic, Esq.
Jeffrey H. Handelsman, Esq.
Jill M. Browning
Danielle C. Pfifferling
GREENBLUM & BERNSTEIN, P.L.C.
1950 Roland Clarke Place
Reston, Virginia 20191
(703) 716-1191
ngreenblum@gbpatent.com
bpejic@gbpatent.com
jhandelsman@gbpatent.com

59

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

jbrowning@gbpatent.com
dpfifferling@gbpatent.com

Gregory D. Miller, Esq.
RIVKIN RADLER LLP
25 Main Street, Suite 501
Court Plaza North
Hackensack, NJ 07601-7082
(201) 287-2460
Gregory.Miller@rivkin.com

*Attorneys for Spectrum Dynamics Medical Limited*

{J734906 04708990.DOCX 4}

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of "MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION" was served today by electronic mail upon the following:

Marla R. Butler
Carl Wesolowski
Lauren Hogan
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
Marla.Butler@ThompsonHine.com
Carl.Wesolowski@ThompsonHine.com
Lauren.Hogan@ThompsonHine.com

Jesse Jenike-Godshalk
312 walnut Street, Suite 1400
Cincinnati, Ohio 45202
Jesse.Godshalk@ThompsonHine.com

Brian Lanciault
335 Madison Avenue, 12th Floor
New York, New York 10017
Brian.Lanciault@ThompsonHine.com

Jeffrey Metzcar
Discovery Place
10050 Innovation Drive
Miamisburg, Ohio 45342
Jeff.Metzcar@ThompsonHine.com

*Attorneys for Defendants*

Dated:  August 27, 2021          /s/ P. Branko Pejic
                                 P. Branko Pejic, Esq.

## Appendix A

### List of Exhibits

| Exhibit Number | Description |
|---|---|
| 1 | Declaration of Scott D. Metzler, Ph.D. dated August 27, 2021. |
| 2 | Declaration of Plaintiff's Damages Expert Eric Phillips dated August 26, 2021, including the Exhibits 2.1-2.4.  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 3 | Declaration of Yoel Zilberstien dated August 26, 2021 in Support of Plaintiff's Motion for a Preliminary Injunction.  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 4 | Declaration of Gilad Yoeli dated August 26, 2021 in Support of Plaintiff's Motion for a Preliminary Injunction.  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 5 | Declaration of Nathaniel Roth dated August 26, 2021 in Support of Plaintiff's Motion for a Preliminary Injunction.  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 6 | *Curriculum Vitae* for Eric J. Phillips MBA, CVA, MAFF, Q1 2021. |
| 7 | *Curriculum Vitae* for Scott D. Metzler, Ph.D. dated December 29, 2020. |
| 8 | Amended and Restated Mutual Confidentiality and Non-Use Agreement dated September 16, 2009 between Spectrum Dynamics Limited and GE Healthcare, Inc. (SDML_00032512-17). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 9 | Wyngaert et al., SPECT/CT: Standing on the Shoulders of Giants, It Is Time to Reach for the Sky!, *J. Nucl. Med.*, 61(9):1284-1291 dated September 30, 2020 (SDML_01063594-602). |
| 10 | PowerPoint presentation "Stargate Program MR" dated February 1, 2021 (GE_SDM_00178054-103).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 11 | Press Release "GE Healthcare Introduces StarGuide, a New Nuclear Medicine System to Help Advance Precision Health & Theranostics" (March 24, 2021) (SDML_01281527-30). |
| 12 | PowerPoint presentation "StarGuide NCAE Review: Expanding the clinical value of SPECT/CT by eliminating previous limitations of Time & Space (Fastest scans for new procedures/information; Smallest room)" dated February 1, 2021 (GE_SDM_00170049-84).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 13 | Sales Forecast Tracker dated April 21, 2021 (SDML_01281572).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 14 | Email dated August 16, 2019 from Kevin M. Boyle (GE Healthcare) to Reuven Brenner (GE Healthcare) and Eli Stern (GE Healthcare) RE: MAB at EANM??? |

| Exhibit Number | Description |
|---|---|
| | (GE_SDM_00019669-671).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 15 | PowerPoint presentation "MI WWTP 2018" by MI Team, Riyad Mahameed, dated Feb. 23, 2018 (GE_SDM_00170693-703).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 16 | Email dated July 16, 2020 from Kevin M. Boyle (GE Healthcare) to Reuven Brenner (GE Healthcare) RE: Problem Statement: Europe Product Announcement Timing for Stargate (GE_SDM_00105016-18).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 17 | PowerPoint presentation "Digital SPECT segment in Europe" dated February 1, 2021 (GE_SDM_00169042-74).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 18 | Imaging BPR Pitch_DRAFT dated October 27, 2020 (GE_SDM_00328054). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 19 | Strategic Planning - R&D Investment Profile (MICT) dated July 24, 2020 (GE_SDM_00452499).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 20 | PowerPoint presentation regarding StarGuide dated August 24, 2020 (GE_SDM_00169870-78).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 21 | Erez Levy Email dated September 8, 2020 RE: Q2'20 Market/Share Summary – MI & CT (GE_SDM_00331756-58).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 22 | GE Problem Solving Report dated August 25, 2020 (GE_SDM_00329952). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 23 | VERITON Publications Library Summary List dated March 1, 2021 (SDML_01281347).  (CONFIDENTIAL) |
| 24 | News Headline - Bath Echo News Team publication: "First patient benefits from latest in scanning technology at Bath's RUH" dated November 11, 2020 (SDML_01281353-60). |
| 25 | Press release published by Soon Chun Hyang University Hospital Medical Center Magazine regarding Veriton CT, Vol. 53 (May & June 2019) (SDML_01281361-62). |
| 26 | PowerPoint presentation "Prospect 1 Testimonial" dated February 10, 2021 (SDML_01281350). |
| 27 | Press release published by Reseau-CHU titled "Revolution scintigraphique au CHU de Caen avec la premiere camera 3D 'Corps entire'" dated June 11, 2018 (SDML_01281519-22). |
| 28 | PowerPoint presentation illustration "User1 Testimonial" virtual meeting "Review call with VERITON-CT User1" dated February 3, 2021 (SDML_01281351).  (CONFIDENTIAL) |

