```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED: 9/9/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPECTRUM DYNAMICS MEDICAL
LIMITED,

                                        Plaintiff,

            -against-


GENERAL ELECTRIC COMPANY et al.,

                                        Defendant.

**OPINION ON CLAWBACK REQUEST**

18-CV-11386 (VSB)(KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

On July 22, 2021, Plaintiff Spectrum Dynamics Medical Limited ("Spectrum") notified

Defendant General Electric ("GE") of their intention to clawback 42 documents that are subject

to the attorney-client privilege pursuant to the Court's Protective Order (ECF No. 156.) (ECF No.

325-1, Ex. 1.).   On August 12, 2021, Defendants filed this instant motion claiming that, of the 42

documents, five[1] communications constituted a waiver of privilege because Plaintiff disclosed

these communications to third parties.   (ECF No. 325.)  After reviewing the disputed documents

in camera, the Court concludes that they are within the attorney-client privilege and do not

constitute a waiver.  Accordingly, Defendant's motion to compel is DENIED.

---

[1] In Plaintiff's Opposition they noted that they withdrew their request to claw-back document
"SDML_PRIV_00000245," leaving this Court to review 4 instead of 5 documents. (ECF No. 349.)

**NATURE OF THE DOCUMENTS**

At issue are four[2] email communications that relate to a corporate name change and restructuring transaction – the Spectrum predecessor-in-interest V-Target family of multi-national companies changing its name and restructuring into the Spectrum family of companies – that occurred in 2005.[3] (ECF No. 349.)  Plaintiff maintains that Hobart Holding Ltd. ("Hobart"), who employed Guy Wollman ("Wollman") and Miki Eden ("Eden"), was affiliated with Spectrum (formerly V-Target) under the common ownership and control of principal, Dr. Shlomo Ben-Haim, in 2005. (*Id.*)  Plaintiff alleges that, at least during 2005, Spectrum did not have an internal financial manager, and Wollman and Eden served in this capacity for Spectrum – acting as *de facto* Spectrum employees (or at least agents) in the role of financial managers to Spectrum and Yesha Primes, the Primes Shiloh Givon and Meir attorney, in connection with the 2005 restructuring transaction. (*Id.*)  Plaintiff maintains that in this position, Wollman and Eden understood and respected the confidential and privileged nature of communications with counsel and were essential to Spectrum's ability to complete the restructuring transaction.  (*Id.*)

Plaintiff provided a privilege log to the Defendant that identified the four documents at issue with the following explanations:

- SDML_PRIV_00000238 is a May 23, 2005 email from Yoel Zilberstien to Guy Wollman with the subject "FW: v-target financial statements."

- SDML_PRIV_00000239 is a May 29, 2005 email from Yoel Zilberstien to Guy Wollman and Miki Eden with the subject "FW."

---

[2] Plaintiff provided certified translations of the documents that appeared to be in Hebrew in camera to chambers.
[3] As further detailed in the First Amended Complaint, in 2005, V-Target LLC changed its name to Spectrum Dynamics LLC and V-Target Technologies Ltd. changed its name to Spectrum Dynamics (Israel) Ltd. (FAC, ECF No. 38 ¶ 13.)

- SDML_PRIV_00000242 is an August 22, 2005 email from Yoel Zilberstien to Miki Eden with the subject "FW: V-Target Yona Bouskila."

- SDML_PRIV_00000244 is an August 31, 2005 email from Yoel Zilberstien to Yesha Primes and Miki Eden with the subject "RE: 2003 Financials."

