LAW OFFICES
# GREENBLUM & BERNSTEIN, P.L.C.
PATENT, COPYRIGHT AND TRADEMARK MATTERS
1950 ROLAND CLARKE PLACE
RESTON, VA 20191-1411
TEL: (703) 716-1191
FAX: (703) 716-1180
EMAIL: gbpatent@gbpatent.com
www.gbpatent.com

NEIL F. GREENBLUM ○
BRUCE H. BERNSTEIN ○
JAMES L. ROWLAND
ARNOLD TURK ∆
MICHAEL J. FINK
STEPHEN M. ROYLANCE ◊
ROBERT W. MUELLER
WILLIAM E. LYDDANE
WILLIAM S. BOSHNICK *
PAUL A. BRAIER, Ph.D.
P. BRANKO PEJIC *
DANIEL B. MOON
BRUCE H. STONER, JR. ◊
ENOCH PEAVEY
SEAN C. MYERS-PAYNE, Ph.D.
JONATHAN R. MILLER *
STEVEN B. POLLICOFF *
BARRY I. HOLLANDER ◊
GARY V. HARKCOM *◊
JAMES P. BONNAMY
JILL M. BROWNING
WALTER SCHLAPKOHL, Ph.D.
NAOKO OHASHI *

HARRY J. GWINNELL ◊
JEFFREY H. HANDELSMAN *
KENNETH H. SALEN ◊
SOK K. HONG ◊
TAI KONDO □
JEFFREY R. BOUSQUET ◊
GARY M. JACOBS ◊
JAMES A. GROMADA
SHAWN A. HAMIDINIA, Ph.D.
ALI M. IMAM *
CHAD E. GORKA
CHUONG T. NGUYEN *
DANIELLE C. PFIFFERLING
KATHRYN M. CHESNICK □
SAMUEL EBERT-ZAVOS

\* ADMITTED TO A BAR OTHER THAN VA
□ REGISTERED PATENT AGENT
○ FOUNDING COUNSEL
◊ OF COUNSEL
∆ SENIOR COUNSEL

January 27, 2022

**VIA ECF**
Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

    Re:    Re: *Spectrum Dynamics Medical Limited v. GE;* Case No.: 18-cv-11386 (VSB)

Dear Judge Broderick:

    We represent Plaintiff Spectrum Dynamics Medical Limited in the above-referenced matter. We write pursuant to the Court's Order dated January 19, 2022 instructing the parties to meet and confer to determine if Plaintiff's response to Defendants' Sur-reply in opposition to Plaintiff's Motion for a Preliminary Injunction and accompanying Exhibits 450-53 (D.I. 411) can be filed in redacted form. The parties conferred by email and agreed that Plaintiff's Sur-Reply can be filed with redactions. We are submitting herewith the redacted copy.

    We appreciate the Court's continued attention to this matter.

                                                  Respectfully submitted,

                                                  /*Neil F. Greenblum/*

                                                  Neil F. Greenblum

cc: All counsel of record (via ECF)
{J734902 05138984.DOCX}

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., GE MEDICAL SYSTEMS ISRAEL LTD., JEAN-PAUL BOUHNIK, SERGIO STEINFELD, ARIE ESCHO, NATHAN HERMONY, and YARON HEFETZ,<br><br>　　　　　　　　　Defendants. | Case No.: 18-cv-11386 (VSB)<br><br>**JURY TRIAL DEMANDED**<br><br>**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER** |

**PLAINTIFF'S SUR-REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. PLAINTIFF SPECTRUM HAS ESTABLISHED STANDING AND TITLE ............. 1

    A. Plaintiff Spectrum Has Standing To Assert The 2009 Agreement .................... 1

    B. Plaintiff Spectrum Has Standing To Assert The Spectrum CI ......................... 2

    C. The Courts Have Rejected GE's Overly Rigid Ownership Requirement .......... 5

II. SPECTRUM'S BREACH OF CONTRACT THEORY IS UNCHANGED ................. 5

    A. Spectrum Has Always Claimed GE Misused The Spectrum CI To Develop The StarGuide, And Spectrum's PI Motion Consistently Focuses On The Six Features *In The Context Of* GE's Competing Whole Body Scanner ................. 5

