**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>        Plaintiff,<br><br>   v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., GE MEDICAL SYSTEMS ISRAEL LTD., JEAN-PAUL BOUHNIK, SERGIO STEINFELD, ARIE ESCHO, and NATHAN HERMONY<br><br>        Defendants. | Case No.: 18-cv-11386 (VSB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

**TABLE OF CONTENTS**

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Advanced Cardiovascular Sys. v. SciMed Life Sys.*,
    988 F.2d 1157 (Fed. Cir. 1993)..................................................................................1, 2, 3

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016)..............................................................................3

*Am. Med. Ass'n v. United Healthcare Corp.*,
    No. 00 Civ. 2800(LMM), 2006 WL 3833440 (S.D.N.Y. 2006)..........................................4, 6

*Boyden v. Burke*,
    55 U.S. 565 (1852)..........................................................................................................3

*Deep Water Slender Wells, Ltd. v. Shell Oil Co.*,
    No. H-12-1166, 2013 WL 12174049 (S.D. Tex. 2013)....................................................2

*Francisco v. Abengoa, S.A.*,
    559 F. Supp. 3d 286 (S.D.N.Y. 2021) ...............................................................................5

*Globefill Inc. v. Elements Spirits, Inc.*,
    No. 2:10-cv-02034-CBM, 2013 WL 12120535 (C.D. Cal. 2013)......................................3

*Lucente v. IBM Corp.*,
    310 F.3d 243 (2d Cir. 2002)............................................................................................7

*Mahmood v. Research in Motion Ltd.*,
    No. 11 Civ. 5345(KBF), 2012 WL 242836 (S.D.N.Y. Jan. 23, 2012) ..............................2

*U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
    889 F.2d 1248 (2d Cir. 1989)..........................................................................................5

*Memry Corp. v. Ky. Oil Tech., N.V.*,
    No. C 04-03843 RMW (HRL), 2007 WL 3343125 (N.D. Cal. Nov. 7, 2007)..................4

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000)........................................................................................3, 7

*Pei-Herng Hor v. Ching-Wu Chu*,
    699 F.3d 1131 (Fed. Cir. 2012)........................................................................................2

*S.E.C. v. DCI Telecommc'ns, Inc.*,
    207 F.R.D. 32 (S.D.N.Y. 2002) .......................................................................................3

*Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*,
    310 U.S. 281 (1940)........................................................................................................3

*Thaler v. United States*,
    706 F. Supp. 2d 361 (S.D.N.Y. 2009) .................................................................................. 5

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020) .................................................................................. 2

**Statutes**

35 U.S.C. § 256 ........................................................................................................................ 3, 6

**Other Authorities**

Fed. R. Civ. P. 15 ...................................................................................................................... 2, 3

Fed. R. Civ. P. 30(b)(6) ................................................................................................................. 6

Spectrum files this reply to correct the misstatements of law and fact in Defendants' opposition to Spectrum's motion for leave to amend. The Court should grant the motion because Spectrum did not unduly delay and the amendment would neither significantly delay resolution of the dispute, significantly increase Defendants' litigation expenses, nor be futile.

**I.      ARGUMENT**

**A.      Spectrum Did Not Unduly Delay**

Despite calling Spectrum's evidence "thin," Defendants do not dispute Mr. Roth's sworn declaration testimony that he was the first person at Spectrum to discover the subject patent[1] on June 20, 2022. D.I. 543 at ¶ 2. Nor do Defendants contend that the four months between that discovery and Spectrum's filing of this motion amounts to undue delay. They also do not dispute that Spectrum's First Amended Complaint implicated the subject patent, or that Defendants were nevertheless silent about it.

Instead, Defendants argue (at 9-10) that Spectrum had constructive notice of the subject patent *before it even issued* based on the PTO's publication of the underlying application. This argument rests on two legal errors: (1) that constructive notice applies to correction-of-inventorship claims and (2) that such a claim can accrue before a patent even issues. As explained below, each is an independent reason to reject Defendants' argument.

