```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/18/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPECTRUM DYNAMICS MEDICAL LIMITED,

           Plaintiff,

-against-

GENERAL ELECTRIC COMPANY et al.,

           Defendants.

**OPINION AND ORDER
ON MOTION TO AMEND COMPLAINT
18-CV-11386 (VSB) (KHP)**

Before the Court is Plaintiff Spectrum Dynamics Medical Limited's ("Spectrum") motion for leave to file a Second Amended Complaint ("SAC"). (ECF No. 540.) The SAC would (i) fix typographical errors; (ii) remove certain claims and one defendant that the Court has already dismissed, (iii) remove some patents from Spectrum's correction-of-inventorship claims; and (iv) add one additional patent to Spectrum's claims. Defendants General Electric Company ("GE"), GE Healthcare, Inc., GE Medical Systems Israel Ltd., Jean-Paul Bouhnik, Sergio Steinfeld, Arie Eshco, and Nathan Hermony (collectively, "Defendants") do not object to the requested amendments except to the extent Spectrum seeks to add a new patent to its claims and to the extent the amendments do not remove certain claims. For the reasons stated below, Spectrum's motion for leave to amend the Complaint is GRANTED.

## BACKGROUND

Beginning in or around 2009, Spectrum was developing a medical imaging device called the Veriton. At the same time that Spectrum was developing the Veriton, it was engaging in discussions with GE regarding a proposed acquisition by GE of Spectrum's business and technologies. Spectrum shared its confidential information with GE during these discussions. The discussions ultimately broke down and no acquisition occurred. Spectrum alleges that after

1

the discussions broke down, GE misused Spectrum's confidential information, including trade secrets, to design and develop the StarGuide, a similar medical imaging device that now competes with the Veriton.  (*See* ECF No. 530.)

On December 6, 2018, Spectrum filed the initial complaint in this action asserting, among other things, correction-of-inventorship claims under 35 U.S.C. § 256 concerning 20 GE patents.  (ECF No. 2.)  On March 11, 2019, Defendants moved to dismiss the complaint.  (ECF No. 22.)  On May 15, 2019, Spectrum filed a First Amended Complaint ("FAC").  (ECF No. 38.)  The FAC involves 18 patents and patent applications and seeks relief concerning "any other GE patents covering" the Veriton and "any patent applications which use or otherwise incorporate the Spectrum Information, including Spectrum Trade Secrets and inventions embodied therein."  (*Id.* at Prayer for Relief ¶¶ n, p(iv).)  Defendants answered the FAC and GE asserted counterclaims against Spectrum for infringement of two patents.  (ECF No. 82.)

In approximately October 2020, discovery in this matter began in earnest.  The Court granted numerous extensions of time for the completion of discovery and the fact discovery deadline was ultimately set as December 21, 2022.[1]  Per the Court's order at ECF No. 616, the deadline for expert discovery is September 4, 2023.  (ECF No. 515.)

After the FAC was filed, GE applied for a new patent related to the StarGuide machine ("New Patent"), and that patent application was published in December 2020.  The Patent and Trademark Office ("PTO") issued the New Patent to GE in October 2021.  Spectrum alleges that the New Patent is directed at the technology at issue in this action and is "plain[ly] relevant" to the FAC.  (Pl. Br. at 2.)  However, the new patent is not a member of the same families as the

---

[1] The deadline for document discovery and local fact depositions was November 30, 2022.

2

patents named in the FAC. Spectrum alleges that it did not learn of the New Patent through discovery,[2] but rather, Spectrum employee Nathaniel Roth discovered the patent on approximately June 20, 2022. (Pl. Br. at 2.) Upon discovery, Spectrum investigated whether its employees were the true inventors of the New Patent, and it completed this investigation three months later, in September 2022.

On September 20, 2022, Spectrum served a supplemental interrogatory response contending that its employees—Nathaniel Roth and Yoel Zilberstien—are the New Patent's true inventors. Defendants objected to the contention as untimely. Spectrum then asked Defendants if they would consent to Spectrum amending the complaint to include the New Patent. On October 8, 2022, Defendants advised that they do not consent to the amendment. On October 11, 2022, Spectrum moved for leave to amend the FAC under Rule 15(a)(2) to add the New Patent to its claims, and to make certain other revisions. On October 25, 2022, Defendants filed an opposition to the motion. Defendants object to Spectrum's request to add the New Patent to its claims because, they argue, Spectrum unduly delayed in seeking to add the New Patent, this amendment would unduly prejudice Defendants, and this amendment would, to an extent, be futile. Defendants also argue that the proposed amendments "do not go far enough" because the amendment would not remove claims that Spectrum represented it is no longer pursuing, as well as claims that discovery has shown are not accurate.

## LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within" certain proscribed time limits. Fed. R. Civ. P.

---

[2] Defendants contend that this patent was not implicated in any of Spectrum's discovery requests.

3

15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted unless there is "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted).

"The period of 'liberal' amendment [under Rule 15] ends if the district court issues a scheduling order setting a date after which no amendment will be permitted."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).  No such scheduling order was issued in this action, and the parties' joint scheduling order does not set a deadline for seeking leave to amend the causes of action.  Accordingly, the liberal Rule 15 standard applies.

## ANALYSIS

Spectrum amended its pleading once as a matter of course and Defendants do not consent to a second amendment.  Therefore, leave to amend should be granted unless there is evidence of undue delay, bad faith or dilatory motive on Spectrum's part; undue prejudice to Defendants; or futility.  Defendants have not shown that any of these factors is present.

### i. Undue Delay, Bad Faith, or Dilatory Motive

When a motion "is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice [the non-moving party]," the undue delay weighs against granting leave to amend.  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d

4

Cir. 1990). Mere delay is not a sufficient reason to deny leave to amend; the delay must be "undue" in the sense that there was some bad faith or prejudice inherent in it. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). In considering whether delay is undue, the court also considers whether a trial date has been set, whether discovery has ended, and whether dispositive motions were already filed. *Guadagno v. M.A. Mortenson Co.*, 2018 WL 4870693, at *8 (W.D.N.Y. Oct. 2, 2018).

Defendants argue that Spectrum engaged in undue delay in bringing this motion because it should have known about the New Patent as early as December 2020, when the patent application was published. (Def. Opp. Br. at 9-10 (citing *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020)). However, courts have rejected the notion that constructive notice applies to correction of inventorship claims or that such claims begin to accrue before a patent is issued. *See Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993) (holding, in the context of laches, that constructive notice does not apply to claims for correction of inventorship); *see also Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1131, 1336-37 (Fed. Cir. 2012) (holding that the period for laches does not begin until the omitted inventor knew or should have known of the *issuance* of the patent, rather than the publication of the patent application).

The New Patent was not issued until October 2021. Even assuming Spectrum had constructive knowledge of the New Patent on this date, it did not unduly delay by moving to amend the complaint less than a year later, following its investigation into the patent. *See, e.g., Speedfit LLC v. Woodway USA, Inc.*, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015) (finding no undue delay where plaintiffs sought to add correction-of-inventorship claims, including as to a

5

patent that had issued eight months prior); *Memry Corp. v. Kentucky Oil Tech., N.V.*, 2007 WL 3343125, at *1-2 (N.D. Cal. Nov. 7, 2007) (no undue delay where plaintiff sought to add correction-of-inventorship claims, including as to a patent that had issued 15 months prior). GE publishes thousands of patents every year, and it is not surprising or suspicious that it took Spectrum a few months to notice this patent and investigate it after it was issued. Spectrum's delay in noticing and investigating this patent is understandable, and GE has not provided any evidence that the delay is attributable to bad faith or improper motive.

Moreover, Spectrum moved to amend before a trial date was set and before discovery ended, which counsels against a finding of undue delay. *Guadagno*, 2018 WL 4870693, at *8.

**ii.   Undue Prejudice**

In considering whether a party will be unduly prejudiced by an amended pleading, courts consider whether the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan*, 214 F.3d at 284 (citation omitted). Courts also consider whether the proposed new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim. *Id.* Courts are "most hesitant" to permit amendment if doing so would result in an unfair surprise to the non-movant or would impede the fair prosecution of the claim. *Id.* It is well established that "the need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 100-01 (S.D.N.Y. 2010) (collecting cases).

Defendants argue that they will be prejudiced if Spectrum is permitted to amend the pleading at this late stage of discovery because such amendment will require Defendants to evaluate the claim language and inventorship of new patent claims and will require additional discovery as to these claims. (Def. Opp. Br. at 13.) Spectrum argues that any additional discovery should not be significant because the New Patent "is directed to the same technology as" the other patents at issue, and Defendants should have already reviewed and produced "the bulk of the documents that allegedly support their claim to inventorship" of this patent. (Pl. Br. at 9.)

Spectrum filed its motion to amend shortly before the close of fact discovery and the amendment will certainly entail additional time and expense for both parties. This is not sufficient for a finding of undue prejudice. *Duling*, 265 F.R.D. at 100-01. Defendant has not provided evidence that any additional discovery will be especially significant so as to be unduly prejudicial. Moreover, if Spectrum is not permitted to amend its complaint in this action, Defendants may be required to litigate a separate action regarding these claims, which would result in an equal or greater expense for all parties. Additionally, the proposed new claims are closely related to the existing ones and there is no concern regarding undue surprise to Defendants.

