# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


SPECTRUM DYNAMICS MEDICAL         : Docket #18-cv-11386

LIMITED,                          :

                    Plaintiff,    :

     -against-                    :

GENERAL ELECTRIC COMPANY, et al,: New York, New York

                    Defendant.  : January 5, 2023

--------------------------------: CONFERENCE

                    PROCEEDINGS BEFORE

             THE HONORABLE KATHARINE H. PARKER

                UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:      FISH & RICHARDSON P.C.
                    BY:  Michael Frank Autuoro
                         Alexander Pechette
                    7 Times Square
                    20th Floor
                    New York, New York 10036


For Defendant:      THOMPSON HINE
                    BY:  Jesse Leigh Jenike-Godshalk
                         Brian Philip Lanciault, Jr.
                    300 East Randolph Street
                    Suite 5000
                    Chicago, Illinois 60601


Transcription Service: AOM Transcription
Phone:                  (631) 334-1445
E-mail:                 aomtranscription@gmail.com
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>INDEX</u>

E X A M I N A T I O N S

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

E X H I B I T S

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

                              PROCEEDINGS

 1              THE DEPUTY CLERK:  Calling case 18 Civil

 2      11386; Spectrum Dynamics Medical versus General

 3      Electric Company.

 4              Beginning with counsel for the plaintiffs,

 5      could you please make your appearance for the

 6      record.

 7              MR. AUTUORO:  Yes.  Good morning, your

 8      Honor.  Michael Autuoro, from Fish & Richardson,

 9      for Spectrum Dynamics Medical Limited.

10              THE COURT:  Hi.

11              MR. PECHETTE:  Alex Pechette, also from

12      Fish & Richardson.

13              THE COURT:  Hi.  Nice to meet you in

14      person.

15              THE DEPUTY CLERK:  Counsel for the

16      defendants, please make your appearance.

17              MR. GODSHALK:  Yes.  This is Jesse

18      Godshalk, from Thompson Hine, on behalf of

19      defendant.

20              MR. LANCIAULT:  And Brian Lanciault, also

21      from Thompson Hine.

22              THE COURT:  Okay.  Nice to meet everybody

23      in person finally.

24              So there are a couple things on the

25      agenda.  First, I was pleased to see that you

PROCEEDINGS

1    worked out the trade secret chart.  So that's

2    great.  One less issue to deal with.

3         Next there's the issue of the proposed

4    amendment to the Complaint.  And you requested oral

5    argument.  I've read through the papers.  So I will

6    hear from plaintiffs first, and then I'll hear from

7    defense counsel.

8         MR. PECHETTE:  Good morning, your Honor.

9    Alex Pechette from Fish & Richardson, on behalf of

10   the plaintiff.

11        There are four points I'd like to make,

12   your Honor.  First, Spectrum did not unduly delay

13   in seeking to amend.  Second, GE has not met its

14   burden of showing undue prejudice.  Third, the ██████

15   patent implicates the same set of facts as the

16   other patents already in issue.  And, fourth, GE

17   has not met its burden of showing that the

18   amendment would be futile.

19        As to the issue of undue delay, Spectrum

20   neither knew nor should have known about the ████

21   patent until June 20, 2022.  Under binding Federal

22   Circuit law, that is the date when the clock

23   started, not when the patent issued and certainly

24   not when the application published.  And the cases

25   I'm referring to are *Advanced Cardiovascular*

PROCEEDINGS

1   *Systems* and *Pei-Herng*.  Those Federal Circuit cases

2   control over the contrary District Court cases that

3   GE cites.

4           THE COURT:  I'm sorry.  Give me the date

5   again.

6           MR. PECHETTE:  June 20th, 2022.

7           THE COURT:  Right.  And that's when the

8   Spectrum employee learned of the patent, when it

9   was issued?

10          MR. PECHETTE:  That's correct.

11          THE COURT:  Okay.

12          MR. PECHETTE:  Yes.

13          After learning of the ███ patent,

14   Spectrum diligently investigated.  It performed its

15   Rule 11 inquiry.  Spectrum then notified GE of its

16   claim via interrogatory response and sought GE's

17   consent to amend the Complaint.  When the parties

18   reached an impasse, Spectrum filed this motion the

19   very next day.  All that happened within four

20   months of learning of the ███ patent.

21          GE does not contend that four months

22   amounts to undue delay, and the case law is clear

23   that it does not.  For example, *American Medical*

24   *Association*, the Court held that seven months was

25   not an undue delay.  Even if the clock started when

PROCEEDINGS

1    the patent issued, the delay would still not be

2    undue.  Spectrum filed this motion less than a year

3    after the patent issued.

4         In *Memry*, another case involving

5    correction of inventorship claims, the Court found

6    no undue prejudice -- I'm sorry, no undue delay,

7    where the plaintiff sought to amend 15 months after

8    the patent had issued.  And that case, your Honor,

9    was decided under the more stringent good cause

10   standard under Rule 16(b), not the liberal standard

11   of Rule 15(a), which applies here.

12        So we ask your Honor to find that Spectrum

13   did not unduly delay.

