

**FISH & RICHARDSON**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/9/2023

Fish & Richardson P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063

650 839 5070 main
650 839 5071 fax

**VIA ECF**

February 7, 2023

**Esha Bandyopadhyay**
Principal
bandyopadhyay@fr.com
+1 650 839 5088 direct

Hon. Katharine H. Parker
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

*Re:* ***Spectrum Dynamics Medical Limited (Plaintiff) v. GE et al. (Defendants);***
***Case No.: 18-cv-11386 (VSB)***

Dear Judge Parker:

Pursuant to Federal Rule of Civil Procedure 5.2(e), Your Honor's Individual Rule of Practice III(d), and the parties' Stipulated Protective Order (ECF No. 156), Spectrum respectfully requests redaction and filing under seal of certain portions of the January 5, 2023, hearing transcript (ECF No. 618). The proposed redactions are shown in Exhibit 1. Defendants do not object to this request.

Throughout the hearing, counsel and Your Honor referenced a GE patent, by number and other identifying information, that Spectrum contends contains misappropriated Spectrum trade secrets. Judge Broderick previously granted Spectrum's request to redact such information from its First Amended Complaint because "the mere disclosure that GE owns the identified patents containing the trade secrets, with an assertion that they contain misappropriated Spectrum technology, informs potential competitors that Spectrum's system (the first of its kind on the market) contains some of the features disclosed in such patents." ECF No. 32 at 1. For the same reason, Judge Broderick also granted Spectrum's request to redact such information from its Motion for Leave to Amend Complaint. ECF No. 552.

For these reasons, Spectrum respectfully requests redaction and filing under seal of the January 5, 2023, hearing transcript.

Respectfully Submitted,

*/s/ Esha Bandyopadhyay*
Esha Bandyopadhyay (*Pro Hac Vice*)
Fish & Richardson P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063



FISH & RICHARDSON

Hon. Katharine H. Parker
Page 2

Tel:  650 839 5070
Fax:  650 839 5071
Email:  bandyopadhyay@fr.com

Michael F. Autuoro (MA 2932)
Fish & Richardson P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel:  212 765 5070
Fax:  212 258 2291
Email:  autuoro@fr.com

Roger A. Denning (*Pro Hac Vice*)
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: 858 678 5070
Fax: 858 678 5099
Email: denning@fr.com

Adam J. Kessel (*Pro Hac Vice*)
Alexander M. Pechette (*Pro Hac Vice*)
Philip K. Chen (*Pro Hac Vice*)
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Tel: 617 542 5070
Fax: 617 542 8906
Email:  kessel@fr.com;
pechette@fr.com; pchen@fr.com

*Attorneys for Plaintiff*
*Spectrum Dynamics Medical Limited*

cc:  All counsel of record (via ECF)

> Spectrum's proposed redactions are narrowly tailored to protect competitively sensitive information in accordance with *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) and its progeny.  Accordingly, the motion is GRANTED.  The transcript from the 1/5/2023 conference shall incorporate Spectrum's proposed redactions.
> The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 625 and 626.  The filing at ECF No. 626 may remain under seal.
>
> **SO ORDERED:**
>
> *Katharine H Parker*
>
> HON. KATHARINE H. PARKER
> UNITED STATES MAGISTRATE JUDGE  2/9/2023

# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


SPECTRUM DYNAMICS MEDICAL        : Docket #18-cv-11386

LIMITED,                         :

                   Plaintiff,    :

     -against-                   :

GENERAL ELECTRIC COMPANY, et al,: New York, New York

                   Defendant.  : January 5, 2023

-------------------------------: CONFERENCE

                  PROCEEDINGS BEFORE

          THE HONORABLE KATHARINE H. PARKER

            UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:      FISH & RICHARDSON P.C.
                    BY:  Michael Frank Autuoro
                         Alexander Pechette
                    7 Times Square
                    20th Floor
                    New York, New York 10036


For Defendant:      THOMPSON HINE
                    BY:  Jesse Leigh Jenike-Godshalk
                         Brian Philip Lanciault, Jr.
                    300 East Randolph Street
                    Suite 5000
                    Chicago, Illinois 60601


Transcription Service: AOM Transcription
Phone:                 (631) 334-1445
E-mail:                aomtranscription@gmail.com
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

PROCEEDINGS

1    THE DEPUTY CLERK:  Calling case 18 Civil

2    11386; Spectrum Dynamics Medical versus General

3    Electric Company.

4    Beginning with counsel for the plaintiffs,

5    could you please make your appearance for the

6    record.

7    MR. AUTUORO:  Yes.  Good morning, your

8    Honor.  Michael Autuoro, from Fish & Richardson,

9    for Spectrum Dynamics Medical Limited.

10    THE COURT:  Hi.

11    MR. PECHETTE:  Alex Pechette, also from

12    Fish & Richardson.

13    THE COURT:  Hi.  Nice to meet you in

14    person.

15    THE DEPUTY CLERK:  Counsel for the

16    defendants, please make your appearance.

17    MR. GODSHALK:  Yes.  This is Jesse

18    Godshalk, from Thompson Hine, on behalf of

19    defendant.

20    MR. LANCIAULT:  And Brian Lanciault, also

21    from Thompson Hine.

22    THE COURT:  Okay.  Nice to meet everybody

23    in person finally.

24    So there are a couple things on the

25    agenda.  First, I was pleased to see that you

PROCEEDINGS

1    worked out the trade secret chart.  So that's

2    great.  One less issue to deal with.

