**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., and GE MEDICAL SYSTEMS ISRAEL LTD., <br><br> Defendants. | Case No.: 18-cv-11386 (VSB) |

**SPECTRUM'S OPPOSITION TO GE'S MOTION**
**TO PIERCE PRIVILEGE BASED ON THE CRIME-FRAUD EXCEPTION**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..........................................................................................................1

II.    BACKGROUND ...........................................................................................................1

       A.     Spectrum Discloses Its New Camera Design to GE ............................................1

       B.     Spectrum Learns About GE's Patent Applications..............................................2

       C.     GE's Conduct and Representations Prevent Spectrum from
              Discovering the Misappropriation ......................................................................3

       D.     Spectrum Discovers the Misappropriation at Rambam Medical
              Center....................................................................................................................7

       E.     Spectrum Performs Its Pre-Suit Diligence..........................................................7

       F.     Spectrum Truthfully Alleges Facts Supporting Equitable
              Tolling in Its First Amended Complaint...............................................................8

       G.     The Court Denies GE's Renewed Motion to Dismiss ..........................................9

       H.     Following GE's Example, Spectrum Redacts Certain Filenames
              from Its Privilege Log in Good Faith....................................................................9

       I.     Spectrum Truthfully Alleges Facts Supporting Equitable
              Tolling in Its Second Amended Complaint .........................................................13

III.   LEGAL STANDARD...................................................................................................14

IV.    ARGUMENT................................................................................................................14

       A.     GE Fails to Establish Probable Cause to Believe Spectrum
              Defrauded the Court............................................................................................14

              1.     Spectrum's Allegations Supporting Equitable Tolling
                     Are True ..................................................................................................15

              2.     GE Cannot Prove Intent to Deceive.........................................................19

              3.     The Court Did Not Explicitly Rely on the Allegedly
                     False Allegations....................................................................................22

              4.     GE's Cases Are Inapt...............................................................................23

       B.     GE Fails to Establish Probable Cause to Believe Any
              Communications Were in Furtherance of the Alleged Fraud ..............................24

       C.     GE's Motion Is Untimely....................................................................................25

V.     CONCLUSION............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1100 West, LLC v. Red Spot Paint & Varnish Co.*,
   No. 1:05-cv-1670, 2009 WL 232060 (S.D. Ind. 2009)......................................................23, 24

*Ekeh v. Hartford Fire Ins. Co.*,
   39 F. Supp. 2d 1216 (N.D. Cal. 1999) ...................................................................................15

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
   731 F.2d 1032 (2d Cir. 1984)................................................................................................14

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990)...................................................................................................................8

*Johnson v. Nyack Hosp.*,
   86 F.3d 8 (2d Cir. 1996).......................................................................................................8, 20

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014).....................................................................................8, 10

*Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*,
   386 F. Supp. 3d 319 (S.D.N.Y. 2019)...................................................................................15

*Michael Grecco Productions Inc. v. Alamy Inc.*,
   No. 18-CV-3260, 2020 WL 5848613 (E.D.N.Y. 2020) .........................................................23

## I.      INTRODUCTION

GE's "me too" motion to pierce privilege is not comparable to Spectrum's earlier-filed motion for the same relief. Spectrum based its motion on hard documentary and testimonial evidence that GE **knowingly** misrepresented material facts to the Patent Office, including evidence that surfaced only two months ago—and only after the Court ordered GE to produce **hundreds** of documents it had improperly withheld or redacted based on facially untenable privilege claims. GE, by contrast, merely speculates that Spectrum somehow knows the Court will ultimately accept GE's statute-of-limitations defense, reject Spectrum's equitable-tolling argument, and hold Spectrum's tort claims time-barred. Neither Spectrum nor GE knows how the Court will ultimately resolve those fact-bound issues. In short, as with all litigation disputes, the parties merely disagree on who will prevail on the merits. Accordingly, Spectrum's equitable-tolling counter to GE's statute of limitations defense is not "false," much less knowingly false, and there is no probable cause to believe Spectrum committed fraud on the Court.

## II.     BACKGROUND

### A.      Spectrum Discloses Its New Camera Design to GE

In January 2012, Spectrum and GE met face-to-face for three consecutive days to discuss a potential business deal. *See* ECF No. 665. On the second day, Spectrum gave a presentation describing its "Confidential" "Next Generation General Purpose Camera" (GPC), which comprised 12 radially extending detector arms mounted to a ring-shaped gantry, each detector arm having a swiveling detector head. ECF No. 664-1 at 36, 41. Spectrum considered, and still considers, its GPC design to embody multiple trade secrets, as detailed in the Table of Spectrum Trade Secrets. *See generally* ECF No. 650-1. Spectrum also considered, and still considers, the design as a whole to be a trade secret. *See id.* at 1 n.1.



ECF No. 664-1 at 42.

### B.  Spectrum Learns About GE's Patent Applications

In September 2013, several months after the deal between Spectrum and GE fell through, GE filed the '573 and '574 patent applications. In early 2015, a vendor sent those and other GE patent applications to Spectrum's Chief Technology Officer, Yoel Zilberstien. GE Exs. 1, 5.[1] Contrary to GE's assertion (at 3), the vendor did not "expressly advise[] Mr. Zilberstien that GEHC may have misappropriated Spectrum's alleged trade secrets," of which the vendor had no knowledge. Rather, he stated that GE's applications "might infringe upon your IP." GE Ex. 1.

