USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>GENERAL ELECTRIC COMPANY et al.,<br><br>Defendants. | **OPINION AND ORDER**<br><br>18-CV-11386 (VSB) (KHP) |

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

Before the Court is Plaintiff Spectrum Dynamics Medical Limited's ("Spectrum") motion to compel production of documents withheld or clawed-back on grounds of privilege based on the crime-fraud exception to the privilege. For the reasons stated below, the motion is denied.

## BACKGROUND

Spectrum is a limited company organized under the laws of the British Virgin Islands. (SAC ¶ 1.) Spectrum developed and sells a medical imaging device called the Veriton, which is a full-body multi-organ scanner. (*Id.* ¶ 37.) The Veriton relies on Single Photon Emission Computed Tomography ("SPECT") technology – a type of nuclear molecular imaging technology – and uses a rotating ring of 12 swiveling Cadmium Zinc Telluride ("CZT") radiation detectors that move close to the patient's body. (*Id.* ¶¶ 75-78.)

Defendants General Electric Company, GE Healthcare, Inc., and GE Medical Systems Israel Ltd. (collectively, "GE"), are market leaders in the realm of medical imaging equipment. (*Id.* ¶ 81.) GE develops and sells a medical imaging device called the StarGuide that directly competes in the market with the Veriton. (*Id.* ¶ 63, *see also* ECF No. 620.) Like the Veriton, the StarGuide relies on SPECT technology and also utilizes a ring of swiveling CZT detectors. (*Id.*)

In broad strokes, Spectrum contends that GE misappropriated its trade secrets and used them to create the StarGuide, and that GE committed fraud on the U.S. Patent and Trademark Office ("PTO") by falsely claiming its personnel invented certain aspects of the StarGuide as reflected in the so-called '113 and '114 GE patents.  The patents concern a specific method of so-called planar (i.e., two-dimensional) imaging and the systems used to perform that method.  Spectrum also asserts claims against GE for breach of contract and correction of inventorship under 35 U.S.C. § 256.

GE counterclaims that Spectrum has infringed a different one of its patents – the so-called '439 patent.  That patent concerns, among other things, "use of a weight compensation unit that is positioned within the gantry of an apparatus for capturing images and that applies a force on the movable section of a column attached to the gantry opposite to a force of gravity associated with the movable section."  (Answer to SAC ¶ 10.)

Fact discovery is complete but for outstanding disputes about the withholding of certain documents on the grounds of privilege.  This decision addresses Spectrum's motion to compel production of documents withheld or clawed-back on grounds of privilege based on the crime-fraud exception to the privilege.  Specifically, Spectrum argues that based on documents exchanged during discovery in this action, Spectrum has probable cause to believe that GE obtained the '113 and '114 patents "by criminally or fraudulently misrepresenting" to the PTO that the named inventors of those patents were the original inventors of the claimed inventions. (Br. 1.)  Spectrum asserts that those patents lay claim to a technique for performing planar imaging using a machine designed for three-dimensional imaging; that Spectrum invented that technique and disclosed it to GE under a nondisclosure agreement well before GE

2

filed for either patent; and that most of the named inventors either expressly knew of Spectrum's disclosures or had access to them. (*Id.*) Spectrum further argues that evidence produced during discovery shows that when GE filed for these patents, it had already misappropriated Spectrum's camera design. (*Id.*) Accordingly, Spectrum asks the Court to pierce the attorney-client privilege under the crime-fraud exception as to all communications by GE in furtherance of the alleged fraud on the PTO, i.e., "all communications relating to the prosecution of the patents." (*Id.*)

Spectrum also requests that the Court reject GE's attempt to claw back a spreadsheet that the parties refer to as "Exhibit R," because Spectrum argues that this document is in furtherance of GE's crime or fraud and alternatively, because this document relies on similar communications to support its allegation that it conceived the patents at issue, thus wielding privilege as both a shield and a sword.

## LEGAL STANDARD

The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact were kept confidential. *In re County of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). As the U.S. Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. 449 U.S. 383, 389 (1981). The privilege is narrowly construed, however, because it renders relevant information

undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.

