# EXHIBIT 6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3   _____
                                            )
 4   SPECTRUM DYNAMICS MEDICAL              )
     LIMITED,                               )
 5                        Plaintiff,        )
                                            ) Case No.:
 6   vs.                                    ) 18-CV-11386(VSB)
                                            )
 7   GENERAL ELECTRIC COMPANY, GE           )
     HEALTHCARE, INC., GE MEDICAL           )
 8   SYSTEMS ISRAEL LTD., JEAN-PAUL         )
     BOUHNIK, SERGIO STEINFELD,             )
 9   ARIE ESHCO and NATHAN HERMONY,         )
                                            )
10                        Defendants.       )
     _____)
11
12
13      ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **
14
15
16              Videotaped Deposition of
17                   NATHANIEL ROTH
18              Monday, November 14, 2022
19              9:02 a.m. Israel Standard Time
20
21
22
23
24   Job No.:  5550039
25   Reported by:  BRENDA MATZOV, CSR NO. 9243
```

Veritext Legal Solutions

www.veritext.com                                    888-391-3376

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 1          UNITED STATES DISTRICT COURT
 2          SOUTHERN DISTRICT OF NEW YORK
 3   _____
                                   )
 4   SPECTRUM DYNAMICS MEDICAL     )
     LIMITED,                      )
 5          Plaintiff,             )
                                   ) Case No.:
 6   vs.                           ) 18-CV-11386(VSB)
                                   )
 7   GENERAL ELECTRIC COMPANY, GE  )
     HEALTHCARE, INC., GE MEDICAL  )
 8   SYSTEMS ISRAEL LTD., JEAN-PAUL)
     BOUHNIK, SERGIO STEINFELD,    )
 9   ARIE ESHCO and NATHAN HERMONY,)
                                   )
10          Defendants.            )
     _____)
11
12
13    ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **
14
15
16       Videotaped deposition of NATHANIEL ROTH,
17   taken in the above-entitled cause pending in the
18   United States District Court, Southern District
19   of New York, before BRENDA MATZOV, CSR NO. 9243,
20   at Spectrum Dynamics, 22 Bareket Street, Caesarea,
21   Israel, on Monday, the 14th day of November, 2022,
22   at 9:02 a.m. Israel Standard Time.
23
24
25
```

Page 3

```
 1   APPEARANCES:
 2   FOR PLAINTIFF:
 3       FISH & RICHARDSON, PC
         By:  ADAM J. KESSEL, ESQ.
 4       One Marina Park Drive
         Boston, Massachusetts 02210
 5       (617) 542-5070
         kessel@fr.com
 6
 7       FISH & RICHARDSON, PC
         By:  TAYLOR M. REEVES, ESQ.
 8       222 Delaware Avenue
         17th Floor
 9       Wilmington, Delaware 19801
         (302) 652-5070
10       reeves@fr.com
11
12   FOR DEFENDANTS:
13       THOMPSON HINE, LLP
         By:  JEFFREY C. METZCAR, ESQ.
14       Discovery Place
         10050 Innovation Drive
15       Suite 400
         Dayton, Ohio 45342
16       (937) 443-6600
         jeff.metzcar@thompsonhine.com
17
18       THOMPSON HINE, LLP
         By:  JESSE L. JENIKE-GODSHALK, ESQ.
19         (partial)
         312 Walnut Street
20       Suite 2000
         Cincinnati, Ohio 45202
21       (513) 352-6700
         jesse.jenike-godshalk@thompsonhine.com
22
23
24
25
```

Page 4

```
 1   APPEARANCES (Continued):
 2   ALSO PRESENT:
 3       AMY KATZ, Videographer
 4       LINA MYKYTCHUK, Assistant Videographer
         (a.m. session)
 5
         EDAN MATZOV, Assistant Videographer
 6       (p.m. session)
```

Page 5

```
 1            I N D E X
 2   WITNESS
 3   Nathaniel Roth
 4
 5   EXAMINATION                    PAGE
 6   By Mr. Metzcar                 13, 340
 7   By Mr. Kessel                  339
 8
 9       (The exhibits were pre-marked
10       prior to the proceedings, apart from
11       Exhibit 750, and Exhibit 342, which
12       was marked as a duplicate.)
