**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPECTRUM DYNAMICS MEDICAL LIMITED,<br><br>                    Plaintiff,<br><br>           v.<br><br>GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., and GE MEDICAL SYSTEMS ISRAEL LTD.,<br><br>                    Defendants. | Case No.: 18-cv-11386 (VSB) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO SPECTRUM'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S OPINION AND ORDER**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1
BACKGROUND ............................................................................................................................. 1
I.      The Documents at Issue ....................................................................................................... 1
          A.      Exhibit R .................................................................................................................. 1
          B.      Exhibits I and Z ....................................................................................................... 3
II.     Procedural History ............................................................................................................... 4
STANDARD .................................................................................................................................... 8
ARGUMENT ................................................................................................................................... 8
I.      Magistrate Judge Parker's Treatment of Mr. Hefetz's Deposition Testimony Is Not Clearly Erroneous. .............................................................................................................. 10
II.     Magistrate Judge Parker Did Not Clearly Err in Construing Exhibit R and Distinguishing it from Exbibits I and Z. ............................................................................ 12
III.    Magistrate Judge Parker Did Not Apply an Incorrect Legal Standard in Finding that Exhibits I and Z Are Not Privileged. ........................................................................ 14
CONCLUSION .............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Adelphia Communs. Corp.*,
No. 02-41729 (REG), No. 04 Civ. 2192 (DAB),
2005 WL 425498 (S.D.N.Y. Feb. 16, 2005) ............................................................................. 9

*Anderson v. Bessemer City*,
470 U.S. 564 (1985) ................................................................................................................. 8

*Derthick v. Bassett-Walker Inc.*,
No. 90 Civ. 5427 (JMC), 1992 WL 249951 (S.D.N.Y. Sept. 23, 1992) ................................. 8

*Easley v. Cromartie*,
532 U.S. 234 (2001) ................................................................................................................. 8

*Lyondell-Citgo Refin., LP v. Petroleos de Venez., S.A.*,
No. 02 Civ. 0795 (CBM), 2004 WL 3019767 (S.D.N.Y. Dec. 29, 2004) ............................... 8

*Phila. v. Westinghouse Elec. Corp.*,
205 F. Supp. 830 (E.D. Pa. 1962) ......................................................................................... 11

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1990) ............................................................................................. 8, 9

*United States v. Int'l Bhd. of Teamsters*,
961 F. Supp. 665 (S.D.N.Y. 1997) ......................................................................................... 9

*United States v. Mejia*,
655 F.3d 126 (2d Cir. 2011) ............................................................................................. 9, 14

*United States v. United Gypsum Co.*,
333 U.S. 364 (1948) ................................................................................................................. 8

*United States v. Yellow Cab Co.*,
338 U.S. 338 (1949) ................................................................................................................. 8

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ............................................................................................................... 11

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................................ 8

**Other Authorities**

Fed. R. Civ. P. 72(a) ................................................................................................................... 8

# INTRODUCTION

The Court should overrule Plaintiff Spectrum Dynamics Medical Limited's ("Plaintiff" or "Spectrum") objections (the "Objections") to Magistrate Judge Parker's August 8, 2023 Opinion and Order ("Opinion and Order") because Spectrum has not carried its burden of showing that the findings in the Opinion and Order are clearly erroneous or that the legal conclusions are contrary to law. In making its Objections, Spectrum fails to apprise this Court of the full record of filings and proceedings before Magistrate Judge Parker. In particular, Spectrum makes no mention of the fact that, prior to filing its Objections, it filed a motion for reconsideration before Magistrate Judge Parker, raising many of the same issues now before the Court. Magistrate Judge Parker then held a lengthy oral argument, clarified her findings and conclusions in the Opinion and Order, made additional findings, and denied Spectrum's motion for reconsideration. Considering the totality of the filings and proceedings below, there can be no doubt that Magistrate Judge Parker carefully considered all of the evidence submitted by the parties, including the deposition testimony of Yaron Hefetz, made findings on that evidence that are not clearly erroneous, and applied a correct legal standard in evaluating the attorney–client privilege. Thus, Spectrum's Objections should be overruled.

