```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPECTRUM DYNAMICS MEDICAL
LIMITED,

                                    Plaintiff,

              -against-

GENERAL ELECTRIC COMPANY et al.,

                                    Defendants.

**REPORT AND RECOMMENDATION ON
MOTION TO DISMISS AND
OPINION AND ORDER ON
MOTION TO SUBSTITUTE
18-CV-11386 (VSB) (KHP)**

**TO:     THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

Before me for a Report and Recommendation is Plaintiff Spectrum Dynamics Medical

Limited's ("Spectrum") Motion to Dismiss the counterclaim asserted by Defendant General

Electric Company ("GE") and for an award of attorneys' fees.  (ECF No. 711.)  Also before me is a

Motion to Substitute defendants pursuant to Federal Rule of Civil Procedure 25(c) brought by

GE, GE Healthcare Inc., and GE Medical Systems Israel LTD (collectively, "Defendants") and/or

to substitute the real party in interest under Federal Rule of Civil Procedure 17.  (ECF Nos. 714,

775.)[1]  For the reasons stated below, the motion to substitute is granted, and I respectfully

recommend that the motion to dismiss be denied as moot, and that the request for attorneys'

fees be denied.

---

[1]  Because this motion to substitute is not dispositive of any claims or defenses, it falls within the scope of my
authority under 28 U.S.C. § 636(b)(1)(A).  *Grant v. Witherspoon*, 2020 WL 71052, at *1 (S.D.N.Y. Jan. 3, 2020).
Defendants raised Rule 17 during oral argument, and this Court gave the parties additional time to confer and
submit arguments about use of Rule 17 thereafter.

**BACKGROUND**

Spectrum filed this action against Defendants as well as several now-dismissed

individual defendants on December 6, 2018 alleging, inter alia, that Defendants

misappropriated its trade secrets by applying for and obtaining 23 patents assigned to GE,

including the so-called '439 patent and the so-called '595 patent.  (ECF No. 2.)  In the original

complaint, Spectrum asserted claims for corrections of inventorship of the various patents,

breach of contract, misappropriation of trade secrets, misappropriation of ideas, unfair

competition, breach of implied good faith and fair dealing, and fraud.  (*Id*.)  At the time

Spectrum filed the original complaint, GE owned the patents that were implicated in

Spectrum's complaint.

On January 1, 2019, in contemplation of a corporate restructuring plan that was not

completed until January 2023, GE formed a wholly owned subsidiary, Precision Healthcare LLC

("Precision Healthcare").  (Wawrzyn Decl. ¶¶ 3-5.)  GE and Precision Healthcare entered into an

Asset Contribution and Assignment Agreement (the "Contribution Agreement"), transferring

assets used in connection with GE's healthcare business, including patent assets, to Precision

Healthcare.  (*Id.* at ¶¶ 5-7.)  The '439 patent, '595 patent, and other patents at issue in this case

were all transferred to Precision Healthcare pursuant to the Contribution Agreement.  (*Id*.)[2]  GE

asserts that until recently, its legal team in this case was unaware that the patents were

transferred to Precision Healthcare, as counsel with knowledge of the transfer were not

involved in this litigation or permitted to view the pleadings in this case because of a strict

---

[2]  The patents are not expressly identified in the Contribution Agreement but are included in a catch-all provision in
Schedule 1 to the Contribution Agreement described as "intangible assets – net."  (*Id.* at ¶ 6, Ex. 1.)

confidentiality agreement limiting GE's counsel from sharing information within the company—including with other lawyers.  (Guiser Decl. ¶¶ 5-7; Butler Decl. ¶ 2.)

On May 15, 2019, Spectrum filed the First Amended Complaint ("FAC"), and on June 14, 2019, Defendants moved to dismiss the FAC.  (ECF Nos. 38, 52.)  On June 1, 2020, the Honorable Vernon S. Broderick partially granted and partially denied the motion to dismiss. (ECF No. 74.)

On July 22, 2020, GE filed counterclaims against Spectrum, alleging infringement of the '439 and '595 patents.  (ECF No. 89, Counterclaims ¶¶ 23-67.)[3]  GE alleged that it "owns all rights, title and interest in and to the inventions claimed in [those patents] and has standing to assert claims for infringement of [them]."  (*Id.* at ¶¶ 9, 12.)  Spectrum answered the counterclaim and filed counter-counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability of the patents.  (ECF No. 92.)  On March 23, 2021, GE voluntarily dismissed its counterclaim as to the '595 patent.  (ECF No. 210.)  On April 29, 2022, Judge Broderick held a Markman hearing to determine the meaning and scope of the relevant patent claim terms in dispute with regard to the '439 patent.

