**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SPECTRUM DYNAMICS MEDICAL
LIMITED,

                Plaintiff,

      v.

GE HEALTHCARE TECHNOLOGIES, INC.,
and GE PRECISION HEALTHCARE LLC,

                Defendants.

Case No.:  18-cv-11386 (VSB) (KHP)

**DEFENDANTS' RESPONSE IN OPPOSITION TO SPECTRUM'S OBJECTIONS TO**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION TO**
**DISMISS AND OPINION AND ORDER ON MOTION TO SUBSTITUTE**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND......................................... 3

    A.  The Parties' Relevant Pleadings .................................................................. 3

    B.  The '439 Patent Is Transferred Unbeknownst to Defendants' Counsel ................ 3

    C.  Defendants' Counsel Discover that the '439 Patent Was Transferred and Immediately Alert Spectrum ....................................................................... 5

    D.  The Hearing on the Parties' Motions ................................................................ 6

III.  ARGUMENT ................................................................................................... 9

    A.  Standard of Review........................................................................................ 9

    B.  Defendants Did Not Waive or Forfeit Their Rule 17 Arguments.......................... 11

    C.  The Magistrate's Opinion and Order Did Not "Cure" Standing as to GE's Counterclaim................................................................................................. 14

    D.  The Opinion and Order Correctly Determined That the "Mistake" and "No Prejudice" Prongs of Rule 17(a)(3) Are Met ....................................................... 20

    E.  Spectrum Seeks to Use the Procedural Rules as Sword and Shield .................... 23

IV.  CONCLUSION.............................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)......................................................................2, 15, 19, 20

*Anderson v. Bessemer City*,
470 U.S. 564 (1985)..................................................................................................10

*In re Application of Evenstar Master Fund SPC*,
No. 20-MC-418 (CS) (JCM), 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021) .........11

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................................................................23, 24, 25

*Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New York/North
Carolina/Virginia/ Vermont, LLC v. Vermont Pub. Util. Comm'n*,
No. 5:17-cv-161, 2018 WL 11469522 (D. Vt. Sept. 20, 2018) ...............................13

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015)........................................................................18, 19, 20

*Day v. McDonough*,
547 U.S. 198 (2006)..................................................................................................13

*Easley v. Cromartie*,
532 U.S. 234 (2001)..................................................................................................10

*Fabrikant v. French*,
691 F.3d 193 (2d Cir. 2012)......................................................................................13

*Fielding v. Tollaksen*,
510 F.3d 175 (2d Cir. 2007)......................................................................................10

*Gass v. Target*,
No. 22-CV-01152 (ARR) (JMW), 2023 WL 2919414
(E.D.N.Y. Mar. 24, 2023) .........................................................................................10

*Giuffre v. Andrew*,
579 F. Supp. 3d 429 (S.D.N.Y. 2022)..................................................................12, 13

*Goldberg v. UBS AG*,
690 F. Supp. 92 (E.D.N.Y. 2010) .............................................................................13

*Grand River Enters. Six Nations, Ltd. v. King*,
No. 02 Civ. 5068 (JFK), 2009 WL 1360686 (S.D.N.Y. May 15, 2009) .................11

*King Pharms., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010)........................................................................................24

*Kontrick v. Ryan*,
   540 U.S. 443 (2004)........................................................................................................13

*Krumme v. Westpoint Stevens Inc.*,
   238 F.3d 133 (2d Cir. 2000)...........................................................................................13

*McGarr v. City of Peekskill*,
   975 F. Supp. 2d 377 (S.D.N.Y. 2013)...........................................................................13

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ..................................................................................13

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007).....................................................................................18

*NCUA Bd. v. HSBC Bank US, N.A.*,
   No. 15 Civ. 2144 (LGS), 2020 WL 91390 (S.D.N.Y. Jan. 8, 2020)...............................10, 11

*New York Times Co. v. U.S. FDA*,
   529 F. Supp. 3d 260 (S.D.N.Y. 2021)...........................................................................11

*Orion Elec. Co. v. Funai Elec. Co.*,
   No. 01 Civ. 3510 AGSJCF, 2001 WL 1506009 (S.D.N.Y. Nov. 26, 2001)...........................24

*Paradise Creations, Inc. v. UV Sales, Inc.*,
   315 F.3d 1304 (Fed. Cir. 2003)...............................................................................17, 18

*Park B. Smith, Inc. v. CHR Industries Inc.*,
   811 F. Supp. 2d 766 (S.D.N.Y. 2011)............................................................... *passim*

*Pianta v. H.M. Reich Co.*,
   77 F.2d 888 (2d Cir. 1935).............................................................................................18

*Pierce v. Rodriguez*,
   No. 3:20-CV-1755 (SVN), 2023 WL 2646825 (D. Conn. Mar. 27, 2023)...........................13

*Pressroom Unions-Printers League Income Sec. Fund v. Caont'l Assur. Co.*,
   700 F.2d 889 (2d Cir. 1983)...........................................................................................18

*Schreiber Foods v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005)...........................................................................15, 16, 17

*Stichting Ter Behartinging Van De Belangen Van Oudaandeelhouders in Het
   Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005)..............................................................................................18

*United States v. Barnes,*
   158 F.3d 662 (2d Cir. 1998)...............................................................................13

*United States v. Bennett,*
   839 F.3d 153 (2d Cir. 2016)...............................................................................13

*United States v. Campbell,*
   26 F.4th 860 (11th Cir. 2022) ............................................................................13

*United States v. Dantzler,*
   771 F.3d 137 (2d Cir. 2014)..........................................................................11, 12

*White v. First Am. Registry,*
   592 F. Supp. 2d 681 (S.D.N.Y. 2009) ...............................................................13

*Wood v. Milyard,*
   566 U.S. 463 (2012) ...........................................................................................13

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................10

28 U.S.C. § 636(b)(1)(B)–(C) ......................................................................................9

28 U.S.C. § 1332(a) ....................................................................................................20

28 U.S.C. § 1653 .........................................................................................................18

35 U.S.C. § 287(a) ......................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 17 ................................................................................................ *passim*

Fed. R. Civ. P. 17(a) ..............................................................................15, 16, 18, 20

Fed. R. Civ. P. 17(a)(3) ...................................................................................... *passim*

Fed. R. Civ. P. 25 .........................................................................................................8

Fed. R. Civ. P. 72(a) ..................................................................................................10

Fed. R. Civ. P. 72(b)(1) ................................................................................................9

Fed. R. Civ. P. 72(b)(3)................................................................................................9

# I.    INTRODUCTION

Magistrate Judge Parker correctly applied the leading case law in the Second Circuit interpreting Rule 17 and determined that Defendants General Electric Company ("GE"), GE Healthcare Inc., and GE Medical Systems Israel Ltd. (collectively, with GE, the "Defendants") should be substituted with GE HealthCare Technologies Inc. ("GEHC") and GE Precision Healthcare LLC ("Precision Healthcare").[1] She further determined, in accordance with the law in this Circuit that, because GE lacked standing to assert a claim for infringement of U.S. Patent No. 9,295,439 ("the '439 patent") when it filed its counterclaim, that claim could not continue, but Precision Healthcare, the present owner of the '439 patent, could assert its own substantively identical counterclaim. This outcome is permitted by the Federal Rules of Civil Procedure, as interpreted by the Second Circuit, poses no Constitutional issue, and is a commonsense resolution of a procedural misstep that has had no effect on the merits of this nearly five-year-old litigation.