| Exhibit Number | Description |
|---|---|
| 29 | Email dated November 24, 2020 from Erez Levy (GE Healthcare) to Reuven Brenner (GE Healthcare) RE: StarGuide (GE_SDM_00330231-236).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 30 | VERITON revenue projections as of April 2021 (SDML_01281604).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 31 | IMV PowerPoint presentation: "2018 Nuclear Medicine Market Outlook Report" dated October 2018 (SDML_01281363-493).  (CONFIDENTIAL) |
| 32 | Spectrum Trade Show Photographs (SDML_01281579-582, SDML_01281584-585, and SDML_01281587-603). |
| 33 | Spectrum 2018 tradeshow video (SDML_01281583). |
| 34 | Spectrum 2018 tradeshow video (SDML_01281586). |
| 35 | IMV USA Customer Report Q4 2020 (SDML_01281573).  (CONFIDENTIAL) |
| 36 | Spectrum Dynamics Global Distribution List as of March 2021 (SDML_01281576).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 37 | GE Healthcare Web Article "NucMed's Star is Rising: New StarGuide System Helps Advance Precision Health and Theranostics" dated March 24, 2021 (SDML_01281531-534). |
| 38 | VERITON Pricing History spreadsheet (SDML_01281352).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 39 | VERITON revenue projections spreadsheet (7-years plan) (SDML_01282005).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 40 | Email dated September 1, 2020 from Gil Kovalski (GE Healthcare) to Jean-Paul Bounik (GE Healthcare), Reuven Brenner (GE Healthcare), and Hadas Kosovezer (GE Healthcare) RE: MI Clinical projects.pptx (GE_SDM_00161236-42).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 41 | PowerPoint presentation "StarGuide vs. Veriton-CT DADD" dated February 1, 2021 (GE_SDM_00196257-309).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 42 | Email dated July 7, 2020 from Jean-Paul Bounik (GE Healthcare) to Reuven Brenner (GE Healthcare) RE: Thoughts after discussion with Lund (containing in the chain an Email dated June 3, 2020 from Eli Stern to Reuven Brenner and Maxime Teisseire and an Email dated June 22, 2020 from Reuven Brenner to Eli Stern, Kevin Boyle, and Jean-Paul Bouhnik) (GE_SDM_00015850-53).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 43 | Email dated July 6, 2009 from Riyad Mahameed to Lana Volokh and Jean-Paul Bouhnik (containing in the chain an email dated July 6, 2009 from Riyad Mahameed (GE Healthcare) to Alexander Ganin (GE Healthcare) FW: next term GRC priorities) (GE_SDM_00386680-82).  (HIGHLY CONFIDENTIAL- |

A-3

| Exhibit Number | Description |
|---|---|
| | ATTORNEYS' EYES ONLY) |
| 44 | Letter dated February 27, 2013 from Steve Gray (GE Healthcare) to Jim Haisler (Spectrum Dynamics) Re: GE Healthcare Intellectual Property Rights (GE_SDM_00409862-63).  (CONFIDENTIAL) |
| 45 | Email dated February 27, 2013 from Riyad Mahameed (GE Healthcare) to Yariv Grobshtein (GE Healthcare) RE: Recon Info, please keep it for your eyes only including 12 attachments ███████████████████████ ████████████████████████████████████ ███████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████ (GE_SDM_00297177-223).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 46 | PowerPoint presentation titled "D-SPECT™ Looking for Cardiac Nuclear Medicine's Next Generation" (GE_SDM_00012785-822).  (CONFIDENTIAL) |
| 47 | Patton et al., Recent technologic advances in nuclear cardiology, *J. Nucl.Cardiol.,* 14(4): 501-13 (Jul. 2007) (SDML_00198743-55). |
| 48 | GE Healthcare 510(k) Premarket Notification Submission - Section 12: Substantial Equivalence - StarGuide (GE_SDM_00440327-48).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 49 | GE Healthcare 510(k) Premarket Notification Submission - Section 5: 510(k) Summary - Star Guide (GE_SDM_00440061-68).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 50 | GE Healthcare 510(k) Premarket Notification Submission - Section 16: Software - StarGuide (GE_SDM_00440568-1068).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 51 | PowerPoint presentation "Comparing DSPECT and UFC" dated December 22, 2020 (GE_SDM_00010974-81).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 52 | Email dated April 23, 2009 from Reuven Brenner to Jean-Paul Bouhnik RE: Spotlight (containing in the chain an email dated April 22, 2009 from Reuven Brenner (GE Healthcare) to Nathan Hermony (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), and Erez Levy (GE Healthcare)) (GE_SDM_00108513-14).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 53 | Email dated August 20, 2009 from Jim Haisler to Shuchi Varandani (GE Healthcare) including an attachment/PowerPoint presentation titled ████████ ████████ (SDML_00177204-15).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 54 | Email dated August 27, 2009 from Riyad Mahameed (GE Healthcare) to Kristen |

| Exhibit Number | Description |
|---|---|
|  | A Wangerin (GE Research), Alexander Ganin (GE Healthcare), Floris P Jansen (GE Research), Ravindra Manjeshwar (GE Healthcare), Nathan Hermony (GE Healthcare), Osnat Zak (GE Healthcare) and Jean-Paul Bouhnik (GE Healthcare) RE: CEOReview_Sept8_v7_without_YDupdates.ppt including an attachment/NUC SII 2009 PowerPoint presentation (GE_SDM_00203614-22). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 55 | Email dated September 16, 2009 from Jim Haisler to Yoel Zilberstien, Nathaniel Roth, Benny Rousso, and Gilad Yoeli Re: Agenda and Latest PPT Presentation For Today including 2 attachments "SD GE Agenda 9 16.docx" and ███████ Sept 15.pptx" (SDML_01279739-807). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 56 | Email dated October 11, 2009 from Jim Haisler to Yoel Zilberstien RE: Last GE presentation (SDML_00672946) including 4 attachments (Multi-purpose commercial camera-20090913.mpp (SDML_00672947-52); ███████.mpg (SDML_00672953); ███████ Sept 15_b.ppx (SDML_00672954-3021) and GPC Concept Demo Video (SDML_00673024)). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 57 | September 16, 2009 Transcript of Meeting (SDML_01605095-01605577). (CONFIDENTIAL) |
| 58 | Email dated February 26, 2010 from Yoel Zilberstien to Nathan Hermony Re: Emailing: Global presentation PART II including an attachment/PowerPoint presentation titled "A Paradigm Shift in Medical Imaging" and dated November 2009 (SDML_00700452-63). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 59 | Email dated February 26, 2010 from Yoel Zilberstien to Nathan Hermony Re: Emailing GPC Concept Demo PART I (SDML_00038558) attaching GPC Concept Demo Video (SDML_00038559). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 60 | Email dated August 16, 2010 from Nathaniel Roth to Floris Jansen (GE Global Research), Alexander Ganin (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli Re: GPC simulation including an attachment/PowerPoint presentation titled "Spectrum Dynamics GPC Simulations" (SDML_01168791-816). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 61 | Email dated August 26, 2010 from Nathaniel Roth to Floris P Jansen (GE Global Research), Alexander Ganin (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Ravindra Manjeshwar (GE Global Research), Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation (SDML_00263114-16). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 62 | Email dated September 12, 2010 from Nathaniel Roth to Floris Jansen (GE Global Research), Alexander Ganin (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Ravindra Manjeshwar (GE Global Research), Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC Simulation including an attachment/PowerPoint presentation titled "Spectrum Dynamics GPC |