To provide further context for the claim of privilege, Plaintiff provided a declaration from Yoel Zilberstien, the Founder and current Chief Technology Officer of Spectrum, who provided the services agreement between Spectrum and Hobart.  (Zilberstien Decl. ¶¶ 1, 6.)  The Declaration explains that Hobart and Vtech were under common ownership, used the same corporate counsel, and that Hobart provided essential services to Vtech.  The Declaration affirms that under that services agreement, "[h]obart personnel acted as Spectrum employees and respected and treated confidential and/or privileged information of Spectrum as if Spectrum employees."  (Zilberstien Decl. ¶ 8.)  As relevant here, Guy Wollman and Miki Eden provided financial consulting services to Spectrum because it did not have an internal financial manager.  (Zilberstien Decl. ¶ 9.)  Thus, according to Zilberstein, Wollman and Eden were working together with Zilberstein, as de facto employees of Vtech, to assist Vtech's counsel (Yesha Primes) by providing information needed to advise on the corporate restructuring.

The Defendant does not challenge that the substance of the communications are privileged or that the documents were inadvertently produced, but instead argues that these communications were disclosed to a third party - Hobart Holding Ltd (and by extension Wollman and Eden) – and thus any privilege was waived.[4] (ECF No 325.)  Defendants further argue that the privilege log was not sufficient because it does not describe the relationship between Spectrum

---

[4] The emails in question are all chains of communications involving attorney Yesha Primes – either relaying information to or receiving/relaying information from Primes.

and Hobart and when GE inquired with Spectrum about a specific agreement between Hobart and Spectrum, the Plaintiff could not provide one. (*Id*.)  Consequently, Defendants claim that Plaintiff cannot show that that it had a common legal interest with the third-party, has not demonstrated that Hobart was essential to allow communications between the companies to occur, or proved that Hobart was a functional equivalent of a corporate employee. (*Id*.)

**ATTORNEY-CLIENT PRIVILEGE**

The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice. Fed. R. Evid. 501; *In re County of Erie*, 473 F.3d 413, 418-419 (2d Cir. 2007).  As the U.S. Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. 449 U.S. 383, 389 (1981).  The privilege is narrowly construed, however, because it renders relevant information undiscoverable.  *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.  The party asserting privilege has the burden of demonstrating it is privileged. *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)).

Generally, "disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973); *see also La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 363 (S.D.N.Y. 2014) ("The attorney-client privilege does not normally attach to privileged communications that are disclosed to persons who are neither the attorney nor the

4

client.") (citing *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 n.5 (2d Cir. 2003)).

Notwithstanding this general rule, there are circumstances where courts have not found a waiver

even where attorney-client communications were shared with a third party.  For purposes of this

motion, the relevant exceptions are: the essential third-party consultant exception, the common

interest exception, and the functional equivalent exception. (ECF No. 325.)

The essential third-party consultant exception occurs when the inclusion of a third party

is "necessary, or at least highly useful, for the effective consultation between the client and the

lawyer." *United States v. Adlman,* 68 F.3d 1495, 1499 (2d Cir. 1995); *Nat'l Educ. Training Grp., Inc.*

*v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) (Communications fall within the

exception if the third party was "nearly indispensable or served some specialized purpose in

facilitating the attorney-client communication.")   However, "a communication between an

attorney and a third party does not become shielded by the attorney-client privilege solely

because the communication proves important to the attorney's ability to represent the

client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).  Rather, the privilege extends to

a communication disclosed to a third party only "if the purpose of the third party's participation

is to improve the comprehension of the communications between attorney and

client." *Id.*; *accord Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150450, at *2 (E.D.N.Y. Apr. 5,

2012); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005).