    B. GE's Misstatements Regarding The '597 Patent's Teachings .......................... 8

    C. Spectrum Has Not Changed Its Trade Secrets ................................................... 9

## TABLE OF AUTHORITIES

**CASES**

*Big Vision v. E.I. DuPont*,
　1 F. Supp. 3d 224 (S.D.N.Y. 2014) ................................................................................... 10

*Cargill v. Sears Petroleum*,
　388 F.Supp.2d 37 (N.D.N.Y. 2005) ..................................................................................... 5

*Monovis, v. Aquino*,
　905 F. Supp. 1205 (W.D.N.Y. 1994) .................................................................................. 6

*Short v. Churchill Ben. Corp.*,
　2016 U.S. Dist. LEXIS 48041 (E.D.N.Y. April 8, 2016) ....................................................... 1

*Uni-Systems v. U.S. Tennis*,
　2017 U.S. Dist. LEXIS 148680 (E.D.N.Y. September 13, 2017) ...................................... 10

I.   **PLAINTIFF SPECTRUM HAS ESTABLISHED STANDING AND TITLE**

As established by the Second Declaration of Mr. Yoel Zilberstien attached hereto (Ex. 451, "SR Dec.") and the below, Plaintiff Spectrum has title and standing to assert the 2009 Agreement (Ex. 8) and the Spectrum Confidential Information ("Spectrum CI") in the Motion for Preliminary Injunction ([D.I. 356], "Spectrum PI").

A.   **Plaintiff Spectrum Has Standing To Assert The 2009 Agreement**

The evidence, including the parties' course of conduct and dealing, contradicts GE's litigation inspired argument that Spectrum lacks standing under the 2009 Agreement.

*First*, the unrebutted declaration testimony shows that Spectrum Dynamics, LLC, was the proper entity to the 2009 Agreement; namely, the declarations of (i) Mr. Jim Haisler, the Spectrum signatory to the 2009 Agreement (Ex. 431) and (ii) Mr. Zilberstien, the company founder ([D.I. 360-5] ¶¶1-4, 10-14; SR Dec. ¶18).  GE chose not to depose either witness.

*Second*, the evidence establishes that the 2009 Agreement passed from Spectrum Dynamics, LLC, to Biosensors, and thereafter to Plaintiff Spectrum, who is the successor in interest as discussed in detail in the following Section II.B.  (*See* SR Dec. ¶¶13, 17.)

*Third*, the parties' performance and course of dealing and conduct under the 2009 Agreement contradicts GE's claims of ambiguity.  *Short v. Churchill Ben. Corp.*, No. 14-CV-4561, 2016 U.S. Dist. LEXIS 48041 *42-47 (E.D.N.Y. April 8, 2016) (course of dealing and conduct can clarify ambiguity).  Here, Spectrum provided, and GE accepted, Spectrum CI, including Spectrum answering GE's direct questions (Ex. 453), during the 2009-2012 due diligence, based upon the 2009 Agreement.  ███████████████████

███████████████████████████████████

███████████████████ (Ex. 402, ¶¶1, 10.)  This course of dealing confirms the frivolity of GE's argument that Spectrum lacks standing under the 2009 Agreement, and the Court should find that Spectrum Dynamics, LLC, was the proper party to the 2009 Agreement and that Plaintiff

1

Spectrum has standing.