In *Advanced Cardiovascular*, the district court measured the plaintiff's delay from the date of issuance of the patent in question, relying on constructive notice. *Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993). The Federal Circuit reversed. It held that constructive notice does not apply to claims to correct inventorship:

> *Constructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay.* Although the patent law contains some provisions involving constructive notice (*e.g.,* the patent marking provision and the

---

[1] To obviate filing this reply under seal, Spectrum does not identify the patent by its number.

1

>provision for recordation of patent assignments), to establish laches against an unnamed inventor the period of delay can not start while the potential claimant remains ignorant that a cause of action has arisen.

*Id.* at 1162 (emphasis added). The court thus concluded that the clock on a correction-of-inventorship claim begins to run only when the omitted inventor "knew or should have known that the patent had issued." *Id.*

In *Pei-Herng*, the Federal Circuit rejected that a claim to correct inventorship can accrue before the patent issues. *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1131, 1336-37 (Fed. Cir. 2012). The district court had decided that the laches period for inventorship claims begins "when a plaintiff knew or should have known that the defendant filed a patent application covering his alleged inventive contributions and failed to name him as an inventor, *regardless of whether such notice occurred prior to the patent's issuance*." *Id.* at 1335 (emphasis added). The Federal Circuit reversed, holding the laches period does not begin until "the omitted inventor knew or should have known of the issuance of the patent, *regardless of whether the omitted inventor knew or should have known of the omitted inventorship while the patent application was pending before the PTO*." *Id.* at 1336-37 (emphasis added) (internal quotation marks omitted).

Defendants attempt to distinguish *Advanced Cardiovascular* and *Pei-Herng* by arguing (at 10 n.5) that they merely instruct when to start the clock for purposes of laches, not Rule 15. Yet the cases on which Defendants principally rely likewise concerned laches or the statute of limitations, not whether the plaintiff unduly delayed under Rule 15. *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459-60 (S.D.N.Y. 2020); *Mahmood v. Research in Motion Ltd.*, No. 11 Civ. 5345(KBF), 2012 WL 242836, at *7 (S.D.N.Y. Jan. 23, 2012); *Deep Water Slender Wells, Ltd. v. Shell Oil Co.*, No. H-12-1166, 2013 WL 12174049, at *2 (S.D. Tex. 2013). *Mahmood* is, moreover, not good law in view of the Federal Circuit's later decision in *Pei-Herng*. And, if anything, Defendants' false distinction between laches and Rule 15 would support applying a *less* stringent standard in

the latter context.  *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (under Rule 15, "mere technicalities should not prevent cases from being decided on the merits" (internal quotation marks omitted)); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (Rule 15 provides a "liberal standard").

The other cases Defendants cite are inapt, as none involved a correction-of-inventorship claim under 35 U.S.C. § 256.  *Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281, 295 (1940) (applying constructive notice to defense of intervening rights); *Boyden v. Burke*, 55 U.S. 565, 582 (1852) (holding public has right to obtain copies of patents); *Globefill Inc. v. Elements Spirits, Inc.*, No. 2:10-cv-02034-CBM (PLAx), 2013 WL 12120535, at *2 (C.D. Cal. 2013) (trademark case).  Indeed, the Federal Circuit distinguished *Sontag* in *Advanced Cardiovascular*. 988 F.2d at 1161-62.  The Court should therefore reject Defendants' argument that the clock on Spectrum's new § 256 claim began ticking when the PTO published the underlying patent application and instead find that Spectrum neither knew nor should have known of the patent until June 20, 2022.

Defendants further argue (at 11-12) that Spectrum should have been more diligent in monitoring GE's patent applications.  Since the filing of this lawsuit, however, the PTO has published *7,862* GE patent applications,[2] and 321 of them appear related to the technology at issue.[3]  GE is thus in a much better position than Spectrum to identify any relevant after-arising patents.  Regardless, that Spectrum could have conceivably spotted the subject patent eight months

---

[2]  https://patents.google.com/?assignee=general+electric,Ge+Medical+Systems&country=US&before=publication:20221031&after=publication:20181207&num=100&oq=assignee:(general+electric)+assignee:(Ge+Medical+Systems)+country:US+before:publication:20221031+after:publication:20181207.