Accordingly, Defendants have not shown that they will be unduly prejudiced by the addition of these claims.

### iii. Futility

A proposed amendment is generally considered futile when it fails to state a claim or if the claim would otherwise not survive a motion to dismiss. *Duling*, 265 F.R.D. at 103-04 (collecting cases); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Defendants argue that Spectrum's proposed amendment is futile to the extent it seeks to assert a claim for fraud on the PTO as to the New Patent because Spectrum lacks Article III standing to assert this claim in light of the fact that Defendants have not sought to enforce the New Patent against Spectrum. (Def. Opp. Br. at 16.) Defendants made the same argument as to Spectrum's existing fraud on the PTO claims in their motion to dismiss the FAC, and the Court rejected this argument. (*See* ECF No. 73 at 36.) In considering the argument, Judge Broderick found that Spectrum had "adequately alleged standing" as to its fraud on the PTO claims because "the fact that both Spectrum and GE have begun marketing their respective . . . devices, in conjunction with GE's threatening letters and the parties' failed communication regarding the scope of their intellectual property and corresponding liability, gives rise to more than a purely subjective fear of future harm." (*Id.* at 38-39.) GE has not explained why Judge Broderick's finding would not also apply to the claim as to the New Patent such that the new claim is at least plausible under Rule 12(b)(6). Defendants' argument regarding futility also does not apply to Spectrum's correction of inventorship claims. Therefore, Spectrum's proposed amendment states a plausible claim for the same reasons stated by Judge Broderick at ECF No. 73.

Defendants also argue that discovery has shown that certain allegations in the FAC relating to statutes of limitations and equitable tolling are not accurate, yet Spectrum has left

these allegations in its proposed SAC.  Defendants do not appear to raise a futility argument as to these allegations, and such an argument would not be successful because these claims would—and did—survive a motion to dismiss.

Accordingly, Defendants have not met their burden to show that amendment would be futile.

    **iv.**    **Defendants' Argument that the Amendments "Do Not Go Far Enough"**

Defendants argue that "[w]hile Spectrum's amendments sweep too broadly in some ways, they do not go far enough in other ways." (Def. Opp. Br. at 5.)  In particular, Defendants state that Spectrum "recently announced that it is no longer asserting its alleged trade secrets H and P as a basis for its claims against Defendants," but the proposed SAC does not remove these trade secrets.  (*Id.*)  Additionally, Defendants argue that discovery has shown that certain allegations relating to statutes of limitations and equitable tolling are inaccurate, but Spectrum has not removed these allegations from the proposed amended pleading.  (*Id.*)

Defendants do not provide a legal argument that Spectrum's failure to remove these claims from the amended pleading should prevent the Court from granting Spectrum leave to amend.  That said, because Spectrum has the opportunity to clean up its pleading by virtue of this amendment, the Court directs Spectrum to remove from the amended pleading all claims that it is no longer pursuing and/or that it agrees would not survive a motion for summary judgment.  The Court is not in a position to evaluate the accuracy of Spectrum's claims as to the statutes of limitations and equitable tolling at this time, but the Court notes Spectrum could face Rule 11 sanctions if it "reaffirm[s]" claims or "advocat[es] positions" after those claims or positions were shown to be inaccurate.  *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018) (citing

Fed. R. Civ. P. 11 1993 Advisory Committee's Note) (affirming decision to impose sanctions based on plaintiff's refusal to withdraw claims after discovery made clear they were not viable).

## CONCLUSION

Spectrum's motion to file a Second Amended Complaint is GRANTED.  In addition to the amendments that Spectrum has already proposed, Spectrum shall remove all claims from the pleading that it is no longer pursuing and all claims that it agrees are no longer viable.  **The Second Amended Complaint shall be filed within thirty days of this Order.**

Fact discovery is reopened to permit discovery as to any added claims.  The parties are directed to meet and confer regarding what additional discovery will be needed and shall include in their next status letter to the Court a proposal regarding extension of the discovery deadlines and plan for discovery on the additional claims.  The Court will discuss the extension of deadlines and will issue guidelines as to this additional discovery at the next case management conference, which is scheduled to occur on February 2, 2023 at 10:00 a.m.

**The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 540.**

Dated:   January 18, 2023             SO ORDERED,
         New York, New York

_Katharine H. Parker_
KATHARINE H. PARKER
United States Magistrate Judge