14        Turning to the issue of undue prejudice,

15   GE has not met its burden.  First, no significant

16   additional discovery would be necessary.  And

17   second, the amendment would not significantly delay

18   the resolution of this case.  Spectrum already

19   served written discovery on this patent.  I would

20   direct your Honor to Exhibit G, page 17.  It's a

21   rog response that we served.  And there we

22   explained our conception story with respect to the

23   ███  patent.  And GE simply does not address this

24   anywhere in its briefing.

25        As for depositions, Spectrum already

PROCEEDINGS

1    deposed the first named inventor, who is █████████

2    █████████ and we asked him questions about this

3    specific patent.  GE, on the other hand, opted not

4    to ask the Spectrum inventors any questions about

5    the ████ patent.  They certainly could have, your

6    Honor, because we gave them notice of Spectrum's

7    claim in September, and those depositions didn't

8    happen until November, but they chose not to.  So

9    any prejudice flowing from that decision is

10   entirely self-inflicted.

11          As far as documents, Spectrum has already

12   produced --

13          THE COURT:  Actually, let me stop you for

14   a second on this issue of the depositions and what

15   questions were asked or not asked.  Is it your

16   contention that it's the same trade secrets that

17   are at issue with respect to the other patents as

18   this new patent?

19          MR. PECHETTE:  It is the same trade

20   secrets, yes.

21          THE COURT:  So wouldn't the questions

22   concerning those trade secrets cover the ████

23   patent?  I guess I'm trying to understand when you

24   say -- what specific questions would there be for

25   the ████ patent?

PROCEEDINGS

```
1              MR. PECHETTE:  So there is a lot of
2      overlap, your Honor, in the technology that's
3      described in the ███ patent and the technology
4      that's described in the other patents.  There are a
5      couple of differences in the ████ patent, and
6      that's what I was referring to when I said we asked
7      questions specific to the ████ patent.
8              THE COURT:  What are those differences?
9              MR. PECHETTE:  ██████████
10     ████████████████████████████████████████
11     ████████████████████████████████████████
12     ████████████████████████████████████████
13     ██████████  Those details are specific to the ████
14     patent, and we asked Mr. ██████ questions about
15     that aspect of the ████ patent.
16             THE COURT:  Okay.
17             MR. PECHETTE:  And, your Honor, going back
18     to the rog response I mentioned a minute ago,
19     that's what I was also talking about.  In the pages
20     that I cite, we described our conception story with
21     respect to those additional details specific to the
22     ████
23             THE COURT:  So you provided to GE why you
24     say Spectrum owns those trade secrets or invented
25     and conceived of those particular aspects, ████
```

PROCEEDINGS

1
 

2          MR. PECHETTE:  Correct.

3          THE COURT:  So that information was

4   already provided.

5          MR. PECHETTE:  Correct.

6          THE COURT:  Okay.

7          MR. PECHETTE:  We also produced documents

8   specific to those details, and we cited them in

9   that interrogatory response.

10          THE COURT:  Okay.

11          MR. PECHETTE:  For GE's part, any

12   additional document collection we think would be

13   minimal.  In its briefing, GE does not contend that

14   the additional documents it would need to collect

15   are voluminous.  GE already collected relevant

16   documents from the first named inventor.  That was

17                     The other two inventors likely

18   do not have many relevant documents.  To my

19   knowledge, their names don't appear in the

20   documents produced to date so they're likely not

21   important players.

22          And, also, GE has represented that the

23   order of inventors on a patent matters.  They name

24   inventors in order of their contributions to the

25   patent.  So these second and third inventors likely

PROCEEDINGS

```
 1    have fewer relevant documents.
 2            One last point regarding prejudice, your
 3    Honor.  GE does not contend that the amendment
 4    would significantly delay the resolution of the
 5    case.  So GE has forfeited any argument regarding
 6    that prong of the undue prejudice analysis.  So we
 7    ask the Court find no undue prejudice.
 8            THE COURT:  Okay.  Will the outcome of the
 9    claims in this case affect the validity of the
10    claim on the █████ patent?  In other words, would
11    there be some kind of res judicata or preclusion
12    based on what happens in this case?  Have you done
13    that analysis?
14            MR. PECHETTE:  We have not done that
15    analysis, your Honor.  Just off the top of my head,
16    there's a lot of overlap, so I think it's very
17    possible that there would be some kind of res
18    judicata effect.  There might be some daylight --
19    if Spectrum were to not prevail on the other
20    claims, there might be some daylight because of the
21    additional technical details in the █████ patent,
22    but we just -- I can't say off the top of my head.
23            THE COURT:  And if the motion to amend is
24    denied, is it your position that you could just
25    bring another suit on this -- independent suit on
```

PROCEEDINGS

1   the ████ patent?

2          MR. PECHETTE:  Yes, your Honor.  And I

3   don't believe that that is disputed.

4          Turning to my third point, your Honor, the

5   ████ patent is substantially similar to the other

6   patents-in-suit, and I actually have a

7   demonstrative on this point, if I may.