3           Next there's the issue of the proposed

4    amendment to the Complaint.  And you requested oral

5    argument.  I've read through the papers.  So I will

6    hear from plaintiffs first, and then I'll hear from

7    defense counsel.

8           MR. PECHETTE:  Good morning, your Honor.

9    Alex Pechette from Fish & Richardson, on behalf of

10   the plaintiff.

11          There are four points I'd like to make,

12   your Honor.  First, Spectrum did not unduly delay

13   in seeking to amend.  Second, GE has not met its

14   burden of showing undue prejudice.  Third, the ████

15   patent implicates the same set of facts as the

16   other patents already in issue.  And, fourth, GE

17   has not met its burden of showing that the

18   amendment would be futile.

19          As to the issue of undue delay, Spectrum

20   neither knew nor should have known about the ████

21   patent until June 20, 2022.  Under binding Federal

22   Circuit law, that is the date when the clock

23   started, not when the patent issued and certainly

24   not when the application published.  And the cases

25   I'm referring to are *Advanced Cardiovascular*

PROCEEDINGS

1    *Systems* and *Pei-Herng*.  Those Federal Circuit cases

2    control over the contrary District Court cases that

3    GE cites.

4            THE COURT:  I'm sorry.  Give me the date

5    again.

6            MR. PECHETTE:  June 20th, 2022.

7            THE COURT:  Right.  And that's when the

8    Spectrum employee learned of the patent, when it

9    was issued?

10           MR. PECHETTE:  That's correct.

11           THE COURT:  Okay.

12           MR. PECHETTE:  Yes.

13           After learning of the ███ patent,

14   Spectrum diligently investigated.  It performed its

15   Rule 11 inquiry.  Spectrum then notified GE of its

16   claim via interrogatory response and sought GE's

17   consent to amend the Complaint.  When the parties

18   reached an impasse, Spectrum filed this motion the

19   very next day.  All that happened within four

20   months of learning of the ███ patent.

21           GE does not contend that four months

22   amounts to undue delay, and the case law is clear

23   that it does not.  For example, *American Medical*

24   *Association*, the Court held that seven months was

25   not an undue delay.  Even if the clock started when

PROCEEDINGS

1    the patent issued, the delay would still not be

2    undue.  Spectrum filed this motion less than a year

3    after the patent issued.

4            In *Memry*, another case involving

5    correction of inventorship claims, the Court found

6    no undue prejudice -- I'm sorry, no undue delay,

7    where the plaintiff sought to amend 15 months after

8    the patent had issued.  And that case, your Honor,

9    was decided under the more stringent good cause

10   standard under Rule 16(b), not the liberal standard

11   of Rule 15(a), which applies here.

12           So we ask your Honor to find that Spectrum

13   did not unduly delay.

14           Turning to the issue of undue prejudice,

15   GE has not met its burden.  First, no significant

16   additional discovery would be necessary.  And

17   second, the amendment would not significantly delay

18   the resolution of this case.  Spectrum already

19   served written discovery on this patent.  I would

20   direct your Honor to Exhibit G, page 17.  It's a

21   rog response that we served.  And there we

22   explained our conception story with respect to the

23   ▮▮▮ patent.  And GE simply does not address this

24   anywhere in its briefing.

25           As for depositions, Spectrum already

PROCEEDINGS

1 deposed the first named inventor, who is █████████

2 █████████ and we asked him questions about this

3 specific patent.  GE, on the other hand, opted not

4 to ask the Spectrum inventors any questions about

5 the ██████ patent.  They certainly could have, your

6 Honor, because we gave them notice of Spectrum's

7 claim in September, and those depositions didn't

8 happen until November, but they chose not to.  So

9 any prejudice flowing from that decision is

10 entirely self-inflicted.

11   As far as documents, Spectrum has already

12 produced --

13   THE COURT:  Actually, let me stop you for

14 a second on this issue of the depositions and what

15 questions were asked or not asked.  Is it your

16 contention that it's the same trade secrets that

17 are at issue with respect to the other patents as

18 this new patent?

19   MR. PECHETTE:  It is the same trade

20 secrets, yes.

21   THE COURT:  So wouldn't the questions

22 concerning those trade secrets cover the ██████

23 patent?  I guess I'm trying to understand when you

24 say -- what specific questions would there be for

25 the ██████ patent?

                                    PROCEEDINGS

1              MR. PECHETTE:  So there is a lot of

2      overlap, your Honor, in the technology that's

3      described in the ███ patent and the technology

4      that's described in the other patents.  There are a

5      couple of differences in the ████ patent, and

6      that's what I was referring to when I said we asked

7      questions specific to the ████ patent.

8              THE COURT:  What are those differences?

9              MR. PECHETTE:  ███████████

10     ████████████████████████████████████████████████

11     ████████████████████████████████████████████████

12     ████████████████████████████████████████████████

13     ████████  Those details are specific to the ███

14     patent, and we asked Mr. ███████ questions about

15     that aspect of the ████ patent.

16             THE COURT:  Okay.

17             MR. PECHETTE:  And, your Honor, going back

18     to the rog response I mentioned a minute ago,

19     that's what I was also talking about.  In the pages

20     that I cite, we described our conception story with

21     respect to those additional details specific to the

22     ████

23             THE COURT:  So you provided to GE why you

24     say Spectrum owns those trade secrets or invented

25     and conceived of those particular aspects, ████

PROCEEDINGS

1    ████████████████████████████████

2              MR. PECHETTE:  Correct.

3              THE COURT:  So that information was

4    already provided.