Because the vendor did not know Spectrum's trade secrets, he was likely referring to Spectrum's patents, such as U.S. Patent Nos. 8,338,788 and 8,492,725, which disclosed limited aspects of Spectrum's novel camera design. For example, the '725 patent disclosed "[a] system of performing a volumetric scan" comprising a patient surface, "a plurality of extendable detector arms[,] each . . . having a detection unit . . . and an actuator which moves the detection unit along a linear path, and a gantry which supports the plurality of extendable detector arms around the surface so that each . . . extendable detector arm [is] directed toward the space" above the patient surface. Ex. A, Abstract. Figure 1 of the '725 patent illustrates an embodiment of this system:

---

[1] "GE Ex." refers to the exhibits attached to the Declaration of Marla Butler, ECF No. 702.



*Id.*, Fig. 1.

GE's patent applications were news to Mr. Zilberstien because, as stated in the First Amended Complaint, Spectrum "did not follow competitors' patent filings." ECF No. 37 ("FAC"), ¶ 101. GE claims otherwise, arguing (at 11) that Nathaniel Roth admitted "it was Spectrum's practice that 'patents generally were sent to [him] to review.'" But Mr. Roth did not testify about any such general "practice." He instead testified that when, on occasion, Spectrum learned of specific patents, they "generally were sent to [Mr. Roth, as opposed to other Spectrum individuals,] to review mainly the technical aspect[s] and content." GE Ex. 6 at 43:15-45:3.

**C.    GE's Conduct and Representations Prevent Spectrum from Discovering the Misappropriation**

Shortly after receiving the GE patent applications, Mr. Zilberstien circulated them to other Spectrum principals and to outside counsel. His concern was that GE, in preparing the patent applications, might have used the confidential information Spectrum shared during the due diligence, a breach of the parties' non-disclosure agreement. *See, e.g.*, GE Ex. 4. Others shared that concern; Mr. Roth testified that "when we reviewed [the '573 application], we were questioning if it was the GPC. We were reviewing and we were wondering if it is the same. It was definitely a concern." GE Ex. 7 at 100:4-14.

Spectrum's review of the GE patent applications was, however, "non-conclusive." *Id.* at 100:25-101:1. Hindsight is 20/20, and it is now abundantly clear that those patent applications used some of Spectrum's trade secrets. At that time, however, it was not clear to Spectrum. Nor was it clear that GE was developing a copy-cat device using the combination of ***all*** of Spectrum's trade secrets.

One reason Spectrum could not, back in 2015, reach the conclusion that GE had already begun its pattern of misappropriation is that GE muddied the water by filling its patent applications with designs that differed from Spectrum's trade-secret design. For example, GE dedicated most of the '573 application to describing a *different* GPC design, wherein 18 detector arms are "aligned in a row transverse to the examination axis":



GE Ex. 5 at SDML_01014388-89 (color added). This 18-arm linear design is *distinct* from Spectrum's 12-arm radial design. Although the latter design does appear in the '573 application, GE snuck it in near the end. Indeed, only ***two*** of the application's ***80*** paragraphs relate to Spectrum's 12-arm radial design. *See id.* at SDML_01014409 (¶¶ [0070]-[0071]). Likewise, Figures 1-17 depict the linear design, and only Figures 18-20 depict Spectrum's 12-arm radial design. *See id.* at SDML_01014389-401. Accordingly, Spectrum found GE's convoluted disclosures "very confusing," GE Ex. 7 at 101:25-102:13, and despite Mr. Zilberstien's reasonable questioning of GE's motives, Spectrum could not foresee that this was the start of GE's systemic misappropriation.

Another confounding factor was that GE filed the applications *after* Spectrum disclosed certain limited aspects of its camera design to others. For example, Spectrum's '725 patent—which issued in July 2013, two months before GE filed the '573 and '574 applications—publicly disclosed the radial configuration:



Ex. A, Fig. 2C. Furthermore, in May 2013, four months before GE filed its applications, Spectrum disclosed its 12-arm radial design to the World Intellectual Property Organization (WIPO):



ECF Nos. 372-21 through -23 ("the '721 PCT"), Fig. 6A. Because GE waited until after those disclosures to file the '573 and '574 applications, Spectrum was unsure whether GE had innocently relied on those disclosures or had improperly misappropriated Spectrum's confidential information.

Yet another reason for uncertainty was that GE had expressly assured Spectrum it would not disclose Spectrum's proprietary information to third parties. Shortly after the deal fell through,

GE sent a letter requesting that Spectrum "take[] appropriate measures to ensure that no GE proprietary information is exchanged with any third parties in accordance with the [2009 NDA]." Ex. B at 2. The letter further stated: "***Of course, GE will undertake similar measures as well***." *Id.* (emphasis added). Spectrum relied on that statement. *See* FAC, ¶ 102; ECF No. 630 ("SAC"), ¶ 102.

Finally, Spectrum had reason to believe that GE was heading in a different direction. After the deal fell through, GE's General Manager of Nuclear Imaging, Nathan Hermony, who had a leading role in the due diligence, expressly told Mr. Zilberstien that because GE "cannot use [Spectrum's] IP," it had to revert to "the traditional way" of whole-body imaging—i.e., using "flat, big panels." Ex. C at 89:18-90:6. At the time, Messrs. Hermony and Zilberstien had been close friends for years, and Mr. Zilberstien trusted his friend not to steal his inventions or lie to him. GE seemingly confirmed Mr. Hermony's representations when, in 2016, it introduced the NM/CT 670 CZT, a whole-body scanner that ***did not resemble Spectrum's GPC design***, but rather used conventional large flat plates:[2]



This feint, along with Mr. Hermony's representations, further led Spectrum to believe that GE had not violated the NDA in preparing the '573 or '574 applications and was, indeed, moving in a

---

[2] https://www.mpo-mag.com/contents/view_breaking-news/2016-06-13/going-beyond-analog-ge-healthcare-launches-digital-next-gen-molecular-imaging-systems/ (last visited July 21, 2023).

different direction. Thus, "[u]nder the circumstances[,] Spectrum could not reasonably conclude" that GE had done otherwise. FAC, ¶ 104; SAC, ¶ 104.