There are exceptions to the privilege. As relevant here, communications "in furtherance of contemplated or ongoing criminal or fraudulent conduct" is not protected by the privilege. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). The party seeking to compel production of attorney-client communications pursuant to the crime-fraud exception has the burden of demonstrating that there is probable cause to believe that (1) a crime or fraud has been attempted or committed; and (2) the privileged communications and work product were in furtherance thereof. *Id.* There must be "substantial reason to believe that the party resisting disclosure engaged in or attempted to commit a fraud and used communications with its attorney to do so." *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989); *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426-27 (S.D.N.Y. 2013).

This standard, while "fairly robust," does not require proof by a preponderance of the evidence. *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170, at *11. Rather, it requires that the court be "persuaded of at least a substantial possibility of ... fraud." *Id.* at *11 n.13.

## DISCUSSION

Spectrum's motion regarding the crime-fraud exception is not aimed at particular documents on GE's privilege log. Rather, it is based on facts developed in discovery that Spectrum believes proves its case that GE used its trade secrets in developing the StarGuide and misrepresented the inventorship of the '113 and '114 patents. It focuses on the fact that certain information about the overall geometry of the general purpose camera in the Veriton

and an animation of how the Veriton worked, referred to as the "ferris wheel"-- was disclosed to GE in 2012 pursuant to a non-disclosure agreement.  However, GE points to other evidence that in 2006, GE filed a patent application that claimed the very geometry that Spectrum claims was its trade secret and evidence that in 2011 Spectrum publicly disclosed the geometry, as well as that GE inventors conceived of the "ferris wheel" invention before 2012.  In other words, Spectrum's motion is in actuality a motion aimed at the merits disguised as a motion to compel privileged documents.

Notwithstanding the above, the Court ordered GE to produce a sample of 25 documents from its log for *in camera* review.  On their face, these documents are routine communications between and among GE, the asserted inventors and counsel, along with diagrams/pictures of the invention, concerning the filing of a patent.  None evidence knowledge of Spectrum's alleged trade secret or a plan to commit a fraud concerning inventorship.  To the contrary, the documents indicate that counsel is properly posing questions and giving directions to ensure an accurate understanding of the device at issue, prior art and inventorship to ensure accuracy of any submissions for patents.  Spectrum has not, *for purposes of this motion*, demonstrated probable cause to believe a crime or fraud has been committed and the documents examined by the Court in camera do not on their face appear to be evidence of any attempted fraud.  Thus, there is no basis for applying the crime-fraud exception to the privilege.  *See King Drug Co. of Florence, Inc. v. Cephalon*, 2014 WL 80563 (E.D.PA. Jan. 9, 2014) (denying motion to compel production of privileged communications during a patent prosecution under crime-fraud exception even though the defendant was found to have committed inequitable conduct for failing to disclose to the Patent Office that another company was the inventor).

This same analysis applies to the clawed back spreadsheet. Spectrum appears to concede that GE's clawed-back spreadsheet does not fall under the crime-fraud exception to the privilege and argues in the alternative that GE waived privilege by producing non-privileged documents on the same subject matter. It relies on the rule that a party cannot disclose privileged communications in part to support a claim or defense while shielding the remaining communications on the same subject. *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008). Spectrum points to spreadsheets produced by GE that are lists of ideas generated for an internal IP bootcamp meeting to argue that GE has partially disclosed privileged documents and can't therefore withhold a similar spreadsheet produced for a Patent Evaluation Board meeting.

Spectrum's waiver argument is unpersuasive. GE explained that the IP bootcamp meetings are a regular business process where inventors keep track of ideas and inventions. In contrast, the clawed-back document was created in connection with a different type of meeting held with counsel at which ideas for patents are discussed and commented on. The spreadsheet itself has a column for recording comments of counsel. In other words, the clawed back document was created for purposes of seeking legal advice of counsel and contained a column to record advice, whereas the other communications disclosed by GE were not privileged. As the clawed back document is protected by privilege, and there has been no waiver based on disclosure of non-privileged IP bootcamp spreadsheets, the claw back is proper.

## CONCLUSION

For the reasons set forth above, Spectrum's motion to compel and opposition to GE's claw back of the spreadsheet is DENIED. For avoidance of confusion, nothing in this decision

shall be deemed to be a decision impacting the merits of Spectrum's claims, including the claim for correction of inventorship.

**The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 670 and 671.**

SO ORDERED.

Dated: August 8, 2023
New York, NY

_____
KATHARINE H. PARKER
United States Magistrate Judge