13
14          E X H I B I T S
15   NUMBER     DESCRIPTION          INTRODUCED
16   Exhibit 725   United States Patent
               No. 6,744,053 Entitled
17             "PET Camera with Individually
               Rotatable Detector Modules
18             and/or Individually Movable
               Shielding Sections," Dated
19             June 1, 2004
               (GE_SDM_00061706 to 00061720)   105
20
     Exhibit 726   Document Entitled "The
21             Design of a High-Resolution
               Transformable Whole-Body
22             PET Camera," Published Date
               October 2002
23             (GE_SDM_00794694 to 00794699)   129
24
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 42

1    It's here? No.
2    Q. Well, this is the e-mail that Mr. Smith
3 sent to him.
4    A. Aah.
5    Q. My question is: Do you know whether
6 Mr. Zilberstien responded to Mr. Smith in another
7 e-mail?
8    A. I don't know.
9    Q. Or perhaps by telephone?
10    A. I don't know.
11    Q. Okay. Should I ask Mr. Zilberstien
12 whether or not he responded to Mr. Smith?
13         MR. KESSEL: Objection.
14         THE WITNESS: I don't know.
15 BY MR. METZCAR:
16    Q. Okay. Did Mr. Zilberstien forward
17 Mr. Smith's e-mail or the attached '597 patent
18 to anyone else at Spectrum Dynamics besides
19 you?
20    A. I believe information related to
21 patent generally comes to me.
22    Q. Okay. You don't know whether --
23 you can't know whether he sent it to anyone
24 else, can you?
25    A. There -- there's nobody else to send

Page 43

1 it to.
2    Q. Does Mr. Zilberstien answer to anyone
3 else at the company?
4         MR. KESSEL: Objection to form.
5         THE WITNESS: Can you repeat the
6 question?
7 BY MR. METZCAR:
8    Q. Sure.
9         Does Mr. Zilberstien report to anyone
10 else at the company who is, for example, above
11 him?
12    A. I -- I don't remember at that time
13 if he was general manager. So if there was
14 somebody above him, I don't -- I don't know.
15    Q. When Mr. Zilberstien learned of
16 other GE patents and patent applications,
17 did he forward all of those to you?
18         MR. KESSEL: Objection.
19         THE WITNESS: I think "all" is a
20 pretty strong word. But probably most of
21 them.
22 BY MR. METZCAR:
23    Q. Okay. So, for example, in April
24 of 2015, if Mr. Zilberstien learned of GE
25 published patent applications relating to

Page 44

1 full-body SPECT imaging systems, do you
2 recall that he forwarded those to you?
3    A. I think so.
4    Q. Okay. Do you know whether he
5 also forwarded those to other individuals,
6 such as Gilad Yoeli?
7    A. I believe he did on -- at least
8 on a specific occasion.
9    Q. Okay. So we're -- we're -- we're
10 aware of situations in which Mr. Zilberstien,
11 upon learning of GE patents or published
12 patent applications, has, in fact, sent
13 them to people other than just you; right?
14    A. This -- again, this was a specific
15 situation. Most of the time Yoel Zilberstien
16 was sending patent to me for reviewing to
17 understand the technical side. Gilad Yoeli
18 is on the financial side. I -- I believe it
19 will be difficult for him.
20    Q. Okay. But you can't tell me for
21 sure, can you, whether or not Mr. Zilberstien
22 forwarded this '597 patent to someone else at
23 Spectrum or discussed it with someone else at
24 Spectrum, can you?
25         MR. KESSEL: Objection.

Page 45

1         THE WITNESS: What I can tell you
2 is patents generally were sent to me to review
3 mainly the technical aspect and content.
4 BY MR. METZCAR:
5    Q. I understand.
6         But you can't tell me for certain
7 whether or not he sent it to someone else
8 or discussed it with someone else; right?
9         MR. KESSEL: Objection.
10         THE WITNESS: I can tell you
11 whatever I know, that he was sending e-mails
12 with patent content to me.
13 BY MR. METZCAR:
14    Q. I understand that -- that his --
15 his standard practice would be to send them
16 to you.
17         But you can't tell me for certain
18 whether or not he sent it to anyone else,
19 can you?