# BACKGROUND

**I.   THE DOCUMENTS AT ISSUE**

**A.   Exhibit R**

Defendants General Electric Company, GE Healthcare, Inc., and GE Medical Systems Israel Ltd. ("Defendants" or "GEHC") have a Patent Evaluation Board ("PEB"), which meets on a regular basis to internally evaluate invention disclosures. (Deposition of Gil Kovalski, dated December 22, 2022 ("Kovalski Dep.") (Doc. 689-10) at 21:5–22:6.) An attorney is a member of the PEB and always attends PEB meetings. (*Id.* at 23:8–24:25.) Exhibit R (Doc. 664-12) is a 2013

1

spreadsheet of ratings, comments, and scores for more than twenty invention disclosures from a PEB meeting attended by a GEHC attorney. It includes a column for "███████" and for "██████████████," who was a member of GEHC's in-house legal department. (Doc. 664-12 at columns R and S.)

Spectrum suggests that this document is "incriminating" and that it "evidences . . . misconduct" because it supposedly lists inventions that Spectrum had disclosed to Defendants under a non-disclosure agreement ("NDA") and shows that Mr. Hefetz, who did not sign the NDA, had access to these disclosures. (Doc. 754 at 1–2.) In particular, Spectrum argues that Exhibit R includes comments from Mr. Hefetz that it was a high priority to pursue a patent on a particular invention "███." (*Id.* at 2.) Spectrum, however, has never cited any evidence, either before Magistrate Judge Parker or in its Objections, to show that it invented or disclosed the invention at issue or that the invention was confidential to Spectrum. (*See id.*; Doc. 670 at 10.) It is also far from clear that the comments Spectrum points to were from Mr. Hefetz. As Magistrate Judge Parker stated, "it was not clear to me who necessarily made the comments." (Doc. 758 at 18:5–7.) They are in a column titled "██████████████," such that they could have been made by anyone on the PEB, including an attorney. (*See* Spectrum's Ex. R at column R; Doc. 758 at 18:14–17, 20:16–19.) Finally, Spectrum has provided nothing but speculation about what "████" means. As Spectrum has noted, the spreadsheet at issue dates to October 2013 (Doc. 670 at 10), after Spectrum and GEHC had ended negotiations in pursuit of a potential business deal. As such, at the time Exhibit R was made, Spectrum and GEHC were competitors in the marketplace, and the notation "████" may simply indicate that—based on information that Spectrum itself had made publicly available in patent filings and articles—Defendants believed that patenting the invention noted above would be advantageous for competing against Spectrum in the marketplace.

2

(*See* Kovalski Dep. (Doc. 689-10) at 99:9–100:6 (testifying that Defendants monitored patents belonging to Spectrum, Siemens, and Philips because it wanted to know "what the competitors has [sic]" and avoid infringing).)

### B. Exhibits I and Z

Exhibits I and Z are 2011 spreadsheets listing ideas generated at a GEHC "IP bootcamp." (Rule 30(b)(6) Deposition of Yaron Hefetz, dated December 13, 2022 ("Hefetz Rule 30(b)(6) Dep.") (Doc. 706-2) at 10:12–22 (discussing Exhibit I); *see id.* at 16:18–17:6 (discussing Exhibit Z).) The IP bootcamps are separate from and different from the PEB meetings (*see generally* Kovalski Dep. (Doc. 689-10) at 154:4–24), although some of the same individuals, including Gil Kovalski and Yaron Hefetz, were on the PEB and also attended IP bootcamps (*see* Doc. 758 at 17:16–20, 21:5–12). Unlike Exhibit R, Exhibits I and Z do not include a column for "███████ ███████" or for any other member of GEHC's in-house legal team. Nor is there any indication that any attorney participated in the preparation of these documents or contributed any information to them. The comments in the documents are from three individuals who were not serving as attorneys to GEHC: Gil Kovalski, Yaron Hefetz, and Ira Blevis. (*See* Doc. 664-3 at columns I and J; Doc. 670-1.)

During his deposition, Yaron Hefetz was asked whether Exhibit I was prepared for Defendants' attorneys, and he answered in relevant part that it was "hard for [him] to . . . understand at what point . . . a document become[s] prepared for [a] lawyer." (Hefetz Rule 30(b)(6) Dep. (Doc. 706-2) at 11:14–22.) He further testified that Exhibit I "is a document for recording ideas generated at an IP bootcamp" and that "eventually" those ideas "will be presented to a . . . lawyer" because "the attorneys [have] the final say on which invention[s] will be filed" in patent applications. (*Id.* at 10:18–22, 10:24–11:10, 12:18–13:2.)