On January 4, 2023, GE completed the reorganization that had begun in 2019.  GE's healthcare business unit is now a separate publicly traded entity, GE HealthCare Technologies Inc. ("GE HealthCare").  Precision Healthcare, which had been a wholly owned subsidiary of GE since 2019, is now a wholly owned subsidiary of GE HealthCare.  (ECF No. 724 at 7.)  GE maintains a 20% ownership interest in GE HealthCare.  Defendants did not alert the Court or Spectrum of the spin-off at the time it was completed.

---

[3]  As a point of clarification, only GE, and not the other Defendants, asserted this counterclaim.

On February 17, 2023, Plaintiff filed a Second Amended Complaint ("SAC"), which removed some patents from Spectrum's correction-of-inventorship claims and added claims concerning the so-called '731 patent – a patent GE applied for on August 27, 2020.  (ECF No. 630.)  GE asserts that because the parent of the '731 patent was transferred to Precision Healthcare on January 1, 2019, this had the effect of transferring the later-issued '731 patent to Precision Healthcare as well.  (Wawrzyn Dec. ¶ 6 & n.1.)  On March 31, 2023, Defendants answered the SAC and GE again asserted a counterclaim for infringement of the '439 patent. (ECF No. 642.)  On April 14, 2023, Spectrum filed a response to Defendants' answer and again asserted counter-counterclaims of declaratory judgment of non-infringement, invalidity, and unenforceability of the '439 patent.  (ECF No. 652.)

In June 2023, while evaluating the extent to which the spin-off would impact this litigation, Defendants discovered that the patents at issue in this litigation had been transferred to Precision Healthcare in January 2019, and thus GE did not own the '439 or '595 patents at the times it asserted counterclaims for infringement of those patents.  (*Id.*)  On June 30, 2023, Defendants' counsel wrote to Spectrum's counsel explaining the situation and stating its intent to dismiss its counterclaim as to the '439 patent, substitute GE HealthCare and Precision Healthcare for the current Defendants in this case, and reassert the '439 patent with Precision HealthCare as counterclaim-plaintiff.  (ECF No. 712, Ex. B.)

On July 13, 2023, after an apparently cursory and unsuccessful meet-and-confer process, Spectrum filed the Motion to Dismiss GE's counterclaim for lack of standing.  Spectrum argued the counterclaim should be dismissed with prejudice because no amendment can save the counterclaim and GE cannot cure the jurisdictional defect by substituting Precision

Healthcare.  Spectrum also preemptively argued that the Court should not substitute

defendants or allow Precision Healthcare to join the case because (1) Spectrum's affirmative

claims can continue against the current Defendants, (2) Precision Healthcare unduly delayed in

bringing the counterclaim, and (3) the addition of the counterclaim at this stage of the litigation

would prejudice Spectrum.  Spectrum also requested an award of attorneys' fees that it

incurred defending against the counterclaim.

Approximately three hours later, Defendants filed a Motion to Substitute pursuant to

Rule 25(c).  Defendants argued that non-parties GE HealthCare and Precision Healthcare should

be substituted in place of Defendants in light of the transfer of all patent assets and rights,

including the '439 patent and the other patents relevant to this litigation, to Precision

Healthcare pursuant to the Contribution Agreement and the spinoff of Precision Healthcare

from GE to GE HealthCare.  In their motion, Defendants acknowledged that GE lacked standing

to assert the patent infringement counterclaim and that it cannot cure this defect.  It

nevertheless argued that Precision Healthcare should be permitted to assert the claim in this

action for the purpose of avoiding a separate lawsuit and starting discovery from scratch.

After reviewing the parties' somewhat harried motions, the Court was left with more

questions than answers.  The parties agreed that GE could not assert its counterclaim, but were

silent as to whether Spectrum had standing to assert all of its claims in light of the fact that GE

did not own the patents at issue in those claims.  GE also reasonably suggested that Precision

Healthcare should be permitted to assert the counterclaim, but did not suggest a procedural

mechanism for it to do so.  Nor was it clear to the Court whether GE or any other Defendants

should remain in the case for the purpose of defending against Spectrum's breach of contract

claim.  Accordingly, the Court scheduled an oral argument with the parties and directed the

parties to be prepared to answer questions including whether GE is a necessary party for

purposes of Spectrum's breach of contract claim; why substitution under Rule 25, as opposed

to mandatory joinder, is the proper procedure to bring in the proposed new defendants; and

whether Spectrum's claims regarding the '731 patent and for declaratory judgment as to the

'439 patent should also be dismissed for lack of standing.