Spectrum's objection to this outcome is rife with procedural inaccuracies and substantive misunderstandings about what transpired and what the Magistrate Judge ordered. For example, Spectrum wrongly argues that this Court's review is *de novo* because the Magistrate paired the non-dispositive Opinion and Order regarding substitution with a Report and Recommendation on Spectrum's dispositive motion to dismiss GE's counterclaim.[2] The law is clear, however, that non-dispositive decisions, like that on whether to substitute parties, are reviewed only for clear error or an outcome contrary to law. The Magistrate's Opinion and Order passes this relatively low bar.

---

[1] For purposes of this Response, GEHC and Precision Healthcare are referred to as "Substitute-Defendants."

[2] Magistrate Judge Parker issued a "Report and Recommendation on Motion to Dismiss and Opinion and Order on Motion to Substitute." (Doc. 778.) Defendants use "Opinion and Order" to refer to the Magistrate Judge's decision on Defendants' Motion to Substitute and "Report and Recommendation" to refer to the Magistrate Judge's recommendation on Plaintiff's Motion to Dismiss.

Next, Spectrum claims that Defendants waived or forfeited their arguments under Rule 17. But Defendants raised Rule 17 in response to questions that Magistrate Judge Parker asked before and during the October 3, 2023, hearing, as she searched for a workable and efficient solution to the issues posed by the transfer of the patents. Once Defendants had raised Rule 17, they did not waive reliance on this rule, instead continually pressing it as the solution that would allow Precision Healthcare to enter the case and assert infringement of the '439 patent so that the Court's and the parties' work to date on GE's infringement counterclaim would not be wasted.

Finally, Spectrum argues at length that the Opinion and Order "cured" an incurable defect in GE's standing. That is not what happened. GE's counterclaim is no longer part of this case. The Magistrate Judge correctly determined that, having substituted Precision Healthcare in place of GE, *Precision Healthcare* could assert its own counterclaim for infringement of the '439 patent. That Precision Healthcare's counterclaim is factually identical to GE's defective counterclaim does not mean that *GE's* counterclaim has been "salvaged." In fact, in accordance with *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.* (106 F.3d 11 (2d Cir. 1997)) and *Park B. Smith, Inc. v. CHR Industries Inc.* (811 F. Supp. 2d 766 (S.D.N.Y. 2011)), it is precisely because Precision Healthcare's counterclaim is substantively identical to GE's counterclaim that Rule 17 permits Precision Healthcare to assert its counterclaim here.

Ultimately, as Magistrate Judge Parker aptly observed, Spectrum seeks to use the procedural rules as sword and shield, to profit from a procedural misstep without bearing any of the downside. Spectrum asserted claims for declaratory judgment against *GE* based on GE's ownership of numerous patents. GE no longer owns those patents and, as such, there is no case and controversy to support the Court's exercise of declaratory judgment jurisdiction. Therefore, if

the Magistrate's Opinion and Order is reversed, then Spectrum's declaratory judgment claims should be dismissed for want of jurisdiction.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Parties' Relevant Pleadings

On December 6, 2018, Spectrum filed suit alleging that Defendants misappropriated Spectrum's proprietary information in developing a full-body medical imaging device and applying for and obtaining patents. (Doc. 2.) Spectrum filed its First Amended Complaint on May 15, 2019. (Doc. 38.) Spectrum's original complaint and its First Amended Complaint sought a declaratory judgment that over a dozen GE patents, including the '439 and '595 patents, are unenforceable due to alleged fraud on the United States Patent and Trademark Office ("USPTO"). (Doc. 38 at ¶¶ 639–60.) Defendants filed a motion to dismiss the First Amended Complaint (Doc. 52), which the Court granted in part and denied in part. (Doc. 73.) In July 2020, Defendants filed an answer; GE filed counterclaims against Spectrum alleging infringement of the '439 and '595 patents (Doc. 89); and Spectrum filed counter-counterclaims alleging that the asserted patents are not infringed, invalid, and unenforceable (Doc. 92). On March 23, 2021, GE voluntarily dismissed its counterclaim alleging infringement of the '595 patent. (Doc. 210.)

Earlier this year, after obtaining leave of court to amend, Spectrum filed a Second Amended Complaint. (Doc. 630.) Defendants filed an answer to the Second Amended Complaint; GE reasserted its counterclaim for infringement of the '439 patent (Doc. 642); and Spectrum reasserted its counter-counterclaims directed to the '439 patent (Doc. 652).

### B.    The '439 Patent Is Transferred Unbeknownst to Defendants' Counsel

While this case was pending, GE was contemplating a corporate restructuring whereby it would spin off certain business units into separate, publicly-traded entities. (Declaration of Robert M. Wawrzyn ("Wawrzyn Dec."), Doc. 716, ¶¶ 3–4.) As part of the plan, and in anticipation of

spinning off its healthcare business unit, GE formed wholly-owned subsidiary Precision Healthcare. (*Id.* ¶ 5.) GE and Precision Healthcare entered into an Asset Contribution and Assignment Agreement dated January 1, 2019 (the "Contribution Agreement"), transferring to Precision Healthcare assets used in connection with the healthcare business, including patent assets. (*Id.* ¶¶ 5–7 & Ex. 1 (definition of "Contributed Assets").) Among those patent assets are the '439 and '595 patents, as well as the other patents that are the subject of Spectrum's declaratory judgment claim for fraud on the USPTO. (*Id.* ¶¶ 5–7 & Exs. 1–2.) The patents are not expressly identified in the Contribution Agreement but are included in a catch-all provision described only as "intangible assets – net" in Schedule 1 to the Contribution Agreement. (*See id.* ¶ 6 & Ex. 1 at Sched. 1 & Ex. 2.) Thus, it is not clear on its face that the Contribution Agreement transferred rights in particular patents, but due to that agreement, as of January 2019, GE no longer owned the patents at issue in Spectrum's claims and GE's counterclaim. (*Id.* ¶ 9.) Instead, GE's then-wholly-owned subsidiary, Precision Healthcare, owned them. Although the restructuring began in 2019, it stalled for several years, and the spin-off was not completed until 2023. (*Id.* ¶ 3.)