| Exhibit Number | Description |
|---|---|
|  | Simulations" (SDML_00038321-41).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 63 | Email dated September 13, 2010 from Nathan Hermony to Jean-Paul Bouhnik, Riyad Mahameed, and Arie Eshco RE: GPC simulation (containing in the chain an email dated August 25, 2010 from Floris P Jansen (GE Global Research) to Nathaniel Roth, Alexander Ganin (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Ravindra Manjeshwar (GE Global Research), Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation; and an email dated September 12, 2010 from Nathaniel Roth to Floris Jansen (GE Global Research), Alexander Ganin (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Ravindra Manjeshwar (GE Global Research), Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation) (GE_SDM_00366546-49).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 64 | Email dated August 3, 2010 from Jean-Paul Bouhnik to Yoel Zilberstien, Floris P Jensen, Alexander Ganin, and Shuchi Varandani RE: project data (containing in the chain an Email dated August 3, 2010 from Floris Jansen to Jean-Paul Bouhnik (GE Healthcare), Alexander Ganin (GE Healthcare), and Ravindra Manjeshwar (GE Global Research) RE: projection data including an attachment/PowerPoint presentation "Spotlight simulations – data conventions – August 2010" by Floris Jansen) (SDML_00733345-53).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 65 | Email dated June 30, 2010 from Nathaniel Roth to Floris P Jansen (GE Research), Yoel Zilberstien, Jean-Paul Bouhnik (GE Healthcare), Alexander Ganin (GE Healthcare), and Shuchi Varandani (GE Healthcare) RE: Yoel including an attachment/PowerPoint presentation "Spotlight Simulations" dated June 2010 by Floris Jansen (SDML_00038342-50).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 66 | Email dated July 4, 2010 from Nathaniel Roth to Floris P Jansen (GE Global Research, Yoel Zilberstien, Jean-Paul Bouhnik (GE Healthcare), Alexander Ganin (GE Healthcare), and Shuchi Varandani (GE Healthcare) RE: Yoel (SDML_00038351-55).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 67 | Email dated April 11, 2010 from Yoel Zilberstien to Nathan Hermony Re: FW: GPC feasibility attaching 10 GPC movies and a PowerPoint presentation "General Purpose Camera" dated Jan, 2010 (SDML_00709497-526).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 68 | Email dated June 21, 2010 from Yoel Zilberstien to Nathan Hermony (GE Healthcare) RE: phantom including 2 attachments/PowerPoint presentations: "GPC Feasibility Prototype JASZCZAK phantom" and "General Purpose Camera" (dated June 2010) (SDML_00723858-874).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 69 | Email dated September 20, 2010 from Floris P Jansen (GE Global Research) to Yoel Zilberstien, Alexander Ganin (GE Healthcare), Ravindra Manjeshwar (GE Global Research), Jean-Paul Bouhnik (GE Healthcare), Riyad Mahameed (GE |

| Exhibit Number | Description |
|---|---|
| | Healthcare), Suchi Varandani (GE Healthcare), and Nathan Hermony (GE Healthcare) RE: GPC Simulation (GE_SDM_00005088-92). (CONFIDENTIAL) |
| 70 | Email dated January 23, 2012 from William Burgman (GE Healthcare) to Nathan Hermony (GE Healthcare), Sabrina Solomon (GE Healthcare), Ehud Kogot (GE Healthcare), Bertrand Weil (GE Healthcare), Reuven Brenner (GE Healthcare), Arie Eshco (GE Healthcare), Riyad Mahameed (GE Healthcare), Galia Pyura (GE Healthcare), Jacob Bachar (GE Healthcare), Dalit Sapir (GE Healthcare), Laurence Bigio (GE Healthcare), Etty Haver (GE Healthcare), Thomas Coleman (GE Healthcare), Raul Grable (GE Healthcare), Sergio Steinfeld (GE Healthcare), Mark D. Woods (GE Healthcare), Matan Beilin (GE Healthcare, consultant), Yossi Shmul (GE Healthcare), Janet Levy-Pahima, Moria Tam-Harshoshanim, Yael Hauser, Ayelet Bar-on, Adi Nahmani, Nathaniel Roth, Roni Saati, Samy Bross, Jim Haisler, Yoel Zilberstien, Gilad Yoeli, yuris@medinvestgroup.com, sharona@gojisolutions.com RE: Spotlight - Onsite DD Agenda including an attachment/spreadsheet regarding Spotlight Onsite DD Agenda (SDML_00315379-81).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 71 | Email dated February 10, 2012 from Nathaniel Roth to Riyad Mahameed and Yoel Zilberstien RE: Draft – Urgent including an attachment/PowerPoint presentation "GPC Development Plan" dated May 2, 2012 (SDML_00038467-82).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 72 | Email dated February 14, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare) and Yoel Zilberstien RE: Draft – Urgent including an attachment/PowerPoint presentation titled "GPC Clinical performances" (SDML_01180435-37).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 73 | Email dated February 15, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare), Lana Volokh (GE Healthcare) and Yoel Zilberstien RE: GPC Acceptance including an attachment/PowerPoint presentation titled "GPC Clinical Performance Requirements" (SDML_01180532-35).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 74 | Email dated February 14, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare) and Yoel Zilberstien RE: Draft – Urgent including an attachment/PowerPoint presentation titled "GPC Simulations work" (SDML_01275194-200).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 75 | Email dated February 14, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare), and Yoel Zilberstien RE: Draft – Urgent including an attachment/PowerPoint presentation titled "GPC Simulations work" (SDML_01275208-214).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 76 | Email dated February 15, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare) and Yoel Zilberstien RE: Draft – Urgent (SDML_00038490-91) |

| Exhibit Number | Description |
|---|---|
|  | including a GPC Alpha Demo video (SDML_00038492) and a PowerPoint presentation titled "GPC Simulations work" (SDML_00038493-98).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 77 | PowerPoint presentation titled "GPC Simulations - Update Meeting - November 15, 2012" (GE_SDM_00378712-46) (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 78 | Email dated January 31, 2012 from Nathaniel Roth to Aharon Peretz (GE Healthcare), Gilad Yoeli, William Burgman, Reuven Brenner (GE Healthcare), and Yoel Zilberstien RE: Emailing Spotlight DD Research.xlsx (SDML_00038465-66).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 79 | Email dated February 3, 2013 from Nathan Hermony (GE Healthcare) to Arie Eshco (GE Healthcare), Reuven Brenner (GE Healthcare), and Riyad Mahameed (GE Healthcare) RE: FW: Spotlight Update (GE_SDM_00133095-97). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 80 | Calendar entry "GPC – review spotlight" meeting invitation organized by Einat Binyamin (GE Healthcare) for the meeting to occur on August 1, 2012 at 11:00am, requiring attendance of Jean-Paul Bouhnik (GE Healthcare),  and Yariv Grobshtein (GE Healthcare).  (GE_SDM_00127805).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 81 | Email dated August 20, 2012 from Yariv Grobshtein to Riyad Mahameed (GE Healthcare) Re: GPC – FW34 2012 including an attachment/PowerPoint presentation titled "Photon History Randomization" (GE_SDM_00254414-23). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 82 | Email dated August 29, 2012 from Yariv Grobshtein (GE Healthcare) to Arie Eshco (GE Healthcare) and Riyad Mahameed (GE Healthcare) RE: spotlight data room (GE_SDM_00128849).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 83 | Email dated October 2, 2012 from Yariv Grobshtein (GE Healthcare) to Gil Kovalski (GE Healthcare) RE: recon time (GE_SDM_00376426).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 84 | Email dated October 28, 2012 from Einat Binyamin to Riyad Mahameed, Jean-Paul Bouhnik, and Yariv Grobshtein RE Presentation for GPC update & feedback meeting including an attachment/PowerPoint presentation titled "Simulation Results Highlights" (GE_SDM_00203697-701).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 85 | PowerPoint presentation "GPC Simulations - Update Meeting - November 15, 2012" (GE_SDM_00148801-34). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 86 | Email dated December 11, 2012 from Jean-Paul Bouhnik to Einat Binyamin and Yariv Grobshtein RE: GPC Meeting (2) (containing in the chain an Email dated December 11, 2012 from Einat Binyamin (GE Healthcare) to Jean-Paul Bouhnik (GE Healthcare) and Yariv Grobshtein (GE Healthcare) RE: GPC Meeting (2)) |