The common-interest exception applies where the communication pertains to a joint

defense effort or other legal strategy in the context of pending or reasonably anticipated

litigation.  *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017); *Ambac Assur. Corp. v.*

*Countrywide Home Loans, Inc.,* 27 N.Y.3d 616, 627, 57 N.E.3d 30, 37 (2016).  Under this

exception, only communications "made in the course of an ongoing common enterprise and intended to further the enterprise" are protected. *Krug, 868 F.3d 82, 86.* As with all attorney-client privilege claims, a claim of privilege under the common-interest rule "requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *United States v. Schwimmer,* 892 F.2d 237, 244 (2d Cir. 1989.) Although the common-interest rule "somewhat relaxes the requirement of confidentiality by defining a widened circle of persons to whom clients may disclose privileged communications," Restatement (Third) of the Law Governing Lawyers § 76 cmt. c (2000) (internal citation omitted), "a communication directly among the clients is not privileged unless made for the purpose of communicating with a privileged person," *Id.* § 76 cmt. d, i.e., the lawyer, "agents of" the client or of the lawyer "who facilitate communications between" the client and the lawyer, and "agents of the lawyer who facilitate the representation." *Id.* § 70. It is not "necessary for the attorney representing the communicating party to be present when the communication is made and that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply. *See Ambac Assur. Corp.,* 27 N.Y.3d 616, 627, 57 N.E.3d 30, 37 (2016); *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64 (S.D.N.Y. 2009); *Schwimmer,* 892 F.2d 237, 244 (2d Cir. 1989.)

The last exception, the functional equivalent doctrine, has been adopted and applied by other Circuits but has never been recognized by the Second Circuit. *See Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 7238354, *1 (S.D.N.Y. 2014); *see also Narayanan v. Sutherland Glob. Holdings Inc.,* 285 F. Supp. 3d 604, 614–15 (W.D.N.Y. 2018). Nevertheless, assuming that the exception is viable in this Circuit, factors relevant to determining

whether the third party was a functional equivalent to an employee include: whether the

consultant exercised independent decision-making on the company's behalf; possessed

information held by no one else at the company; served as a company representative to other

third parties; maintained an office at the company or otherwise spent a substantial amount of

time working for it; and sought legal advice from corporate counsel to guide his or her work for

the company. *See, e.g., Narayanan*, 285 F.Supp.3d at, 617–18; *Durling v. Papa John's Int'l, Inc.*,

2018 WL 557915, at *5 (S.D.N.Y. Jan. 24, 2018); *Church & Dwight Co.*, 2014 WL 7238354, at *3;

*Steinfeld v. IMS Health Inc.*, 2011 WL 6179505, at *3–4 (S.D.N.Y. Dec. 9, 2011).

**ANALYSIS**

Defendant argues that none of the third-party waiver exceptions apply here and

therefore Plaintiff waived their claim of privilege. (ECF No. 325 at pp. 4-5.)  The Court disagrees.

As a preliminary matter, requiring corporate parties to establish a common

representation or interest is not an arduous task.  *See In re Keurig Green Mt. Single-Serve Coffee*

*Antitrust Litig.*, 2019 U.S. Dist. LEXIS 215919, *32, 2019 WL 6736132 (S.D.N.Y. July 18, 2019).

Plaintiff explains that V-Target/ Spectrum and Hobart were both under the common ownership

of Shlomo Ben Haim and provided a declaration from Yoel Zilberstien's stating that "[h]obart

provided administrative, financial and advisory services first to V-Target and then Spectrum,"

during 2004-2005 and after the name change in 2005, in a consulting capacity. (Zilberstien Decl.

¶ 5.)  Additionally, the Services Agreement between Spectrum and Hobart says "[h]obart

personnel acted as Spectrum employees and respected and treated confidential and/or

privileged information of Spectrum as if Spectrum employees." (Id. ¶¶ 6, 8.) These documents

are sufficient to explain the common interest and close relationship between Hobart employees

and Spectrum and support a claim of privilege. *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003) (A party seeking to establish privilege must do so "based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence."); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 473 (S.D.N.Y. 1993) (a party may support its claims of privilege by the submission of "affidavits or equivalent statements that address each document in issue"); *see also, Overton v. Todman & Co., CPAs, P.C.,* 249 F.R.D. 147, 148 (S.D.N.Y. 2008) (Court found that the affidavits asserting the privilege was properly asserted).