### B. Plaintiff Spectrum Has Standing To Assert The Spectrum CI

The evidence directly contradicts GE's litigation inspired arguments. GE never identifies any third-party claiming ownership of the Spectrum CI, and the record is clear that (i) Plaintiff Spectrum has title as well as standing to assert the Spectrum CI, and (ii) Spectrum did not conceal any evidence. To the extent that the agreements were not provided to GE during the due diligence, Spectrum produced them months ago, and GE does not identify any unanswered discovery request.[1] Spectrum, further, has maintained from the beginning that it owns the Spectrum CI under the transactions in the below chart. (*See* [D.I. 2]; [D.I. 37].)



Plaintiff Spectrum has standing to assert the Spectrum CI. While GE's attempts to confuse V-Target (Israel) Ltd. and V-Target Technologies Ltd. (both owned by V-Target LLC), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SR Dec. ¶¶5-9; [D.I. 389]; [D.I. 404].)

GE's reference to M. Maozos Ltd. is equally flawed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SR Dec. ¶¶14-17.)

Starting with the formation of V-Target Technologies Ltd. in 2000, the transactions are

---

[1] GE's reference to "another Spectrum litigation" to challenge standing has no basis in law or fact and was rejected by Magistrate Judge Parker. (6/30/21 Tr. [D.I. 300] 18:3-24:8.)

discussed chronologically.  *See* Appendix A (agreements surrounding these transactions).

**_In 2000, V-Target Technologies Ltd. was founded_** by declarant, Mr. Zilberstien, as an Israeli company, to develop technologies and expertise in the field of nuclear medicine. ███

███████████████████████████████████████████████████████████████

█████████████████████████████████ (SR Dec. ¶¶3-4.)

**_In 2002, V-Target LLC was formed_**, as a Delaware company.  (SR Dec. ¶5.)  Under this new structure, ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████  (*Id*., ¶6.)  This basic structure, which is typical with Israeli technology companies, remains in place today for various commercial reasons, including ease and appeal of investing in a U.S. company and tax benefits, mainly to accommodate non-Israeli investors, as well as facilitating easier and more profitable disposition of the company or its assets.  (*Id*., ¶6.)

**_In April 2004, (1) V-Target LLC acquired V-Target Technologies Ltd., and (2) V-Target (Israel) Ltd. was formed_** as part of the reorganization.  *In Transaction (1)*, the above described structure was enacted with V-Target Technologies Ltd., the Israeli company, becoming a wholly owned subsidiary of V-Target LLC, the Delaware company, █████████████████████

████████████████████████████████████████████████████████ which is one of the two agreements labeled 0 in the chart.  (SR Dec. ¶7, App. 1-1; Ex. 435, ¶¶11.1, 2.1.)  *In Transaction (2)*, V-Target (Israel) Ltd. was formed as a wholly owned subsidiary █████████

██████████████████████████████████████████████████████████████████

██████████████████████ which is the other agreement labeled 0 in the chart.  (SR Dec. ¶8, App. 1-2, 1-3; Ex. 418, ¶¶V(A)-(C); Ex. 446, ¶¶ B, 3.)

3
**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

███████████████████████████████████

███████████████████████████████████

██████████████████████████

█████████████████████████████████████
█████████████
█████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

*In 2005, V-Target LLC became Spectrum Dynamics LLC and V-Target Technologies Ltd. became Spectrum Dynamics (Israel) Ltd.*  Only the names changed.  (Exs. 420, 421.) Spectrum Dynamics LLC remained the parent, while subsidiary Spectrum Dynamics (Israel) Ltd.

████████████████████████████████████

███████████████████████████  (SR Dec. ¶¶10-12.)

*In 2013, (1) Biosensors International Group Ltd. ("Biosensors") acquired Spectrum Dynamics LLC and Spectrum Dynamics (USA) Inc., and (2) M. Maozos Ltd. (wholly owned by Biosensors)* ████████████████████████████  *In Transaction (1)*,

████████████████████████████████████

████████████████████████████████████

████ (SR Dec. ¶13, App. 1-4; Ex. 423, Art. II, §2.1; Ex. 450, Schedule 2.1(c).)   Biosensors

---

[2] GE's reference to a purported ███████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

4
**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**



██████ *In Transaction (2)*, ████████████████

████████████████████████ (SR Dec. ¶14, App. 1-5; Ex. 424, ¶2(a), Schedule A.4, Annex A-4.)  Later in 2013, Maozos changed its name to Spectrum Dynamics Medical Ltd., ████████████████████████████████████████

████████████████████████ (SR Dec. ¶¶15-16, App. 1-6; Ex. 432, Art. IV; Ex. 434, Art. IV.)