[3]  https://patents.google.com/?q=(gantry)&assignee=general+electric,Ge+Medical+Systems&country=US&before=publication:20221031&after=publication:20181207&num=100&oq=(gantry)+assignee:(general+electric)+assignee:(Ge+Medical+Systems)+country:US+before:publication:20221031+after:publication:20181207.

earlier than it did does not establish undue delay. *S.E.C. v. DCI Telecommc'ns, Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) ("Whether the [21-month] delay was due to obfuscation, as maintained by the SEC, or ineptitude as alleged by DCI, under the circumstances of this action it is not undue.").

Defendants are incorrect that the cases Spectrum cited, *Memry* and *Speedfit*, are distinguishable. Indeed, their argument regarding *Memry* highlights an additional reason to *grant* leave to amend. Defendants point out that the movant in *Memry* knew about one of the patents yet "waited [15 months] to see whether the PTO would issue additional patents." *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C 04-03843 RMW (HRL), 2007 WL 3343125, at *2 (N.D. Cal. Nov. 7, 2007). Spectrum did not wait and see; it moved to amend as soon as it learned of and finished investigating the subject patent. As for *Speedfit*, Defendants argue that just because the subject patent is not a descendant of the previously pled patents, it implicates different facts. Defendants admit, however, that the subject patent is directed to the same technology as the previously pled patents and shares a named inventor with several of them. And Spectrum's theory of liability is the same for all these patents: GE personnel, including one or more named inventors, used the confidential information they obtained from Spectrum during the 2009-2012 due diligence period to file the patents. *E.g.*, D.I. 541-1 at ¶¶ 58-63, 193-95, 459-66. *Memry* and *Speedfit* therefore support Spectrum's motion.

Lastly, Defendants argue that Spectrum's change in counsel is not a valid justification for delay. Spectrum never contended it was. Spectrum merely stated that it might have taken less time to investigate the subject patent but for its change in counsel.[4] D.I. 541 at 3. In any event, this is beside the point because a four-month diligence period between the initial discovery of a possible claim and the filing of a motion for leave to amend does not amount to undue delay. *Am.*

---

[4] Although Spectrum's prior counsel has not yet formally withdrawn, it has not had any involvement in the case since Fish & Richardson entered its appearances. Defendants are well aware of that fact.

*Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM), 2006 WL 3833440, at *4 (S.D.N.Y. 2006) (holding delay of more than seven months between discovery of claim and motion for leave to amend was not undue); *Thaler v. United States*, 706 F. Supp. 2d 361, 368 (S.D.N.Y. 2009) ("The Government has not referred the Court to any case in which a finding of undue delay has been based on a time lapse of *fewer than five months*, and the Court is unaware of any such case." (emphasis added)).  And Defendants do not contend otherwise.

The Court should find no undue delay here.  Spectrum learned of the subject patent only four months ago and then moved for leave to amend as soon as it finished assessing the viability of a claim based on this patent.  As a matter of law, the PTO's prior publication of the underlying application is immaterial for purposes of Spectrum's correction-of-inventorship claim.

### B.    The Amendment Will Not Unduly Prejudice Defendants

Absent from Defendants' opposition is *any* argument that the amendment will significantly delay the resolution of the parties' dispute.  Defendants instead focus on the additional discovery they contend will be necessary.  But the prospect of having to "undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat.'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *accord Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 314 (S.D.N.Y. 2021) ("[T]he prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial." (citing *Agerbrink*, 155 F. Supp. 3d at 455)).

Defendants' assertions regarding additional discovery are, moreover, incorrect. Defendants argue (at 14) that the amended complaint would require them to collect "additional documents" and "interview and depose (or re-depose) witnesses."  The vagueness of this argument is probably because, as explained in Spectrum's opening brief, Defendants have already collected

5

"the bulk of the documents that allegedly support their claim to inventorship." D.I. 541 at 9. Defendants do not contend otherwise, nor do they assert that the "additional documents" they will need to collect are voluminous. As for depositions, Spectrum explained that at most two more will be required. *Id.* at 9-10. Defendants do not dispute this either. And they have the power to obviate those additional depositions by simply designating Mr. Bouhnik, a named inventor whose deposition is already scheduled for December 6-7, as their corporate witness for the Rule 30(b)(6) topics concerning inventorship.