8          THE COURT:  Sure.

9          MR. PECHETTE:  Your Honor, if you turn to

10  page 6, this is a comparison of the ████ patent and

11  the ████ patent, which is a patent that's already

12  in the case.  Both of these patents share a common

13  named inventor.  That's ██████████████ who,

14  again, we already deposed.  The patents also share

15  the same two embodiments.  You can see that in the

16  figures here.  They're nearly identical.

17          Not only are the patents similar, so are

18  Spectrum's claims to the patents.  With respect to

19  all the patents at issue in this case, Spectrum's

20  claim is that GE induced Spectrum to reveal its

21  trade secrets under the guise of a potential

22  business deal, and then GE took those trade secrets

23  and used them to develop its own product and to

24  file patent applications.  So all of Spectrum's

25  correction of inventorship claims share a common

PROCEEDINGS

1   set of operative facts.  The ▮▮▮ patent,

2   therefore, fits naturally into this case.

3           My final point, your Honor.  GE has not

4   met its burden of showing that the amendment would

5   be futile.  GE does not dispute that Spectrum's

6   correction of inventorship claim would survive a

7   motion to dismiss, and that's count 14.  GE only

8   argues that count 13, which is fraud on the PTO,

9   would not survive a motion to dismiss.  But

10  futility as to one of multiple counts is not

11  sufficient.  And in any event, the Court has

12  already rejected GE's argument regarding count 13

13  and held that Spectrum alleged sufficient facts to

14  establish an Article III case or controversy.  I

15  would direct your Honor to docket number 73 at 36

16  to 39.

17          THE COURT:  That's Judge Broderick's

18  decision.

19          MR. PECHETTE:  Correct.

20          THE COURT:  Yes.  Okay.  Defendants argue

21  that the publication of the patent application in

22  ▮▮▮▮▮▮▮▮▮ puts you on constructive notice of

23  the patent, and they cite case law for that

24  proposition.

25          What's your response to that?

PROCEEDINGS

1          MR. PECHETTE:  So the Pei-Herng case from

2     the Federal Circuit held the opposite.  It

3     addressed this very issue, and it held that the

4     publication -- even if a plaintiff is aware of the

5     publication, the claim to correction of

6     inventorship under Section 256 does not accrue

7     until the patent actually issues.

8          And in that case, the District Court had

9     held that there was constructive notice of the

10     patent from the date of the publication of the

11     application, and the Federal Circuit reversed that

12     holding.  So the District Court cases that GE cites

13     that hold the opposite are not controlling.

14          THE COURT:  Okay.  Now, if the amendment

15     is granted, what additional documents or

16     depositions do you think would be necessary, and

17     how long do you think it would take to conduct that

18     discovery?

19          MR. PECHETTE:  Spectrum has already

20     completed its document production.  We don't see

21     any other documents that would need to be produced

22     from Spectrum.  Same with depositions.  We've

23     already taken the deposition of the first named

24     inventor.  There's two other named inventors, but

25     at this point, I don't think we see the need to

PROCEEDINGS

1    depose those individuals.

2           For GE's part, they have said that they

3    will need to collect additional documents from the

4    named inventors.  And as I said before, I don't

5    think that GE has contended that that document

6    collection is voluminous.  And also, your Honor,

7    just citing that additional document discovery is

8    necessary is not a sufficient basis to deny leave

9    to amend under Rule 15.

10          As far as depositions go, they've already

11   deposed the two individuals at Spectrum who

12   Spectrum contends are the true inventors.  That

13   would be Nathaniel Roth and Yoel Zilberstein.  And

14   they had multiple days with each of these

15   individuals, and they opted not to ask any

16   questions about the ███ patent.  They did,

17   however, ask questions about the other

18   patents-in-suit, and that inquiry took all of one

19   hour and 37 minutes.  So if they were to request a

20   deposition of Mr. Roth on the ███ patent, we think

21   that could be handled quite quickly.

22          THE COURT:  So you would make those

23   individuals available again?

24          MR. PECHETTE:  We would be willing to make

25   Nathaniel Roth available.  He's the 30(b)(6)

PROCEEDINGS

 1    designee on the conception of what we contend are

 2    the misappropriated patents.  And we would propose

 3    that he be limited in time -- that that deposition

 4    be limited in time.

 5         THE COURT:  How long do you think would be

 6    necessary?

 7         MR. PECHETTE:  Considering that the other

 8    seven patents already at issue only took an hour

 9    and 37 minutes on the record, we think that an hour

10    would be sufficient.  We would also ask that that

11    deposition be taken remotely, since that witness --

12         THE COURT:  He's in Israel, right?

13         MR. PECHETTE:  Yes, correct.

14         THE COURT:  Okay.  All right.  Thank you.

15    I'll hear from GE next.

16         MR. GODSHALK:  All right, your Honor.  I

17    want to start by addressing some specific points

18    that opposing counsel made.  First of all, he cited

19    the *Memry* case.  I think that case is readily

20    distinguishable, and, actually, it's

21    distinguishable on the same grounds as the *SpeedFit*

22    case, which Spectrum also cites in its briefing.