5              MR. PECHETTE:  Correct.

6              THE COURT:  Okay.

7              MR. PECHETTE:  We also produced documents

8    specific to those details, and we cited them in

9    that interrogatory response.

10             THE COURT:  Okay.

11             MR. PECHETTE:  For GE's part, any

12   additional document collection we think would be

13   minimal.  In its briefing, GE does not contend that

14   the additional documents it would need to collect

15   are voluminous.  GE already collected relevant

16   documents from the first named inventor.  That was

17   ████████████████████   The other two inventors likely

18   do not have many relevant documents.  To my

19   knowledge, their names don't appear in the

20   documents produced to date so they're likely not

21   important players.

22             And, also, GE has represented that the

23   order of inventors on a patent matters.  They name

24   inventors in order of their contributions to the

25   patent.  So these second and third inventors likely

PROCEEDINGS

```
 1      have fewer relevant documents.
 2              One last point regarding prejudice, your
 3      Honor.  GE does not contend that the amendment
 4      would significantly delay the resolution of the
 5      case.  So GE has forfeited any argument regarding
 6      that prong of the undue prejudice analysis.  So we
 7      ask the Court find no undue prejudice.
 8              THE COURT:  Okay.  Will the outcome of the
 9      claims in this case affect the validity of the
10      claim on the ███ patent?  In other words, would
11      there be some kind of res judicata or preclusion
12      based on what happens in this case?  Have you done
13      that analysis?
14              MR. PECHETTE:  We have not done that
15      analysis, your Honor.  Just off the top of my head,
16      there's a lot of overlap, so I think it's very
17      possible that there would be some kind of res
18      judicata effect.  There might be some daylight --
19      if Spectrum were to not prevail on the other
20      claims, there might be some daylight because of the
21      additional technical details in the ███ patent,
22      but we just -- I can't say off the top of my head.
23              THE COURT:  And if the motion to amend is
24      denied, is it your position that you could just
25      bring another suit on this -- independent suit on
```

PROCEEDINGS

```
 1    the ▉▉▉ patent?
 2              MR. PECHETTE:  Yes, your Honor.  And I
 3    don't believe that that is disputed.
 4              Turning to my third point, your Honor, the
 5    ▉▉▉ patent is substantially similar to the other
 6    patents-in-suit, and I actually have a
 7    demonstrative on this point, if I may.
 8              THE COURT:  Sure.
 9              MR. PECHETTE:  Your Honor, if you turn to
10    page 6, this is a comparison of the ▉▉▉ patent and
11    the ▉▉▉ patent, which is a patent that's already
12    in the case.  Both of these patents share a common
13    named inventor.  That's ▉▉▉▉▉▉▉▉▉ who,
14    again, we already deposed.  The patents also share
15    the same two embodiments.  You can see that in the
16    figures here.  They're nearly identical.
17              Not only are the patents similar, so are
18    Spectrum's claims to the patents.  With respect to
19    all the patents at issue in this case, Spectrum's
20    claim is that GE induced Spectrum to reveal its
21    trade secrets under the guise of a potential
22    business deal, and then GE took those trade secrets
23    and used them to develop its own product and to
24    file patent applications.  So all of Spectrum's
25    correction of inventorship claims share a common
```

PROCEEDINGS

1     set of operative facts.  The ███ patent,

2     therefore, fits naturally into this case.

3            My final point, your Honor.  GE has not

4     met its burden of showing that the amendment would

5     be futile.  GE does not dispute that Spectrum's

6     correction of inventorship claim would survive a

7     motion to dismiss, and that's count 14.  GE only

8     argues that count 13, which is fraud on the PTO,

9     would not survive a motion to dismiss.  But

10    futility as to one of multiple counts is not

11    sufficient.  And in any event, the Court has

12    already rejected GE's argument regarding count 13

13    and held that Spectrum alleged sufficient facts to

14    establish an Article III case or controversy.  I

15    would direct your Honor to docket number 73 at 36

16    to 39.

17           THE COURT:  That's Judge Broderick's

18    decision.

19           MR. PECHETTE:  Correct.

20           THE COURT:  Yes.  Okay.  Defendants argue

21    that the publication of the patent application in

22    ███████████  puts you on constructive notice of

23    the patent, and they cite case law for that

24    proposition.

25           What's your response to that?

PROCEEDINGS

1          MR. PECHETTE:  So the Pei-Herng case from

2     the Federal Circuit held the opposite.  It

3     addressed this very issue, and it held that the

4     publication -- even if a plaintiff is aware of the

5     publication, the claim to correction of

6     inventorship under Section 256 does not accrue

7     until the patent actually issues.

8          And in that case, the District Court had

9     held that there was constructive notice of the

10    patent from the date of the publication of the

11    application, and the Federal Circuit reversed that

12    holding.  So the District Court cases that GE cites

13    that hold the opposite are not controlling.

14         THE COURT:  Okay.  Now, if the amendment

15    is granted, what additional documents or

16    depositions do you think would be necessary, and

17    how long do you think it would take to conduct that

18    discovery?

19         MR. PECHETTE:  Spectrum has already

20    completed its document production.  We don't see

21    any other documents that would need to be produced

22    from Spectrum.  Same with depositions.  We've

23    already taken the deposition of the first named

24    inventor.  There's two other named inventors, but

25    at this point, I don't think we see the need to

PROCEEDINGS

1   depose those individuals.