### D.     Spectrum Discovers the Misappropriation at Rambam Medical Center

On or about June 13, 2018, a Spectrum employee stumbled upon a new GE medical imaging device. FAC, ¶ 101; SAC, ¶ 101. The sighting was during a patient visit at the Rambam Medical Center in Haifa, Israel. *Id.* The device was a beta version of the GE StarGuide, *id.*, which closely resembled the design Spectrum disclosed to GE during the due diligence:



*Id.*, ¶ 130.

As stated in the FAC and the operative complaint, this was the first time that Spectrum "learned of the actual existence of the [StarGuide] and GE's violation of the non-disclosure and non-use provisions of the 2009 Agreement." *Id.*, ¶ 136; SAC, ¶ 136.

### E.     Spectrum Performs Its Pre-Suit Diligence

After learning of GE's misappropriation, Spectrum engaged trial counsel to assess its potential claims against GE. By that time, more than three years had elapsed since GE's '573 and '574 applications were published. Spectrum and its trial counsel knew this fact and analyzed whether it time-barred any of Spectrum's claims. Spectrum determined that it had a reasonable

basis to conclude that the answer is no: equitable tolling.[3] Specifically, it determined that even if the Court were to find Spectrum had adequate notice of GE's misconduct more than three years before suing, the doctrine of equitable tolling would be sufficient to rebut any statute-of-limitations defenses GE might raise. Thus, contrary to GE's assertion (at 11), Spectrum did not know—and still does not know—that its trade secret claims were supposedly time-barred. Quite the opposite, under the doctrine of equitable tolling, Spectrum believed—and still believes—that GE's conduct and representations tolled the limitations period.

During the pre-suit due diligence, there were no communications with counsel regarding Spectrum's awareness of the '573 and '574 applications in 2015.

### F.    Spectrum Truthfully Alleges Facts Supporting Equitable Tolling in Its First Amended Complaint

After GE moved to dismiss Spectrum's tort claims based on the statute of limitations, Spectrum laid out the factual basis for its equitable-tolling argument in the FAC. First, despite awareness of certain GE patents before 2018, "Spectrum reasonably relied upon GE's representations that GE had abided and continued to abide by the non-disclosure and non-use provisions of the 2009 Agreement." FAC, ¶ 102. Second, GE launched "the NM/CT 670 CZT in 2016, which was based on an 'old platform design,' . . . and not based upon Spectrum Information." *Id.*, ¶ 105. Third, GE applied for the identified patents after the WIPO had published Spectrum's '721 PCT application, and the parties' NDA "did not prohibit GE from independently

---

[3] "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). Equitable tolling applies where, for example, a plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Such inducement includes "fraud, misrepresentations or deception." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)).

developing technology in parallel based upon . . . materials and information already in the public domain." *Id.*, ¶¶ 108-110. And fourth, the identified patents, like the '573 and '574 applications, "disclose a variety of features and embodiments which are generally described." *Id.*, ¶¶ 114-118. GE does not dispute these allegations anywhere in its motion.

Based on those undisputed allegations, Spectrum stated its legal position that, under equitable tolling, it "could not reasonably conclude that GE had violated either of the non-disclosure or non-use provisions of the 2009 Agreement," *id.*, ¶ 104, and therefore "did not learn of any instance of GE's actual misappropriation and use of any of the several Spectrum Trade Secrets until on or about June 13, 2018[,] when Spectrum personnel accidently observed a beta version of the GE Imitation Device during a patient visit at the Rambam Medical Center located in Haifa, Israel," *id.*, ¶ 101.

In preparing the FAC, there were no communications with counsel regarding Spectrum's awareness of the '573 and '574 applications in 2015.

### G.    The Court Denies GE's Renewed Motion to Dismiss

On June 2, 2020, the Court denied GE's second motion to dismiss Spectrum's trade-secret claims as time barred. The Court reasoned that "although Defendants have raised the issue as to whether their patent filings in late 201[3] were sufficient to alert Plaintiff to certain causes of action, thus rendering these claims time-barred, Plaintiff has identified certain allegations that could support equitable tolling . . . ." ECF No. 73 at 30.

### H.    Following GE's Example, Spectrum Redacts Certain Filenames from Its Privilege Log in Good Faith

Spectrum served its first privilege log on March 5, 2021. That log did not include filenames. The reason Spectrum did not include filenames was simply that there is no rule that expressly requires them. *See* ECF No. 215 at 4 ("GE has not pointed to anywhere in the SDNY Local Rules

9

or an SDNY case requiring file names."); ECF No. 221 at 5:20-6:5 ("Defendant's privilege log includes [filenames], Spectrum's does not because we did not understand the local rules to require that."). Contrary to GE's speculation, Spectrum did not intentionally omit filenames as part of a "cover up."

GE moved to compel the disclosure of filenames, arguing that "it's important to get the file names." ECF No. 221 at 8:11-15. During the hearing on that motion, however, GE was quick to qualify its request, stating that "if there is privileged material actually in the file name, then [Spectrum] wouldn't have to . . . provide that." *Id.* at 10:18-22.