20         MR. KESSEL: Objection.
21         THE WITNESS: I cannot respond to
22 that question because --
23 BY MR. METZCAR:
24    Q. Well, you can't know that information
25 can you?

Veritext Legal Solutions
www.veritext.com                                           888-391-3376

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 218

1  Q. Okay. And do you know the circumstances
2 under which Spectrum became aware of those seven
3 GE published patent applications?
4      MR. KESSEL: So let me, again,
5 caution the witness not to reveal attorney-client
6 communication. This is a "yes" or "no" question.
7      And I'll allow you to ask if it's --
8 if it was under privileged circumstances but
9 not -- nothing more than that.
10      THE WITNESS: Can you repeat, please?
11 BY MR. METZCAR:
12  Q. Sure.
13      Are you aware of the circumstances
14 under which Spectrum Dynamics became aware
15 of those seven -- at least seven GE published
16 patent applications by no later than April 2015?
17 The circumstances.
18  A. April? Circumstance -- circumstances,
19 you mean by e-mail or by --
20  Q. Yeah. Who --
21  A. -- other means?
22  Q. -- learned of it? How did you -- how
23 did you get it?
24  A. Yeah. So I -- I prepared that as part
25 of this question that you asked us.

Page 219

1  Q. Okay. Can you -- can you tell me what
2 the circumstances were?
3  A. Okay. So in 2010, we got this e-mail
4 from Rick from the first time with the '597 --
5  Q. Uh-huh.
6  A. -- patent.
7      I -- I believe that, in 2013, at the
8 end of the due diligence, we got several patents
9 directly from GE, I think by e-mail --
10  Q. Okay.
11  A. -- with, again, I think this patent
12 and others.
13      Then 2015 -- so I cannot tell you
14 till April. But there were several -- I mean,
15 several mails during that year's tree [sic],
16 during 2015, sent by Glenn -- it's another
17 supplier -- with some e-mails, sometime one,
18 sometime two, or something like that.
19  Q. Uh-huh.
20  A. And that's it for -- till 2015.
21  Q. Okay. So you mentioned Glenn.
22      Mr. Glenn Bindley?
23  A. Glenn -- Glenn Bindley.
24  Q. And you said he was with a -- with
25 a supplier.

Page 220

1      Do you -- do you understand he's with
2 Redlan?
3  A. Yes. He -- he was a supplier for our
4 CZT models.
5  Q. Okay. And that's "modules."
6  A. "Modules." Sorry. It's my accent.
7  Q. Uh-huh. It's fine.
8  A. Supplier of CZT modules.
9  Q. Okay. And -- and are you aware that --
10 that he forwarded GE published patent applications
11 to Yoel Zilberstien?
12  A. Yes. He was sending to Yoel Zilberstien.
13  Q. Okay. Did you ever have a conversation
14 with Mr. Zilberstien regarding the published patent
15 applications that Mr. Bindley had sent to him?
16  A. So you mean he -- do you mean this
17 application, the '704?
18  Q. No. I'm sorry.
19      The -- the applications that Mr. Bindley
20 sent to Mr. Zilberstien in 2015, did -- did you
21 ever have a discussion with Mr. Zilberstien
22 regarding those published patent applications?
23  A. I don't remember. I don't -- I don't
24 remember.
25  Q. Okay. So you don't recall whether you

Page 221

1 ever discussed the contents of those applications
2 with him?
3  A. I don't remember that we had a discussion.
4 I don't remember that.
5  Q. Did he ever forward the applications
6 to you?
7  A. So I -- I told you that generally
8 that's what happened.
9  Q. Yes.
10  A. When there's some patent review, it
11 was sent to me for review. So maybe. I don't
12 remember.
13  Q. Okay. So Spectrum's CZT supplier
14 forwards a series of GE published patent
15 applications to Mr. Zilberstien in early 2015.
16 And typically he would forward those on to you
17 for review.
18      Do you know whether he sent them to
19 you?
20  A. I don't remember.
21  Q. Have you looked through your records
22 to see whether he forwarded them to you?
23  A. No. I -- I don't remember exactly.
24  Q. Okay. Do you have any idea whether
25 they were directed to full-body or whole-body