3

Mr. Hefetz was asked only two questions during his deposition about Exhibit Z—whether it looks similar to Exhibit I and another exhibit (to which he answered "yes") and "if asked the same questions about this document, . . . would [he] give . . . the same answers" (to which he answered "[p]robably, yes"). (*Id.* at 16:18–17:6.)

## II.   PROCEDURAL HISTORY

The matters now before the Court were the subject of extensive motion practice and oral argument before Magistrate Judge Parker.

On April 27, 2023, Defendants sent a claw-back notice to Spectrum, stating that they had inadvertently produced 15 privileged documents, including Exhibit R. On May 18, 2023, Spectrum filed a letter motion with Magistrate Judge Parker challenging the claw-back of Exhibit R and also seeking to pierce Defendants' attorney–client privilege with regard to all documents relating to prosecution of two patents (the "Motion"). (Doc. 664.) Spectrum attached 25 exhibits to the Motion. (*See* Doc. 664-1 to 664-17; Doc. 665 to 665-24.)

In response, Magistrate Judge Parker ordered full, formal briefing on the issues raised in the Motion and set a briefing schedule. (Doc. 667 at 2.)

On May 30, 2023, Spectrum filed its formal Memorandum of Law in Support of its Motion Seeking to Pierce Privilege Based on the Crime-Fraud Exception and Challenging Defendants' Claw-Back (Doc. 670) and added an additional exhibit (Exhibit Z) (Doc. 670-1) to the 25 it had previously filed. In its Memorandum, Spectrum argued, as it does now, that Magistrate Judge Parker should "reject GE's attempt to claw back Exhibit R because GE relies on similar communications to support its allegation that it conceived the patents at issue, thus wielding privilege as both a shield and a sword." (Doc. 670 at 1.)

4

On June 20, 2023, Magistrate Judge Parker ordered Spectrum to identify 25 documents from Defendants' privilege log for which Spectrum was seeking to pierce privilege and which Defendants would then submit for *in camera* review. (Doc. 684 at 1.)

On June 26, 2023, Defendants filed their Memorandum of Law in Opposition to Spectrum's Motion Seeking to Pierce Privilege Based on the Crime-Fraud Exception and Challenging Defendants' Claw-Back (Doc. 688) and attached 12 exhibits (*see* Doc. 689 to 689-12). In their Memorandum, Defendants argued that, unlike Exhibit R, "Exhibits I and Z are not privileged," and as such, "Defendants did not waive privilege by producing them." (Doc. 688 at 25.)

On June 27, 2023, Spectrum filed a letter with the Court identifying 25 documents from Defendants' privilege log for which Spectrum was seeking to pierce privilege. (Doc. 692.)

On July 10, 2023, Spectrum filed its Reply in Support of its Motion Seeking to Pierce Privilege Based on the Crime-Fraud Exception and Challenging Defendants' Claw-Back (Doc. 706) and attached 4 additional exhibits (*see* Doc. 706-1; 706-2; 707-2; 707-3). Those exhibits included excerpts from the transcript of Mr. Hefetz's deposition, which Spectrum used to argue that Exhibits I and Z are privileged. (Doc. 706 at 10.)

On July 11, 2023, Defendants submitted *ex parte* the 25 documents from their privilege log that Spectrum had identified so that Magistrate Judge Parker could review them *in camera*.

On July 14, 2023, Defendants moved for leave to file a sur-reply in opposition to the Motion so that they could address one of the four new exhibits attached to Spectrum's reply brief. (Doc. 718.) Magistrate Judge Parker granted Defendants' motion (Doc. 719), and Defendants filed their sur-reply (Doc. 720).

On July 26, 2023, Magistrate Judge Parker presided over a case management conference where she asked questions of counsel about the differences between Exhibit R, on the one hand, and Exhibits I and Z, on the other. (Doc. 728 at 14:21–16:22.) Defendants' counsel explained that Exhibit R was created at a PEB meeting where the purpose was to evaluate, with an attorney's legal guidance, the patentability, infringement, and validity of certain inventions. (*Id.* at 15:14–16:10.) As such, in Exhibit R, any of the columns could reflect the advice of Defendants' counsel. (*Id.* at 16:2–10.) In contrast, Exhibits I and Z were created during the IP bootcamps, which are a retreat where Defendants' technical employees meet to conceive new ideas for inventions. (*Id.* at 16:11–22.)