The Court held the oral argument on October 3, 2023.  At the oral argument,

Defendants argued for the first time that Precision Healthcare should be allowed to substitute

for GE as counterclaim plaintiff under Federal Rule of Civil Procedure 17(a)(3).  Spectrum raised

concerns with this proposal and argued that GE should remain a defendant in the case because

it signed the Nondisclosure Agreement ("NDA") at issue in Spectrum's breach of contract claim.

The parties discussed that GE is not the named signatory to the NDA, but that this was a clerical

error.  The Court directed the parties to meet and confer regarding the issues raised at the oral

argument and to try to reach a mutual resolution that would permit the parties to save as many

claims as possible and avoid the filing of a separate lawsuit.

On October 17, 2023, the parties filed a joint letter stating that they had conferred and

agreed that: (1) the Court must dismiss GE's counterclaim for alleged infringement of the '439

patent for lack of standing; and (2) the Court should substitute GE HealthCare and Precision

Healthcare for the currently named defendants, with the substitute parties stipulating (i) to

accept liability, if any, on behalf of the currently named defendants; (ii) not to raise any

argument based on the NDA not properly listing GE as a signatory; and (iii) not to seek damages

for infringement of the '439 patent prior to August 31, 2023.  (ECF No. 775, "Joint Letter".)  The

parties disagree as to whether Precision Healthcare may bring a counterclaim for infringement of the '439 patent and, if not, whether the Court must dismiss Spectrum's claims as to the '731 patent and its counter-counterclaims for declaratory judgment regarding the '439 patent – all brought at a time when GE did not own the '439 or '731 patents.

## LEGAL STANDARDS

### 1. Article III Standing

Article III of the United States Constitution limits the "judicial Power" of the United States—and thus the jurisdiction of the federal courts—to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  An essential element of this jurisdictional limit is that "the party seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."  *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).  To establish standing to sue, a party must demonstrate (1) that it has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent," (2) that the injury is "fairly ... trace[able]" to the defendant's conduct, as opposed to the action of an absent third party; and (3) that it is likely that a favorable judgment will redress the plaintiff's injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).  If the party lacks standing to assert a claim, the court lacks jurisdiction to hear it.

"The jurisdiction of the court depends upon the state of things at the time of the action brought."  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (citation omitted).  Accordingly, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."  *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).  However, when a plaintiff voluntarily amends the complaint, courts look to the

allegations in the amended complaint to determine jurisdiction.  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007).

In the patent context, a party asserting infringement "'must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (citation omitted).

Dismissal for lack of Article III standing "must be without prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016).  This is because, without jurisdiction to consider the claim, the court lacks the power to adjudicate the merits of the case.  *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

### 2. Substitution Pursuant to Rule 17(a)(3)

Federal Rule of Civil Procedure 17 mandates that a lawsuit be "prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The "real party in interest" principle embodied in Rule 17 ensures that only "a person who possesses the right to enforce [a] claim and who has a significant interest in the litigation" can bring the claim.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 420-21 (2d Cir. 2015) (citation omitted).  This rule "protect[s] the defendant against a subsequent action by the party actually entitled to recover, and [] insure[s] generally that the judgment will have its proper effect as res judicata." *Id.* (citation omitted).