Throughout the litigation, Spectrum has been reluctant to allow anyone to review the confidential pleadings and other filings in the case, with Spectrum only permitting a handful of Defendants' attorneys to access such filings, which include the First and Second Amended Complaints, both of which were filed under seal. (*See* Declaration of Marla Butler ("Butler Dec."), Doc. 725, ¶ 2 & Exs. A–D.) Because GE's counterclaims were asserted in the same documents as Defendants' Answers to the First and Second Amended Complaints, the only in-house attorneys who were able to view these documents in their entirety were those whom Spectrum had approved to view the First and Second Amended Complaints. One of those attorneys is no longer employed by Defendants. The other, Dan Guiser, has indicated that he was unaware of the transfer of the

'439 and '595 patents and reasonably believed that GE owned all rights in both patents. (*See* Guiser Dec., Doc. 726, ¶¶ 5–7.) Details regarding the spin-off were not widely circulated within GE, and Guiser was not aware that the Contribution Agreement had effectuated an asset transfer to Precision Healthcare of the patents at issue in this case. (*See id.* ¶ 5.) And because Defendants' attorneys were not aware that the transfer had occurred, the counterclaim asserted in response to the Second Amended Complaint included the same allegations regarding GE's ownership of the patents. Indeed, it was counsel's later inquiry into how the patent assets would be affected by the spin-off—an inquiry motivated by a desire to ensure that the proper entities are parties to this lawsuit—that led to the discovery that the assets had been transferred back in January 2019.

### C. Defendants' Counsel Discover that the '439 Patent Was Transferred and Immediately Alert Spectrum

In June 2023, GE's internal and external counsel were investigating whether and to what extent GE HealthCare might need to be substituted or added to the present litigation since the spin-off had been completed. During this investigation, they discovered that the '439 and '595 patents had been transferred to Precision Healthcare in January 2019. (Guiser Dec., Doc. 726, ¶ 6; *see also* Doc. 758 at 13:7–13 ("[I]t was not discovered until June of 2023 that this transaction had happened.").) GE's internal and external counsel investigated the implications of this assignment, including its implications on standing. As soon as they determined that GE had transferred the rights to the '439 and '595 patents to Precision Healthcare and that GE did not have standing at the time it asserted its patent infringement counterclaims, Defendants' outside counsel sent Spectrum's counsel a June 30, 2023 letter informing them of the discovery, acknowledging that GE lacked standing to assert its counterclaim, and proposing the following practical resolution:

> To remedy this situation with the least disruption to this 4 ½-year-old lawsuit, we plan to file a motion with the Court seeking permission to dismiss General Electric Company's counterclaim as to the '439 patent, substitute GE HealthCare and Precision Healthcare for General Electric Company, GE Healthcare Inc., and GE

Medical Systems Israel Ltd. as the defendants in this case, and reassert the '439 patent with Precision HealthCare as counterclaim-plaintiff.

(Doc. 712-3 at 1.)

Just before noon on July 13, 2023, Spectrum responded to Defendants' proposal with a lengthy email demanding that counsel confirm, "by the close of business today, July 13th, that GE will dismiss its counterclaim with prejudice and that Precision Healthcare will ***not*** pursue a counterclaim." (Butler Dec., Doc. 725, ¶ 4 & Ex. E (emphasis in original).) Hours later, Spectrum filed its Motion to Dismiss preemptively opposing substitution of Defendants and requesting an award of attorneys' fees. (Doc. 711, 712.) Shortly thereafter, Defendants filed their Motion to Substitute (Doc. 714, 715). The parties fully briefed both motions. (*See* Docs. 723–724, 730, 733.)

On August 11, 2023, Spectrum's Motion to Dismiss was referred to Magistrate Judge Parker for Report and Recommendation. (Doc. 739.) Importantly, no such referral was issued with regard to Defendants' Motion to Substitute.

### D.    The Hearing on the Parties' Motions

Contrary to Spectrum's assertions in its Objections, the Court did not hold "a hearing on the parties' motions" on August 22, 2023. (Doc. 817 at 3.) Instead, the Court held a regularly-scheduled discovery conference or case management conference. (*See* Doc. 752, 758.) Magistrate Judge Parker has made clear that such conferences are "not intended to be an oral argument or hearing on any motion." (Doc. 721 at 2.) At most, Magistrate Judge Parker asked a handful of clarifying questions about the Motion to Dismiss and Motion to Substitute during the discovery conference. (*See* Doc. 758 at 21:25–27:8.) She did not invite general argument on these motions.

On September 13, 2023, Magistrate Judge Parker issued an Order scheduling a hearing on the Motion to Dismiss and Motion to Substitute for October 3, 2023. (Doc. 767.) The order

provided a list of six bulleted questions that the parties "should be prepared to answer" at the upcoming hearing. (*Id.* at 1.) These questions included:

- "Why is substitution, as opposed to mandatory joinder, the proper procedure to bring in the proposed new defendants?"

- "Insofar as Spectrum's claims regarding the '731 patent and for declaratory judgment/invalidity of the '439 patent were brought after the existing defendants purportedly transferred all rights in the patents, should those claims be dismissed for lack of standing?"

(*Id.* at 1–2.)

In compliance with the Magistrate Judge's Order, Defendants prepared to address these questions on joinder and standing. This led them to Federal Rule of Civil Procedure 17(a)(3), which states:

> ***Joinder*** *of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, ***join***, or be substituted into the action. After ratification, ***joinder***, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3) (emphasis added).[3] It also led them to the case of *Park B. Smith, Inc. v. CHR Industries Inc.*, 811 F. Supp. 2d 766 (S.D.N.Y. 2011), which applied Rule 17(a)(3). And it led them to assess whether, if the Court dismissed GE's counterclaim and did not allow substitution, the Court would also need to dismiss some of Spectrum's claims and counter-counterclaims.

At the subsequent hearing on October 3, 2023, Magistrate Judge Parker explained that she had scheduled the hearing and given the parties a list of written questions because the issues were "much more complicated procedurally and factually than what was at first blush put into the briefs." (Doc. 770 at 35:5–8.) Rather than being limited by the parties' arguments in their briefs,

---

[3] As Spectrum itself now argues, "Rule 17 is a rule of joinder." (Doc. 817 at 13.)

she was in search of an efficient solution that would avoid wasting the Courts' and the parties' efforts to date. (*See id.* at 35:8–36:5.) She noted that Rule 25 "is not the perfect solution" to the parties' dispute. (Doc. 770 at 17:23–24; *id.* at 40:3–4 ("Rule 25 is not the answer.").)

Defendants responded that the perfect solution lay instead in Rule 17(a)(3) and the *Park B. Smith* case. (Doc. 770 at 17:25–18:3.) In the process of explaining these authorities to the Court, Defendants expressly stated: "[F]or purpose of making sure that the record is clear here, your Honor, I know we filed our motion under Rule 25, and on the record I will say that we will move under Rule 17, as well." (*Id.* at 19:3–6.) As Defendants also made clear, they were continuing to propose the same solution that they had "proposed from the beginning"—i.e., substitution of Defendants with Precision Healthcare asserting infringement of the '439 patent. (*Id.* at 21:2–3.) Defendants further argued that, "if this Court were going to dismiss the 439 patent counterclaim that General Electric Company brought, then it must also dismiss the 439 patent counter-counterclaim[ as well as] Spectrum's entire inequitable conduct claim" (i.e. fraud on the USPTO). (*Id.* at 14:23–17:9; *see also id.* at 21:4–11.)

At the conclusion of the hearing, Magistrate Judge Parker directed "the parties to meet and confer and see if you can agree that Rule 17, together maybe with Rule 25 can save all of the claims and get the right parties here so neither side has to lose any of their claims or counterclaim[s] or counter-counterclaims." (*Id.* at 39:18–24.) She also directed that the parties submit a letter by October 17, 2023. (*Id.* at 41:4–6.)