| Exhibit Number | Description |
|---|---|
| | (GE_SDM_00256150-51).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 87 | Email dated January 27, 2013 from Arie Eshco to Jean-Paul Bouhnik RE: Kaz presentation including an attachment/PowerPoint presentation titled "GP CZT – "Stargate" Kickoff Workout Summary Jan 2013" by Arie Eshco (GE_SDM_00205102-56).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 88 | Email dated October 29, 2012 from Yariv Grobshtein to Jean-Paul Bouhnik, Riyad Mahameed, and Einat Binyamin RE: Presentation for GPC update & feedback meeting including an attachment/PowerPoint presentation titled "GPC Simulations - Update meeting - October 30, 2012" (GE_SDM_00254360-77).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 89 | Email dated February 11, 2013 from Elias Shalabi to Einat Binyamin and Yariv Grobshtein RE: Running jzkEllipse64 with focus (containing in the chain an Email dated February 11, 2013 from Einat Binyamin (GE Healthcare) to Elias Shalabi (GE Healthcare, consultant) and Yariv Grobshtein (GE Healthcare) RE: Running jzkEllipse64 with focus (GE_SDM_00127798-99).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 90 | Email dated February 13, 2013 from Jean-Paul Bouhnik to Einat Binyamin (GE Healthcare), Riyad Mahameed (GE Healthcare), Yariv Grobshtein (GE Healthcare), Gil Kovalski (GE Healthcare), Sergio Steinfeld (GE Healthcare), Elias Shalabi (GE Healthcare, consultant) and Yulim Zingerman (GE Healthcare) RE: GPC Simulations (GE_SDM_00256146-47).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 91 | Email dated March 22, 2016 from Arie Eshco to Doron Yahya, Yulim Zingerman, and Jean-Paul Bouhnik RE: consolidated presentation – Yulim + Arie's comments including an attachment/document titled "Organizational Chart – Stargate 2016" (GE_SDM_00113903-06).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 92 | Email dated May 1, 2013 from Gil Kovalski to Jean-Paul Bouhnik, Arie Eshco, Aharon Peretz, Riyad Mahameed, Yigal Shrem, and Reuven Brenner RE: GPC workout including an attachment/PowerPoint presentation titled "Stargate workout – 3 year work plan" by Jean-Paul Bouhnik (GE_SDM_00204808-16).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 93 | Email dated February 14, 2013 from Katharine Klein (GE Healthcare) to Arie Eshco (GE Healthcare), William Burgman (GE Healthcare), and Shuchi Varandani (GE Healthcare) RE: Spotlight – Internal NDA Lists 2009 – 2012 (GE_SDM_00003289-91) including 2 attachments/spreadsheets "Copy of Project Spotlight Confidentiality Agreement List" (GE_SDM_00032892) and "Spotlight Internal NDA List 2.12.13" (GE_SDE_00032893).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 94 | Email dated February 4, 2013 from Jean-Paul Bouhnik (GE Healthcare) to Riyad Mahameed (GE Healthcare) and Gil Kovalski (GE Healthcare) RE: GPCZT pal tool.doc including an attachment/Form related to Project named "General |

| Exhibit Number | Description |
|---|---|
| | Purpose Gamma Camera based on ███████████ (GE_SDM_00300026-30).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 95 | Email dated February 20, 2013 from Gil Kovalski to Arie Eshco (GE Healthcare), Riyad Mahameed (GE Healthcare), Tzachi Rafaeli (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Sergio Steinfeld (GE Healthcare), Roee Khen (GE Healthcare) and Aharon Peretz (GE Healthcare) RE: GP CZT Column diameter and Specs (GE_SDM_00205056-60).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 96 | Email dated February 24, 2013 from Jean-Paul Bouhnik (GE Healthcare) to Reuven Brenner (GE Healthcare), Riyad Mahameed (GE Healthcare) and Gil Kovalski (GE Healthcare) RE: recon (GE_SDM_00017481-82).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 97 | Email dated June 24, 2010 from Alexander Ganin (GE Healthcare) to Floris P Jansen (GE Research), Shuchi Varandani (GE Healthcare) and Jean-Paul Bouhnik (GE Healthcare) RE: Yoel (GE_SDM_00012345-46).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 98 | Email dated September 12, 2011 from Jim Haisler to Yoel Zilberstien RE: revised presentation for Tom including an attachment/PowerPoint presentation "A Paradigm Shift in Medical Imaging" dated September 2011 (SDML_01597124-41).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 99 | September 12, 2011 calendar entry made by Jim Haisler "19:30 CDT: Dinner w/Thomas Gentile – GE" (SDML_01597352).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 100 | Email dated March 6, 2013 from Riyad Mahameed to Yariv Grobshtein (GE Healthcare) and Gil Kovalski (GE Healthcare) Re: FW: GPC including 15 attachments (GE_SDM_00127723-97).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 101 | Email dated December 5, 2015 from Jean-Paul Bouhnik (GE Healthcare) to Riyad Mahameed (GE Healthcare) Re: last email from spectrum (GE_SDM_00133152) including an attachment/email dated September 15, 2010 from Yoel Zilberstien to Floris P Jensen and others regarding GPC simulation (GE_SDM_00133153-55).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 102 | PowerPoint presentation regarding Spectrum Dynamics – GE Proposal, December 2009 (SDML_00133333-42).  (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) |
| 103 | Spreadsheet file named "box_reorganization_15.4.2018.xlsx" (GE_SDM_00236172).  (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) |
| 104 | Email dated February 13, 2012 from Riyad Mahameed (GE Healthcare) to Nathaniel Roth and Yoel Zilberstien RE: Draft – Urgent (SDML_00377339-41). |