It is evident Hobart employees were essential consultants to Spectrum's predecessor in connection with the corporate restructure and served in an "in-house" role insofar as they were treated as employees, required to maintain confidentiality and provided essential advice to attorneys working on the restructure and name change.  See *AU New Haven, LLC v. YKK Corp.,* 2016 U.S. Dist. LEXIS 160602, 2016 WL 6820383, at *3 (S.D.N.Y. Nov. 18, 2016).  As provided by Plaintiff and detailed in the declaration, Wollman and Eden's involvement improved the comprehension of the communications between attorney and client.  Thus, Defendant's argument that Wollman and Eden were not essential to the provision of legal advice fails. *Universal Std. Inc. v. Target Corp.*, 331 F.R.D. 80, 2019 WL 1983944, at *5 (S.D.N.Y. 2019).

*In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 2019 U.S. Dist. LEXIS 215919, *28, 2019 WL 6736132, relied on by Defendant, actually supports Plaintiff's assertion of privilege.  In *Keurig*, Plaintiffs challenged Defendants' privilege assertions over documents shared with a forensic accounting firm.  The Defendants produced a declaration from their financial advisor explaining that they retained a firm to provide forensic accounting assistance

to their legal office.  The Court found that the declaration, the documents themselves and the

briefing demonstrated that the forensic accounting firm – like Hobart here – was an "arm of the

attorneys in order to facilitate the lawyers' rendition of work for the client." *Fitzpatrick v. Am.*

*Int'l Grp., Inc.*, No. 10 Civ. 142(MHD), 2011 U.S. Dist. LEXIS 10975, 2011 WL 350287, at *3

(S.D.N.Y. Feb. 1, 2011).

Without a dedicated internal financial manager, Spectrum and the Primes Shiloh

attorney relied upon Hollman and Eden for their specialized financial expertise and knowledge

to understand the financial issues underlying the 2005 Restructuring Transaction. (ECF No. 349

at p. 5.)  This fact supports application of an exception to the general waiver rule.  *Universal Std.*

*Inc.*, 331 F.R.D. 80, 2019 WL 1983944, at *5 (role was to supply "specialized knowledge to allow

an attorney to understand the client's situation.")  Additionally, to the extent the third

exception applies, the Court finds that Wollman and Eden were acting as *de facto* Spectrum

employees while providing financial consulting services because they were "incorporated into

[the company's] staff to perform a corporation function that was necessary."   Indeed, the

agreement prepared at the time of the transaction stated as much.  *Viacom Inc. v. Sumitomo*

*Corp*. (*In re Copper Mkt. Antitrust Litig*.), 200 F.R.D. 213, 219 (S.D.N.Y. 2001).

Finally, to the extent Defendant contends that Spectrum has attempted to use the

privilege as both a sword and a shield and therefore may not properly withhold the disputed

documents as privileged, its argument is unavailing.  The Second Circuit explained that "the

attorney-client privilege cannot at once be used as a shield and a sword.  A defendant may not

use the privilege to prejudice his opponent's case or to disclose some selected communications

for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  The

principle is to ensure fairness in litigation.  Thus, where the partial disclosure was for the

benefit of the privilege holder, courts find that there is a waiver as to other communications on

the same subject to ensure the requesting party has the full picture of the subject of the

communications.  *Tribune Co. v. Purcigliotti*, No. 93-cv-7222 (LAP) (THK), 1997 WL

10924, at *5 (S.D.N.Y. Jan. 10, 1997), *modified*, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998).

Having reviewed the emails in question *in camera* and considered the other allegedly privileged

emails that Defendant says were produced and not clawed back, the Court finds that there is no

basis for finding that Spectrum has engaged in selective disclosure of privileged

communications for litigation advantage.  Thus, there is no basis for finding waiver for this

reason either.

**CONCLUSION**

For all the foregoing reasons, Defendant's motion to compel is DENIED.

**SO ORDERED.**

Dated:   September 9, 2021
         New York, New York

_____
        KATHARINE H. PARKER
     United States Magistrate Judge