*In 2016, Biosensors formed Plaintiff Spectrum Dynamics Medical Limited*, organized in the British Virgin Islands, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ (SR Dec. ¶17, App. 1-7, 1-8; Ex. 425, ¶1.1(ii); Ex. 433, ¶¶1-2.)

Accordingly, title and standing under the 2009 Agreement and Spectrum CI rest with Plaintiff Spectrum, and the Court should deny GE's unfounded challenges once and for all.

C. **The Courts Have Rejected GE's Overly Rigid Ownership Requirement**

The evidence establishes that Plaintiff Spectrum has title and standing to assert the 2009 Agreement and Spectrum CI, and even if GE's argument had merit (which it does not), the New York courts have rejected GE's strict and overly rigid ownership requirement finding equitable title and standing where the IP was held within the plaintiff's family of businesses and issuing a preliminary injunction. *Cargill v. Sears Petroleum*, 388 F.Supp.2d 37, 66-67 (N.D.N.Y. 2005) (citations omitted).  Here, the agreements were signed on behalf of the named parties as well as related companies, such that even if actual title does not rest with Plaintiff Spectrum (which it does), equitable title does. *Id*.

II. **SPECTRUM'S BREACH OF CONTRACT THEORY IS UNCHANGED**

A. **Spectrum Has Always Claimed GE Misused The Spectrum CI To Develop**

5

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

### The StarGuide, And Spectrum's PI Motion Consistently Focuses On The Six Features *In The Context Of* GE's Competing Whole Body Scanner

Seeking to excuse its demonstrated misuse of Spectrum CI described in the PI Motion, GE ignores the clear record and argues that Spectrum shifted its misuse claim from "six separately enumerated features" of Spectrum CI in the PI Motion to misuse of a "*combination* of the six features" for a whole body CZT SPECT scanner in the Reply. ([D.I. 400] pp.7-8.) With this new and unsupported "switch" argument, GE seeks to confuse the issue accusing Spectrum of cherry-picking the asserted Six Features when in reality it is GE who cherry-picked the individual features and elements from the public domain, divorced from the ▅▅▅ concept.[3] Spectrum did not cherry-pick the asserted Six Features; rather, Spectrum reviewed the belated discovery of the StarGuide, identified misused Spectrum CI, and asserted the same in the PI Motion. GE attempts to prejudice Spectrum by restricting Spectrum to pursuing only claims identified before any technical discovery was provided, *i.e.*, those identified in Spectrum's Trade Secrets Chart [D.I. 185] prepared with access to only public information, have already been rejected by Magistrate Judge Parker as discussed in Section II.C. below. (*See* [D.I. 389]; [D.I. 404].)

GE's position is without merit. Spectrum has always alleged (starting with the Complaint) that GE misused Spectrum CI to develop the StarGuide. ([D.I. 2] ¶¶100-123, 272, 285-289, 313, 344, 377-379, 388; [D.I. 37] ¶¶178-446, 502.) Spectrum's PI Motion and September 23, 2021 Response to GE's special contention Preliminary Injunction Interrogatory (Ex. 452, "Spectrum PI Interrogatory Response," which GE has never challenged) were both prepared after GE (finally) provided discovery of the StarGuide. ▅▅▅▅▅▅▅▅▅▅▅▅▅

---

[3] Spectrum pointed out that GE was taking disparate teachings and engaging in impermissible hindsight to argue that the entirety of the Spectrum ▅▅▅ concept was in the public domain, which the New York courts have rejected. ([D.I. 378] pp. 6, 12, 16 (discussing *Monovis, v. Aquino*, 905 F. Supp. 1205, 1228 (W.D.N.Y. 1994).) To be clear, Spectrum is not asserting a "new trade secret" that requires a six-way combination of features. While the StarGuide misappropriates all Six Features, there is still misuse if GE incorporated only one of the Six Features.