Defendants further argue they will not have enough time between this reply brief and the depositions of Messrs. Zilberstien and Roth to "restructure the entirety of [their] deposition preparation." They do not explain, however, why a complete "restructure" is necessary when Spectrum's claim regarding the subject patent is based on the same facts as the previously pled patents. Nor do they explain why they could not have begun this process a month ago when Spectrum first raised the subject patent with Defendants. The depositions in question are noticed for November 9-10 and November 14-15. Defendants have had (and still have) ample time to fold the subject patent into their deposition preparation regarding Spectrum's existing § 256 claims. And if Defendants need reasonable additional deposition time to address the subject patent, Spectrum will not oppose.

Defendants lastly assert that by the time this motion is fully briefed, it will be too late to serve written discovery requests regarding the subject patent. Yet Defendants do not even hint at what additional discovery requests they would want to serve. In any event, as Spectrum explained in its opening brief, Spectrum already provided a detailed interrogatory response describing the basis of, and identifying documents supporting, its claim to the subject patent. D.I. 541 at 8-9. Defendants do not address this fact, let alone dispute it.

Defendants fail to meet their burden of proving that the amendment will require them to expend "significant additional resources" or "significantly delay the resolution of the dispute." *Monahan*, 214 F.3d at 284 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Because discovery is still underway and the proposed amendment raises the same causes of action, names the same Defendants, and focuses on the same time period, the Court should find no undue prejudice.

### C. The Amendments Are Not Futile

Defendants do not dispute that Spectrum's correction-of-inventorship claim with respect to the subject patent would survive a motion to dismiss. That alone should end the inquiry. Because this new claim would survive a motion to dismiss, the amendment would not be futile. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

Defendants argue (at 16-18) that Spectrum lacks standing to add the subject patent to Count Thirteen (fraud on the PTO), reasoning it has not shown an Article III case or controversy. They raised the same argument with respect to the previously pled patents, and the Court rejected it:

> The fact that both Spectrum and GE have begun marketing their respective CZT devices, in conjunction with GE's threatening letters and the parties' failed communication regarding the scope of their intellectual property and corresponding liability, gives rise to more than a purely subjective fear of future harm. Accordingly, I find that the facts alleged, under all the circumstances, show that *there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*.

D.I. 74 at 38-39 (emphasis added) (internal quotation marks omitted). Because the facts remain unchanged, the Court should draw the same conclusion here with respect to the subject patent.[5]

---

[5] In any event, Defendants' repackaged standing attack applies only to Count Thirteen, not Count Fourteen or any of the other counts that Defendants acknowledge (at 5) would incorporate the subject patent by virtue of the amendment.

7

## II.  CONCLUSION

For the reasons herein, the Court should grant Spectrum's Motion for Leave to Amend Complaint.

Dated:  October 31, 2022

                                    Respectfully submitted,

*/s/ Esha Bandyopadhyay*
Esha Bandyopadhyay (*Pro Hac Vice*)
Fish & Richardson P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel:  650 839 5070
Fax:  650 839 5071
Email:  bandyopadhyay@fr.com

Michael F. Autuoro (MA 2932)
Fish & Richardson P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel:  212 765 5070
Fax:  212 258 2291
Email:  autuoro@fr.com

Roger A. Denning (*Pro Hac Vice*)
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: 858 678 5070
Fax: 858 678 5099
Email: denning@fr.com

Adam J. Kessel (*Pro Hac Vice*)
Philip K. Chen (*Pro Hac Vice*)
Alexander Pechette (*Pro Hac Vice*)
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Tel: 617 542 5070
Fax: 617 542 8906
Email:   kessel@fr.com;  pchen@fr.com; pechette@fr.com

*Attorneys for Plaintiff*
*Spectrum Dynamics Medical Limited*