23         In both of those cases, you had a

24    plaintiff who wanted to add additional patents to a

25    Complaint by way of amendment, but the patents that

PROCEEDINGS

```
 1    they wanted to add all claimed priority to a patent
 2    application that was cited in prior pleadings.  So
 3    everyone knew that the patents that were being
 4    added, that they were going to be part of the case.
 5    And that is not what we have here.  Spectrum cannot
 6    point to any patents or patent applications in the
 7    existing pleadings that are in the same family as
 8    the ███ patent.
 9              THE COURT:  What's the significance of
10    being in the same family of patents?
11              MR. GODSHALK:  Yeah.  When they're in the
12    same family, your Honor, it means that they are
13    closely related patents, that they have closely
14    related technology.
15              THE COURT:  So why would this -- Spectrum
16    has provided me an exhibit comparing the ███
17    patent and the ███ patent -- to my eyes, which I'm
18    not an expert, looks pretty similar.
19              MR. GODSHALK:  Yes.
20              THE COURT:  What's different that they
21    would be in a different family?
22              MR. GODSHALK:  Yes, your Honor, and I
23    think that, to me, to be frank, the comparison of
24    the two patents in -- this is on page 5 of the
25    hand- -- or page 6, I'm sorry, of the handout from
```

PROCEEDINGS

1    opposing counsel.  I think that's something of a

2    red herring because what they're comparing here are

3    two figures -- first of all, there are many, many,

4    many figures in each one of these patents, and

5    these are just figures that show an embodiment of

6    the invention.  And it may not even be -- actually,

7    I'm sure of this, that it's not the entirety of

8    these figures that's being claimed.

9         I guess the bottom line is, to know what

10   is covered by an invention, you have to look -- or

11   by a patent, you have to look at the claims of the

12   patent.  It's not the figures that control.  It's

13   not the embodiments that control.  It's not the

14   background of the invention.  It's the claims

15   themselves.

16        So I think just comparing figures from

17   various patents is not very telling.  Oftentimes,

18   patent prosecutors will simply copy and paste

19   figures from prior patents.  Sometimes they'll even

20   copy and paste the entire specification, you know,

21   the part of the patent that leads up to the claims,

22   they'll just copy and paste from a prior patent.

23   And that is not to say that they are closely

24   related.  It's just --

25        THE COURT:  I'm sorry, I'm going to just

PROCEEDINGS

```
 1    interrupt you for a second to ask about the -- both
 2    of these machines photograph internal organs --
 3              MR. GODSHALK:  Correct.
 4              THE COURT:  -- take image of internal
 5    organs --
 6              MR. GODSHALK:  Correct.
 7              THE COURT:  -- by having a patient lie
 8    down and go into the machine, and cameras are at
 9    various places around the body and at various
10    distances from the body to take the image.
11              MR. GODSHALK:  Correct.
12              THE COURT:  And they're both taking images
13    of the same types of organs; is that right?
14              MR. GODSHALK:  Well, yes, but I mean --
15              THE COURT:  So why would there be a
16    different family?  I don't understand.
17              MR. GODSHALK:  Well, I think that, first
18    of all, in terms of taking images of the same
19    organs, these are both full-body scanners.  I mean,
20    all of the technology at issue is full-body
21    scanners.  So we're talking about scanners that can
22    take images of any part of the body.
23              THE COURT:  What's the material difference
24    between the two families, if you know?
25              MR. GODSHALK:  Well, you know --
```

PROCEEDINGS

1          THE COURT:  In plain English.

2          MR. GODSHALK:  Frankly, I don't know if

3     that's even really a -- I'm not sure if that

4     question can be answered that way.

5          THE COURT:  I see.

6          MR. GODSHALK:  But I don't know --

7     certainly, I can't give you a clear answer on that.

8          THE COURT:  So what is your view on

9     whether or not the outcome of this case would have

10    any kind of preclusive effect on an independent

11    claim involving the ███ patent?

12         MR. GODSHALK:  Yes.  Your Honor, as with

13    opposing counsel, that's not something that I have

14    analyzed, but I don't think that it would certainly

15    have a full res judicata effect.  Like, I don't

16    think that, for instance, a decision in this case

17    would preclude Spectrum completely from pursuing a

18    separate claim involving the ███ patent.

19         THE COURT:  Those two independent trade

20    secrets as well.

21         MR. GODSHALK:  Well, it's independent

22    patents.  So I would think that, regardless of what

23    happens in this case, they could certainly bring a

24    separate claim based on the ███ patent.

25         THE COURT:  Okay.  And what is GE's view

PROCEEDINGS

1   on whether it would be more efficient to simply add

2   this here versus face a separate lawsuit?

3                MR. GODSHALK:  Yeah, I think it would be

4   more efficient to -- if Spectrum really believes

5   that it has a, you know, merit-worthy claim based

6   on the ███ patent, for them to bring a separate

7   lawsuit rather than continuing to delay this

8   litigation, which has already been -- gone on for

9   more than four years and has already been delayed

10  by Spectrum's past conduct when they filed a motion

11  for preliminary injunction after several years of

12  litigation and which really sent the case sideways

13  and delayed it.