2           For GE's part, they have said that they

3   will need to collect additional documents from the

4   named inventors.  And as I said before, I don't

5   think that GE has contended that that document

6   collection is voluminous.  And also, your Honor,

7   just citing that additional document discovery is

8   necessary is not a sufficient basis to deny leave

9   to amend under Rule 15.

10          As far as depositions go, they've already

11  deposed the two individuals at Spectrum who

12  Spectrum contends are the true inventors.  That

13  would be Nathaniel Roth and Yoel Zilberstein.  And

14  they had multiple days with each of these

15  individuals, and they opted not to ask any

16  questions about the ███ patent.  They did,

17  however, ask questions about the other

18  patents-in-suit, and that inquiry took all of one

19  hour and 37 minutes.  So if they were to request a

20  deposition of Mr. Roth on the ███ patent, we think

21  that could be handled quite quickly.

22          THE COURT:  So you would make those

23  individuals available again?

24          MR. PECHETTE:  We would be willing to make

25  Nathaniel Roth available.  He's the 30(b)(6)

PROCEEDINGS

```
 1     designee on the conception of what we contend are
 2     the misappropriated patents.  And we would propose
 3     that he be limited in time -- that that deposition
 4     be limited in time.
 5          THE COURT:  How long do you think would be
 6     necessary?
 7          MR. PECHETTE:  Considering that the other
 8     seven patents already at issue only took an hour
 9     and 37 minutes on the record, we think that an hour
10     would be sufficient.  We would also ask that that
11     deposition be taken remotely, since that witness --
12          THE COURT:  He's in Israel, right?
13          MR. PECHETTE:  Yes, correct.
14          THE COURT:  Okay.  All right.  Thank you.
15     I'll hear from GE next.
16          MR. GODSHALK:  All right, your Honor.  I
17     want to start by addressing some specific points
18     that opposing counsel made.  First of all, he cited
19     the Memry case.  I think that case is readily
20     distinguishable, and, actually, it's
21     distinguishable on the same grounds as the SpeedFit
22     case, which Spectrum also cites in its briefing.
23          In both of those cases, you had a
24     plaintiff who wanted to add additional patents to a
25     Complaint by way of amendment, but the patents that
```

PROCEEDINGS

1     they wanted to add all claimed priority to a patent
2     application that was cited in prior pleadings.  So
3     everyone knew that the patents that were being
4     added, that they were going to be part of the case.
5     And that is not what we have here.  Spectrum cannot
6     point to any patents or patent applications in the
7     existing pleadings that are in the same family as
8     the ▬▬ patent.
9               THE COURT:  What's the significance of
10    being in the same family of patents?
11              MR. GODSHALK:  Yeah.  When they're in the
12    same family, your Honor, it means that they are
13    closely related patents, that they have closely
14    related technology.
15              THE COURT:  So why would this -- Spectrum
16    has provided me an exhibit comparing the ▬▬
17    patent and the ▬▬ patent -- to my eyes, which I'm
18    not an expert, looks pretty similar.
19              MR. GODSHALK:  Yes.
20              THE COURT:  What's different that they
21    would be in a different family?
22              MR. GODSHALK:  Yes, your Honor, and I
23    think that, to me, to be frank, the comparison of
24    the two patents in -- this is on page 5 of the
25    hand- -- or page 6, I'm sorry, of the handout from

PROCEEDINGS

1    opposing counsel.  I think that's something of a

2    red herring because what they're comparing here are

3    two figures -- first of all, there are many, many,

4    many figures in each one of these patents, and

5    these are just figures that show an embodiment of

6    the invention.  And it may not even be -- actually,

7    I'm sure of this, that it's not the entirety of

8    these figures that's being claimed.

9            I guess the bottom line is, to know what

10   is covered by an invention, you have to look -- or

11   by a patent, you have to look at the claims of the

12   patent.  It's not the figures that control.  It's

13   not the embodiments that control.  It's not the

14   background of the invention.  It's the claims

15   themselves.

16           So I think just comparing figures from

17   various patents is not very telling.  Oftentimes,

18   patent prosecutors will simply copy and paste

19   figures from prior patents.  Sometimes they'll even

20   copy and paste the entire specification, you know,

21   the part of the patent that leads up to the claims,

22   they'll just copy and paste from a prior patent.

23   And that is not to say that they are closely

24   related.  It's just --

25           THE COURT:  I'm sorry, I'm going to just

PROCEEDINGS

```
 1    interrupt you for a second to ask about the -- both
 2    of these machines photograph internal organs --
 3            MR. GODSHALK:  Correct.
 4            THE COURT:  -- take image of internal
 5    organs --
 6            MR. GODSHALK:  Correct.
 7            THE COURT:  -- by having a patient lie
 8    down and go into the machine, and cameras are at
 9    various places around the body and at various
10    distances from the body to take the image.
11            MR. GODSHALK:  Correct.
12            THE COURT:  And they're both taking images
13    of the same types of organs; is that right?
14            MR. GODSHALK:  Well, yes, but I mean --
15            THE COURT:  So why would there be a
16    different family?  I don't understand.
17            MR. GODSHALK:  Well, I think that, first
18    of all, in terms of taking images of the same
19    organs, these are both full-body scanners.  I mean,
20    all of the technology at issue is full-body
21    scanners.  So we're talking about scanners that can
22    take images of any part of the body.
23            THE COURT:  What's the material difference
24    between the two families, if you know?
25            MR. GODSHALK:  Well, you know --
```