GE had good reason for making that clarification: it had redacted certain filenames from each of its own privilege logs. GE continued this practice throughout discovery. At one point, GE's privilege logs contained 383 filename redactions. When Spectrum raised this issue with the Court, GE's counsel represented that each of its redacted filenames "is itself the communication asking for the legal advice," such as, "Can I patent a table with four legs[?]" 2022-11-10 Hr'g Tr. at 14:6-16. That representation cannot be squared with the record.[4]

After Spectrum confronted GE about that inconsistency, GE reviewed the 383 redactions on its privilege log, removed 96 of them entirely and pared back 158. Among the things that GE unredacted from its privilege log were patent numbers and patent application numbers. Ex. E at,

---

[4] Specifically, for 32 of the redacted filenames, GE inadvertently revealed the filenames by producing the metadata for the underlying documents. None of those 32 filenames was "itself the communication asking for the legal advice." *Contra id.* One of them was "FW: Spotlight project missing EHS documents in data room.msg." Ex. D at 2. Another one was "RE: Project Spotlight: SD/Redlen/CIIRDF contract question.msg." *Id.* When Spectrum notified GE of this issue, GE **admitted** that the identified filenames were not privileged. That was more than five months ago, yet GE's counsel still has not retracted their false assertions to the Court or otherwise sought to correct the record. GE's counsel subsequently admitted to this Court that, despite their bold statement regarding their allegedly privileged documents, they had only "laid eyes on some, but not all" of these documents. ECF No. 646 at 18:11-14.

*e.g.*, PRIVLOG000542, PRIVLOG000543, PRIVLOG000547, PRIVLOG000563. That GE had redacted such information in the first place is troubling in light of its position that "there is no proper basis for claiming that a file name comprising a publicly-available patent number or application number discloses the substance of an assertedly privileged communication." ECF No. 529 at 2. The Court agreed and held in a November 2022 Order that "if a file name contains only a patent number, this is not privileged and must not be redacted." ECF No. 592 at 2. But GE ***still*** did not unredact any patent numbers or application numbers from its privilege log until April 2023, and it would not have done so if Spectrum had not discovered the impropriety of GE's redactions and insisted that GE review them. Perhaps GE's redactions of these patent and application numbers were due simply to a lack in communication among GE's legal team, or perhaps they were merely the result of human error. Either way, Spectrum requested only that GE correct the improper redactions; it did not waste this Court's time in arguing that the improper redactions are indicative of some sort of cover up conspiracy.

Turning back to Spectrum's privilege log, in April 2021, Spectrum added filenames to its log but redacted some of them, just as GE had previously done.[5] The redacted filenames included patent numbers and application numbers, just as GE's did. Spectrum did not redact any filenames as part of a "cover up," as GE speculates. Spectrum has already addressed this issue, "categorically reject[ing] the accusation that it or its counsel have endeavored to conceal purportedly bad facts in the guise of attorney-client privilege." ECF No. 534 at 5. Spectrum explained that it redacted the filenames it reasonably believed reveal the "focus of the legal work performed." *Id.* at 3 (quoting *AIU Ins. Co. v. TIG Inc. Co.*, No. 07-civ-7052-SHS-HBP, 2009 WL 1953039, at *5 (S.D.N.Y.

---

[5] To be clear, Spectrum followed GE's example well before discovering that GE's redactions were improper. Spectrum made the redactions in April 2021 and discovered GE's improper redactions in February 2023.

2009)). Spectrum also dispelled the notion that it had any ulterior motive. It explained that "the dates on which Mr. Zilberstien learned about the underlying GE patent applications [were] no secret," but rather were available to GE "based on documents that Spectrum produced." *Id.* And Spectrum produced those documents in February 2021, two months *before* it redacted any filenames from its privilege log. Indeed, if Spectrum had any designs for a cover up, it would have withheld those documents as privileged and redacted their filenames from the privilege log. Because Spectrum's 2015 awareness of the '573 and '574 applications was a known fact at the time of the alleged cover up, there was no such cover up.

In July 2022, GE alerted Spectrum's prior counsel, Greenblum & Bernstein, to an apparent inconsistency in its approach to filename redactions. Ex. F at 1. GE stated that the April 2021 redactions were "puzzling because, among approximately 3,000 documents that Spectrum has logged, they are the only redactions that Spectrum made in this case even though Spectrum's later privilege logs include many entries for which the *unredacted* filenames consist partially or entirely of patent numbers." *Id.* After Spectrum's current counsel, Fish & Richardson, took over representation on July 29, 2022, Spectrum looked into the issue, agreed that there were inconsistencies in the logs, and determined that the logs contained many arguably privileged filenames that had been inadvertently disclosed. ECF No. 534 at 2. Spectrum accordingly served a replacement log that included additional redactions intended to ***harmonize***, not cover up. *See id.* Indeed, because Spectrum had not included those redactions in its earlier privilege logs, any belated attempt at a "cover up" would have been futile.

Although the Court ultimately ordered Spectrum to remove some of its redactions, it did not acknowledge GE's accusations of a cover up. *See* ECF No. 592. Nor did the Court find "many

of these redactions improper," as GE incorrectly alleges (at 16). In fact, the Court did not analyze

any particular redactions; it instead articulated the standard and instructed Spectrum to apply it:

> Spectrum is permitted to redact file names in its privilege logs to the extent the file names reveal the focus of the *legal work* within the document. However, to the extent file names merely reveal the general subject matter of a communication, those file names are not privileged. *See J.P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y.1974) (explaining that the attorney client privilege "does not preclude inquiry into the subject matter of the communications."). For example, if a file name contains only a patent number, this is not privileged and must not be redacted.

*Id.* at 2. GE has not alleged that Spectrum somehow failed to comply with the Court's order.

## I.   Spectrum Truthfully Alleges Facts Supporting Equitable Tolling in Its Second Amended Complaint

In opposing Spectrum's motion for leave to amend, GE argued that the proposed

amendments "do not go far enough" because they did not remove the allegations that GE claims

are false. ECF No. 620 at 9. The Court correctly rejected that argument, reasoning that GE did not

"provide a legal argument that Spectrum's failure to remove these claims from the amended

pleading should prevent the Court from granting Spectrum leave to amend." *Id.* Still, without

"evaluat[ing] the accuracy of Spectrum's claims as to the statutes of limitations and equitable

tolling," the Court cautioned that "Spectrum could face Rule 11 sanctions if it reaffirms claims or

advocates positions after those claims or positions were shown to be inaccurate." *Id.* (cleaned up).