On August 8, 2023, Magistrate Judge Parker issued her Opinion and Order denying Spectrum's Motion. (Doc. 738.) She stated in relevant part:

> Spectrum's waiver argument is unpersuasive. GE explained that the IP bootcamp meetings are a regular business process where inventors keep track of ideas and inventions. In contrast, the clawed-back document was created in connection with a different type of meeting held with counsel at which ideas for patents are discussed and commented on. The spreadsheet itself has a column for recording comments of counsel. In other words, the clawed back document was created for purposes of seeking legal advice of counsel and contained a column to record advice, whereas the other communications disclosed by GE were not privileged. As the clawed back document is protected by privilege, and there has been no waiver based on disclosure of non-privileged IP bootcamp spreadsheets, the claw back is proper.

(*Id.* at 6.)

On August 21, 2023, Spectrum filed a Motion for Reconsideration with Magistrate Judge Parker (Doc. 742), along with a Memorandum in Support (Doc. 743). Spectrum argued, as it does now, that Magistrate Judge Parker had ignored some of Spectrum's evidence, including Mr. Hefetz's deposition testimony, and that the Court had misconstrued Exhibit R. (*Id.* at 2–3.)

6

The next day, the parties had another case management conference before Magistrate Judge Parker. (*See* Doc. 758 (transcript); Doc. 752 (minute entry).) There, Magistrate Judge Parker received extensive argument on Spectrum's Motion for Reconsideration, clarified her Opinion and Order, made additional findings, and ultimately denied Spectrum's Motion for Reconsideration. (Doc. 758 at 4:11–21:24; Doc. 756 at 1.)

During the conference, Defendants' counsel stated their understanding that Exhibit R was "filled out during the course of a [PEB] meeting," where counsel was present and contributing, and Exhibit R was "documentation of the meeting." (Doc. 758 at 17:2–15.) Magistrate Judge Parker made clear on the record that she "did thoroughly consider . . . all of the evidence that [Spectrum] submitted." (*Id.* at 11:25–12:3; *see also id.* at 12:8 ("So I did consider all of the evidence.").) She also stated her understanding of the difference between Exhibit R, on the one hand, and Exhibits I and Z, on the other:

> [T]he documents, as I understand them, are different because of the nature of the way that they were used and the purpose for what they were used. The I and Z documents I understand are viewed to be no privileged [sic] because they are prepared in the ordinary course of business, although they might be sent to a lawyer, but they are ordinary business documents in brainstorming about patents -- I'm paraphrasing my understanding of what those documents are -- as opposed to the purpose of Document R, which was a document created specifically for this type of meeting, which is a meeting to discuss all of the information with the lawyers for purposes of obtaining legal advice.

(*Id.* at 12:13–13:3.) Thus, her "distinction between R and I and Z was not solely based on the [presence of the] column [in Exhibit R] that was represented to me to be a column indicating legal advice but also the whole purpose of the meeting." (*Id.* at 21:2–5.) Because of these different purposes, it did not matter, as Spectrum argued, that some of the same individuals—namely, Mr. Hefetz and Mr. Kovalski—took part in creating both Exhibit R, as well as Exhibits I and Z. (*Id.* 21:5–12.)

Just a few hours after the case management conference had concluded, Spectrum filed its Objections, omitting any reference to the Motion for Reconsideration or the proceedings that had occurred earlier that day. (*See generally* Doc. 754.)

## STANDARD

As to non-dispositive matters, a district court shall reverse a Magistrate Judge's order only where it has been shown that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" if the reviewing court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). "Pursuant to this highly deferential standard of review, a magistrate judge is 'afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused.'" *Lyondell-Citgo Refin., LP v. Petroleos de Venez., S.A.*, No. 02 Civ. 0795 (CBM), 2004 WL 3019767, at *2 (S.D.N.Y. Dec. 29, 2004) (quoting *Derthick v. Bassett-Walker Inc.*, No. 90 Civ. 5427 (JMC), 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992)). "Thus, a party seeking to overturn or modify a discovery order bears a heavy burden." *Id.* Spectrum has not that burden here.