Rule 17(a)(3) provides that the court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).  The Rule provides that after substitution, "the action proceeds as if it had been

originally commenced by the real party in interest." *Id.* This provision serves "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *Cortlandt*, 790 F.3d at 421 (citing 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1555 (3d ed. 2014)). The provision codifies the modern "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." *Id.*

Substitution under Rule 17(a)(3) "should be liberally allowed when the change is merely formal" and does not alter the operative factual allegations. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). Courts should grant leave to substitute if "(1) the defect in the named plaintiffs plausibly resulted from mistake ('mistake' prong), and (2) correcting this defect would not unfairly prejudice defendants by changing the particulars of the claims against them ('prejudice' prong)." *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 464946, at * 10 (S.D.N.Y. Feb. 25, 2009) (*citing Advanced Magnetics*, 106 F.3d at 20-21); *see also Park B. Smith, Inc. v. CHR Industries Inc.*, 811 F. Supp. 2d 766 (S.D.N.Y. 2011) ("[C]ourts in the Second Circuit have generally allowed for substitution when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action."). A mistake is considered plausible "absent evidence of bad faith or intent to deceive," and an attorney's ignorance, incompetence, or lack of diligence is not evidence of bad faith. *Wiwa*, 2009 WL 464946, at * 10. The focus of the "prejudice" prong is whether the defendant had sufficient notice of the claims against it. *Id.*

**3.   Substitution Pursuant to Federal Rule of Civil Procedure 25(c)**

Whereas Rule 17(a) applies to situations where the wrong party initiates a claim, Rule

25(c) governs the substitution of parties when an interest is transferred during the pendency of

the lawsuit.  The Rule provides:  "If an interest is transferred, the action may be continued by or

against the original party unless the court, on motion, orders the transferee to be substituted in

the action or joined with the original party."  Fed. R. Civ. P. 25(c).  "Rule 25(c) substitution is a

procedural mechanism designed to facilitate the continuation of an action when an interest in a

lawsuit is transferred and does not affect the substantive rights of the parties."  *Travelers Ins.*

*Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 164 (S.D.N.Y. 1995).  "Substitution of a successor

in interest ... under Rule 25(c) is generally within the sound discretion of the trial court."

*Organic Cow, LLC v. Ctr. for New Eng. Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003).

The "primary consideration in deciding a motion pursuant to Rule 25(c) is whether

substitution will expedite and simplify the action."  *Banyai v. Mazur*, 2009 WL 3754198, at *3

(S.D.N.Y. Nov. 5, 2009).  Courts "frequently grant substitution where a party has fully

transferred its interest to another person or entity."  *U.S. Sec. & Exch. Comm'n v. Collector's*

*Coffee Inc.*, 451 F. Supp. 3d 294, 297-98 (S.D.N.Y. 2020) (collecting cases).  After substitution

pursuant to Rule 25(c), "[t]he merits of the case . . . are still determined with respect to the

original parties."  *Id.* (citation omitted).

**APPLICATION**

1. **Substitution of Defendants**

   a. **Defendants' Motion to Substitute Pursuant to Rule 25(c)**

When Spectrum initiated this action, the GE entities named as Defendants were the proper parties, but as a result of the GE spin-off and Contribution Agreement, the relevant interests have since been transferred from Defendants to Precision Healthcare and GE HealthCare.  As a result of the transfer of interests, the parties now agree that from a practical perspective, Precision Healthcare and GE HealthCare should be substituted as defendants. (Joint Letter at 1.)  This can be accomplished through Rule 25(c), which provides for substitution after the transfer of interests during the pendency of a litigation.

Spectrum previously argued that the Court should reject Defendants' motion to substitute defendants because Spectrum's affirmative claims could continue against the current Defendants, and it asserted that the only reason for the requested substitution was to allow Precision Healthcare to file a counterclaim.  However, after the parties' meet-and-confer, and in light of the stipulation by the substitute defendants that they will accept liability, if any, on behalf of the currently named defendants, Spectrum has withdrawn this argument.  (Joint Letter at 1.)  In any event, whether or not Spectrum objects, I find that substitution is appropriate here in order to ensure that any judgment reached in this case will name the correct defendants and to serve judicial efficiency.  *See In re Rates - Viper Pat. Litig.*, 2011 WL 856261, at *1 (S.D.N.Y. Mar. 10, 2011) (finding that because the proposed party to be substituted had assumed responsibility for the defendant's liability arising from the lawsuit,

substitution was in the interest of judicial efficiency, continuity, and adjudication on the merits).

Accordingly, Defendants' motion to substitute is granted to the extent it requests that Precision Healthcare and GE HealthCare be substituted as the defendants in this action as named in the operative complaint.  The substitution is granted pursuant to the stipulation that the substitute defendants will accept liability, if any, on behalf of Defendants; will not raise any argument based on the NDA improperly naming the wrong entity; and will not seek damages for infringement of the '439 patent prior to August 31, 2023.