Between October 6 and 16, 2023, the parties met and conferred by telephone and email. (Doc. 775 at 1.) On October 17, 2023, they submitted a joint letter to Magistrate Judge Parker. There, the parties agreed that Defendants should be substituted with the Substitute-Defendants, GEHC and Precision Healthcare, and that GE's counterclaim for infringement of the '439 patent

should be dismissed. (*Id.*) They disagreed, however, over whether Precision Healthcare may assert a counterclaim for infringement of the '439 patent and, if not, whether the Court must dismiss Spectrum's claim for fraud on the USPTO. (*Id.*) Both sides briefed the applicability and effect of Rule 17 and the *Park B. Smith* case with Defendants continuing to press their argument that these authorities provided the best solution to the parties' dispute. (*Id.* at 2–5.)

On October 30, Magistrate Judge Parker issued her Report and Recommendation on Motion to Dismiss and Opinion and Order on Motion to Substitute. She issued an Opinion and Order granting Defendants' Motion to Substitute and issued a Report and Recommendation recommending that Spectrum's Motion to Dismiss be denied as moot and that its request for attorneys' fees be denied. (Doc 778 at 1.)

## III.    ARGUMENT

### A.    Standard of Review

Spectrum suggests that Magistrate Judge Parker's entire filing at Docket 778 is a report and recommendation subject to *de novo* review. (Doc. 817 at 5.) It is not. The filing is in two parts. In the first and largest part, Judge Parker issued an Opinion and Order on Defendants' Motion to Substitute. (*See* Doc. 778 at 11–20.) In the second part, she issued a Report and Recommendation on Spectrum's Motion to Dismiss. (*Id.* at 20–22.) Each of these parts is subject to a different standard of review.

Spectrum's Motion to Dismiss is dispositive and, as such, it was referred to Judge Parker for report and recommendation under Federal Rule of Civil Procedure 72(b)(1) and 28 U.S.C. § 636(b)(1)(B)–(C). (*See* Doc 739.) Judge Parker's Report and Recommendation on the Motion to Dismiss is subject to *de novo* review. Fed. R. Civ. P. 72(b)(3); U.S.C. § 636(b)(1)(C).

However, unlike Spectrum's Motion to Dismiss, Defendants' Motion to Substitute was ***not*** referred to Magistrate Judge Parker for report and recommendation. Instead, she concluded that it

was non-dispositive, such that she had the power to decide it under the District Court's general designation to her of non-dispositive, pretrial matters: "Because this motion to substitute is not dispositive of any claims or defenses, it falls within the scope of my authority under 28 U.S.C. § 636(b)(1)(A)." (Doc. 778 at 1 n.1 (citing *Grant v. Witherspoon*, 2020 WL 71052, at *1 (S.D.N.Y. Jan. 3, 2020).)[4]

Most of Spectrum's particularized objections are to conclusions within the Magistrate Judge's Opinion and Order deciding Defendants' Motion to Substitute. (*See*, *e.g.*, Doc. 817 at 9 (objecting to the Magistrate Judge's reliance on *Park B. Smith* on pages 13 to 20 of her Opinion and Order); *id.* at 11–13 (objecting to several conclusions on pages 17–20 of Magistrate Judge Parker's Opinion and Order).) Those conclusions are subject to more deferential review than the conclusions in Judge Parker's Report and Recommendation. A district court shall reverse a magistrate judge's non-dispositive order only where it has been shown that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" if the reviewing court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). "A ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *NCUA Bd.*, 2020 WL 91390, at *3 (internal quotation marks and citation omitted). "It

---

[4] Other cases from within the Second Circuit have similarly determined that motions to substitute are non-dispositive. *See*, *e.g.*, *Gass v. Target*, No. 22-CV-01152 (ARR) (JMW), 2023 WL 2919414, at *2 n.2 (E.D.N.Y. Mar. 24, 2023); *NCUA Bd. v. HSBC Bank US, N.A.*, No. 15 Civ. 2144 (LGS), 2020 WL 91390, at *2 (S.D.N.Y. Jan. 8, 2020). Here, Defendants' Motion to Substitute is effectively a motion for leave to amend the pleadings (to change the parties) in the face of Spectrum's Motion to Dismiss, and motions for leave to amend are quintessential non-dispositive motions. *See*, *e.g.*, *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("[A] district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for [a] decision.").

is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *Id.* (internal quotation marks and citation omitted). "A party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *In re Application of Evenstar Master Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283, at *1 (S.D.N.Y. Nov. 23, 2021) (internal quotation marks and citation omitted). Spectrum cannot meet that burden here.

### B.    Defendants Did Not Waive or Forfeit Their Rule 17 Arguments.

Spectrum first asserts that Defendants forfeited or waived their arguments based on Rule 17. Spectrum asserted only forfeiture, and not waiver, before Magistrate Judge Parker. (*See* Doc. 775 at 2 n.1.) Thus, Judge Parker did not address waiver.

The defense of waiver is itself waived when a "party opts to address an issue on the merits rather than assert a procedural argument that its opponent waived a claim or argument." *New York Times Co. v. U.S. FDA*, 529 F. Supp. 3d 260, 273 (S.D.N.Y. 2021) (collecting cases). Further:

> A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order.

*Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 WL 1360686, at *3 (S.D.N.Y. May 15, 2009) (quoting 14 James Wm. Moore et al., *Moore's Federal Practice* § 72.11[1][a] (3d ed. 2000) and disregarding arguments raised for the first time in objections to a magistrate judge's order). Here, Spectrum chose not to raise waiver before Magistrate Judge Parker and to instead address Defendants' Rule 17 arguments on the merits in a written submission to the Court. (*See* Doc. 775 at 2–3.) Thus, Spectrum "waived the waiver."

Regardless, Defendants did not waive their Rule 17 arguments. Waiver is "the 'intentional relinquishment or abandonment of a known right,' . . . and courts applying waiver doctrine have

focused on strategic, deliberate decisions that litigants consciously make." *United States v. Dantzler*, 771 F.3d 137, 146 (2d Cir. 2014) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). Spectrum claims that, after advancing arguments based on Rule 17 and the *Park B. Smith* case at the October 3, 2023 hearing, Defendants abandoned those arguments in the parties' subsequent joint letter of October 17, 2023. (Doc. 817 at 6.) Far from abandoning their earlier arguments, in the joint letter, Defendants summarized the position they had taken at the hearing: "Defendants . . . identified that . . . Rule 17(a)(3) is applicable and supports the relief Defendants requested, citing [*Park B.*] *Smith*." (Doc. 775 at 5.) They then defended this position, continuing to urge the Court to follow *Park B. Smith* and apply Rule 17(a)(3). (*Id.*) Defendants did not waive their arguments.