| Exhibit Number | Description |
|---|---|
| | (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 105 | Email dated February 14, 2012 from Nathaniel Roth to Riyad Mahameed (GE Healthcare) and Yoel Zilberstien RE: Draft – Urgent (SDML_01275201-02) including an attachment/PowerPoint presentation "GPC simulations work" (SDML_01275203-07).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 106 | Email dated February 15, 2012 from Riyad Mahameed (GE Healthcare) to Nathaniel Roth and Yoel Zilberstien RE: Draft – Urgent (SDML_01180486).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 107 | Email dated February 15, 2012 from Riyad Mahameed (GE Healthcare) to Nathaniel Roth, Lana Volokh (GE Healthcare), and Yoel Zilberstien RE: GPC Acceptance (SDML_00377560) including an attachment/PowerPoint presentation "GPC Clinical Performance Requirements" (SDML_00377561-63).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 108 | Email dated June 13, 2013 from Einat Binyamin (GE Healthcare) to Jean-Paul Bouhnik (GE Healthcare) re: Counts & more (GE_SDM_00204311).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 109 | Email dated June 23, 2013 from Einat Binyamin (GE Healthcare) to Jean-Paul Bouhnik (GE Healthcare) RE: Counts & more (GE_SDM_00204276).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 110 | Spreadsheet named "Column requirements01.xlsx" (GE_SDM_00194604).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 111 | NOT USED |
| 112 | Email dated July 22, 2010 from Nathan Hermony (GE Healthcare) to Shuchi Varandani (GE Healthcare) RE: Spotlight Deck (February to Omar) (GE_SDM_00547553-55).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 113 | Email dated October 28, 2010 from Yoel Zilberstien to Nathan Hermony Re: SD (SDML_00799099).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 114 | Email dated February 17, 2011 from Yoel Zilberstien to Nathan Hermony Re: OMS. OMD (SDML_00834474).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 115 | Email dated January 22, 2011 from Nathan Hermony to Yoel Zilberstien Re: OMS (SDML_00828412-13).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 116 | Email dated January 25, 2012 from Jim Haisler to Sharon Alon, Gilad Yoeli, Yoel Zilberstien, and Yuri Shoshan RE: Spotlight – Onsite DD Agenda (SDML_01597182-85) including an attachment/PowerPoint presentation "A Paradigm Shift in Medical Imaging" dated January 2012  (SDML_01597186-262).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |

A-11

| Exhibit Number | Description |
|---|---|
| 117 | Emailed dated April 24, 2018 from Netanella Didi to Jonathan Sachs, Raz Carmi, Michael Wilk, Yariv Grobshtein, Shai Wald, Michal Merman, Michael Gaisinsky, Adi Sharon, Ayelet Barak, Idan Cohen, and Gali Avital Re: FW: Uploading SG folders to Box including an attachment/spreadsheet named "box-reorganiztion_24.4.2018.xlsx" (GE_SDM_00249996-98).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 118 | Email dated November 25, 2019 from Yariv Grobshtein (GE Healthcare) to Jonathan Sachs (GE Healthcare) RE: Comparison of simulations to physical acquisitions (GE_SDM_00377195-96).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 119 | Meeting Invite dated May 7, 2013 from Jean-Paul Bouhnik to Roee Khen, Yulim Zingerman, Ofir Amzaleg, Gil Amisar, Tzachi Rafaeli, Riyad Mahameed, Sergio Steinfeld, Yigal Shrem, Leonid Tsukerman, Yariv Grobshtein, Einat Binyamin, Uri Sneh, Ilan Levin, Nati Herman, Arie Eshco, Dalit Sapir, Galia Pyura, Michael Gaisinsky, Sharon Ben-Shabat, Dmitri Diment, Tal Bresler, Reuven Brenner, Aharon Peretz, Gil Kovalski, and Aharon Peretz Re:  GPC workout including an attachment/PowerPoint presentation "Stargate - Master Plan Workout - April 29, 2013" (GE_SDM_00230528-33).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 120 | Email dated April 30, 2013 from Yulim Zingerman to Sergio Steinfeld Re: NM Technology Trens_Example – Riyad.docx including an attachment/document titled "NM Technology Trends - April 21, 2013" by Chief Engineer Riyad Mahameed (GE_SDM_00230902-40).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 121 | Email dated May 5, 2011 from Nathaniel Roth to Yoel Zilberstien, Albert Cogan, Baha Elden Kassem, Sajed Haj-Yahya, Adi Nahmani, Dan Samak, Ran Ravhon, Samy Bross, Rafael Baavour, and Dalia Shiti RE:  GPC system PDR – meetin gsummary (3/5/2011) including an attachment/document regarding "GPC – Meeting Sumary – System PDR – 20110503" (SDML_00845881-84).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 122 | Email dated January 28, 2013 from Sergio Steinfeld (GE Healthcare) to Ilan Levin (GE Healthcare), Michael Gaisinsky (GE Healthcare), Roee Khen (GE Healthcare), and Jean-Paul Bouhmik (GE Healthcare) RE: ███████████ Preliminary Spec and including an attachment/spreadsheet named "GPZCT Motion.xlsx" (GE_SDM_00205098-99).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 123 | Meeting invite dated Feb 10, 2013 and organized by Michael Gaisinsky to Jean-Paul Bouhnik, Ilan Levin, Uri Sneh, Yariv Grobshtein, Riyad Mahameed, Ofir Amzaleg, Sergio Steinfeld, Yigal Shrem, and Tzachi Rafaeli Re:  GPczt Software/Hardware status update including 3 attachments containing diagrams and a document titled "FW'06 SW & HW Status Update" (GE_SDM_00244936-39).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 124 | PowerPoint presentation "D-SPECT Reconstruction Parameters" (SDML_01167981-82).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES |

| Exhibit Number | Description |
|---|---|
| | ONLY) |
| 125 | PowerPoint presentation "D-SPECT Performances" (SDML_01061769-76). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 126 | PowerPoint presentation "UCL – GPC Status – 05/09/2011" (SDML_01174557-68).  (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) |
| 127 | Email dated May 30, 2013 from Nathaniel Roth to Yoel Zilberstien and Ayelet Dekel Re: Cost reduction slides including an attachment/PowerPoint presentation "D_SPECT cost reduction projects" (SDML_00872660-80). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 128 | PowerPoint presentation "GPC Kickoff Meeting" (SDML_01171484-91). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 129 | Email dated June 1, 2015 from Nathaniel Roth to Baha Elden Kassem Re: GPC design justification including an attachment/document titled "GPC - Design justification" (SDML_01278776-95).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 130 | Email dated September 7, 2009 from Shuchi Varandani (GE Healthcare) to Yoel Zilberstien and Jim Haisler RE: Meeting with SD (SDML_00667196-97). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 131 | PowerPoint presentation "D-SPECT system" (SDML_01167709-21).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 132 | Video file named "VID-20171018-WA0007.mp4" (GE_SDM_00220577). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 133 | Stargate Gantry ME DDR Video dated July 2019 (GE_SDM_00154502). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 134 | Email dated June 22, 2010 from Nathan Hermony to Erez Levy, Riyad Mahameed, Reuven Brenner, Jean-Paul Bouhnik, and Arie Eshco RE: Spotlight – 6/17 Report Out Deck (GE_SDM_00550471-73).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 135 | Email dated May 19, 2013 from Eli Werner (GE Healthcare) to Arie Eshco (GE Healthcare) and Jean-Paul Bouhnik (GE Healthcare) RE: For your URGENT review including an attachment/document titled "New Era of NM IQ & Patient Management" (GE_SDM_00204615-37).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 136 | PowerPoint presentation "GE Alcyone Multi-Pinholes SPECT" (SDML_00650605-12).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 137 | GE Healthcare Web Article: "Cardiac Imaging" printed March 18, 2021 (https://www.gehealthcare.com/products/molecular-imaging/nuclear-medicine/cardiac-imaging) (SDML_01279503-10). |
| 138 | NOT USED |