██████████████████████████████

██████████████████████ ([D.I. 356] pp.41-43; Ex. 452; [D.I. 389]; [D.I. 404].)

Indeed, Spectrum's PI Motion states, in the Introduction, that "GE's misuse of the Spectrum CI … justifies preliminarily enjoining further sales of GE's recently (June 2021) launched StarGuide SPECT scanning system, *which GE developed by misusing the Spectrum CI* to directly compete with … the VERITON®." ([D.I. 356] p.1; Ex. 452, pp.6-7.) Spectrum specifically alleged that: (i) the asserted Spectrum CI was developed over years in connection with "designing and developing a whole-body multiple-purpose system" █████████████████████████ █████████████████ (ii) Spectrum shared the Spectrum CI with GE during the due diligence, ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████ and (iii) "GE misused the Spectrum CI, in violation of the 2009 Agreement, to design and develop a SPECT GPC device" and that ████████████████ ████████████████████████████████████████████████████████ ([D.I. 356] pp.2-4, 13, 16-18; Ex. 452, pp.7-13.)

<u>The context of the features is critical.</u> ██████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████ (*Id.*, pp.1-5, 13 (and evidence cited therein).)

GE has always known the context of these features as well as that adapting/using the features and techniques in new and different ways, *e.g.*, going from dedicated scanning devices to a whole body scanner, will inevitably lead to valuable know how, confidential information and trade

secrets. As discussed in the PI Motion (at p. 29), ▮



(Ex. 112, GE_SDM_00547553.) ▮

▮ (Ex. 69,

GE_SDM_0005088; [D.I. 356] p.29.)  Even GE's expert Dr. Peterson admits that ▮

▮ (Ex. 430, 109:6-15.)

Even if certain elements of the Six Features are in the public domain (in other contexts), it does not excuse GE's misuse of Spectrum CI in developing the StarGuide.

### B. GE's Misstatements Regarding The '597 Patent's Teachings

GE argues that Dr. Peterson and Mr. Bouhnik testified that the '597 patent "teaches" the use of a whole body scanner without support. Neither witness could identify any teaching in the '597 patent of whole body scanning. (Ex. 430, 91:5-93:10; Ex. 426, 92:12-18.) Dr. Peterson admitted that the '597 patent never described scanning the skeleton or whole body:

> **Q**: Does it [the '597 patent] ever describe scanning the skeleton?
> **A**: I don't recall it specifically addressing that, no.

(Ex. 430, 93:7-10.) Dr. Peterson opined that the '597 patent taught "whole body" scanning because – despite distinguishing it and scanning "smaller structures of interest," *i.e.*, discrete organs – the '597 patent did not expressly exclude the "whole body" as a "smaller structure of interest." (Ex. 430, 88:12-93:10.) Mr. Bouhnik, likewise, ignored the distinctions between "whole body" and "organ scanning" providing self-serving litigation inspired testimony that the '597 patent "is not

8
**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

saying that you cannot scan a whole body" just because the patent focuses on scanning smaller organs within the body. (Ex. 426, 91:8-92:6.)

The '597 patent is clearly directed to "imaging a structure which is smaller than the field of view of the imaging detector, such as the heart, liver, kidney, or a tumor…" and not a whole body scanner. (Ex. 314, 1:24-25.) Each of the three embodiments described in the Brief Description of the Invention of the '597 patent relates to an apparatus or method for imaging a structure of interest (as opposed to the whole body), as admitted by Dr. Peterson. (Ex. 314, 1:46-2:11, *see also* 9:35-37, 10:57-58, 12:8-9 (claims limited to apparatus or method for imaging structure of interest); Ex. 430, 91:9-92:14.)