14                And I think that this motion for leave has

15  the potential to do the same because we are just 20

16  days away from the deadline for filing opening

17  expert reports.  But before the experts can prepare

18  their reports, they need to have the underlying

19  facts upon which those reports will be built.  And

20  I think that if the ███ patent is added, there is

21  going to be significant additional discovery that

22  will be needed.

23                THE COURT:  Tell me what that is.

24                MR. GODSHALK:  Yes.  So, let's see.  To

25  start, I think it's important to note that there

PROCEEDINGS

1    has been very, very little discovery so far

2    relating to the ███ patent.  So, I mean, that is

3    an important baseline.

4         You know, fact discovery has obviously now

5    closed in the case, and while it was going on,

6    neither party served any interrogatories, any

7    request for production or any request for

8    admissions directed to the ███ patent, its

9    application, or any of the patents within the same

10   family.  Defendants also didn't collect, review and

11   produce documents specifically relating to this

12   patent, its underlying application, or other

13   patents in the same family.

14        And, indeed, we didn't collect any

15   documents from two of the named inventors, Mr. ███

16   and Mr. ███████    Mr. ██████ is no longer a

17   GE employee, and we've had no contact with him

18   whatsoever, and we're not even sure how to get

19   ahold of him.

20        Finally, during depositions, we didn't ask

21   witnesses any questions about the ███ patent, its

22   application, or its family members.  And I

23   understand opposing counsel kind of makes an issue

24   out of this, that we ought to have done that.  I

25   disagree because under Rule 26 parties are only

PROCEEDINGS

1    permitted to take discovery that is relevant to the

2    claims and defenses in the case.  Until the ████

3    patent is added -- if it gets added to this case --

4    then it's not relevant to this case.  Things about

5    it are simply irrelevant to the case.  So it's not

6    a proper matter for discovery.

7         It's also defendant's position they

8    shouldn't have to incur the costs and expenses and

9    time and effort to take discovery of the ████

10   patent, that it's unduly prejudicial.  So I don't

11   understand why we would willingly take on those

12   burdens by going ahead and taking the discovery

13   during the discovery period.  No, our position is

14   we shouldn't have to do that.

15        Also, opposing counsel has argued that

16   they've basically provided ample written discovery

17   on the ████ patent, and they point to a single

18   interrogatory response.  First of all, that

19   interrogatory didn't ask about the ████ patent.  So

20   it was kind of gratuitous on their part to add it

21   into their response.  But in any event, it doesn't

22   provide much detail at all on this claim.  Over

23   maybe one or two pages, it basically lays out their

24   basic contentions for what information they claim

25   that they provided to the defendants that would be

PROCEEDINGS

1   relevant to this patent.  But it's not robust

2   discovery on this.

3           THE COURT:  But really this claim concerns

4   trade secrets.  There wouldn't need to be any

5   separate claim construction or anything like that,

6   would there, on this (inaudible) claim?

7           MR. GODSHALK:  You are correct about that.

8   I do not foresee the need for there to be any claim

9   construction if this patent is added.  That's

10  correct.

11          In terms of the discovery that I think

12  will need to happen, because so little fact

13  discovery has happened so far, I mean, I would

14  anticipate that both sides would want to serve

15  requests for production, interrogatories and

16  requests for admissions relating to the ████

17  patent.  I know we will.  And these, in turn, will

18  require defendants to prepare written objections

19  and responses and also to search for documents from

20  two new custodians, Mr. ████ and Mr. ██████

21  who were named inventors of the ████ patent.

22          We'll also have to collect documents from

23  central GE databases, such as the Anaqua database,

24  which holds GE's patents and their patent

25  applications and patent materials.  And I

PROCEEDINGS

```
 1    anticipate we'll have to collect documents from
 2    three existing custodians, Mr. Hefetz, Gil Kovalski
 3    and ███████████ given Mr. Hefetz and
 4    Mr. Kovalski are kind of involved -- they're
 5    members of this patent examination board at GE.
 6    And then ███████████ is, again, one of the
 7    named inventors.
 8           Now, in terms of the volume of documents,
 9    I will say this.  Opposing counsel mentioned that
10    he asked questions of Mr. ██████ at his deposition
11    about this patent.  And I think the answers that
12    Mr. ██████ provided are telling and are relevant
13    here.  Mr. ██████ said -- he testified that he had
14    "many e-mails" and "a lot" of e-mails relating to
15    the conception of the ████ patent.  He also -- in
16    discussing conception of this patent, he mentioned
17    a company called LETI -- that's L-E-T-I -- that I'd
18    never heard of.  I don't think it's been at all on
19    our radar.  I don't think we've collected any
20    documents relating to it.  And that was all part of
21    his conception story for this patent.
22           THE COURT:  You mean this other company
23    collaborated, potentially, on this conception?
24           MR. GODSHALK:  I don't know if they
25    collaborated in conception.  I don't know if I'd
```

PROCEEDINGS

 1    say that precisely.  But what Mr. ▮▮▮▮ said was

 2    he said that he was collaborating with LETI and

 3    that out of that collaboration, he developed the

 4    idea.  He developed the idea for the ▮▮▮▮ patent.