PROCEEDINGS

```
 1            THE COURT:  In plain English.
 2            MR. GODSHALK:  Frankly, I don't know if
 3    that's even really a -- I'm not sure if that
 4    question can be answered that way.
 5            THE COURT:  I see.
 6            MR. GODSHALK:  But I don't know --
 7    certainly, I can't give you a clear answer on that.
 8            THE COURT:  So what is your view on
 9    whether or not the outcome of this case would have
10    any kind of preclusive effect on an independent
11    claim involving the █████ patent?
12            MR. GODSHALK:  Yes.  Your Honor, as with
13    opposing counsel, that's not something that I have
14    analyzed, but I don't think that it would certainly
15    have a full res judicata effect.  Like, I don't
16    think that, for instance, a decision in this case
17    would preclude Spectrum completely from pursuing a
18    separate claim involving the ████ patent.
19            THE COURT:  Those two independent trade
20    secrets as well.
21            MR. GODSHALK:  Well, it's independent
22    patents.  So I would think that, regardless of what
23    happens in this case, they could certainly bring a
24    separate claim based on the ████ patent.
25            THE COURT:  Okay.  And what is GE's view
```

PROCEEDINGS

1   on whether it would be more efficient to simply add

2   this here versus face a separate lawsuit?

3          MR. GODSHALK:  Yeah, I think it would be

4   more efficient to -- if Spectrum really believes

5   that it has a, you know, merit-worthy claim based

6   on the ███ patent, for them to bring a separate

7   lawsuit rather than continuing to delay this

8   litigation, which has already been -- gone on for

9   more than four years and has already been delayed

10  by Spectrum's past conduct when they filed a motion

11  for preliminary injunction after several years of

12  litigation and which really sent the case sideways

13  and delayed it.

14         And I think that this motion for leave has

15  the potential to do the same because we are just 20

16  days away from the deadline for filing opening

17  expert reports.  But before the experts can prepare

18  their reports, they need to have the underlying

19  facts upon which those reports will be built.  And

20  I think that if the ███ patent is added, there is

21  going to be significant additional discovery that

22  will be needed.

23         THE COURT:  Tell me what that is.

24         MR. GODSHALK:  Yes.  So, let's see.  To

25  start, I think it's important to note that there

PROCEEDINGS

1   has been very, very little discovery so far

2   relating to the ▇ patent.  So, I mean, that is

3   an important baseline.

4        You know, fact discovery has obviously now

5   closed in the case, and while it was going on,

6   neither party served any interrogatories, any

7   request for production or any request for

8   admissions directed to the ▇ patent, its

9   application, or any of the patents within the same

10  family.  Defendants also didn't collect, review and

11  produce documents specifically relating to this

12  patent, its underlying application, or other

13  patents in the same family.

14       And, indeed, we didn't collect any

15  documents from two of the named inventors, Mr. ▇

16  and Mr. ▇     Mr. ▇ is no longer a

17  GE employee, and we've had no contact with him

18  whatsoever, and we're not even sure how to get

19  ahold of him.

20       Finally, during depositions, we didn't ask

21  witnesses any questions about the ▇ patent, its

22  application, or its family members.  And I

23  understand opposing counsel kind of makes an issue

24  out of this, that we ought to have done that.  I

25  disagree because under Rule 26 parties are only

PROCEEDINGS

1      permitted to take discovery that is relevant to the

2      claims and defenses in the case.  Until the ███████

3      patent is added -- if it gets added to this case --

4      then it's not relevant to this case.  Things about

5      it are simply irrelevant to the case.  So it's not

6      a proper matter for discovery.

7              It's also defendant's position they

8      shouldn't have to incur the costs and expenses and

9      time and effort to take discovery of the ██████

10     patent, that it's unduly prejudicial.  So I don't

11     understand why we would willingly take on those

12     burdens by going ahead and taking the discovery

13     during the discovery period.  No, our position is

14     we shouldn't have to do that.

15             Also, opposing counsel has argued that

16     they've basically provided ample written discovery

17     on the ██████ patent, and they point to a single

18     interrogatory response.  First of all, that

19     interrogatory didn't ask about the ██████ patent.  So

20     it was kind of gratuitous on their part to add it

21     into their response.  But in any event, it doesn't

22     provide much detail at all on this claim.  Over

23     maybe one or two pages, it basically lays out their

24     basic contentions for what information they claim

25     that they provided to the defendants that would be

PROCEEDINGS

1    relevant to this patent.  But it's not robust

2    discovery on this.

3           THE COURT:  But really this claim concerns

4    trade secrets.  There wouldn't need to be any

5    separate claim construction or anything like that,

6    would there, on this (inaudible) claim?

7           MR. GODSHALK:  You are correct about that.

8    I do not foresee the need for there to be any claim

9    construction if this patent is added.  That's

10   correct.

11          In terms of the discovery that I think

12   will need to happen, because so little fact

13   discovery has happened so far, I mean, I would

14   anticipate that both sides would want to serve

15   requests for production, interrogatories and

16   requests for admissions relating to the ▮▮▮▮

17   patent.  I know we will.  And these, in turn, will

18   require defendants to prepare written objections

19   and responses and also to search for documents from

20   two new custodians, Mr. ▮▮▮▮ and Mr. ▮▮▮▮▮▮

21   who were named inventors of the ▮▮▮ patent.