Spectrum heeded the Court's warning, and although it did not need to revise its allegations

relating to equitable tolling (because they were true), it did so out of an abundance of caution and

to appease GE. First, Spectrum rephrased ¶ 101 to state that its 2018 sighting of GE's StarGuide

at Rambam Medical Center was the first time Spectrum "could reasonably conclude that GE had

misappropriated the Spectrum Trade Secrets." *Compare* FAC, ¶ 101 *with* ECF No. 630 ("SAC"),

¶ 101. Second, it revised ¶ 102 to (a) clarify that the '791 and '072 patents were not the only GE

patents of which Spectrum was aware before 2018 and (b) reiterate that "Spectrum could not

reasonably conclude from those patents that GE had breached the non-disclosure and non-use provisions of the 2009 Agreement." *Compare* FAC, ¶ 102 *with* SAC, ¶ 102. Finally, in ¶ 103, Spectrum replaced the word "specifically" with "for example"—again to clarify that the '791 and '072 patents were not the only GE patents of which Spectrum was aware before 2018. *Compare* FAC, ¶ 103 *with* SAC, ¶ 103.

GE was not satisfied. It responded with a new set of complaints. *See* GE Ex. 14 at 2-3. When Spectrum addressed those complaints in March 2023, *see* GE Ex. 15 at 1-2, GE went silent. That is, until Spectrum filed its motion to pierce privilege based on the crime-fraud exception. On May 30th, the same day that Spectrum filed its opening brief in support of that motion, GE emailed Spectrum and accused it of fraud on the Court. This motion followed.

## III.   LEGAL STANDARD

Under the crime-fraud exception, "communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) ("*Marc Rich*") (citations omitted). A party seeking to pierce privilege under the crime-fraud exception must establish "probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof." *Id.* at 1039 (citation omitted).

## IV.   ARGUMENT

### A.   GE Fails to Establish Probable Cause to Believe Spectrum Defrauded the Court

Spectrum did not commit fraud on the Court. GE fails to show that any of the allegations in Spectrum's FAC or SAC were false. GE also fails to show any intent to deceive. Finally, GE

fails to show that the Court relied on any of the supposedly false allegations. The Court should deny GE's motion for any one of these independent reasons.

### 1.      Spectrum's Allegations Supporting Equitable Tolling Are True

Divorced of all context, GE plucks a handful of statements out of the FAC and SAC and claims they are false or misleading. GE is incorrect. Most of those statements merely provide Spectrum's ***legal argument*** under equitable tolling, based on factual allegations that GE ***does not dispute***. Until the Court rules on that legal argument, Spectrum will continue to assert it in good faith. GE may believe Spectrum's equitable-tolling argument will ultimately fail, but that does not make it false. As for the other statements that GE challenges, GE does not dispute the stated facts; rather, it strains to draw unreasonable inferences from those statements and then attacks those inferences. The Court should reject GE's argument that Spectrum misrepresented the facts in its FAC or SAC.

GE speculates (at 11) that because Spectrum learned of the '573 and '574 applications in 2015 and was advised—vaguely, by a third party with no knowledge of Spectrum's trade secrets— that they might infringe "your IP," GE Ex. 1, Spectrum somehow lied in drawing the ***legal conclusion*** that it "did not have reason to suspect, and did not learn of any instance of GE's actual misappropriation and use of any of the several unique Spectrum Trade Secrets until on or about June 13, 2018," FAC, ¶ 101.[6] But a legal conclusion "***cannot form the basis for invoking the crime-fraud exception***." *Ekeh v. Hartford Fire Ins. Co.*, 39 F. Supp. 2d 1216, 1219 (N.D. Cal. 1999) (emphasis added); *see also Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 348 (S.D.N.Y. 2019) ("Under New York law, a fraud claim requires . . . misrepresentation of a material ***fact*** . . . ." (emphasis added)). Because "the 'factual misstatements' that [GE]

---

[6] GE makes the same claim (at 13) as to FAC ¶¶ 217, 234, and 303.

attributes to [Spectrum] were really legal conclusions," the Court should reject GE's argument.

In any event, Spectrum's legal conclusion regarding equitable tolling is supported by the factual allegations it precedes, ***none of which GE disputes***. Those allegations establish that despite knowing about the existence of certain GE patents, Spectrum could not reasonably conclude GE had misappropriated its invention because, e.g., (1) "Spectrum reasonably relied upon GE's representations that GE had abided and continued to abide by" the parties' NDA, *id.*, ¶ 102; (2) GE soon after launched the NM/CT 670 CZT, "which was based on an 'old platform design,' . . . and not based upon Spectrum Information," *id.*, ¶ 105; (3) GE applied for the patents after Spectrum had put some limited aspects of its inventions in the public domain, *id.*, ¶¶ 108-110; and (4) the patents "disclose a variety of features and embodiments which are generally described," *id.*, ¶¶ 114-118. These ***undisputed*** allegations provide a good-faith basis for arguing that Spectrum "did not have reason to suspect, and did not learn of any instance of GE's ***actual*** misappropriation and use of any of the several unique Spectrum Trade Secrets" until 2018. *Id.*, ¶ 101 (emphasis added). GE is therefore incorrect that this argument is false.

With the benefit of hindsight, GE further speculates that Spectrum ***could*** have concluded, just by looking at Figure 22 of the '573 application, that GE misappropriated its invention. That figure, however, supports the exact ***opposite conclusion***. Unlike Spectrum's GPC design, which has 12 arms evenly spaced around the bore, the design in Figure 22 has only seven arms "provided along only a portion of the circumference of the bore." GE Ex. 5 at SDML_01014409 (¶ [0071]). GE's inclusion of Figure 22 therefore obfuscated the misappropriation, rather than spotlighting it. Furthermore, as shown below, that figure closely resembles a figure in Spectrum's preexisting '725 patent, leading Spectrum to reasonably believe that GE had relied not on confidential information, but on public information. Accordingly, Figure 22 does not undermine Spectrum's

16

equitable-tolling argument in FAC ¶ 101; it ***supports*** it.