## ARGUMENT

Spectrum's primary objection is that Magistrate Judge Parker "clearly err[ed] in finding that GE is not using the attorney-client privilege as both a shield and sword." (Doc. 754 at 4.) This shield and sword concept refers to a type of implicit waiver of privilege. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1990) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the privilege may implicitly be waived when defendant

8

asserts a claim that in fairness requires examination of protected communications."). "[T]he 'waiver of an attorney-client privilege is a question of fact,'" such that a finding of waiver "is subject to the clearly erroneous standard" of review. *In re Adelphia Communs. Corp.*, No. 02-41729 (REG), No. 04 Civ. 2192 (DAB), 2005 WL 425498, at *8 (S.D.N.Y. Feb. 16, 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 961 F. Supp. 665, 673 (S.D.N.Y. 1997)). As explained more fully below, Spectrum has failed to show that Magistrate Judge Parker committed clear error in finding no waiver of attorney–client privilege.

Spectrum also objects to three aspects of Magistrate Judge Parker's Opinion and Order underlying the waiver issue. First, Spectrum argues that "the magistrate [judge] simply did not consider" deposition testimony from Mr. Hefetz and that the testimony establishes that Exhibits I and Z are privileged. (Doc. 754 at 4–5.) As Spectrum notes, "'the applicability of a privilege is a factual question'" subject to review under the clearly erroneous standard. (*Id.* at 4 (quoting *United States v. Mejia*, 655 F.3d 126, 131 (2d Cir. 2011)).) As explained more fully below, Magistrate Judge Parker did in fact consider Mr. Hefetz's testimony, and having done so, it was not clear error for her to still find that Exhibits I and Z are not privileged. (*See* § I, *infra*.)

Second, Spectrum argues that Magistrate Judge Parker misconstrued Exhibit R and incorrectly distinguished it from Exhibits I and Z. (*Id.* at 5–6.) This, too, is a factual question subject to review for clear error. Spectrum's argument here ignores relevant statements of Magistrate Judge Parker and counsel at the two most recent discovery conferences, and in the process, Spectrum fails to carry its burden of showing that Magistrate Judge Parker's interpretations of the documents were clearly erroneous. (*See* § II, *infra*.)

Third, Spectrum argues that Magistrate Judge Parker acted contrary to law by applying an incorrect legal standard in determining that Exhibits I and Z are not privileged. (*Id.* at 6–7.) In

9

making this argument, Spectrum takes Magistrate Judge Parker's words out of context and also ignores the fact that the legal standard enunciated in the Opinion and Order is the same legal standard Spectrum claims Magistrate Judge Parker should have applied. (*See* § III, *infra*.) For all of these reasons, as well as others discussed below, the Court should overrule Spectrum's Objections.

I. **MAGISTRATE JUDGE PARKER'S TREATMENT OF MR. HEFETZ'S DEPOSITION TESTIMONY IS NOT CLEARLY ERRONEOUS.**

While Spectrum accuses Magistrate Judge Parker of "ignoring Mr. Hefetz's dispositive testimony," she made clear during the August 22, 2023 discovery conference that she "did thoroughly consider . . . all of the evidence that [Spectrum] submitted." (Doc. 758 at 11:25–12:3; *see also id.* at 12:8.) Spectrum cites no authority for the proposition that she was required to expressly address each individual piece of evidence in her Opinion and Order. Nor was it practicable for her to do so, where the parties submitted 61 pages of briefing, 42 exhibits, and 25 documents for *in camera* review.

In any event, it was not clear error for Magistrate Judge Parker to find, even after reviewing Mr. Hefetz's testimony, that Exhibits I and Z are nonprivileged. Spectrum relies upon four passages from Mr. Hefetz's deposition transcript—all of which Defendants' counsel objected to during the deposition. (*See* Doc. 754 at 2–3 (citing Hefetz Rule 30(b)(6) Dep. (Doc. 706-2) at 10:24–11:10, 13:5–13, 14:24–15:4, 16:18–17:6).)[1] Thus, it is an open question of whether this testimony is even admissible into evidence.

---

[1] As Spectrum itself has noted, Yaron Hefetz is an "outside consultant" to GEHC rather than a GEHC employee. (Second Amended Complaint (Doc. 630), ¶ 208.) Further, consistent with the objections made during Mr. Hefetz's deposition, Spectrum established no foundation to support questioning Mr. Hefetz about whether documents were created for a GEHC attorney for the purpose of seeking legal advice—i.e. Spectrum did not present or develop any evidence that Mr.