### b. Substitution of Precision Healthcare as Counterclaim Plaintiff

A bigger sticking point between the parties is whether Precision Healthcare can be substituted in place of GE as to GE's infringement counterclaim regarding the '439 patent. There is no dispute that when GE filed the counterclaim, it was not the real party in interest as to the counterclaim and it lacked Article III standing to assert the counterclaim.  Rather, its then-wholly owned subsidiary was the owner.  Spectrum correctly notes that Rule 25(c) cannot be used to save this claim, because when parties are substituted under Rule 25(c), the merits of the case are determined based on the originally named parties.  *U.S. Sec. & Exch. Comm'n*, 451 F. Supp. 3d at 298.  In other words, a party that is substituted in under Rule 25(c) cannot assert its own substantive rights but can only assert those claims of the original party.  *Mars, Inc. v. JCM Am. Corp.*, 2008 WL 5401604, *3 (D.N.J. Dec. 23, 2008) (dismissing the plaintiff's claim for lack of standing where the plaintiff had transferred its ownership interest in the patent to another party before filing suit and holding that the substitution of the current patent owner under Rule 25(c) did not cure the standing defect); *see also Zest IP Holdings, LLC v. Implant*

*Direct Mfg, LLC*, 2013 WL 5674834, *3-6 (S.D. Cal. Oct. 16, 2013) ("[A]s the successor in interest, IDSI cannot two years into the litigation assert its own claims and defenses as to the original complaint.")

However, Rule 17 provides an appropriate procedural mechanism to allow Precision Healthcare to step in and assert the counterclaim, and indeed the Rule is designed for just this type of situation.  This is because at the time GE brought its infringement claim, it mistakenly believed that it was the real party in interest, but has subsequently discovered that it is not the real party in interest as to this claim.  Rule 17(a)(3) allows Precision Healthcare, which was a GE subsidiary at the time GE's counterclaim was brought and is now a subsidiary of GE HealthCare and has always been the real party in interest, to substitute into the action as counterclaim plaintiff.

Although the precise issue before the court is quite unusual, this is not the first time that courts in this Circuit have permitted substitution under Rule 17(a)(3) to allow the correct party in interest to step in to assert a patent infringement claim that was initially brought by the incorrect party who lacked standing to assert the claim.  Defendants point to *Park B. Smith*, 811 F. Supp. 2d 766, as analogous and instructive.  There, the plaintiff, PBS Inc., asserted claims for patent infringement against CHF alleging that CHF infringed on two of PBS Inc.'s patents.  *Id.* at 771.  CHF answered PBS Inc.'s complaint and asserted counterclaims seeking declaratory judgment of noninfringement and invalidity of the patents.  After discovery closed and summary judgment was fully briefed, it was discovered that PBS Inc. was not the assignee and owner of the patents.  *Id.*  Rather, the patents were assigned to PBS Ltd., a sister company of PBS Inc.  Although PBS Inc. was listed as the assignee on the face of the patents, this was

apparently a clerical error, and other documents revealed that PBS Ltd. was the assignee.  *Id.*
After this issue came to light, CHF moved to dismiss PBS Inc.'s complaint for lack of standing.
PBS Inc. then moved pursuant to Rule 17(a)(3) to substitute PBS Ltd. as plaintiff.  The court
permitted the substitution, finding that PBS Ltd. was the real party in interest as to the
infringement claims; that the defect in the named plaintiff was due to the mistaken belief that
PBS Inc. was the owner of the patents, and that CHF would not suffer unfair prejudice as a
result of the substitution because it had been on notice of the claims since the suit was filed.
*Id.* at 773-75.

The court recognized CHF's argument that a plaintiff in a patent infringement suit may
not cure a jurisdictional defect in standing by adding a party with standing or through
retroactive assignment of the patents-in-suit, but reasoned that "it does not follow . . . that a
standing defect may not be cured through substitution of the plaintiff under Rule 17(a)(3)."  *Id.*
at 773.  "To the contrary," the court explained, "courts in the Second Circuit have generally
allowed for substitution when a mistake has been made as to the person entitled to bring suit
and such substitution will not alter the substance of the action."  *Id.* (collecting cases).  The
court recognized that the alternative to allowing substitution would be dismissal of the action
without prejudice, and that PBS Ltd. would "then file suit in its own name and the parties would
soon be back in the same place."  *Id.*  The court observed that "allowing substitution 'is the
wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense
of requiring an action to be started anew where a substitution is desired though the subject
matter of the actions remains identical.'"  *Id.* (citation omitted).  The court also denied CHF's
motion to dismiss the complaint for lack of standing as moot.  *Id.* at 779.