Spectrum also asserts that Defendants forfeited these same arguments by not raising them prior to the October 3, 2023 hearing.[5] Magistrate Judge Parker rejected this assertion in her Opinion and Order on Defendants' Motion to Substitute, stating in relevant part:

> It is true that arguments first raised at oral argument *may* be considered forfeited. *Giuffre v. Andrew*, 579 F. Supp. 429, 453 n.106 (S.D.N.Y. 2022). However, the Court is not prohibited from considering the argument merely because it was raised late, and the Court provided Spectrum with time to consider the argument after it was raised and to file a letter addressing the argument, which Spectrum has done. This Court is not inclined to reject Defendants' argument on formalist grounds when doing so would be dispositive of the infringement [counter]claim . . . .

(Doc. 778 at 19.) Spectrum does not object to any of these conclusions and findings. Indeed, it completely ignores Magistrate Judge Parker's resolution of this issue, while urging the District Court to find forfeiture in the first instance. Framed correctly, however, the question before the District Court is whether Magistrate Judge Parker erred in considering an argument raised for the first time at oral argument. She did not.

---

[5] Contrary to Spectrum's assertions and as explained above in the Background section, this was not the "second" hearing on the parties' motions. It was the first and only hearing on the motions.

Spectrum notes that "courts have the ability to resurrect forfeited issues *sua sponte*." (Doc. 817 at 5 (internal quotation marks and citations omitted).) *See also Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 141–42 (2d Cir. 2000) ("[W]e choose to exercise our discretion to reach this issue whether or not it was" forfeited.). Courts within the Second Circuit often exercise their discretion to consider arguments first raised at oral argument. *See United States v. Bennett*, 839 F.3d 153, 162 n.6 (2d Cir. 2016); *Fabrikant v. French*, 691 F.3d 193, 211–12 (2d Cir. 2012); *United States v. Barnes*, 158 F.3d 662, 672–73 (2d Cir. 1998); *Pierce v. Rodriguez*, No. 3:20-CV-1755 (SVN), 2023 WL 2646825, at *4 (D. Conn. Mar. 27, 2023); *Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New York/North Carolina/Virginia/Vermont, LLC v. Vermont Pub. Util. Comm'n*, No. 5:17-cv-161, 2018 WL 11469522, at *16 n.18 (D. Vt. Sept. 20, 2018); *McGarr v. City of Peekskill*, 975 F. Supp. 2d 377, 390 (S.D.N.Y. 2013). Spectrum cites no authority holding that consideration of arguments first raised at oral argument is an abuse of discretion.[6] Thus, Spectrum has not shown—and cannot show—that the Magistrate Judge's decision to consider Defendants' arguments on Rule 17 was "clearly erroneous," particularly given that Spectrum had the opportunity, which it used, to address those arguments in writing. The Court should overrule Spectrum's objections based on waiver and forfeiture.

---

[6] Spectrum's cases on forfeiture and waiver are all distinguishable or otherwise unsupportive of Spectrum's position. *See Wood v. Milyard*, 566 U.S. 463, 473 (2012) (holding "courts of appeals, like district courts, have the authority . . . to raise a forfeited . . . defense on their own initiative"); *Day v. McDonough*, 547 U.S. 198, 202 (2006) (finding no waiver); *Kontrick v. Ryan*, 540 U.S. 443, 458–60 (2004) (debtor forfeited argument that was not raised until after he had "lost the case on the merits" at summary judgment); *United States v. Campbell*, 26 F.4th 860, 875–80 (11th Cir. 2022) (excusing forfeiture and addressing forfeited argument on the merits); *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 452 n.106 (S.D.N.Y. 2022) (considering argument on the merits even after determining it had been made too late); *Goldberg v. UBS AG*, 690 F. Supp. 92, 98–101 (E.D.N.Y. 2010) (considering argument on the merits even after determining it was forfeited); *White v. First Am. Registry*, 592 F. Supp. 2d 681, 683–84 (S.D.N.Y. 2009) (considering merits of argument even after noting it was first raised on reply); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137–38 (S.D.N.Y. 2008) (considering argument on the merits even after determining it was forfeited).

**C.    The Magistrate's Opinion and Order Did Not "Cure" Standing as to GE's Counterclaim**

The result of the Magistrate's Opinion and Order is that GE is no longer a party and its counterclaim is dismissed; standing was not "cured." In GE's place, Precision Healthcare is now a defendant and, in accordance with the Opinion and Order, Precision Healthcare has asserted its own counterclaim that is factually identical to GE's dismissed counterclaim.

Defendants' Motion to Substitute requested that the Court substitute GE HealthCare and Precision Healthcare in place of, and dismiss from this case, Defendants General Electric Company, GE Healthcare Inc., and GE Medical Systems Israel Ltd—which the Opinion and Order granted. (Doc. 778 at 12; *see also* Doc. 715 at 5 (requesting order "substituting non-parties GE HealthCare and Precision Healthcare in place of Defendants" and "dismissing Defendants").) The Opinion and Order provides that Substitute-Defendant Precision Healthcare can assert "the infringement counterclaim as to the '439 patent against Spectrum" but may not "seek damages for infringement of the '439 patent prior to August 31, 2023." (Doc. 778 at 12, 20.) August 31, 2023 is the date Precision Healthcare put Spectrum on notice of Spectrum's infringement of the '439 patent (Doc. 775 at 4), thus starting the damages clock running for Substitute-Defendant Precision Healthcare. *See* 35 U.S.C. § 287(a).

This makes clear that the patent infringement counterclaim that Precision Healthcare asserted in its counterclaim filed November 6, 2023 (Doc. 798 at 134) is not the salvaged GE counterclaim. While the factual allegations are substantively identical to those asserted in GE's now-dismissed counterclaim (*compare id.*, *with* Doc. 642 at 132), Precision Healthcare seeks only the damages to which *it* is entitled, not those to which GE would have been entitled if GE had standing when it filed its counterclaim in July 2020. Thus, the result of the Magistrate's Opinion and Order is exactly what GE recognized should happen and what Spectrum wanted: GE's

14

defective counterclaim was dismissed, not "cured." (*See, e.g.*, Doc. 711 (Spectrum's motion to dismiss GE's counterclaim).)

The Magistrate's Opinion and Order accomplished this pursuant to Rule 17(a)(3), and it is on all fours with *Park B. Smith* and other binding authority within this Circuit such that it is not "contrary to law." Those authorities, which Spectrum fails to meaningfully distinguish (*see*, *infra*), confirm that Rule 17(a)(3) permits the substitution of the real party in interest and permits that party to assert a claim that does "not alter the substance of the action." *Park B. Smith*, 811 F. Supp. 2d at 774; *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) ("no good reason why Rule 17(a) should not" provide for substitution of a party with standing in place of one without standing where "except for naming the [substituted] plaintiffs on their own claims, [the allegations were] virtually identical to the original complaint" and no alterations to the "factual allegations [of] the events or the participants").