| Exhibit Number | Description |
|---|---|
| 139 | NOT USED |
| 140 | NOT USED |
| 141 | PowerPoint presentation "Non Cardiac imaging with D-SPECT & GPC Feasibility Prototype" (SDML_01055100-31).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 142 | Email dated August 3, 2010 from Jean-Paul Bouhnik to Yoel Zilberstien, Floris P Jansen, Alexander Ganin, and Shuchi Varandani RE: project data (containing in the chain an email dated August 3, 2010 from Floris Jansen to Jean-Paul Bouhnik (GE Healthcare), Alexander Ganin (GE Healthcare), and Ravindra Manjeshwar (GE Global Research) Re: projection data) including an attachment/PowerPoint presentation "Spotlight simulations – data conventions – August 2010" by Floris Jansen (SDML_0073345-53).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 143 | Memorandum dated December 14, 2006 from Haim to Eli, Leonid, Tali, Adi, Nathaniel, Samy, and Omer Re:  Eli's Scan Pattern Documentation (SDML_00015221-22).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 144 | Document titled "New Scramble Method - Algorithm Development report" by Ravhon Ran (SDML_00009898-903).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 145 | Gambhir et al., A Novel High-Sensitivity Rapid-Acquisition Single-Photon Cardiac Imaging Camera, *J Nucl Med*, 50:635-643 (2009) (GE_SDM_00392950-59). |
| 146 | Slomka et al., New Cardiac Cameras: Single-Photon Emission CT and PET, *Semin Nucl Med*, 44:232-251 (2014) (GE_SDM_00389457-76). |
| 147 | Email dated June 11, 2010 from Sharon Alon to Yuri Shoshan, Jim Haisler, Yoel Zilberstien, and Gilad Yoeli RE: FW: Project Spotlight – 6/10 Question Log & Onsite Agenda including 2 attachments/spreadsheets "Spotlight Due Diligence Questions 06.10.10.xls" and "Spotlight_OnsiteDD_Agenda_v9.xls" (SDML_01061290-94).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 148 | E.G. DePuey, Journal of Nuclear Cardiology, vol. 19(3), pp. 551-581, 2012 (SDML_00321587-619). |
| 149 | PowerPoint presentation "Atlantis - Stargate with ultra high sensitivity" (GE_SDM_00166492-502).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 150 | GE Healthcare 510(k) Premarket Notification Submission - Section 13: Proposed Labeling - StarGuide (GE_SDM_00440349-556).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 151 | NOT USED |
| 152 | GE Healthcare 510(k) Premarket Notification Submission - Section 18: |

| Exhibit Number | Description |
|---|---|
| | Performance Testing-Bench - StarGuide (GE_SDM_00441071-175). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 153 | Email dated October 11, 2009 form Shuchi Varandani to Reuven Brenner (GE Healthcare), Floris Jansen (GE Research), Riyad Mahameed (GE Healthcare), and Jean-Paul Bouhnik (GE Healthcare) RE: Spolight (GE_SDM_00366502). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 154 | Email dated August 1, 2010 from Alexander Ganin (GE Healthcare) to Jean-Paul Bouhnik (GE Healthcare), Floris Jansen (GE Global Research), Riyad Mahameed (GE Healthcare), Nathan Hermony (GE Healthcare), Aharon Peretz (GE Healthcare), Osnat Zak (GE Healthcare), Reuven Brenner (GE Healthcare), Tzachi Rafaeli (GE Healthcare), Terri Bresenham (GE Healthcare, GE Officer), and Shuchi Varandani (GE Healthcare) RE: spotlight visit – review of simulation (GE_SDM_00005376-77). (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) |
| 155 | Document titled "Spotlight Technology evaluation" by Floris Jansen, Chielf Scientist, Imaging Systems, GE Global Research, dated August 12, 2010 (GE_SDM_00366578-80). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 156 | Video file named "GPC_Linear_original.mp4" (SDML_01055537). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 157 | Email dated July 30, 2012 from Einat Binyamin to Gil Kovalski (GE Healthcare) and Yariv Grobshtein (GE Healthcare) Re: Stargate (GE_SDM_00241753). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 158 | Email dated May 8, 2013 from Jean-Paul Bouhnik to Leonid Tsukerman, Michael Kogan, Ormit Amir, Tzachi Rafaeli, Yulim Zingerman, and Yariv Grobshtein RE: Weekly Physics' "Happy hour" including an attachment/spreadsheet "collimator design for GPC.xlsx" (GE_SDM_00241609-10). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 159 | Spreadsheet file named "collimator design for GPC July31 – Copy.xlsx" (GE_SDM_00194077). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 160 | Email dated December 3, 2013 from Jean-Paul Bouhnik to Leonid Tsukerman (GE Healthcare), Gil Kovalski (GE Healthcare), Michael Kogan (GE Healthcare), and Yulim Zingerman (GE Healthcare). RE: D-SPECT collimator including an attachment/article – Erlandsson et al., *Phys. Med. Biol.*, 54:2635-2649 (2009) (GE_SDM_00286271-86). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 161 | Email dated June 20, 2010 from Jean-Paul Bounik (GE Healthcare) to Alexander Ganin (GE Healthcare), Floris Jansen (GE Research), Riyad Mahameed (GE Healthcare), Nathan Hermony (GE Healthcare), Reuven Brenner (GE Healthcare), Arie Eshco (GE Healthcare), and Shuchi Varandani (GE Healthcare) Re: spotlight technology – few input collected during the last day (GE_SDM_00005708). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES |

| Exhibit Number | Description |
|---|---|
|  | ONLY) |
| 162 | Email dated June 24, 2014 from Jean-Paul Bouhnik to Yariv Grobshtein including an attachment/spreadsheet file named "collimator design for GPC may2014.xlsx" (GE_SDM_00286071-72).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 163 | Spreadsheet file named "collimator design for GPC may2014.xlsx" (GE_SDM_00285191).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 164 | Email dated December 6, 2015 from Jean-Paul Bouhnik (GE Healthcare) to Riyad Mahameed (GE Healthcare) (GE_SDM_00201234) including an attachment/spreadsheet named "collimator design for GPC august 2014.xlsx" (GE_SDM_00201235).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 165 | Email dated December 6, 2015 from Jean-Paul Bouhnik to Riyad Mahameed including an attachment/PowerPoint presentation "Developer Survival Landscape" (GE_SDM_00201236-41).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 166 | Email dated December 21, 2015 from Riyad Mahameed to Yariv Grobshtein and Jean-Paul Bouhnik Re: Initial thoughts on IQ plan including an attachment/PowerPoint presentation "Gaps v. MD" (GE_SDM_00206272-80). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 167 | PowerPoint presentation "GP CZT – "Stargate", GPC Tech Review, Jan. 2013" by Jean-Paul Bouhnik (GE_SDM_00194918-52).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 168 | Calendar entry for March 18, 2013 Meeting: "Stargate – continue discussion" organized by Gil Kovalski (GE Healthcare) for the required attendees: Jean-Paul Bouhnik (GE Healthcare), Kevin M. Boyle (GE Healthcare), Riyad Mahameed (GE Healthcare), and Aharon Peretz (GE Healthcare) (GE_SDM_00049934-35). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 169 | PowerPoint presentation "GPC – Image Quality Survey" (GE_SDM_00148763-78).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 170 | PowerPoint presentation "GP CZT – "Stargate", GPC Tech Review, Jan 2013" by Jean-Paul Bouhnik (GE_SDM_00195273-334).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 171 | Power Point presentation titled "GE Healthcare - Nuclear Medicine Review" (GE_SDM_00139821-40).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 172 | Email dated June 15, 2017 from Raz Carmi (GE Healthcare) to Pavel Livshits (GE Healthcare), Yariv Grobshtein (GE Healthcare), Shai Wald (GE Healthcare), and Jonathan Sachs (GE Healthcare) RE: Stargate scan plan – Matlab code for implementation (GE_SDM_00251386) including attachments containing Stargate Scan Plan – Matlab code (text file inserted for pages marked |

| Exhibit Number | Description |
|---|---|
| | with "Technical Issue – Unable to Image") (GE_SDM_00251386-498). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 173 | PowerPoint presentation "What Next in NM - Feb. 2013" by Riyad Mahameed (GE_SDM_00374179-207).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 174 | Spreadsheet named "Copy of GPC GE only.xls" (GE_SDM_00195104). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 175 | Email dated November 7, 2018 from Hadas Kosovezer (GE Healthcare) to Jean-Paul Bouhnik (GE Healthcare) and Gil Kovalski (GE Healthcare) RE: Stargate axial length analysis (GE_SDM_00313871-72, 74) including an attachment/spreadsheet re "Stargate requirements_2013_08_01.xlsx" (GE_SDM_00313873).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 176 | Spreadsheet file named "Copy of Stargate requirements.xlsx" (GE_SDM_00194844).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 177 | Email dated August 7, 2013 from Gil Kovalski to Jean-Paul Bouhnick and Aharon Peretz RE: GE Libraries: Recommended File – FW3213_Stargage_Meeting_Minutes (GE_SDM_00204111-14) including an attachment/spreadsheet "Stargate requirements.xlsx" (GE_SDM_00204115). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 178 | Email dated August 8, 2013 from Gil Kovalski to Aharon Peretz, Jean-Paul Bouhnick and Arie Eshco RE: Stargate sync – will send you the file for review shortly (GE_SDM_00204105) including an attachment/spreadsheet "Stargate requirements.xlsx" (GE_SDM_00204106).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 179 | Email dated August 11, 2013 from Gil Kovalski to Aharon Peretz, Jean-Paul Bouhnick and Arie Eshco RE: Stargate content (GE_SDM_00204100) including an attachment/spreadsheet "Stargate requirements.xlsx" (GE_SDM_00204101). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 180 | Email dated August 11, 2013 from Gil Kovalski to Aharon Peretz, Jean-Paul Bouhnick and Arie Eshco RE: Stargate content (GE_SDM_00204103) including an attachment/spreadsheet "Copy of Stargate requirements.xlsx" (GE_SDM_00204104).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 181 | Email dated August 14, 2013 from Aharon Peretz to Kevin M Boyle, Gil Kovalski, Jean-Paul Bouhnik, and Arie Eshco RE: GE Libraries: Recommended File – FW3213_Stargage_Meeting_Minutes (GE_SDM_00204096-98) including an attachment/spreadsheet "Stargate requirements.xlsx" (GE_SDM_00204099). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 182 | Email dated July 3, 2018 from Jean-Paul Bouhnik to Reuven Brenner RE: FW Stargate content (GE_SDM_00319563-64) including an attachment/spreadsheet file named "Stargate requirements.xlsx" (GE_SDM_00319565).  (HIGHLY |

| Exhibit Number | Description |
|---|---|
| | CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 183 | Email dated August 19, 2013 from Yariv Grobshtein to Jean-Paul Bouhnik RE: Stargate content (GE_SDM_00254147) including an attachment/spreadsheet "Stargate requirements – Recon inputs.xlsx" (GE_SDM_00254148).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 184 | PowerPoint presentation "GP CZT – "Stargate" - GPC Tech Review - Jan. 2013" by Jean-Paul Bouhnik (GE_SDM_00194852-79).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 185 | Email dated December 1, 2013 from Jean-Paul Bouhnik to Oren Saban (GE_SDM_00203516) including an attachment/PowerPoint presentation "GP CZT – "Stargate" - GPC Tech Review - Jan. 2013" by Jean-Paul Bouhnik (GE_SDM_00203517-45).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 186 | PowerPoint presentation "GP CZT – "Stargate" - GPC Tech Review - Jan. 2013" by Jean-Paul Bouhnik (GE_SDM_00195200-28).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 187 | Email dated January 12, 2012 from William Burgman to @HEALTH HCS Growth BoD (GE_SDM_00011879) including an attachment/PowerPoint presentation titled "Healthcare Systems - Growth Board – Inorganic" dated January 12, 2012 (GE_SDM_00011880-914).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 188 | Email dated April 20, 2009 from Wendi Bergner (GE Healthcare) on behalf of Elizabeth Newell (GE Healthcare) RE: Project Spotlight Confidentiality Agreement (GE_SDM_00413224-25).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 189 | Email dated January 5, 2017 from Arie Eshco to Jean-Paul Bouhnik RE: FW: Stargate WF animation (GE_SDM_00225120) including an attachment/video "stargate_ep01_preview_12.wmv" (GE_SDM_00225121).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 190 | Calendar entry "FW: Lempax quote review" meeting invitation organized by Galia Pyura (GE Healthcare) for the meeting to occur on April 16, 2015 at 12:00 pm, requiring attendance of Yovav Elul, Jack Luo, Israel Altman, Nati Bloch-Damti, and Reuven Brenner including attachments/email/drawings (except for STEP native files since they cannot be opened) (GE_SDM_00304084-85, 87-89, 91, 92, 96-98, 100, 102).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 191 | PowerPoint presentation "General Purpose system - Develop mechanisms" (GE_SDM_00485235-57).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 192 | Spreadsheet file named "NM Tracers rev 6.5.xlsx" (GE_SDM_00552761). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 193 | PowerPoint presentation "Stargate NM Gantry - Suspended Mass Analysis - |