GE also relies on Spectrum's '685 publication (Ex. 333), which GE's expert admitted does not disclose critical details of the Spectrum CI asserted in the PI Motion, including, without limitation, the: ███████████████████████████████████████████

███████████████████████ (Ex. 300, ¶¶44-52; Ex. 430, 104:11-23.)

### C.  Spectrum Has Not Changed Its Trade Secrets

GE asks the Court to limit Spectrum to only claims made <u>before any discovery</u>, *i.e.*, those identified in Spectrum's Trade Secret Chart [D.I. 185][4] based upon public information, and strike Spectrum's claims in the PI Motion that GE misused Spectrum CI to develop the StarGuide. GE's argument fails for several reasons.

*First*, Spectrum has asserted (starting with the Complaint) that GE misused Spectrum CI, which includes but is not limited to trade secrets, in designing and developing the StarGuide, and Spectrum has not wavered in these claims.

*Second*, Spectrum's PI Motion and Response to GE's special PI Interrogatory make clear that the Six Features from the Spectrum CI that GE misused in designing and developing the

---

[4] GE withheld all technical discovery (including of the StarGuide) demanding identification of the trade secrets as a precondition. (01/27/21 Tr. [D.I. 182] 5:7-6:9.)

StarGuide are identical to the allegations of misuse of Spectrum CI in the Reply. Spectrum has not changed its misuse theory at any juncture in this litigation. Rather, Spectrum has supplemented its claims in view of non-public discovery of the StarGuide revealed through document discovery to specific confidential information that was misappropriated (there have been no depositions or expert discovery outside of the limited preliminary injunction discovery) in accordance with its obligations under the Federal Rules.

*__Third__*, Magistrate Judge Parker found Spectrum's preliminary identification of the trade secrets satisfied the reasonable particularity standard sufficient for discovery to proceed, *Uni-Systems v. U.S. Tennis*, 2017 U.S. Dist. LEXIS 148680 (E.D.N.Y. September 13, 2017), and ordered GE to provide technical discovery. Magistrate Judge Parker has also previously rejected GE's current argument seeking to prejudice Spectrum by prohibiting Spectrum from pursuing injuries discovered through discovery. (02/25/21 Tr. [D.I. 200] 36:3-16.)

GE's reliance on *Big Vision v. E.I. DuPont,* 1 F. Supp. 3d 224 (S.D.N.Y. 2014), is also misplaced. In *Big Vision,* the information was disclosed either (i) in the absence of a written confidentiality agreement or any indication that the information was confidential (*id.,* 261) or (ii) under an NDA that required the confidential information be designated in writing, which was not done. *Id.* at 252. Further, *Big Vision* was decided after trial, where it was found that the plaintiff failed to properly define its trade secrets at any stage and shifted during trial. Here, Spectrum has not shifted its Trade Secrets and has not completed fact or expert discovery.

Whether or not Spectrum supplement's its Trade Secret Chart has no impact on whether Spectrum has met its burden to establish that GE breached the 2009 Agreement by misusing the Spectrum CI in designing and developing the StarGuide, and thus should be enjoined from future sales pending the ultimate resolution of this case. Spectrum has met this burden, and GE should be enjoined.

-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-

| | |
|---|---|
| Dated: January 18, 2022 | GREENBLUM & BERNSTEIN, P.L.C. |
| | /Neil F. Greenblum/ |
| | Neil F. Greenblum, Esq. |
| | P. Branko Pejic, Esq. |
| | Jeffrey H. Handelsman, Esq. |
| | Jill M. Browning |
| | Danielle C. Pfifferling |
| | GREENBLUM & BERNSTEIN, P.L.C. |
| | 1950 Roland Clarke Place |
| | Reston, Virginia 20191 |
| | (703) 716-1191 |
| | ngreenblum@gbpatent.com |
| | bpejic@gbpatent.com |
| | jhandelsman@gbpatent.com |
| | jbrowning@gbpatent.com |
| | dpfifferling@gbpatent.com |
| | |
| | Gregory D. Miller, Esq. |
| | RIVKIN RADLER LLP |
| | 25 Main Street, Suite 501 |
| | Court Plaza North |
| | Hackensack, NJ 07601-7082 |
| | (201) 287-2460 |
| | Gregory.Miller@rivkin.com |
| | |
| | *Attorneys for Spectrum Dynamics Medical Limited* |