 5    I don't want to make it sound like LETI is a

 6    potential inventor.  I don't think that's the case.

 7    But, you know, based upon that testimony and other

 8    facts that we know, I think we reasonably can

 9    anticipate that the volume of additional documents

10    will be large.

11         In terms of serving additional

12    interrogatories, I'll tell you that Spectrum has

13    taken the position that they've already answered

14    more than 25 interrogatories.  So I anticipate that

15    they will resist any efforts on our part to serve

16    additional interrogatories relating to the ▮▮▮

17    patent.  So that will likely produce a discovery

18    dispute that will have to be resolved.

19         And then, in terms of depositions, as

20    mentioned, we would like to reopen -- if this

21    amendment is allowed, we would like to reopen

22    Mr. Roth's deposition, but also Mr. Zilberstein.

23    Spectrum claims that both of these men are --

24    should have been the named inventors -- the

25    exclusive inventors on the ▮▮▮ patent.  So we are

PROCEEDINGS

1   going to want to ask them about this patent.

2            THE COURT:  You're going to probe their

3   conception story.

4            MR. GODSHALK:  Yes.  In preparation for

5   this hearing here today, I spoke with the attorney

6   on our team who deposed Mr. Zilberstein and

7   Mr. Roth, and he said, absolutely, I want to ask

8   them questions.  If this amendment is allowed, I'm

9   going to want to ask them questions about every

10   claim in this patent.

11            And I know that opposing counsel has said

12   something about -- that with prior patents, we only

13   spent an hour and 37 minutes, something like that.

14   I don't know where that figure comes from.  I don't

15   know what that's based upon.  But I would imagine

16   we're going to want to spend significant time with

17   these individuals, you know, questioning them about

18   these two patents.

19            And, lastly, in terms of additional

20   discovery, Spectrum has indicated that if this

21   amendment is allowed, they're going to want to

22   amend their trade secret table again.  As your

23   Honor knows, prior amendments to this trade secret

24   table have been a source of disputes between the

25   parties.  So, you know, it's certainly possible

PROCEEDINGS

1    that if they amend their trade secrets table, that

2    could bring about additional disputes in this case.

3         And I think taking all of this discovery

4    and all these facts into consideration, if we're

5    going to go down this route -- go down this path

6    and allow the ███ patent to come in and we're

7    going to take discovery on it, I think we're going

8    to have to push back expert discovery until we've

9    completed this additional fact discovery.  So I

10   think it will significantly delay the case if the

11   ███ patent comes in.

12        Quickly, I want to -- yes.

13        THE COURT:  How do you respond to

14   Spectrum's argument that any delay itself is not a

15   basis for denying the amendment and their argument

16   that they delayed in raising this?  They're saying

17   the Circuit case law supports the fact that the

18   relevant date for when they knew would be June 2022

19   and they didn't delay seeking this.

20        MR. GODSHALK:  Yes, your Honor, happy to

21   address that.  I think, first of all, what I would

22   say in response to that is opposing counsel said

23   that the case law from the Federal Circuit -- and

24   his words were "addressed this very issue."

25        I'll tell you, that is not accurate.  The

PROCEEDINGS

1    cases that they cite from the Federal Circuit

2    involved laches, which is not what we are talking

3    about here.  We are talking about motions or a

4    motion for leave to amend the pleadings.  So the

5    cases they cite are not directly on point.

6              And for the reasons that we have laid out

7    in our briefing, we think the Court should look at

8    constructive notice.  But I also think this is --

9    you know, it's almost unnecessary to decide this

10   thorny legal issue because I think even if we apply

11   the standard that Spectrum has advocated, then they

12   still unduly delayed.  They say the standard is

13   Spectrum knew or should have known of the issued

14   ███████ patent.  That's the standard we have to look

15   at, they say.  Well, I would submit that they

16   should have known of this patent when it issued in

17   ███████████ more than a year ago.

18             Spectrum alleged in its initial Complaint

19   that defendants engaged in a systematic effort to

20   patent Spectrum's technology.  Based on that

21   allegation, Spectrum should have been closely

22   monitoring GE's patent filings.  And the -- we've

23   talked about the first named inventor on this

24   patent is ███████████████ He's a named

25   defendant in this case and he is one of the

PROCEEDINGS

```
 1    named -- or he's a named defendant and he's a named

 2    inventor of many of the other patents that are

 3    already at issue.

 4            THE COURT:  So you're saying they could

 5    have searched his name and found it.

 6            MR. GODSHALK:  Yes.  Not only could have,

 7    but should have.  You know, if -- he is probably

 8    one of the top one or two most important people on

 9    the GE side in this case.  So, you know, of all the

10    people that they should have been looking out for,

11    inquiring about, he would be it.

12            And in the case law that they have cited,

13    particularly the Advanced Cardiovascular case --

14    that's the Federal Circuit case from 1993, so that

15    case elucidates what it means -- this

16    should-have-known standard.  What the case says is,

17    when we try to determine whether a party should

18    have known, we look at whether that party had

19    information that would have led a reasonably

20    intelligent person to inquire further.  And

21    Spectrum certainly, they certainly had information

22    that would have led them to inquire further, based

23    on their belief that GE was filing all these patent

24    applications that covered Spectrum's technology.

25    So they should have learned of the ███ patent when
```

PROCEEDINGS

 1    it issued, and yet they waited an additional year

 2    to seek leave to amend, and it's at a particularly

 3    inopportune time now that fact discovery has closed

 4    in this case.