22          We'll also have to collect documents from

23   central GE databases, such as the Anaqua database,

24   which holds GE's patents and their patent

25   applications and patent materials.  And I

PROCEEDINGS

 1    anticipate we'll have to collect documents from

 2    three existing custodians, Mr. Hefetz, Gil Kovalski

 3    and ██████████████ given Mr. Hefetz and

 4    Mr. Kovalski are kind of involved -- they're

 5    members of this patent examination board at GE.

 6    And then ██████████████ is, again, one of the

 7    named inventors.

 8             Now, in terms of the volume of documents,

 9    I will say this.  Opposing counsel mentioned that

10    he asked questions of Mr. ██████ at his deposition

11    about this patent.  And I think the answers that

12    Mr. ██████ provided are telling and are relevant

13    here.  Mr. ██████ said -- he testified that he had

14    "many e-mails" and "a lot" of e-mails relating to

15    the conception of the ███ patent.  He also -- in

16    discussing conception of this patent, he mentioned

17    a company called LETI -- that's L-E-T-I -- that I'd

18    never heard of.  I don't think it's been at all on

19    our radar.  I don't think we've collected any

20    documents relating to it.  And that was all part of

21    his conception story for this patent.

22             THE COURT:  You mean this other company

23    collaborated, potentially, on this conception?

24             MR. GODSHALK:  I don't know if they

25    collaborated in conception.  I don't know if I'd

PROCEEDINGS

1    say that precisely.  But what Mr. ████ said was

2    he said that he was collaborating with LETI and

3    that out of that collaboration, he developed the

4    idea.  He developed the idea for the ████ patent.

5    I don't want to make it sound like LETI is a

6    potential inventor.  I don't think that's the case.

7    But, you know, based upon that testimony and other

8    facts that we know, I think we reasonably can

9    anticipate that the volume of additional documents

10   will be large.

11          In terms of serving additional

12   interrogatories, I'll tell you that Spectrum has

13   taken the position that they've already answered

14   more than 25 interrogatories.  So I anticipate that

15   they will resist any efforts on our part to serve

16   additional interrogatories relating to the ████

17   patent.  So that will likely produce a discovery

18   dispute that will have to be resolved.

19          And then, in terms of depositions, as

20   mentioned, we would like to reopen -- if this

21   amendment is allowed, we would like to reopen

22   Mr. Roth's deposition, but also Mr. Zilberstein.

23   Spectrum claims that both of these men are --

24   should have been the named inventors -- the

25   exclusive inventors on the ████ patent.  So we are

PROCEEDINGS

1      going to want to ask them about this patent.

2                THE COURT:  You're going to probe their

3      conception story.

4                MR. GODSHALK:  Yes.  In preparation for

5      this hearing here today, I spoke with the attorney

6      on our team who deposed Mr. Zilberstein and

7      Mr. Roth, and he said, absolutely, I want to ask

8      them questions.  If this amendment is allowed, I'm

9      going to want to ask them questions about every

10     claim in this patent.

11               And I know that opposing counsel has said

12     something about -- that with prior patents, we only

13     spent an hour and 37 minutes, something like that.

14     I don't know where that figure comes from.  I don't

15     know what that's based upon.  But I would imagine

16     we're going to want to spend significant time with

17     these individuals, you know, questioning them about

18     these two patents.

19               And, lastly, in terms of additional

20     discovery, Spectrum has indicated that if this

21     amendment is allowed, they're going to want to

22     amend their trade secret table again.  As your

23     Honor knows, prior amendments to this trade secret

24     table have been a source of disputes between the

25     parties.  So, you know, it's certainly possible

PROCEEDINGS

1    that if they amend their trade secrets table, that

2    could bring about additional disputes in this case.

3         And I think taking all of this discovery

4    and all these facts into consideration, if we're

5    going to go down this route -- go down this path

6    and allow the ███ patent to come in and we're

7    going to take discovery on it, I think we're going

8    to have to push back expert discovery until we've

9    completed this additional fact discovery.  So I

10   think it will significantly delay the case if the

11   ███ patent comes in.

12        Quickly, I want to -- yes.

13        THE COURT:  How do you respond to

14   Spectrum's argument that any delay itself is not a

15   basis for denying the amendment and their argument

16   that they delayed in raising this?  They're saying

17   the Circuit case law supports the fact that the

18   relevant date for when they knew would be June 2022

19   and they didn't delay seeking this.

20        MR. GODSHALK:  Yes, your Honor, happy to

21   address that.  I think, first of all, what I would

22   say in response to that is opposing counsel said

23   that the case law from the Federal Circuit -- and

24   his words were "addressed this very issue."

25        I'll tell you, that is not accurate.  The

PROCEEDINGS

1    cases that they cite from the Federal Circuit

2    involved laches, which is not what we are talking

3    about here.  We are talking about motions or a

4    motion for leave to amend the pleadings.  So the

5    cases they cite are not directly on point.

6          And for the reasons that we have laid out

7    in our briefing, we think the Court should look at

8    constructive notice.  But I also think this is --

9    you know, it's almost unnecessary to decide this

10    thorny legal issue because I think even if we apply

11    the standard that Spectrum has advocated, then they

12    still unduly delayed.  They say the standard is

13    Spectrum knew or should have known of the issued

14    ████ patent.  That's the standard we have to look

15    at, they say.  Well, I would submit that they

16    should have known of this patent when it issued in

17    ██████████ more than a year ago.