GE's '573 application, Fig. 22          Spectrum's '725 patent (Ex. A), Fig. 1

GE's remaining quibble with FAC ¶ 101 is also incorrect. There is nothing false or misleading about Spectrum's allegation that it "did not follow competitor's [*sic*] patent filings." FAC, ¶ 101. Mr. Zilberstien testified that Spectrum is "a small start-up company" and had "no one . . . monitoring IP" at the time. Ex. C at 321:20-322:13. GE does not genuinely dispute this allegation. Rather, GE disputes its own misinterpretation of the allegation, arguing (at 11) that FAC ¶ 101 is "misleading ***insofar as it suggests*** that Spectrum did nothing to review competitors' patents" (emphasis added). But FAC ¶ 101 does not suggest what GE says it does; it truthfully states that Spectrum did not proactively "follow" competitors' patent filings, not that it "did ***nothing*** to review" (emphasis added) such filings even when they landed in Spectrum's lap.

Similarly, GE takes aim at ¶¶ 102-103 of the FAC and SAC, not by disputing the facts they allege, but rather by attacking what GE says they "imply." These paragraphs correctly state that Spectrum "became aware of GE's '791 patent . . . and '072 patent . . . earlier [than 2018], but Spectrum reasonably relied upon GE's representations that GE had abided and continued to abide

17

by . . . the 2009 Agreement." FAC, ¶ 102-103. GE does not dispute when Spectrum became aware of those patents, nor does it dispute Spectrum's reliance on GE's misrepresentations. GE instead argues (at 12, 17) that these allegations are misleading because they supposedly "***imply***" that the '791 and '072 patents were the ***only*** or ***first*** GE patents of which Spectrum was aware. Because no such implication exists, there is nothing false or misleading in FAC/SAC ¶¶ 102-103.

GE's gripes as to FAC ¶¶ 100 and 104 fare no better. According to GE (at 13), the '573 and '574 applications made it obvious that GE "was not adhering to the 2009 NDA," and Spectrum's lawyers should have spotted the issue in 2015. In hindsight, it is indeed easy to see GE's misappropriation. At the time, however, things were not so clear. As explained in § II.C, Spectrum's review of the '573 and '574 applications was "non-conclusive," GE Ex. 7 at 100:25-101:1, because GE (1) gussied up the applications with designs different from Spectrum's, such as the 18-arm linear design, *see, e.g.*, GE Ex. 5 at SDML_01014388-89; (2) buried Spectrum's design near the very end of the applications, *see, e.g.*, *id.* at SDML_01014409 (¶¶ [0070]-[0071]); (3) filed the applications *after* Spectrum disclosed certain limited aspects of its design to others, *see, e.g.*, Ex. A, Fig. 2C; '721 PCT, Fig. 6A;[7] (4) assured Spectrum it would not disclose Spectrum's proprietary information to third parties, Ex. B at 2; (5) exploited Mr. Zilberstien's trust in his longtime friend, GE's Mr. Hermony, by having the latter misrepresent that GE was going to fall back on "the traditional way" of whole-body imaging, rather than use Spectrum's design, *see* Ex. C at 89:18-90:6; and (6) introduced the NM/CT 670 CZT, a whole-body scanner that used conventional large flat plates, *see* n.2, *supra*. Thus, FAC ¶¶ 100 and 104 accurately allege that Spectrum "had every reason to believe that GE would abide by the" 2009 NDA and that, "[u]nder

---

[7] Although the WIPO did not publish the '721 PCT application until after GE filed the '573 and '574 applications, Spectrum disclosed the '721 PCT application to the WIPO four months before GE's filings.

the circumstances[,] Spectrum could not reasonably conclude that GE had violated" that agreement. And, as a startup with limited resources (unlike GE), Spectrum was understandably hesitant to pursue legal action without first reaching a reasonable conclusion as to GE's now-obvious pattern of misconduct and wrongdoing.

Finally, GE argues (at 13) that Spectrum's allegations in FAC ¶¶ 108 and 113 are somehow misleading because they rely on the '721 PCT application even though its publication post-dated GE's filing of the '573 application. This argument simply makes no sense because FAC ¶¶ 108 and 113 are about the ***'791 and '072 patents***, not the '573 application. Specifically, those paragraphs explain one of the many reasons why Spectrum could not reasonably conclude that the '791 and '072 patents were the product of misappropriation: GE filed them after the publication of the '721 PCT application. They say nothing about the '573 application. If anything is misleading, it is GE's attempt to conflate the '791 and '072 patents with the '573 application, not Spectrum's FAC.

GE fails to show that any allegations in either the FAC or SAC are false or misleading. The inquiry should end there. Absent any misrepresentation of fact, there is no probable cause to believe that Spectrum committed fraud on the Court. The Court should deny GE's motion for this reason alone.

### 2. GE Cannot Prove Intent to Deceive

GE stakes its argument as to deceptive intent on two shaky legs. First, GE speculates that Spectrum somehow knows its tort claims are time barred because the Court will ultimately reject its equitable-tolling rebuttal to GE's statute-of-limitations defenses. Second, GE alleges that when Spectrum redacted certain filenames from its privilege log, just as GE had done, it somehow signaled that the allegations in the FAC filed two years prior were intended to deceive the Court. Neither of those legs holds any weight.