10

Further, as Defendants argued to Magistrate Judge Parker, Mr. Hefetz's testimony simply does not say what Spectrum claims. (Doc. 758 at 14:8–22.) Mr. Hefetz did not unequivocally testify that Exhibits I and Z were prepared for an attorney for the purpose of seeking legal advice. In fact, when asked if Exhibit I was prepared for counsel, Mr. Hefetz responded that it was "hard for [him] to . . . understand at what point . . . a document become[s] prepared for [a] lawyer." (Hefetz Rule 30(b)(6) Dep. (Doc. 706-2) at 11:14–22.) Nor did Mr. Hefetz testify unequivocally that Exhibits I and Z themselves were ever given to counsel. He testified that Exhibit I "is a document for recording ideas generated at an IP bootcamp" and that "eventually" those ideas "will be presented to a . . . lawyer" because "the attorneys [have] the final say on which invention[s] will be filed" in patent applications. (*Id.* at 10:18–22, 10:24–11:10, 12:18–13:2.) Exhibit I is not privileged merely because the ideas in it were eventually shared with counsel. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) (A party "'may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'" (quoting *Phila. v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962))). Mr. Hefetz was only asked two questions about Exhibit Z to which he gave vague answers. (*See* Doc. 706-2 at 16:18–17:6.) Thus, it was not clearly erroneous for Magistrate Judge Parker to find this testimony inadequate to establish that Exhibit Z is privileged.

In sum, Magistrate Judge Parker's treatment of Yaron Hefetz's deposition testimony is not clearly erroneous.

---

Hefetz would necessarily understand such questions or know the answers. In fact, Mr. Hefetz expressly testified that, "not being [an] American lawyer," it was hard for him to understand and answer the questions that Spectrum's counsel was asking. (Hefetz Rule 30(b)(6) Dep. (Doc. 706-2) at 11:14–22.)

11

**II.   MAGISTRATE JUDGE PARKER DID NOT CLEARLY ERR IN CONSTRUING EXHIBIT R AND DISTINGUISHING IT FROM EXBIBITS I AND Z.**

Spectrum argues that "the [Opinion and] Order finds that Exhibits I and Z do not contain 'a column for recording comments of counsel,' as ***the apparent basis*** to distinguish them from Exhibit R." (Doc. 754 at 5 (quoting Doc. 738 at 6) (emphasis added).) As an initial matter, this was not the only basis upon which Magistrate Judge Parker distinguished Exhibits I and Z from Exhibit R. The Opinion and Order contains another distinction: "[T]he IP bootcamp meetings are a regular business process where inventors keep track of ideas and inventions. In contrast, the clawed-back document was created in connection with a different type of meeting held with counsel at which ideas for patents are discussed and commented on." (Doc. 738 at 6.) As Magistrate Judge Parker clarified at the August 22, 2023 conference, "the documents . . . are different because of the nature of the way that they were used and the purpose for what they were used." Exhibits I and Z "are prepared in the ordinary course of business . . . in brainstorming about patents," "as opposed to the purpose of Document R, which was a document created specifically for [a PEB] meeting, which is a meeting to discuss all of the information with the lawyers for purposes of obtaining legal advice." (Doc. 758 at 12:13–13:3.) Thus, the "distinction between R and I and Z was not solely based on the [presence of the] column [in Exhibit R] . . . indicating legal advice but also the whole purpose of the meeting." (*Id.* at 21:2–5.) As a result, even if Magistrate Judge Parker had misconstrued the columns in Exhibit R—she did not—she still would have had a valid basis for finding that Exhibit R is privileged, while Exhibits I and Z are not.

In any event, Spectrum is wrong when it argues that Exhibit R does not have a column for comments to or from counsel. Exhibit R contains a column for comments directed to a member of Defendants' in-house legal team, Lynn Darnell (Doc. 664-12 at column S), while Exhibits I and Z contain no such column. Further, any of the other columns may contain legal advice from counsel

12

provided during the PEB meetings. (Doc. 728 at 16:2–10.) This is particularly true of the column "▮▮▮▮▮▮▮▮▮▮▮▮" (Doc. 664-12 at column R), which ostensibly records comments made by any member of the PEB, including the attorney member, during the PEB meetings.