Like the plaintiff in *Park B. Smith*, GE asserted a claim for patent infringement based on the mistaken belief that it owned the patent at the time the claim was asserted.  To be sure, GE's failure to recognize that it had just recently transferred its rights to the patents at issue is a significant mistake that reflects a lack of diligence on behalf of GE and its counsel.  That said, such mistakes do happen, and Plaintiffs have pointed to no evidence of bad faith or intent to deceive by GE or its counsel.  *See Wiwa*, 2009 WL 464946, at *10 (mistake is plausible absent evidence of bad faith or intent to deceive).[4]  Additionally, as in *Park B. Smith*, substituting in the real party in interest – Precision Healthcare – will be a formal change that will not require new substantive allegations.  Correcting this defect would not unfairly prejudice Spectrum because Spectrum has been on notice of the counterclaim — which is in essence a defense to Spectrum's affirmative claims concerning the same patent — for years and, indeed, actively litigated against it.  Spectrum's argument that it will be prejudiced by burdensome additional discovery is unpersuasive, because Spectrum has not pointed to any meaningfully burdensome additional discovery that it would be required to take in the event substitution is granted.  Accordingly, both the "mistake" prong and "prejudice" prong are satisfied here.

One distinction between this case and *Park B. Smith* is that here, the relevant claim is asserted as a counterclaim.  However, this distinction is insignificant because Rule 17 applies with equal effect to counterclaims.  *See, e.g.*, *F. H. Krear & Co. v. 19 Named Trustees*, 90 F.R.D.

---

[4] Spectrum notes that in *Park B. Smith*, the plaintiff relied on a clerical error by the U.S. Patent and Trademark Office that indicated that it owned the asserted patent when in fact its sister company owned the patent, and argues that because GE cannot similarly point to a clerical error, it should not be permitted to rely on *Park B. Smith*.  (Joint Letter at 3.)  This argument is unpersuasive.  While the *Park B. Smith* plaintiff relied on a clerical error, reliance on a clerical error is not necessary to satisfy the mistake prong.  The party seeking substitution need only plausibly assert that a mistake has been made as to the person entitled to bring the claim.  Defendants' lack of diligence in appreciating the impact of the contemplated spin-off on this litigation constitutes a plausible mistake.

102, 104 (S.D.N.Y. 1981) (permitting real party in interest as to certain counterclaims to join the action as counterclaim plaintiff under Rule 17(a)(3)); *Forza Techs., LLC v. Premier Rsch. Labs, LP*, 2013 WL 6355383, at *4 (N.D. Ill. Dec. 5, 2013) (permitting real party in interest as to a counterclaim to substitute in under Rule 17(a)(3)).

Spectrum raises several arguments as to why the Court should decline to follow *Park B. Smith*. First, Spectrum argues that *Park B. Smith* and Rule 17 do not address whether a substituted party "may bring a new claim at the eleventh hour," as opposed to "stepping into the shoes of a predecessor party." (Joint Letter at 2). While this may be so, *Park B. Smith* and Rule 17 address the precise issue that is present here, which is whether a substituted party can step in to assert a claim that the original plaintiff (or counterclaim plaintiff) lacked standing to assert. The answer to that question is yes, provided the "mistake" prong and "prejudice" prong are satisfied.

Spectrum also argues that *Park B. Smith* "directly contradicts binding precedent." (Joint Letter at 2.) Spectrum points to three cases that purportedly contradict *Park B. Smith*: (i) *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889 (2d Cir. 1983); (ii) *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005); and (iii) *ProPat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007). However, these cases do not contradict *Park B. Smith*.

To start, *Pressroom Unions* is an ERISA case in which the original plaintiff – an ERISA fund – was found to be an improper plaintiff that was not authorized by ERISA to bring suit, as the relevant provision only permitted a "participant, beneficiary, or fiduciary" to bring suit. 700 F.2d at 893. At the time *Pressroom Unions* was decided, this was considered to be a standing

issue that deprived the court of Article III jurisdiction, although the Supreme Court has since

clarified that this is not a jurisdictional issue, but simply a question of whether the particular

plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control

Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).  The *Pressroom Unions* court affirmed the

district court's dismissal of the case for lack of standing and its denial of the Fund's attempt to

substitute in the ERISA plan participants as plaintiffs pursuant to 28 U.S.C. § 1653, which

provides that defective allegations of jurisdiction may be amended.  700 F.2d at 893-94.  The

court explained that while 28 U.S.C. § 1653 permitted the amendment of defective *allegations*

of jurisdiction, defective jurisdiction could not be amended away if it is lacking at the inception

of a lawsuit.  *Id.* at 893.  In a footnote, the court also noted that Rule 17 was not applicable

because it was not a case where the wrong party was mistakenly named; rather, the fund was

attempting to add entirely different plaintiffs who would assert new claims in an effort to save

a lawsuit that the fund was not authorized to bring and over which the court lacked jurisdiction.