For example, in *Park B. Smith*, the district court confronted a similar problem in a multi-year case that had seen full summary judgment briefing and a decision, an appeal, remand, and further summary judgment briefing, all *before* the patent ownership issue was identified. *See Park B. Smith*, 811 F. Supp. 2d at 771–72. At that late stage, plaintiff "PBS Inc." discovered that a "clerical error" at the USPTO had caused the asserted patents to be recorded with PBS Inc. as the designated assignee, even though the underlying assignment documents confirmed the patents were assigned to PBS Inc.'s affiliate, "PBS Ltd." *Id.* at 771. Upon discovering this error, PBS Inc. moved to substitute under Rule 17(a)(3) and "concede[d] that it lack[ed] statutory standing to sue . . . because it [was] not the owner or assignee" of the patents. *Id.* at 772. The Court agreed that PBS Inc. lacked statutory standing and also found that PBS Inc. lacked constitutional standing. *See id.* at 773. The Court also recognized that in patent infringement cases, standing may not be

cured "by adding a party with standing." *Id.* at 773 (citing *Schreiber Foods v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)). "It [did] not follow, however, that a standing defect may not be cured through substitution of the plaintiff under Rule 17(a)(3)." *Id.* The Court reasoned, based on a litany of Second Circuit decisions, that "courts in the Second Circuit have generally allowed for substitution when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action." *Id.* at 773–74 (collecting cases). Because the Court found that the failure to identify the correct plaintiff was caused by the "mistaken belief that PBS Inc. was the owner" of the patents and not due to any bad faith and that defendant would "not suffer any unfair prejudice because it ha[d] been on notice" of the substance of the claims for years, substitution was proper. *Id.* at 775. And it was "the wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense of requiring an action to be started anew." *Id.* at 774 (quoting *Nat'l Maritime Union of Am. v. Curran*, 87 F. Supp. 423, 426 (S.D.N.Y. 1949)).

Spectrum does not even argue that Precision Healthcare's counterclaim "alter[s] the substance of the action" or raises new or different "factual allegations [of] the events or the participants" involved in the alleged infringement of the '439 patent. Nor does Spectrum claim that it lacked notice of those claims. Instead, Spectrum myopically focuses on the standing defect in *GE*'s counterclaim—which is no longer asserted here. (*See* Doc. 817 at 8 ("Rule 17(a) therefore cannot save *that* counterclaim," referring to Defendants' acknowledgement that "'GE lacked standing' to bring *its* counterclaim") (emphasis added); *see id.* at 10 (arguing that "allowing Precision Healthcare to *step into GE's shoes*" is inefficient) (emphasis added).) Spectrum offers no real argument, or authority, that Precision Healthcare—which owns the '439 patent and has standing to assert a claim for infringement—may not assert its claim here.

Spectrum also attempts to cast doubt on *Park B. Smith*. (Doc. 817 at 9–10.) <u>First</u>, Spectrum asserts that *Park B. Smith* is wrong because the district court in that case noted that the defendant "failed to cite case law" holding that Rule 17(a)(3) substitution could not resolve a standing issue. (*Id.* at 9 (quoting *Park B. Smith*).) Spectrum claims to have provided "what the *Smith* court was left wanting" in the form of case law from various courts. (*Id.*) But most of the cases Spectrum cites pre-date *Park B. Smith* and were thus available to the district court. Moreover, none of them addresses the factual scenario presented in *Park B. Smith* and here: a real party in interest who was not made a party due to a mistake, and who can assert its own, substantively identical counterclaim without prejudicing the other party.

Spectrum cites, for example, *Schreiber Foods*, as holding that "the addition of a party with standing" does not cure a jurisdictional defect where the original party lacked standing. (*See id.* at 7–8 (quoting *Schreiber Foods*, 402 F.3d at 1203).) But the district court in *Park B. Smith* correctly pointed out that *Schreiber Foods* did not address Rule 17(a)(3). *See Park B. Smith*, 811 F. Supp. 2d at 773. Moreover, *Schreiber Foods* concerned mootness, not standing, and a different fact pattern. In that case, "[a]t the time [the] action commenced, [plaintiff] was the owner of the '860 patent and had standing" but transferred ownership while the action was pending and then re-acquired it before entry of a final judgment. *Schreiber Foods*, 402 F.3d at 1202–03. On those facts, the Federal Circuit *reversed* the district court's holding that the lapse in subject matter jurisdiction rendered the judgment invalid. *See id.* at 1204 ("the district court's holding to the contrary . . . was erroneous"). Thus, *Schreiber Foods* is factually and legally distinct and casts no doubt on *Park B. Smith*. The same is true of Spectrum's other cases. *See, e.g.*, *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) (corporation that was administratively dissolved under state law and, as a matter of state law, lacked capacity to sue at the time it commenced action for patent

infringement could not cure standing by obtaining state law reinstatement after suit was filed to "retroactively" confer capacity to sue); *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007) (holding that bankruptcy liquidating trust that was assigned the right to sue for patent infringement but lacked the "exclusionary rights to the patent" lacked "legal injury in fact" and thus lacked constitutional standing to "be a party to this suit for patent infringement"); *Stichting Ter Behartinging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 49 (2d Cir. 2005) (where "state law prohibits the transfer of rights now claimed by Stichting" to cure its lack of standing, "ratification under Rule 17(a) would [improperly] allow Stichting to accomplish through operation of the Federal Rules precisely what it could not accomplish under New Jersey law").

Additionally, Spectrum relies on cases where the entire lawsuit was defective at commencement, depriving the court of any valid action in which to grant the relief of substitution or intervention. *See, e.g.*, *Pressroom Unions-Printers League Income Sec. Fund v. Caont'l Assur. Co.*, 700 F.2d 889 (2d Cir. 1983) (plaintiff fund could not amend pursuant to 28 U.S.C. § 1653 because "we have never allowed [Section 1653] to create jurisdiction retroactively where none existed" and the fund sought to "substitute a new action over which there is jurisdiction for one where it did not exist");[7] *Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir. 1935) ("right to intervene *presupposes an action duly brought*" and "if jurisdiction is lacking at the commencement of the suit, it cannot be aided"). That is not the situation here, as this Court has jurisdiction over the entire action and Precision Healthcare is not attempting to salvage GE's defective claim; it is

---

[7] Spectrum also argues that the Magistrate incorrectly characterized *Pressroom*'s mention of Rule 17 as "dictum." (Doc. 817 at 12.) Whether it is dictum, however, does not convert the Magistrate's reasoning for not following it into error. The Magistrate correctly observed that *Pressroom*'s treatment of Rule 17 "did not deal with a situation where the 'mistake' and 'prejudice' prongs of Rule 17(a) were met." (Doc. 778 at 17.) *Pressroom* didn't analyze those prongs *at all* because it found the district court "had no jurisdiction over the suit," which is not the case here. *Pressroom*, 700 F.2d at 893 n.9.

asserting its own claim that is factually identical to GE's claim and does "not alter the substance of the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 424 (2d Cir. 2015) (quoting *Park B. Smith*); *id.* at 422 (noting that Rule 17(a)(3) does not apply where "there was no valid lawsuit pending before the district court in which to permit an amended complaint").