| Exhibit Number | Description |
|---|---|
|  | DOC2385623" dated May 2020 (GE_SDM_00140283-358).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 194 | Email dated October 13, 2016 from Roei Erlich to Gilad Indig, Alon Bendor, Doron Yahya, and Jean-Paul Bouhnik RE: missing data or open issues HW related including an attachment/document titled "SCM - ███████ - Electronics Specifications", Initial Version: October 2016 Rev.6.0 (GE_SDM_00212696-729).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 195 | PowerPoint presentation "GPC Simulations - Update meeting - October 30, 2012" (GE_SDM_00235099-115).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 196 | Email dated February 13, 2013 from Gil Kovalski (GE Healthcare) to Einat Binyamin (GE Healthcare), Riyad Mahameed (GE Healthcare), Yariv Grobshtein (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Sergio Steinfeld (GE Healthcare), Elias Shalabi (GE Healthcare, consultant), and Yulim Zingerman (GE Healthcare) RE: GPC Simulations (GE_SDM_00256144-45). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 197 | PowerPoint presentation "GE Healthcare - Nuclear Medicine Growth Play Book - March 2009" (GE_SDM_00292337-81).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 198 | GE document titled "Alcyone Technology - White Paper" (GE_SDM_00286665-71) (with text file inserted under each page due to illegibility of the document). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 199 | Email dated November 25, 2009 from Ravindra Manjeshwar (GE Research) to Alexander Ganin (GE Healthcare), Lana Volokh (GE Healthcare), Yigal Shrem (GE Healthcare), Jonathan Sachs (GE Healthcare), Jean-Paul Bouhnik (GE Healthcare), Ira Blevis (GE Healthcare), Leonish Tsukerman (GE Healthcare), Osnat Zak (GE Healthcare), Riyad Mahameed (GE Healthcare), Aharon Peretz (GE Healthcare), Sinan Awad (GE Healthcare), Kristen A (GE Research), Jorge Uribe (GE Research), Evren Asma (GE Research), Hua Qian (GE Research), Sergei Dolinsky (GE Research), Floris P Jansen (GE Research) Yanfeng Du (GE Research), and Jeffrey S Gordon (GE Research) RE: Notes from Nuc Brainstorming session (GE_SDM_00286375-76) including 5 attachments/presentations (GE_SDM_00286377-381, 385-403).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 200 | Email dated September 25, 2009 from Nathan Hermony to Riyad Mahameed, Jean-Paul Bouhnik, and Erez Levy RE: FW: GP simulations 3 including an attachment/PowerPoint presentation titled "GP simulations" (GE_SDM_00286577-97).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 201 | NOT USED |
| 202 | Email dated January 6, 2009 from Floris Jansen, Yigal Shrem, Ira Blevis, Lana Volokh, James Hugg, Leonid Tsukerman, Jean-Paul Bouhnik, Yariv Grobshtein, |

| Exhibit Number | Description |
|---|---|
| | Reuven Brenner, Alexander Ganin, Girish Bal RE: Plan + results including an attachment/presentation "GRC SPECT Tasks for '09" (GE_SDM_00286734-41). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 203 | Email dated June 22, 2014 from Yariv Grobshtein (GE Healthcare) to Einat Binyamin (GE Healthcare) and Gil Kovalski (GE Healthcare) RE: Female 50 new axial division (GE_SDM_00254108-09). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 204 | Discovery NM 530c Data Sheet (GE_SDM_00328143-48). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 205 | Email dated August 25, 2010 from Nathaniel Roth to Floris Jensen, Alexander Ganin, Jean-Paul Bouhnik, Ravindra Manjeshwar, Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation (SDML_00262801-02). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 206 | Email dated September 14, 2010 from Nathaniel Roth to Floris Jensen, Yoel Zilberstien, Alexander Ganin, Ravindra Manjeshwar, Nathan Hermony, Jean-Paul Bouhnik, Riyad Mahameed, Ran Ravhon, and Gilad Yoeli RE: GPC simulation (SDML_01169128-32). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 207 | Emailed dated August 10, 2010 from Nathaniel Roth to Floris Jensen and Jean-Paul Bouhnik RE: GPC simulation (SDML_01168658-59). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 208 | Email dated August 25, 2010 from Nathaniel Roth to Floris Jensen, Alexander Ganin, Jean-Paul Bouhnik, Ravindra Manjeshwar, Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation (SDML_00262880-81). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 209 | Emailed dated August 4, 2010 from Nathaniel Roth to Jean-Paul Bouhnik, Floris Jensen and Alexander Ganin RE: GPC simulation (SDML_01168576-77). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 210 | Email dated August 26, 2010 from Nathaniel Roth to Floris Jensen, Alexander Ganin, Jean-Paul Bouhnik, Ravindra Manjeshwar, Yoel Zilberstien, Ran Ravhon, and Gilad Yoeli RE: GPC simulation (SDML_00263114-16). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 211 | Emailed dated August 31, 2010 from Nathaniel Roth to Floris Jensen, Jean-Paul Bouhnik, Ravindra Manjeshwar and Ran Ravhon RE: GPC simulation (SDML_01168941-45). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 212 | Document titled "reconstruction algorithm description of d-spect" (SDML_00032264-67). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 213 | Document titled "Bad Pixels Identification – Application: D-SPECT" by Ran Ravhon (SDML_00393039). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |

| Exhibit Number | Description |
|---|---|
| 214 | Spreadsheet file named ██████████████████████ (SDML_00032416). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 215 | Spreadsheet file named ██████████████ (SDML_00032415).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 216 | Document titled ████████████████████ (SDML_00032214-16).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 217 | PowerPoint presentation ██████████████ (SDML_00032206-11). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 218 | Document titled ████████████████████████ written by Ran Ravhon (SDML_00032452-458).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 219 | PowerPoint presentation ██████████████ (SDML_00033523-30). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 220 | Document titled ████████████████████████ written by Omer Ziv (SDML_00015148-52).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 221 | Email dated July 12, 2012 from Sabrina Solomon (GE Healthcare) to @HEARLTH NM Rehovot, @HEALTH MI Haifa all, @HEALTH Beijing CT ENG NM RE: NM Communication – The Stargate Team formed (GE_SDM_00108628-29).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 222 | PowerPoint presentation titled "GPC Simulations - Update Meeting - November 15, 2012" (GE_SDM_00378678-711).  (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |

{J734906 04865091.DOCX 2}