11

**-HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER-**

**Appendix A**

**List of Agreements**



1.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.

**Appendix B**

**List of Cited Exhibits**

| Exhibit Number | Description |
|---|---|
| 8 | ███ |
| 69 | ███ |
| 112 | Email dated July 22, 2010 from Nathan Hermony (GE Healthcare) to Shuchi Varandani (GE Healthcare) RE: Spotlight Deck (February to Omar) (GE_SDM_00547553-55). (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 300 | Declaration of Todd Peterson, Ph.D. dated October 25, 2021 (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) |
| 314 | U.S. Patent No. 7,592,597 to Hefetz et al. (GE_SDM_00570315 - GE_SDM_00570327) |
| 333 | U.S. Patent Application No. 12/792,856, to Zilberstein et al., filed June 3, 2010, Pub. No. 2011/00266855, published February 3, 2011 (GE_SDM_00346940 - GE_SDM_00346966). |
| 402 | ███ |
| 418 | ███ |
| 419 | ███ |
| 420 | ███ |
| 421 | ███ |
| 423 | ███ |
| 424 | ███ |

| Exhibit Number | Description |
| --- | --- |
| 425 | ███████████████████ |
| 426 | Transcript of Deposition of Jean-Paul Bouhnik (November 11, 2021) (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 430 | Transcript of Deposition of Todd Peterson (November 30, 2021) (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 431 | Declaration of Jim Haisler dated April 28, 2019 |
| 432 | ███████████████████ |
| 433 | ███████████████████ |
| 434 | ███████████████████ |
| 435 | ███████████████████ |
| 446 | ███████████████████ |
| 450 | ███████████████████ |
| 451 | Second Declaration of Yoel Zilberstien In Support Of Plaintiff's Motion For A Preliminary Injunction dated January 17, 2022 (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) |
| 452 | Plaintiff's Response and Objections to Defendants' Preliminary Injections Interrogatory dated September 23, 2021 (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) (Previously filed/docketed as D.I. 389-1) |
| 453 | Spreadsheet named "Spotlight HR Due Diligence Questions 07 21 10.xls" (GE_SDM_00076473) (HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY) (Previously filed/docketed as D.I. 389-5) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of "PLAINTIFF'S SUR-REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION" was served today by electronic mail upon the following:

>Marla R. Butler
>Carl Wesolowski
>Lauren Hogan
>Two Alliance Center
>3560 Lenox Road NE, Suite 1600
>Atlanta, Georgia 30326
>Marla.Butler@ThompsonHine.com
>Carl.Wesolowski@ThompsonHine.com
>Lauren.Hogan@ThompsonHine.com
>
>Jesse Jenike-Godshalk
>312 walnut Street, Suite 1400
>Cincinnati, Ohio 45202
>Jesse.Godshalk@ThompsonHine.com
>
>Brian Lanciault
>335 Madison Avenue, 12th Floor
>New York, New York 10017
>Brian.Lanciault@ThompsonHine.com
>
>Jeffrey Metzcar
>Discovery Place
>10050 Innovation Drive
>Miamisburg, Ohio  45342
>Jeff.Metzcar@ThompsonHine.com
>
>*Attorneys for Defendants*

Dated:  January 18, 2022            /s/ Neil F. Greenblum
                                    Neil F. Greenblum, Esq.

{J734902 05124790.DOCX 4}