 5            THE COURT:  And what is GE's position on

 6    whether -- I think I already asked you this

 7    question -- whether Spectrum can simply file

 8    another case, independent case, just on the ▮▮▮▮▮

 9            MR. GODSHALK:  We agree with that.  We

10    agree that they could.

11            THE COURT:  Okay.

12            MR. GODSHALK:  Let's see, I wanted to

13    address -- one of the other things that opposing

14    counsel said was he said that the order of the

15    inventors on the patents matters, and that because

16    ▮▮▮▮▮▮▮▮▮▮▮▮▮ is the first named inventor on

17    this patent, we should expect that most of -- that

18    he did most of the invention or that he has most of

19    the documents, something along those lines.

20            And I know that there was a time in the

21    past when GE made that representation that the

22    order of the inventors matters.  But we then

23    rescinded that.  We looked into that further and we

24    found out that was not factually accurate, that

25    counsel had just misunderstood this.  And so we

PROCEEDINGS

1      retracted that and said that's not actually true.

2      The order of the inventors doesn't matter.  So just

3      to make clear, the order of the inventors does not

4      matter.

5              Let's see.  And then, with regard to

6      futility, I just really quickly wanted to note, so

7      opposing counsel said that with regard to futility,

8      it doesn't matter if just one of the claims is

9      futile, that's not enough.  I don't know of any

10     case law to that effect.  He didn't cite any case

11     law to that effect.

12             THE COURT:  Right, but doesn't that mean

13     they could bring one and not the other?  I mean, in

14     a motion to amend, if one of the two claims is

15     futile, then just the non-futile claim could be

16     brought --

17             MR. GODSHALK:  Well --

18             THE COURT:  -- in theory, right?

19             MR. GODSHALK:  Well, that is true, your

20     Honor.

21             THE COURT:  And what do you say to

22     Spectrum's statement that Judge Broderick already

23     found that it wasn't futile --

24             MR. GODSHALK:  Yes.

25             THE COURT:  -- because wouldn't that be

PROCEEDINGS

1   law of the case?

2            MR. GODSHALK:  Yes, your Honor, I do have

3   a response to that.  So I know what Judge Broderick

4   ruled in that ruling.  That's a ruling from June of

5   2020.  That may even be before the application for

6   this patent was even filed.  But, certainly, I have

7   no reason to believe that when Judge Broderick made

8   that ruling that he was thinking about future

9   issuing patents.  He said nothing in that ruling

10  about patent applications that might be filed after

11  his ruling or patents that might issue after his

12  ruling.  That ruling has nothing to do with and

13  does not apply to after issuing patents.  It was a

14  ruling that was specific to the patents that were

15  in front of him at the time.

16           One other thing I want to point out before

17  I cede the podium is that -- and this relates to

18  Judge Broderick's prior ruling on a motion to

19  dismiss in this case.  So the Second Amended

20  Complaint, one of the things that it does is it

21  repleads in toto three claims that were already

22  partially dismissed by Judge Broderick.

23           So in May of 2019, Spectrum filed its

24  First Amendment Complaint.  We moved to dismiss all

25  but one of the claims.  So a very broad motion to

PROCEEDINGS

1    dismiss.  Then in June of 2020 Judge Broderick --
2    he granted that motion in part and denied it in
3    part.  And with regard to Spectrum's count 1 for
4    breach of contract, count 2 for misappropriation of
5    trade secrets and count 13 for fraud on the USPTO,
6    he dismissed those claims in part.
7           Now, when Spectrum put together its Second
8    Amended Complaint, it didn't account for this
9    ruling at all.  It repled these claims in their
10   entirety, including the parts that Judge Broderick
11   had previously dismissed.  So I would submit that
12   the Second Amended Complaint is in contravention of
13   this prior order.
14          And I think it's significant, because if
15   they are allowed to file the Second Amended
16   Complaint, we are going to obviously move to
17   dismiss not just the claim that we have noted is
18   futile.  We're also going to have to renew our
19   prior motion to dismiss to basically redismiss
20   parts of this Complaint that have already been
21   dismissed.  And then we're going to have to answer
22   this 126-page Second Amended Complaint, which is a
23   significant outlay of resources, not just for us,
24   but the Court is going to have to then rule on the
25   motion to dismiss.  So it's a significant outlay of

PROCEEDINGS

1    resources for the Court as well.

2                THE COURT:  Okay.

3                MR. GODSHALK:  So I think, you know, for

4    all these reasons, the Court should deny the

5    motion, that is, unjustified delay, undue prejudice

6    and futility.