18          Spectrum alleged in its initial Complaint

19    that defendants engaged in a systematic effort to

20    patent Spectrum's technology.  Based on that

21    allegation, Spectrum should have been closely

22    monitoring GE's patent filings.  And the -- we've

23    talked about the first named inventor on this

24    patent is ██████████████ He's a named

25    defendant in this case and he is one of the

PROCEEDINGS

1  named -- or he's a named defendant and he's a named

2  inventor of many of the other patents that are

3  already at issue.

4         THE COURT: So you're saying they could

5  have searched his name and found it.

6         MR. GODSHALK: Yes. Not only could have,

7  but should have. You know, if -- he is probably

8  one of the top one or two most important people on

9  the GE side in this case. So, you know, of all the

10 people that they should have been looking out for,

11 inquiring about, he would be it.

12        And in the case law that they have cited,

13 particularly the *Advanced Cardiovascular* case --

14 that's the Federal Circuit case from 1993, so that

15 case elucidates what it means -- this

16 should-have-known standard. What the case says is,

17 when we try to determine whether a party should

18 have known, we look at whether that party had

19 information that would have led a reasonably

20 intelligent person to inquire further. And

21 Spectrum certainly, they certainly had information

22 that would have led them to inquire further, based

23 on their belief that GE was filing all these patent

24 applications that covered Spectrum's technology.

25 So they should have learned of the ███ patent when

PROCEEDINGS

1    it issued, and yet they waited an additional year

2    to seek leave to amend, and it's at a particularly

3    inopportune time now that fact discovery has closed

4    in this case.

5           THE COURT:  And what is GE's position on

6    whether -- I think I already asked you this

7    question -- whether Spectrum can simply file

8    another case, independent case, just on the ████

9           MR. GODSHALK:  We agree with that.  We

10   agree that they could.

11          THE COURT:  Okay.

12          MR. GODSHALK:  Let's see, I wanted to

13   address -- one of the other things that opposing

14   counsel said was he said that the order of the

15   inventors on the patents matters, and that because

16   ████████████████  is the first named inventor on

17   this patent, we should expect that most of -- that

18   he did most of the invention or that he has most of

19   the documents, something along those lines.

20          And I know that there was a time in the

21   past when GE made that representation that the

22   order of the inventors matters.  But we then

23   rescinded that.  We looked into that further and we

24   found out that was not factually accurate, that

25   counsel had just misunderstood this.  And so we

PROCEEDINGS

1    retracted that and said that's not actually true.

2    The order of the inventors doesn't matter.  So just

3    to make clear, the order of the inventors does not

4    matter.

5            Let's see.  And then, with regard to

6    futility, I just really quickly wanted to note, so

7    opposing counsel said that with regard to futility,

8    it doesn't matter if just one of the claims is

9    futile, that's not enough.  I don't know of any

10   case law to that effect.  He didn't cite any case

11   law to that effect.

12           THE COURT:  Right, but doesn't that mean

13   they could bring one and not the other?  I mean, in

14   a motion to amend, if one of the two claims is

15   futile, then just the non-futile claim could be

16   brought --

17           MR. GODSHALK:  Well --

18           THE COURT:  -- in theory, right?

19           MR. GODSHALK:  Well, that is true, your

20   Honor.

21           THE COURT:  And what do you say to

22   Spectrum's statement that Judge Broderick already

23   found that it wasn't futile --

24           MR. GODSHALK:  Yes.

25           THE COURT:  -- because wouldn't that be

PROCEEDINGS

1   law of the case?

2           MR. GODSHALK:  Yes, your Honor, I do have

3   a response to that.  So I know what Judge Broderick

4   ruled in that ruling.  That's a ruling from June of

5   2020.  That may even be before the application for

6   this patent was even filed.  But, certainly, I have

7   no reason to believe that when Judge Broderick made

8   that ruling that he was thinking about future

9   issuing patents.  He said nothing in that ruling

10  about patent applications that might be filed after

11  his ruling or patents that might issue after his

12  ruling.  That ruling has nothing to do with and

13  does not apply to after issuing patents.  It was a

14  ruling that was specific to the patents that were

15  in front of him at the time.

16          One other thing I want to point out before

17  I cede the podium is that -- and this relates to

18  Judge Broderick's prior ruling on a motion to

19  dismiss in this case.  So the Second Amended

20  Complaint, one of the things that it does is it

21  repleads in toto three claims that were already

22  partially dismissed by Judge Broderick.

23          So in May of 2019, Spectrum filed its

24  First Amendment Complaint.  We moved to dismiss all

25  but one of the claims.  So a very broad motion to

PROCEEDINGS

1    dismiss.  Then in June of 2020 Judge Broderick --
2    he granted that motion in part and denied it in
3    part.  And with regard to Spectrum's count 1 for
4    breach of contract, count 2 for misappropriation of
5    trade secrets and count 13 for fraud on the USPTO,
6    he dismissed those claims in part.
7           Now, when Spectrum put together its Second
8    Amended Complaint, it didn't account for this
9    ruling at all.  It repled these claims in their
10   entirety, including the parts that Judge Broderick
11   had previously dismissed.  So I would submit that
12   the Second Amended Complaint is in contravention of
13   this prior order.
14          And I think it's significant, because if
15   they are allowed to file the Second Amended
16   Complaint, we are going to obviously move to
17   dismiss not just the claim that we have noted is
18   futile.  We're also going to have to renew our
19   prior motion to dismiss to basically redismiss
20   parts of this Complaint that have already been
21   dismissed.  And then we're going to have to answer
22   this 126-page Second Amended Complaint, which is a
23   significant outlay of resources, not just for us,
24   but the Court is going to have to then rule on the
25   motion to dismiss.  So it's a significant outlay of

1   resources for the Court as well.