Regarding the first point, neither Spectrum nor GE can know how the Court will ultimately resolve the statute-of-limitations issue. Although GE may *believe* it will prevail, believing is not knowing. Spectrum also firmly believes it will prevail and has invested tremendous resources in this litigation for that reason. Specifically, despite the passage of time between the now-apparent start of GE's systematic misappropriation and Spectrum's initial complaint, Spectrum's claims are not necessarily time barred. This is because "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson*, 86 F.3d at 12. As explained above, Spectrum has a good-faith basis for arguing that equitable tolling applies here. GE does not even attempt to address the merits of that argument in its motion; it just repeatedly asserts, without analysis, that the argument is somehow "false," and Spectrum knew it to be false. Until the Court rules on GE's statute-of-limitations defenses and Spectrum's equitable-tolling responses to those defenses, Spectrum cannot possibly "know" its claims are time barred, regardless of how loudly and how many times GE claims otherwise.

Turning to Spectrum's privilege log, GE cries "cover up" even though Spectrum had willingly produced, before it even served a privilege log, documents showing Spectrum's awareness of the '573 and '574 applications in early 2015. As GE admits, Spectrum produced those documents in February 2021, *more than two years ago*. ECF No. 679 at 2. GE neglects to mention this fact anywhere in its motion. And GE has good reason to omit that fact: *it negates any inference of deceptive intent*. Because any attempt to cover up Spectrum's awareness of the application in 2015 would have been futile, Spectrum had no motive to engage in such conduct.

GE faults Spectrum for not including filenames in its initial privilege log, but as Spectrum already explained two years ago, its only reason for not including filenames was that there is no rule that expressly requires them. *See* ECF No. 215 at 4 ("GE has not pointed to anywhere in the

SDNY Local Rules or an SDNY case requiring file names."); ECF No. 221 at 5:20-6:5 ("Defendant's privilege log includes [filenames], Spectrum's does not because we did not understand the local rules to require that."). Although the Court ultimately ordered Spectrum to add filenames, that does not change Spectrum's motive from innocent to deceptive. Thus, contrary to GE's speculation, Spectrum did not intentionally omit filenames as part of a "cover up"; it left them out simply because they are not ordinarily required.

GE further speculates that when Spectrum redacted certain filenames from its privilege log—*just as GE had done*—it did so to conceal facts that were already available to GE. This is the *third time* that GE has raised its unfounded conspiracy theory about Spectrum's redactions to this Court. ECF No. 529 at 6-8; ECF No. 566 at 6. Spectrum has addressed this issue repeatedly. In addition to pointing out that non-privileged documents separately disclosed "the dates on which Mr. Zilberstien learned about the underlying GE patent applications," ECF No. 534 at 5, Spectrum explained that it redacted the filenames it reasonably believed reveal the "focus of the legal work performed," *id.* at 3 (quoting *AIU Ins. Co. v. TIG Inc. Co.*, No. 07-civ-7052-SHS-HBP, 2009 WL 1953039, at *5 (S.D.N.Y. 2009)). And although the Court ultimately ordered Spectrum to remove some of its redactions, it did not even deign to acknowledge GE's breathless accusations of a cover up. *See* ECF No. 592. The bottom line is that Spectrum has never shied away from acknowledging its awareness of the '573 and '574 applications. *See* ECF No. 534 at 5. Spectrum's filename redactions were nothing more than a good-faith assertion of privilege.

That Spectrum accidentally did not redact similar filenames from subsequent privilege logs is not to the contrary. As soon as GE's counsel alerted Fish & Richardson to that apparent inconsistency, *see* Ex. F at 1, Spectrum investigated the issue and determined that the logs contained many arguably privileged filenames that had been inadvertently disclosed, ECF No. 534

at 2. Spectrum's actions after learning of that inadvertent disclosure were perfectly in line with the parties' stipulated protective order: "Spectrum clawed back its privilege logs and served replacement logs with the protected information redacted." *Id.* (internal quotation marks omitted).[8] The purpose of those additional redactions was to reconcile the inconsistency to which GE alerted Spectrum, not to conceal facts that GE already knew. Again, although the Court ultimately ordered Spectrum to remove some of the additional redactions, it did not waste any words on GE's tinfoil-hat accusations of a cover up. *See* ECF No. 592.

GE can hardly point the finger at Spectrum given its own unclean hands. As explained above in § II.H, GE misrepresented to the Court that each filename it redacted from its own privilege log "is itself the communication asking for the legal advice," such as, "Can I patent a table with four legs[?]" 2022-11-10 Hr'g Tr. at 14:6-16. Among the many improper redactions in GE's privilege log that subsequently came to light were patent numbers and application numbers, Ex. E at, *e.g.*, PRIVLOG000542, PRIVLOG000543, PRIVLOG000547, PRIVLOG000563, which GE hypocritically did not remove until April 2023 despite convincing the Court to order Spectrum to do so in November 2022, ECF No. 592 at 2. GE's lack of candor to the Court stands in stark contrast to Spectrum's above-board conduct.

In sum, GE fails to present any evidence of intent to deceive. Absent such evidence, there is no probable cause to believe that Spectrum committed fraud on the Court.

### 3.   The Court Did Not Explicitly Rely on the Allegedly False Allegations

Yet another reason the Court should deny GE's motion is the lack of clear evidence that the Court even relied on any of the statements in the FAC that GE claims are false or misleading.

---

[8] The stipulated protective order provides that "[i]f any Disclosure or Discovery Material is inadvertently produced by any Producing Party and is subject to a claim of privilege or of protection from production . . . , the Producing Party making the claim may notify the Receiving Party of such claim in writing." ECF No. 156, ¶ 20b.