Spectrum also argues, in the alternative, that Exhibits I and Z, like Exhibit R, contain columns for "▮▮▮▮▮▮▮▮." (Doc. 754 at 5.) Not so. They include columns for comments from three particular individuals—Mr. Kovalski, Mr. Hefetz, and Mr. Blevis—who attended the 2011 IP bootcamp, two of whom also happened to be on the PEB in 2013. Just because two of these individuals were on the PEB in 2013 does not mean that their comments during a 2011 IP bootcamp are "▮▮▮▮▮▮▮▮" that can be equated with the comments in Exhibit R. (*See* Doc. 758 at 21:5–12 (Magistrate Judge Parker rejecting Spectrum's arguments on this point).) Unlike the comments in Exhibit R, the comments in Exhibits I and Z were all made by individuals who did not serve as counsel to Defendants, and they were not made at a PEB meeting in which counsel participated.[2] Thus, Magistrate Judge Parker did not err in finding that the comments in Exhibits I and Z were qualitatively different than the comments in Exhibit R.

In sum, Magistrate Judge Parker did not commit clear error in construing Exhibit R or in distinguishing it from Exhibits I and Z.

---

[2] In its Objections, Spectrum refers to Yaron Hefetz as "an Israeli patent attorney." (Doc. 754 at 1.) As Mr. Hefetz clarified at his deposition, however, he is actually an Israeli patent agent and, in any event, is not a U.S. patent attorney. (*See* Rule 30(b)(1) Deposition of Yaron Hefetz, dated December 12, 2022 ("Hefetz Rule 30(b)(1) Dep.") at 26:25–27:13, attached as Exhibit 1 to the Declaration of Marla R. Butler.) Further, Defendants have made clear that Mr. Hefetz is not, and has not been, their counsel. Thus, Defendants have not withheld as privileged any documents on the basis that Mr. Hefetz was acting as counsel to Defendants.

### III. MAGISTRATE JUDGE PARKER DID NOT APPLY AN INCORRECT LEGAL STANDARD IN FINDING THAT EXHIBITS I AND Z ARE NOT PRIVILEGED.

Spectrum argues that "to the extent the [Opinion and] Order relies on the fact that Exhibits I and Z were not 'created in connection with a . . . meeting held with counsel,' the [Opinion and] Order is contrary to law." (Doc. 754 at 6 (quoting Doc. 738 at 6).) Spectrum asserts that, even if Exhibits I and Z were not created in connection with a meeting held with counsel, they still could be privileged. (*Id.*)

In making these arguments, Spectrum takes Magistrate Judge Parker's words out of context. The Opinion and Order never states that documents are non-privileged unless created in connection with a meeting held with counsel. Nor does the Opinion and Order state that Exhibits I and Z in particular are non-privileged because they were not created in connection with a meeting held with counsel. The Opinion and Order merely finds, in part, that "the clawed-back document was created in connection with a . . . meeting held with counsel at which ideas for patents are discussed and commented on." (Doc. 738 at 6.) This finding does not mean that any documents outside the scope of this description are non-privileged.

Spectrum further argues that the correct standard for attorney–client privilege is that "it encompasses communications '(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.'" (Doc. 754 at 6 (quoting *Mejia*, 655 F.3d at 132.) This is the same standard enunciated and applied in Magistrate Judge Parker's Opinion and Order: "The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact were kept confidential." (Doc. 738 at 3 (citing cases).) Thus, Magistrate Judge Parker's Opinion and Order is not contrary to law.

Because Magistrate Judge Parker applied the correct legal standard and did not clearly err in her treatment of Mr. Hefetz's testimony and Exhibit R, she also did not clearly err in her ultimate findings that Exhibits I and Z are non-privileged and, as such, Defendants did not use privilege as both a sword and a shield.

## CONCLUSION

For all of these reasons, the Court should overrule Spectrum's Objections to Magistrate Judge Parker's Opinion and Order.

Dated: Atlanta, Georgia
September 5, 2023

Respectfully submitted,

**THOMPSON HINE LLP**

/s/ *Marla R. Butler*
Marla R. Butler
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
Tel.: (404) 541-2900
Fax: (404) 541-2905
Marla.Butler@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Tel.: (513) 352-6700
Fax: (513) 241-4771
Jesse.Godshalk@ThompsonHine.com

Brian Lanciault
300 Madison Avenue, 27th Floor
New York, New York 10017
Tel.: (212) 344-5680
Fax: (212) 344-6101
Brian.Lanciault@ThompsonHine.com

Jeffrey Metzcar (*pro hac vice*)
Discovery Place
10050 Innovation Drive
Miamisburg, Ohio 45342

          Tel.: (937) 443-6841
          Fax: (937) 430-3781
          Jeff.Metzcar@thompsonhine.com

*Attorneys for Defendants*
*General Electric Company, GE Healthcare, Inc., and GE Medical Systems Israel Ltd.*