As such, *Pressroom Unions* is distinguishable because it did not deal with a situation where the

"mistake" and "prejudice" prongs of Rule 17(a) were met.

Additionally, *Pressroom Union*'s discussion of Rule 17 – relegated to a footnote – was

dicta, and the Second Circuit has since recognized that "the jurisdiction-at-commencement rule

is not absolute."  *Cortlandt*, 790 F.3d at 426 (Sack, J. concurring).  In *Cortlandt*, the Second

Circuit noted that the question of whether a plaintiff may use Rule 17(a)(3) to remedy a

standing deficiency when it lacked standing as to all of its claims was "an issue of first

impression" before the court, and it declined to resolve the question because the plaintiff had

not met the "mistake" or "prejudice" prongs, and thus could not rely on Rule 17(a)(3).  *Id.* at

423-24.  The court in *Cortland* cited positively to *Park B. Smith* and distinguished that case as one in which the mistake and prejudice prongs were satisfied.  *Id.* at 424.  The Honorable Robert D. Sack, who authored both the opinion and a separate concurrence, praised *Park B. Smith* in the concurrence for taking the "pragmatic approach" and recognizing that substitution was "the wiser answer" to dismissal.  *Id.* at 425 (Sack, J. concurring).

Also, significantly, the concern in *Pressroom Union* was that the court was completely lacking in jurisdiction over the case in its entirety and, accordingly, there was essentially no lawsuit pending for the real party in interest to be substituted into.  Here, by contrast, the Court has jurisdiction over Spectrum's complaint and Precision Healthcare is properly substituted as the defendant named in Spectrum's complaint.  It would be a bizarre and unjust outcome to allow Spectrum to continue to assert its claims against Precision Healthcare but prevent Precision Healthcare from asserting a counterclaim against Spectrum on the same patent that is the subject of an affirmative claim merely because the counterclaim was initially raised in this litigation by GE.  As Judge Sack opined in *Cortland*: "Of course, jurisdictional requirements imposed by the Constitution cannot be cast aside because they are onerous or . . . unduly technical.  But here the concerns animating a constitutional principle are absent, so it seems to me that practical considerations may ultimately prevail."  790 F.3d at 427 (Sack, J. concurring).  Indeed, permitting Precision Healthcare to step in as counterclaim plaintiff would not offend the constitution, and would save the parties from the burden of litigating the infringement counterclaim in an entirely separate lawsuit.

As for *Schreiber Foods* and *ProPat Int'l Corp.*, which Spectrum also points to as contradicting *Park B. Smith*, these cases did not consider Rule 17 and are distinguishable on

that basis.  The court in *Schreiber Foods* also recognized that "[i]n cases where the plaintiff lacked initial standing or the case suffered from some other jurisdictional defect at the time suit is commenced, the Supreme Court's cases are less than clear as to whether and how a jurisdictional defect can be remedied in the course of litigation."  402 F.3d at 1203 (Fed. Cir. 2005) (reversing the district court's dismissal for lack of standing where the jurisdictional defect that had existed was "only temporary" and was cured before the entry of judgment).

Finally, Spectrum argues that Defendants forfeited their Rule 17 argument by failing to raise it until the oral argument.  It is true that arguments first raised at oral argument *may* be considered forfeited.  *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 453 n.106 (S.D.N.Y. 2022). However, the Court is not prohibited from considering the argument merely because it was raised late, and the Court provided Spectrum with time to consider the argument after it was raised and to file a letter addressing the argument, which Spectrum has done.  This Court is not inclined to reject Defendants' argument on formalist grounds when doing so would be dispositive of the infringement claim and would likely result in that claim being asserted in an entirely new lawsuit, which would be, quite frankly, a waste of the Court's and parties' time and resources given that the claim has been nearly fully litigated in this action.  Application of Rule 17 here would favor the rule's purpose to avoid injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought, and is the pragmatic outcome.

At bottom, Spectrum is attempting to use the rules of federal procedure as a sword and a shield.  That is, Spectrum wants to continue to assert all of its claims regardless of the standing deficiencies present in certain of those claims when they were filed against GE, but it

also wants to avoid the burden of defending itself against a related counterclaim because of the same standing deficiency.  But Spectrum cannot have its cake and eat it too, because Rule 17(a) provides a common-sense mechanism by which Precision Healthcare may be substituted as the counterclaim plaintiff in asserting the infringement counterclaim as to the '439 patent against Spectrum.  As was the case in *Park B. Smith*, the parties may amend the pleadings so as to name the correct substituted parties in place of the existing Defendants and Counterclaim Plaintiff.