<u>Second</u>, Spectrum claims that the "validity" of *Advanced Magnetics*, on which *Park B. Smith* is partly based, "has been widely questioned." (Doc. 817 at 9 (citing *Cortlandt*).) Nothing could be further from the truth. The Second Circuit in *Cortlandt* praised *Advanced Magnetics* as "our Circuit's **leading case** interpreting the Rule [17(a)]." *Cortlandt*, 790 F.3d at 422 (emphasis added). The *Cortlandt* court merely distinguished *Advanced Magnetics* on the basis that the plaintiff there "had standing . . . to pursue at least *some* of its claims," whereas in *Cortlandt* (and the other district court cases that declined to follow *Advanced Magnetics*) there was "no valid lawsuit pending before the district court." *Id.* at 422–23 (emphasis in original). Here, there *is* a "valid lawsuit pending before" the Court, just as the Magistrate's Opinion and Order recognized. (*See* Doc. 778 at 18 ("Here, by contrast, the Court has jurisdiction over Spectrum's complaint and Precision Healthcare is properly substituted").) In any event, *Park B. Smith* confirms that, even if there were no other claims in this lawsuit, Precision Healthcare could still assert its substantively identical infringement claim.

<u>Finally</u>, Spectrum cannot seriously claim that *Cortlandt* undercuts either *Advanced Magnetics* or *Park B. Smith*, as the Second Circuit expressly declined to address the question decided in *Park B. Smith*, i.e., "whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency." *Id.* at 423 ("we need not, however, resolve this question to dispose of Cortlandt's request").[8] Instead, in *Cortlandt*, the Second Circuit denied substitution because it "would create

---

[8] In observing, but not addressing, this question, the Second Circuit pointed out that "at least one other circuit has addressed the question" but "this decision has met with some criticism," including from the district court in *Park B.*

a different, fatal jurisdictional defect" by eliminating the diversity of the parties and thus stripping the court of subject matter jurisdiction under 28 U.S.C. § 1332(a). *Id.* at 423–24. Thus, *Cortlandt* **followed** the analysis in *Advanced Magnetics* and rejected a substitution that would "alter the substance of the action" and strip the district court of diversity jurisdiction. *See id.* Nothing in *Cortlandt* undermines the Magistrate's Opinion and Order and, in fact, *Cortlandt* supports both the validity of *Advanced Magnetics* and *Park B. Smith*.

Because the Magistrate's Opinion and Order followed the reasoning of the Second "Circuit's leading case interpreting" Rule 17(a), as applied in *Park B. Smith*, the Magistrate's determination to permit Precision Healthcare to assert its infringement counterclaim is not "contrary to law."

### D.    The Opinion and Order Correctly Determined That the "Mistake" and "No Prejudice" Prongs of Rule 17(a)(3) Are Met

In accordance with the Second Circuit's "leading case" applying Rule 17(a)(3), substitution is proper "when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action." *Cortlandt*, 790 F.3d at 424 (quoting *Park B. Smith*, 811 F. Supp. 2d at 773). As summarized in the Magistrate's Opinion and Order, substitution is permitted if "(1) the defect in the named plaintiffs plausibly resulted from mistake" and "(2) correcting this defect would not unfairly prejudice defendants by changing the particulars of the claims against them." (Doc. 778 at 9 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 464946, at *10 (S.D.N.Y. Feb. 25, 2009), which cited *Advanced Magnetics*, 106 F.3d at 20–21).)

---

*Smith. Cortlandt*, 790 F.3d at 423 (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) as the out-of-circuit decision and *Park B. Smith* as the source of criticism).

The Magistrate applied this test and concluded that "GE's failure to recognize that it had just recently transferred its rights to the patents at issue is a significant mistake . . . [but there is] no evidence of bad faith or intent to deceive by GE or its counsel." (Doc. 778 at 15.) Spectrum does not take issue with this conclusion, nor should it as the mistake was adequately explained in Defendants' motion papers and supporting declarations. (*See, e.g.*, Doc. 726.)

The Magistrate also concluded there would be no prejudice to Spectrum, because Spectrum has "been on notice of the counterclaim . . . for years and, indeed, actively litigated against it" and allowing Precision Healthcare to assert it here "will not require new substantive allegations." (Doc. 778 at 15.) And the Magistrate rejected Spectrum's "argument that it will be prejudiced by burdensome additional discovery" because Spectrum could not articulate what that discovery would be. (*Id.*) That was eminently correct, as even now Spectrum has articulated *no* prejudice whatsoever, nor has it demonstrated that any additional discovery would be burdensome. In fact, the parties' joint letter dated November 13, 2023 (Doc. 816) confirms that *de minimis* discovery, all of which has now been provided to Spectrum, was necessary. (*See id.* at 1–2.)

Spectrum appears to challenge the Magistrate's conclusion on prejudice, arguing that allowing Precision Healthcare to participate here will "expend *more* resources." (Doc. 817 at 10 (emphasis in original).) Obviously, this is not based on the purported "burdensome additional discovery" that Spectrum trumpeted in its arguments to the Magistrate. Rather, Spectrum points to (1) Precision Healthcare's potential damages and (2) Spectrum's belief that Precision Healthcare might not be awarded an injunction after trial. (*See id.* at 10–11.) The relief to which Precision Healthcare would be entitled is not relevant to the question of whether it is proper to allow Precision Healthcare to assert its claim in this case. In any event, neither of Spectrum's assertions has merit. With respect to Precision Healthcare's damages, Spectrum claims that its single, past

sale of the accused device after Precision Healthcare put Spectrum on notice of infringement means Precision Healthcare's damages are small. (*See id.* at 10 ("Spectrum has sold only one accused product in the United States" since August 31, 2023).) The '439 patent does not expire until 2034 and, therefore, damages for Spectrum's continued infringement will run for more than a decade, during which time Spectrum will surely sell more than the one device it was able to sell in just three months. As for injunctive relief, Spectrum offers only attorney argument inviting the Court to pre-judge whether evidence to be introduced at some later stage in this case supports an injunction. (*See id.* at 11 n.4.) The Court should not take Spectrum's invitation.

Spectrum also speculates that an entirely new lawsuit "may be *more* efficient" than allowing Precision Healthcare's claim here. (*See id.* at 11 n.5 (emphasis in original).) According to Spectrum, if the counterclaim is allowed here, the trial will be bifurcated into a bench trial on Spectrum's claims and then a jury trial on the counterclaim. (*Id.*) And Spectrum seems to argue that a new lawsuit by Precision Healthcare would be more efficient than the bifurcated trial. (*Id.*) In the current case, the parties have completed fact and expert discovery and are prepared to file summary judgment motions. There is no world in which bringing Precision Healthcare's patent infringement claim in a brand-new lawsuit would be more efficient than resolving that claim here.

At bottom, there is little, if any, inefficiency or added expense caused by Precision Healthcare asserting its counterclaim here. The limited additional discovery Spectrum wanted has already been provided (*see* Doc. 816), the Court has already completed claim construction of the '439 patent (*see* Doc. 585), and the parties are well on the way to briefing dispositive motions. (*See, e.g.*, Doc. 816 at 3 (Spectrum stating "the parties were prepared and willing to move forward with summary judgment and *Daubert* briefing").) Commencing a new and separate action will

require discovery, claim construction, and new dispositive briefing—all of which can be avoided by affirming the Magistrate's Opinion and Order based on sound Second Circuit law.