7                THE COURT:  Thank you.

8                MR. PECHETTE:  Your Honor, just a couple

9    of points to address the points raised by opposing

10   counsel.  Opposing counsel mentioned that the

11   *Pei-Herng* and *Advanced Cardiovascular Systems* cases

12   are distinguishable because they were based on

13   laches.  The District Court cases that GE cites

14   were also about laches or the statute of

15   limitations, which is the same.  So if that is a

16   reason for distinction, then their cases also

17   should fall.

18                The second thing is they mentioned that

19   Spectrum should have known about the patent from

20   the date of issuance, even applying the standard

21   that Spectrum is advocating for.  If that were the

22   case -- we filed this motion less than twelve

23   months after the patent issued.  There's case law

24   that shows that that is not an undue delay.  So

25   even if we were to measure from the day of the

PROCEEDINGS

1    filing -- or, I'm sorry, of the issuance of the

2    patent, there would still be no undue delay.

3          Counsel also mentioned that we should have

4    been following their patent applications more

5    closely given the allegations in the Complaint.  As

6    we mentioned in the reply brief, there have been

7    7,862 patent publications from GE since the filing

8    of the Complaint and 321 of those appear to be

9    related to the same technology.  So it's like

10   finding a needle in a haystack, your Honor.

11         THE COURT:  Well, can't you just do a name

12   search for the inventor?

13         MR. PECHETTE:  We could do a name search

14   for the inventor.  There are many named inventors

15   on the patents at issue in this case.  They mention

16   ███████████████████  Yes, we could have searched for

17   ███████████████████  name, but he's just one of

18   several inventors in this case.

19         Regarding the arguments that counsel made

20   about the amendment delaying the resolution of this

21   case, I want to reiterate that GE did not make that

22   argument anywhere in their briefing.  So that

23   argument is brand-new today and it's forfeited.

24   And if there is any delay, it would be minimal.

25   The case law shows that if you file your motion to

PROCEEDINGS

1    amend before the close of fact discovery, before

2    there's any date set for trial and before there's a

3    schedule set for expert discovery, that's not going

4    to significantly delay the resolution of the case.

5    And that's the case here.

6            Also, with respect to discovery, opposing

7    counsel now says that the additional documents they

8    would need to collect would be large.  Again,

9    that's an argument that they didn't make in their

10   briefing.  It's forfeited.  And even if that

11   argument were heard today, that alone would not be

12   reason to deny leave.

13           As far as depositions, we are willing to

14   put Nathaniel Roth up.  He's the 30 (b)(6)

15   designee.  We don't think it would require much

16   time at all.  As I said, if you look at the

17   transcripts of his deposition, counsel spent an

18   hour and 37 minutes asking him specific questions

19   about --

20           THE COURT:  Okay, you mentioned that.

21           MR. PECHETTE:  Yes.

22           THE COURT:  What about the other guy?

23           MR. PECHETTE:  So Yoel Zilberstein, his --

24   he was only designated as a 30(b)(1) witness, and

25   his seven hours -- they actually exceeded the seven

PROCEEDINGS

1     hours on the record for him.  So we consider his

2     deposition closed.  And, again, they could have

3     asked him questions.  They had notice of these

4     claims.  And counsel also mentioned that it would

5     have been inappropriate to ask about the ███

6     patent because --

7          THE COURT:  Yeah, Rule 26 is pretty clear.

8     You can't ask about things that aren't -- about

9     things that aren't relevant to the claims and

10    defenses.

11         MR. PECHETTE:  We certainly would not have

12    objected on that basis.  And, in fact, in our reply

13    brief we invited them to ask these questions.  We

14    even offered to put up these witnesses for

15    additional time if they wanted to address the ███

16    patent.

17         And as far as efficiency, your Honor,

18    counsel said that it would be more efficient to

19    start a brand-new case and have a completely new

20    docket, new discovery requests.  We think that that

21    is just not correct, your Honor.  It would be much

22    more efficient to just fold this patent into this

23    case where it naturally fits.  The overlap in the

24    subject matter between this patent and the other

25    patents already in the case is large.

1          The only additional details that this

2    patent brings are what I mentioned before, █████████

3    ████████████████████████████████████████████████

4    And opposing counsel does not dispute that those

5    are the only relevant differences in the ██████

6    patent.  To bring an entirely new case just to

7    address those minor issues would not be an

8    efficient use of the Court's resources or the

9    parties' resources.

10          THE COURT:  Okay.  All right.  Thank you.

11          Chris, can we go off the record for a

12    second?

13          (Discussion held off the record.)

14

15                        0o0

16

17

18

19

20

21

22

23

24

25

```
 1

 2                        C E R T I F I C A T E

 3

 4         I, Adrienne M. Mignano, certify that the

 5     foregoing transcript of proceedings in the case of

 6     Spectrum v. General Electric Company, et al.

 7     Docket#18CV11386, was prepared using digital

 8     transcription software and is a true and accurate

 9     record of the proceedings.

10

11

12     Signature   _____

13               ADRIENNE M. MIGNANO

14

15     Date:       January 6, 2023

16

17

18

19

20

21

22

23

24

25
```