2          THE COURT:  Okay.

3          MR. GODSHALK:  So I think, you know, for

4   all these reasons, the Court should deny the

5   motion, that is, unjustified delay, undue prejudice

6   and futility.

7          THE COURT:  Thank you.

8          MR. PECHETTE:  Your Honor, just a couple

9   of points to address the points raised by opposing

10  counsel.  Opposing counsel mentioned that the

11  *Pei-Herng* and *Advanced Cardiovascular Systems* cases

12  are distinguishable because they were based on

13  laches.  The District Court cases that GE cites

14  were also about laches or the statute of

15  limitations, which is the same.  So if that is a

16  reason for distinction, then their cases also

17  should fall.

18          The second thing is they mentioned that

19  Spectrum should have known about the patent from

20  the date of issuance, even applying the standard

21  that Spectrum is advocating for.  If that were the

22  case -- we filed this motion less than twelve

23  months after the patent issued.  There's case law

24  that shows that that is not an undue delay.  So

25  even if we were to measure from the day of the

PROCEEDINGS

1    filing -- or, I'm sorry, of the issuance of the

2    patent, there would still be no undue delay.

3         Counsel also mentioned that we should have

4    been following their patent applications more

5    closely given the allegations in the Complaint.  As

6    we mentioned in the reply brief, there have been

7    7,862 patent publications from GE since the filing

8    of the Complaint and 321 of those appear to be

9    related to the same technology.  So it's like

10    finding a needle in a haystack, your Honor.

11         THE COURT:  Well, can't you just do a name

12    search for the inventor?

13         MR. PECHETTE:  We could do a name search

14    for the inventor.  There are many named inventors

15    on the patents at issue in this case.  They mention

16    ███████████████████  Yes, we could have searched for

17    ███████████████████  name, but he's just one of

18    several inventors in this case.

19         Regarding the arguments that counsel made

20    about the amendment delaying the resolution of this

21    case, I want to reiterate that GE did not make that

22    argument anywhere in their briefing.  So that

23    argument is brand-new today and it's forfeited.

24    And if there is any delay, it would be minimal.

25    The case law shows that if you file your motion to

PROCEEDINGS

 1    amend before the close of fact discovery, before
 2    there's any date set for trial and before there's a
 3    schedule set for expert discovery, that's not going
 4    to significantly delay the resolution of the case.
 5    And that's the case here.
 6            Also, with respect to discovery, opposing
 7    counsel now says that the additional documents they
 8    would need to collect would be large.  Again,
 9    that's an argument that they didn't make in their
10    briefing.  It's forfeited.  And even if that
11    argument were heard today, that alone would not be
12    reason to deny leave.
13            As far as depositions, we are willing to
14    put Nathaniel Roth up.  He's the 30 (b)(6)
15    designee.  We don't think it would require much
16    time at all.  As I said, if you look at the
17    transcripts of his deposition, counsel spent an
18    hour and 37 minutes asking him specific questions
19    about --
20            THE COURT:  Okay, you mentioned that.
21            MR. PECHETTE:  Yes.
22            THE COURT:  What about the other guy?
23            MR. PECHETTE:  So Yoel Zilberstein, his --
24    he was only designated as a 30(b)(1) witness, and
25    his seven hours -- they actually exceeded the seven

PROCEEDINGS

1    hours on the record for him.  So we consider his

2    deposition closed.  And, again, they could have

3    asked him questions.  They had notice of these

4    claims.  And counsel also mentioned that it would

5    have been inappropriate to ask about the ████

6    patent because --

7        THE COURT:  Yeah, Rule 26 is pretty clear.

8    You can't ask about things that aren't -- about

9    things that aren't relevant to the claims and

10   defenses.

11       MR. PECHETTE:  We certainly would not have

12   objected on that basis.  And, in fact, in our reply

13   brief we invited them to ask these questions.  We

14   even offered to put up these witnesses for

15   additional time if they wanted to address the ████

16   patent.

17       And as far as efficiency, your Honor,

18   counsel said that it would be more efficient to

19   start a brand-new case and have a completely new

20   docket, new discovery requests.  We think that that

21   is just not correct, your Honor.  It would be much

22   more efficient to just fold this patent into this

23   case where it naturally fits.  The overlap in the

24   subject matter between this patent and the other

25   patents already in the case is large.

```
 1            The only additional details that this
 2       patent brings are what I mentioned before, ████████
 3       ████████████████████████████████████████████████
 4       And opposing counsel does not dispute that those
 5       are the only relevant differences in the ████████
 6       patent.  To bring an entirely new case just to
 7       address those minor issues would not be an
 8       efficient use of the Court's resources or the
 9       parties' resources.
10            THE COURT:  Okay.  All right.  Thank you.
11            Chris, can we go off the record for a
12       second?
13            (Discussion held off the record.)
14
15                          0o0
16
17
18
19
20
21
22
23
24
25
```

1

2                      C E R T I F I C A T E

3

4          I, Adrienne M. Mignano, certify that the

5     foregoing transcript of proceedings in the case of

6     Spectrum v. General Electric Company, et al.

7     Docket#18CV11386, was prepared using digital

8     transcription software and is a true and accurate

9     record of the proceedings.

10

11

12     Signature  _Adrienne M. Mignano_____

13                  ADRIENNE M. MIGNANO

14

15     Date:      January 6, 2023

16

17

18

19

20

21

22

23

24

25