When the Court denied GE's second motion to dismiss based on the statute of limitations, it reasoned that "Plaintiff has identified certain allegations that could support equitable tolling . . . ." ECF No. 73 at 30. The Court did not identify with specificity the allegations on which it relied. *See id.* In its opposition to GE's motion to dismiss, Spectrum cited numerous paragraphs from the FAC—namely, ¶¶ 47, 48, 56, 92, 93, 99-167, 180, and 191. ECF No. 66 at 47-54. GE takes issue with only a small subset of the allegations in those many paragraphs. *See* § IV.A.1, *supra.* Accordingly, contrary to GE's assertion (at 13-14), it is unclear at best whether the Court relied on the handful of out-of-context statements that GE challenges, or on the allegations that GE does not dispute. The Court should deny GE's motion for this additional independent reason.

### 4.    GE's Cases Are Inapt

*Michael Grecco* bears no resemblance to this case. There, the defendant moved to dismiss the plaintiff's copyright claims based on the terms of a licensing agreement, but it knowingly produced the wrong version of the licensing agreement, a version that the defendant and its counsel had created after the fact to "align with its principal defense"—all "so that they could refer the court to that inapposite agreement in seeking to dismiss." *Michael Grecco Productions Inc. v. Alamy Inc.*, No. 18-CV-3260, 2020 WL 5848613, at *1-2 (E.D.N.Y. 2020). Here, by contrast, Spectrum willingly produced the documents showing its awareness of the '573 and '574 applications in 2015, ECF No. 679 at 2, openly acknowledged such awareness to the Court, ECF No. 534 at 3, and has never attempted to doctor the record.

Nor is *1100 West* on point. There, the defendant "deliberately withheld" **70,000** non-privileged documents that contradicted its "repeated factual assertions" to the court that certain carcinogenic chemicals had "never [been] found on its property in any quantity." *1100 West, LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670, 2009 WL 232060, at *2, *4, *6 (S.D. Ind. 2009). Applying Seventh Circuit law, the court found that the defendant "had something to hide

and took steps to hide it." *Id.* at *5. Here, Spectrum has nothing to hide because its awareness of the '573 and '574 applications in 2015 is "***no secret***." ECF No. 534 at 3 (emphasis added). Moreover, there is no evidence that Spectrum has deliberately withheld any non-privileged documents. The defendant in *1100 West* could not say that, and neither can GE. *See* ECF. No. 670 at 14-16.

### B.   GE Fails to Establish Probable Cause to Believe Any Communications Were in Furtherance of the Alleged Fraud

Even further, the Court should deny GE's motion because there is no probable cause to believe there are any communications in furtherance of the alleged fraud. First, ***as GE admits*** (at 24-25), the privilege log entries at SDML_PRIV_00000859-862 and -864-868 merely show there were privileged communications regarding "the statute of limitations with respect to the '573 application." If anything, these entries indicate that Spectrum conducted reasonable pre-suit diligence. They do not suggest that Spectrum somehow knew its tort claims were time barred, much less a scheme to conceal such alleged knowledge. Second, GE points to Spectrum's innocuous acknowledgement that it added truthful allegations to the FAC to lay out and support its (still live) equitable-tolling argument. *See* ECF No. 683 at 1. Nothing in that acknowledgement indicates the existence of communications in furtherance of a fraud. Third, GE cites the putative absence of evidence supporting Spectrum's allegation that it learned of the '791 and '072 patents before 2018, but that putative absence of evidence does not render Spectrum's allegation false, much less ***knowingly*** false and in furtherance of a fraud. Finally, GE directs the Court (at 25) to "Spectrum's communications with its counsel about the redactions on its privilege log." Yet GE knows—because Spectrum told it so, twice—that ***no such communications exist***. GE Ex. 13 at 1 ("[A]s we stated during our June 9th call, no documents exist that are responsive to the fourth and fifth categories in your email ('communications between Spectrum and the Greenblum firm

regarding redactions to the privilege log' and 'notes, instructions, and communications with the Greenblum firm regarding redactions to the privilege log').") Like many of GE's efforts in this litigation, its insistence that any such communications exist despite Spectrum's counsel very clearly stating otherwise amounts to nothing more than harassment of Spectrum and wasting of this Court's resources. The Court should find no probable cause to believe there are communications in furtherance of the alleged fraud.

### C.  GE's Motion Is Untimely

The timing of GE's crime-fraud argument is both suspect and late. Spectrum produced the emails showing its first awareness of the pertinent GE patent applications in ***February 2021***. Since at least July 2022, GE has known that the original redactions on Spectrum's privilege log corresponded to those applications. ECF No. 534 at 1. The additional redactions GE cites were not initially on Spectrum's privilege log—they were added in September 2022—so the filenames were visible to GE well before Spectrum removed the redactions. GE has thus had all the facts underlying its crime-fraud motion for ***at least a year***. Yet GE waited until now, on the heels of Spectrum's crime-fraud motion, ECF No. 670, to raise this issue. GE's argument is untimely and plainly retaliatory.

### V.  CONCLUSION

For the foregoing reasons, the Court should deny GE's motion.

Dated: August 4, 2023                    FISH & RICHARDSON P.C.

*/s/ Esha Bandyopadhyay*

Esha Bandyopadhyay (*Pro Hac Vice*)
Fish & Richardson P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel:  650 839 5070
Fax:  650 839 5071

Email:  bandyopadhyay@fr.com

Michael F. Autuoro (MA 2932)
Fish & Richardson P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel:  212 765 5070
Fax:  212 258 2291
Email:  autuoro@fr.com

Roger A. Denning (*Pro Hac Vice*)
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: 858 678 5070
Fax: 858 678 5099
Email: denning@fr.com

Adam J. Kessel (*Pro Hac Vice*)
Philip K. Chen (*Pro Hac Vice*)
Alexander Pechette (*Pro Hac Vice*)
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Tel: 617 542 5070
Fax: 617 542 8906
Email:   kessel@fr.com;  pchen@fr.com;
pechette@fr.com

*Attorneys for Plaintiff*
*Spectrum Dynamics Medical Limited*