### 2.  Motion to Dismiss

The parties agree that GE lacked (and lacks) standing to assert its counterclaim for infringement of the '439 patent.  Typically, lack of standing mandates dismissal of a claim without prejudice.  *Carter,* 822 F.3d at 54-55; *see also Abraxis Bioscience*, 625 F.3d at 1368 (instructing district court to dismiss infringement complaint without prejudice for lack of standing).

However, consistent with *Park B. Smith*, the substitution of Precision Healthcare into this action as counterclaim plaintiff resolves the standing defect and renders the motion to dismiss for lack of standing moot.  811 F. Supp. 2d at 775.  Accordingly, I respectfully recommend that the Court terminate as moot Spectrum's motion to dismiss the infringement counterclaim.  Similarly, the questions raised by Defendants as to whether Spectrum lacked standing to assert its claims as to the '731 patent and its declaratory judgment counter-counterclaims are also moot in light of the substitution of Precision Healthcare and GE HealthCare into this case.

3. **Motion for Attorneys' Fees**

35 U.S.C. § 285 provides that the court "in exceptional cases may award reasonable attorney[s'] fees to the prevailing party." An "exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness*, 572 U.S. 545, 554 (2014). In its discretion, the district court determines the exceptional nature of a case on a case by-case basis, "considering the totality of the circumstances." *Id*. Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation omitted); *see also Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 130 (S.D.N.Y. 2019) (considering these factors to determine the case was not "exceptional" pursuant to 35 U.S.C. § 285).

Spectrum argues that it incurred significant attorneys' fees in defending against GE's infringement counterclaim, which GE never had standing to bring. Spectrum also argues that the counterclaim was retaliatory, as evidenced by the fact that Defendants' expert calculated low monetary damages for the counterclaims. (ECF No. 712 at 8-9.)

Defendants counter that GE "made an honest mistake" in bringing the counterclaim and blame the oversight on the "unprecedented" nature of the spin-off in Defendants' history as well as Spectrum's insistence on confidentiality of the pleadings in this case. (ECF No. 724 at 12.) Defendants note that at the time the counterclaim was filed, Precision Healthcare was a subsidiary of GE rather than an unrelated entity, and if Defendants had realized the issue

sooner, Precision Healthcare would have asserted the claim in the first instance and Spectrum would have incurred the same fees in litigating the claim.  (*Id.*)  Defendants also note that the low amount of damages identified in their expert report is irrelevant because the counterclaim seeks injunctive relief, which Defendants assert would be highly valuable to them.

Although Defendants undoubtedly should have recognized the standing defect sooner, this is not the "exceptional" case warranting an award of fees.  The Court has no reason to doubt that at the time GE filed the counterclaim, it believed it had standing to do so, and its failure to discover the standing defect was an "honest mistake."  Notwithstanding the then-undiscovered standing defect, the counterclaim was not frivolous or unreasonable and the record does not reflect that it was the result of abusive tactics or gamesmanship.  *See Kozak*, 371 F. Supp. 3d at 134 (denying fee award where the non-prevailing party's conduct was not "abusive").

Accordingly, I respectfully recommend that Spectrum's request for attorneys' fees pursuant to 35 U.S.C. § 285 be denied.

## <u>CONCLUSION</u>

For the above reasons, Precision Healthcare and GE HealthCare are substituted as Defendants and Precision Healthcare is substituted as the counterclaim plaintiff in this action. The parties shall file amended pleadings representing these changes to the named parties by **Monday, November 6, 2023**.  The only changes to the pleadings should be to reflect the change in parties.  The parties should coordinate to file the amended complaint first, followed by the answer(s) asserting counterclaims, followed by the answer asserting counter-counterclaims.

Case 1:18-cv-11386-VSB-KHP   Document 778   Filed 10/30/23   Page 23 of 23

In light of the substitution of parties, I respectfully recommend that Spectrum's motion to dismiss be DENIED as moot. I also respectfully recommend that Spectrum's request for attorneys' fees be DENIED.

**The Clerk of the Court is respectfully directed to terminate the motion to substitute at ECF No. 714.**

Dated: October 26, 2023
     New York, NY                    Respectfully submitted,

*Katharine H. Parker*
KATHARINE H. PARKER,
United States Magistrate Judge

**<u>NOTICE</u>**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2). If any party files written objections to this Report and Recommendation, the other party shall have fourteen days to serve and file a response. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**