### E.    Spectrum Seeks to Use the Procedural Rules as Sword and Shield

The Magistrate's Opinion and Order correctly observed that Spectrum "wants to continue to assert all of its claims regardless of the standing deficiencies present in certain of those claims when they were filed against GE, but it also wants to avoid the burden of defending itself against a related counterclaim because of the same standing deficiency." (Doc. 778 at 19–20.) The Magistrate specifically referenced Spectrum's claim *against GE* regarding U.S. Patent No. 11,156,731 ("the '731 patent") and Spectrum's counter-counterclaims for declaratory judgment regarding the '439 patent. (*See id.* at 6). But, as Defendants' counsel stated at the October 3 hearing, the defect also applies to Spectrum's entire declaratory judgment claim for fraud on the USPTO. (*See* Doc. 770 at 14:21–17:9; Doc. 775 at 5.) Because *all* of Spectrum's declaratory judgment claims depend, for jurisdictional purposes, on the presence of Precision Healthcare in this lawsuit, a reversal of the Magistrate's Opinion and Order necessarily requires dismissal of Spectrum's declaratory judgment claims.

The defect in Spectrum's claims is straightforward. For a court to have declaratory judgment jurisdiction, there must be an actual case or controversy between the parties at all times. *See Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007) ("The rule in federal cases is that an actual controversy must be extant ***at all stages*** of review, not merely at the time the complaint [was] filed" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974))) (emphasis added; alteration in original). In general, declaratory judgment jurisdiction over claims against a patent owner exists so long as the defendant-patentee has standing to sue for infringement of the patents that are the subject of the declaratory judgment action. *See id.* at 1342–43. But where the defendant-patentee transfers all its rights in the patents away, this divests the court of

23

declaratory judgment jurisdiction. *See, e.g., id.* at 1348 (where patentee was "precluded [from asserting] an infringement claim based upon the activities of Nucleonics . . . there is no controversy between the parties"); *King Pharms., Inc. v. Eon Labs, Inc.,* 616 F.3d 1267, 1282–83 (Fed. Cir. 2010) (assignment of "all its interests" in patent divested the court of declaratory judgment jurisdiction); *Orion Elec. Co. v. Funai Elec. Co.*, No. 01 Civ. 3510 AGSJCF, 2001 WL 1506009, at *3 (S.D.N.Y. Nov. 26, 2001) (where party that lacks ownership rights in the patent at issue and therefore lacks standing to sue, it is not a proper defendant in a declaratory judgment action).

Here, Spectrum asserted its declaratory judgment claim for fraud on the USPTO against GE. (*See, e.g.*, Doc. 630 at 639–60.) Although GE did own those patents in December 2018 when Spectrum first filed its claim, GE transferred all its rights in them to Precision Healthcare in January 2019. (*See* Doc. 716 (explaining transfer of patents to Precision Healthcare).) By that transfer, whatever declaratory judgment jurisdiction may have existed, it certainly ceased to exist upon GE's divestiture of the patents. *See King Pharms.*, 616 F.3d at 1282–83. Similarly, Spectrum amended its complaint in February 2023 to add declaratory judgment claims concerning the '731 patent, which it again asserted against GE. (*See* Doc. 630.) That claim, as it turns out, lacked declaratory judgment jurisdiction *from the start*. Finally, Spectrum's declaratory judgment counter-counterclaims concerning the '439 patent, asserted against GE, and originally filed in August 2020, were also without declaratory judgment jurisdiction from the start. In short, because GE does not own any of the patents that are the subject of any of Spectrum's declaratory judgment claims, this court lacks jurisdiction over them. *See King Pharms.*, 616 F.3d at 1282–83.

Spectrum attempts to down-play this significant problem. First, it wrongly asserts that this is nothing more than a "wrong defendant" issue and that there is no "defendant 'standing' requirement." (Doc. 817 at 12.) But this is not an issue of standing; it is an issue of jurisdiction.

Without the patent owner, there is no case or controversy, and the Court lacks declaratory judgment jurisdiction. *See Benitec*, 495 F.3d at 1345. Spectrum also claims that this is a "non-issue" because it supposedly "agreed to the substitution of Precision Healthcare as a defendant *and* to the dismissal of the declaratory-judgment claims if the Court were to dismiss GE's counterclaim." (Doc. 817 at 13 (emphasis in original).) Spectrum refers to a footnote in the parties' October 17, 2023, joint letter to Magistrate Judge Parker (Doc. 775), where Spectrum states only that, "[i]f the Court denies such leave [i.e., for Precision Healthcare to assert its counterclaim], Spectrum agrees to the dismissal of its *counter-counterclaims* for declaratory judgment of invalidity and noninfringement of the '439 patent." (Doc. 775 at 3 n.3 (emphasis added).) Spectrum never agreed to abandon its fraud on the USPTO claim for which jurisdiction depends on the presence of the patent owner.

In short, the Magistrate correctly identified Spectrum's procedural gambit. It is little more than a cynical attempt by Spectrum to exploit a mistake that has had no impact on the merits of this case and has caused no prejudice to Spectrum, while ignoring the negative effects that naturally flow from the relief Spectrum requests. As the Magistrate observed, "[i]t would be a bizarre and unjust outcome to allow Spectrum to continue to assert its claims against Precision Healthcare but prevent Precision Healthcare from asserting [its] counterclaim against Spectrum on the same patent that is the subject of [Spectrum's] affirmative claim[s]." (Doc. 778 at 18.)

IV.    **CONCLUSION**

For all of the foregoing reasons, the Court should overrule Spectrum's objections to Magistrate Judge Parker's Report and Recommendation on Motion to Dismiss and Opinion and Order on Motion to Substitute.

Dated: December 1, 2023                          Respectfully submitted,

                                                 **THOMPSON HINE LLP**

                                                 */s/Marla R. Butler*
                                                 Marla R. Butler
                                                 Two Alliance Center
                                                 3560 Lenox Road NE, Suite 1600
                                                 Atlanta, Georgia 30326
                                                 Tel.: (404) 541-2900
                                                 Fax: (404) 541-2905
                                                 Marla.Butler@ThompsonHine.com

                                                 Jesse Jenike-Godshalk (*pro hac vice*)
                                                 312 Walnut Street, Suite 2000
                                                 Cincinnati, Ohio 45202
                                                 Tel.: (513) 352-6700
                                                 Fax: (513) 241-4771
                                                 Jesse.Godshalk@ThompsonHine.com

                                                 Jeffrey Metzcar (*pro hac vice*)
                                                 Discovery Place
                                                 10050 Innovation Drive
                                                 Miamisburg, Ohio 45342
                                                 Tel.: (937) 443-6841
                                                 Fax: (937) 430-3781
                                                 Jeff.Metzcar@ThompsonHine.com

                                                 Brian Lanciault
                                                 300 Madison Avenue, 27th Floor
                                                 New York, New York 10017
                                                 Tel.: (212) 344-5680
                                                 Fax: (212) 344-6101
                                                 Brian.Lanciault@ThompsonHine.com

                                                 *Attorneys for Defendants GE Healthcare*
                                                 *Technologies Inc. and GE Precision*
                                                 *Healthcare LLC*